1   MELINDA HAAG (STATE BAR NO. 132612)
    mhaag@orrick.com
2   JAMES A. MEYERS (ADMITTED *PRO HAC VICE*)
    jmeyers@orrick.com
3   JAMES N. KRAMER (STATE BAR NO. 154709)
    jkramer@orrick.com
4   MOJI SANIEFAR (STATE BAR NO. 233330)
    msaniefar@orrick.com
5   RANDALL S. LUSKEY (STATE BAR NO. 240915)
    rluskey@orrick.com
6   LUCY E. BUFORD (STATE BAR NO. 244885)
    lbuford@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
8   405 Howard Street
    San Francisco, CA  94105-2669
9   Telephone:    415-773-5700
    Facsimile:    415-773-5759
10
    Attorneys for Defendant
11  LISA C. BERRY

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15

16
    SECURITIES AND EXCHANGE            Case No.  5:07-cv-04431 RMW HRL
17  COMMISSION,
                                       **DEFENDANT LISA C. BERRY'S**
18              Plaintiff,             **NOTICE OF MOTION AND MOTION**
                                       **TO DISMISS THE COMPLAINT AND**
19       v.                            **MEMORANDUM OF POINTS AND**
                                       **AUTHORITIES IN SUPPORT**
20  LISA C. BERRY,                     **THEREOF**

21              Defendant.

22                                     Date:       February 15, 2008
                                       Time:       9:00 a.m.
23                                     Courtroom:  6, Fourth Floor

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ 1

STATEMENT OF ISSUES ........................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.    INTRODUCTION ............................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................... 4

   A.    Ms. Berry .............................................................................................. 4

   B.    KLA's Stock Option Process ................................................................. 4

   C.    Juniper's Stock Option Process ............................................................ 6

III.  ARGUMENT .................................................................................................. 7

   A.    The SEC's Complaint Is Subject To The Heightened Pleading Standards
         Of Rule 9(b) ....................................................................................... 7

   B.    The SEC Has Not Adequately Pled a Securities Fraud Claim ............... 8

         1.    The SEC Has Not Adequately Pled Ms. Berry's Scienter ........... 8

               a.    Backdating Stock Options Is Not Illegal Per Se ............... 8

               b.    The SEC Does Not Plead Ms. Berry's Accounting
                     Knowledge ................................................................... 10

               c.    The Juniper Scienter Allegations Are Equally Deficient .... 13

               d.    Scienter Based On Receipt Of Backdated Options Is
                     Insufficient ................................................................... 13

         2.    The SEC Fails To Sufficiently Allege Recklessness ................. 14

         3.    The SEC Fails To Allege Facts That Ms. Berry Made A Material
               Misstatement ......................................................................... 15

   C.    Other Allegations .............................................................................. 17

         1.    The SEC Has Failed To Plead Aiding And Abetting Liability ..... 17

               a.    The SEC Fails To Plead Ms. Berry's Actual Knowledge of
                     Furthering Violations of Securities Laws ....................... 18

               b.    The SEC Has Not Pled That Ms. Berry "Substantially
                     Assisted" A Violation Of The Securities Laws ................ 19

         2.    The SEC Has Failed To Plead A Primary "Books And Records"
               Violation ................................................................................. 20

         3.    The SEC Has Failed to Plead A Violation Of Section 17(a)(2) Or
               17(a)(3) Of The Securities Act ................................................ 21

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

    D.     The Majority of Conduct Underlying The Allegations In The Complaint
          Are Precluded By The Statute Of Repose Of 28 U.S.C. § 2462 ........................... 22

4

IV.     CONCLUSION ............................................................................................................. 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aaron v. SEC*,
446 U.S. 680 (1980) ................................................................................................ 8, 21

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ................................................................................................. 7

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ...................................................................................................... 8

*Hateley v. SEC*,
8 F.3d 653 (9th Cir. 1993) .......................................................................................... 14

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
2005 WL 3704688 (S.D. Tex. Dec. 5, 2005) ............................................................. 17

*In re ESS Tech., Inc. Sec. Litig.*,
2004 WL 3030058 (N.D. Cal. Dec. 1, 2004) ............................................................. 16

*In re Ruffalo*,
390 U.S. 544 (1968) .................................................................................................... 24

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ...................................................................................... 14

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ...................................................................................... 20

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ....................................................................................... 20

*In re Tibco Software, Inc.*,
2006 WL 1469654 (N.D. Cal. May 25, 2006) ........................................................... 16

*In re Verisign, Inc. Deriv. Litig.*,
2007 WL 2705221 (N.D. Cal. Sept. 24, 2007) .......................................................... 13

*Johnson v. SEC*,
87 F.3d 484 (D.C. Cir. 1996) ................................................................................ 23, 24

*Monetta Fin. Serv., Inc. v. SEC*,
390 F.3d 952 (7th Cir. 2004) ...................................................................................... 19

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ...................................................................................... 16

*Ponce v. SEC*,
345 F.3d 722 (9th Cir. 2003) ................................................................................. 17, 18

*SEC v. Arthur Young & Co.*,
590 F.2d 785 (9th Cir. 1979) ...................................................................................... 22

*SEC v. Baxter*,
2007 WL 2013958 (N.D. Cal. July 11, 2007) .................................................. 8, 18, 20

*SEC v. Cedric Kushner Promotions, Inc.*,
417 F. Supp. 2d 326 (S.D.N.Y. 2006) .............................................................. 17, 18, 19

**TABLE OF AUTHORITIES**
**(continued)**

Page

*SEC v. DiBella,*
  409 F. Supp. 2d 122 (D. Conn. 2006) ...................................................................... 24

*SEC v. Druffner,*
  353 F. Supp. 2d 141 (D. Mass. 2005) ...................................................................... 18

*SEC v. Durgarian,*
  477 F. Supp. 2d 342 (D. Mass. 2007) ........................................................................ 8

*SEC v. Fehn,*
  97 F.3d 1276 (9th Cir. 1996) .................................................................... 8, 17, 18

*SEC v. Fitzgerald,*
  135 F. Supp. 2d 992 (N.D. Cal. 2001) ...................................................................... 22

*SEC v. Gann,*
  2006 WL 616005 (N.D. Tex. Mar. 13, 2006) ............................................................ 18

*SEC v. Jones,*
  476 F. Supp. 2d 374 (S.D.N.Y. 2007) ................................................................. 23, 24

*SEC v. Kahn,*
  2002 WL 1163723 (N.D. Ill. May 31, 2002) ............................................................ 21

*SEC v. Lucent Techs. Inc.,*
  2005 WL 1206841 (D.N.J. May 20, 2005) ("*Lucent I*") ...................................... 8, 10

*SEC v. Lucent Techs., Inc.,*
  363 F. Supp. 2d 708 (D.N.J. 2005) ("*Lucent II*") .............................................. 18, 20

*SEC v. Morris,*
  2005 WL 2000665 (S.D. Tex. Aug. 18, 2005) .......................................................... 19

*SEC v. Parnes,*
  2001 WL 1658275 (S.D.N.Y. Dec. 26, 2001) ............................................................ 8

*SEC v. Roanoke Tech. Corp.,*
  2006 WL 2470329 (M.D. Fla. Aug. 24, 2006) ............................................................ 8

*SEC v. Rogers,*
  790 F.2d 1450 (9th Cir. 1986),
  *overruled on other grounds by*
  *Pinter v. Dahl,* 486 U.S. 622 (1988) ........................................................................ 19

*SEC v. Rubera,*
  350 F.3d 1084 (9th Cir. 2003) ......................................................................... 8, 14, 15

*SEC v. Tambone,*
  417 F. Supp. 2d. 127 (D. Mass. 2006) ............................................................. 7, 19, 20

*SEC v. Todd,*
  2007 WL 1574756 (S.D. Cal. May 30, 2007) ............................................................ 15

*SEC v. Yuen,*
  221 F.R.D. 631 (C.D. Cal. 2004) ................................................................................ 7

*Simpson v. AOL Time Warner, Inc.,*
  452 F.3d 1040 (9th Cir. 2006) ................................................................................. 16

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007) .......................................................................................... 12

4

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)......................................................................... 7, 20

5

*Weiss v. Amkor Technology, Inc.,*
    2007 WL 2808224 (D. Ariz. Sept. 25, 2007)............................................ 9, 13, 14

6

7

**STATUTES**

8

17 C.F.R. § 230.428 ...................................................................................................... 17

28 U.S.C. § 2462 ................................................................................................. 3, 22, 25

9

**OTHER AUTHORITIES**

10

Accounting Principles Board Op. No. 25,
    *Accounting for Stock Issued to Employees*................................................... *passim*

11

Statement of Financial Accounting Standard
    No. 123 (revised 2004), *Share Based Payment* ........................................... 24

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2008 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Ronald M. Whyte, United States District Court, 280 S. First Street, San Jose, CA 95113, defendant Lisa C. Berry will move the court for an Order dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). This motion is based on the Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice, Declaration of Moji Saniefar, the [Proposed] Order; all pleadings and papers filed herein, oral argument of counsel, and any other matter that may be submitted at the hearing.

**STATEMENT OF ISSUES**

1.    Whether the SEC has satisfactorily pled any securities law violation where it has failed to allege facts that, if proven, would show that Ms. Berry (i) acted with intent, knowledge, recklessness, or negligence; (ii) made an actionable material misstatement; or (iii) knowingly provided substantial assistance to an unlawful scheme.

2.    Whether the SEC's claim for disgorgement should be dismissed where the SEC has not pled any facts, that if proven, would show that Ms. Berry realized unlawful gains or profits as a result of any allegedly unlawful conduct.

3.    Whether the SEC's requested relief with respect to conduct occurring outside the applicable statute of repose set forth in 28 U.S.C. § 2462 is time-barred.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The SEC has dramatically – and impermissibly – overreached in bringing this action alleging unlawful stock options "backdating" against Lisa Berry, the former General Counsel of KLA-Tencor Corporation ("KLA") and Juniper Networks, Inc. ("Juniper").  As the SEC would have it, Ms. Berry was the *sole* person responsible for alleged improper employee stock options granting practices at KLA from July 1997 through June 30, 1999, even though it repeatedly alleges that (i) only the board of directors and a subset of the board, the Stock Option Committee,

1   had the power to set options exercise prices; and (ii) an untold number of unidentified "others"

2   backdated options at KLA during the same period.  Indeed, the SEC goes so far as to charge Ms.

3   Berry with aiding and abetting fraud by KLA, even though it never charged KLA with fraud in its

4   enforcement action brought against the company about a month earlier regarding the same alleged

5   practices (and more).  Similarly, as to Juniper, the SEC posits that Ms. Berry was the *sole* person

6   responsible for a $900 million alleged fraud at that company even though, once again, the SEC

7   alleges that an untold number of unidentified "others" at the company also engaged in the same

8   conduct with which it charges Ms. Berry.  *See* Compl. ¶ 4.

9        Despite the SEC's over-zealous effort to tar Ms. Berry – and only Ms. Berry – with the

10  alleged misconduct at KLA and Juniper, the SEC has nevertheless failed to state a securities fraud

11  or any other securities claim against her.  It is clear that the use of an historical grant

12  "measurement date" does not by itself establish that an option grant has been illegally

13  "backdated," and that companies can use an historical measurement date without taking a

14  compensation charge in a variety of circumstances that do not result in a violation of law or the

15  accounting principles set forth in "APB 25."[1]  The SEC thus must allege more than mere use of

16  "historical dates" or even that Ms. Berry knew that her employers were using "historical dates" as

17  measurement dates.  In addition, it must plead specific facts that, if proven, would show that Ms.

18  Berry knew or was reckless in not knowing that (i) the historical dates being used were not the

19  correct "measurement dates" under APB 25; (ii) as a result, the companies were required to take a

20  compensation charge; (iii) the companies were not taking a required compensation charge; and

21  (iv) the companies' financial statements were thereby materially misstated.

22       The SEC does not allege a single fact to support any such showings, and the facts it does

23  allege preclude any such showings.  The SEC never alleges that Ms. Berry had any relevant

24

25  [1] Under Accounting Principles Board Op. No. 25, *Accounting for Stock Issued to Employees*
    ("APB 25"), stock option grants with an exercise price lower than the fair market value of the
26  stock on the "measurement date" (the first date on which the number of options an individual is
    entitled to receive and the exercise price are known) – so-called "in the money" grants – incurred
27  a compensation expense over the period of time services were performed by the employees.  *See*
    APB 25 §§ 10(b), 12-14.  Grants whose value on the "measurement date" equaled the exercise
28  price – so-called "at the money" grants – did not incur a compensation expense under APB 25.

1    accounting knowledge.  There is but one document on which the SEC relies to assert Ms. Berry's

2    understanding that using an historical grant date with a lower price would involve an accounting

3    charge to "P&L."  *See* Compl. ¶ 33.  Far from damning Ms. Berry, the document, if anything,

4    exonerates her.  The document, properly considered on this motion (*see* accompanying Request

5    for Judicial Notice ("RJN")), is a memo showing that Ms. Berry, a non-accountant, conferred

6    with KLA's outside experts regarding stock options issues and accounting.  It reflects advice from

7    KLA's independent auditors that would not have put her or the Stock Option Committee on

8    notice that using an historical grant date with a lower price would require a compensation charge.

9    Further, the document openly discusses with outside counsel the use of an historical date to set

10   the exercise price.  But, unlike with respect to its key allegations against another former KLA

11   individual, the SEC does *not* allege that outside counsel or anyone else ever informed Ms. Berry

12   that this approach could present potential securities law issues.  These circumstances preclude any

13   inference that Ms. Berry acted with intent to defraud, recklessly, or even negligently.

14         Notably, the SEC dwells on Ms. Berry's experience at KLA, which occurred 8-11 years

15   ago.  This is well outside the applicable statute of repose, 28 U.S.C. § 2462, which requires that

16   any action "for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise,"

17   must be brought "within five years from the date when the claim first accrued."  Perhaps the SEC

18   believes that its allegations as to KLA are stronger than its allegations as to Juniper (most of

19   which themselves fall outside the five-year window of § 2462); perhaps it recognizes that certain

20   substantive claims or requests for relief may be brought only with respect to alleged conduct

21   occurring at KLA; perhaps it hopes that the Court will believe that the whole of the KLA and

22   Juniper allegations are somehow greater than the sum of their parts.  In any event, the SEC once

23   again falls victim to its own allegations.  The SEC itself alleges that the options granting process

24   at Juniper was similar to that at KLA.  *See*, *e.g.*, Compl. ¶ 1.  Since Ms. Berry reasonably

25   believed, based on outside counsel's apparent acquiescence to the use of historical measurement

26   dates at KLA to make "in the money" grants, then she similarly had such a reasonable belief with

27   respect to the allegedly similar practice at Juniper.

28         In short, the SEC has not pled, and cannot plead, any facts that, if proven, would show

- 3 -

1   that Ms. Berry engaged in conscious misconduct or acted with knowledge, recklessness, or

2   negligence.  It has also failed to properly allege that she made any actionable misstatement.  The

3   vast majority of the conduct it has alleged falls outside § 2462's five-year statute of repose for

4   penalties (which, in this case, would also include the requested injunction and officer and director

5   bar), and its request for disgorgement of unlawful profits fails at the threshold because it has not

6   alleged that Ms. Berry received any gains or profits from unlawful conduct.  For these reasons,

7   the SEC's complaint should be dismissed and, because amendment would be futile (given that the

8   SEC has had the benefit of the discovery received from two lengthy investigations and still cannot

9   plead a satisfactory claim), it should be dismissed with prejudice.

10  **II.    STATEMENT OF FACTS**[2]

11      **A.    Ms. Berry**

12      Ms. Berry was General Counsel of KLA from September 1996-June 1999, and of Juniper

13  from June 1999-January 2004.  Compl. ¶ 11.  The SEC observes that Ms. Berry "majored in

14  accounting in college" (*id*.), but nowhere alleges that Ms. Berry ever worked as an accountant,

15  had any responsibility for accounting in any of her prior work experience, had a CPA license, or

16  was ever knowledgeable or experienced specifically with respect to stock option accounting.

17      **B.    KLA's Stock Option Process**

18      During Ms. Berry's tenure at KLA, KLA's stock option plan specifically "required that

19  the board of directors set the exercise price of the company's stock options."  *Id*. ¶ 15.  In 1997,

20  KLA's board delegated authority to grant options to non-officer employees to a Stock Option

21  Committee consisting of three directors.  *Id*. ¶ 22.  Ms. Berry was never a director of KLA and

22  never served on the Committee; thus, she *never* set the exercise price of any KLA stock options.

23  Nevertheless, and although she was not a member of the Stock Option Committee or the Human

24  Resources ("HR") or Stock Administration departments, the SEC alleges that Ms. Berry – along

25  with an unspecified number of unnamed, uncharged "others at KLA" – "repeatedly backdated

26  grants to newly hired and recently promoted employees … as well as to current employees

27

28  ---
[2] Ms. Berry accepts the well-pleaded factual allegations of the SEC's Complaint solely for the purposes of this motion, and shows herein that the SEC has failed to state a claim against her.

eligible for options ….” *Id.* ¶ 27. According to the SEC, the options granting procedures were “put in place by Berry *and the Stock Option Committee*.” *Id.* ¶ 24 (emphasis added).[3] Thus, the SEC never alleges that Ms. Berry concealed anything from the Stock Option Committee when *it* determined the measurement dates and exercise prices.

The SEC alleges that Ms. Berry “directed” the HR and Stock Administration departments “to prepare the grant approval paperwork,” including selection of an exercise price through the use of historical stock prices. *Id.* ¶ 25. Once the Stock Option Committee executed the grant paperwork, HR or Stock Administration would enter the grant information in KLA’s stock options database. *Id.* ¶¶ 25-26. Nowhere does the SEC allege that these departments reported to Ms. Berry or to what extent and how Ms. Berry interacted with these departments. The SEC’s only allegation as to Ms. Berry’s participation in this process is that she “directed” these departments in performing the procedures for stock option grants (*id.* ¶ 25), but nowhere does the SEC provide required specifics as to what directions Ms. Berry purportedly gave these departments, when or to whom she gave them, or whether they were given orally or in writing.

While asserting in general terms that Ms. Berry “directed the process” for selecting the exercise price (*id.*), the SEC does not allege that Ms. Berry actually set the exercise price or even participated in the decision making regarding the selection of the exercise price for any options grant. The SEC cannot make any such allegation given its allegation that only the board or its Stock Options Committee made these determinations. *Id.* ¶¶ 15, 22. Nor does the SEC ever allege that Ms. Berry had *any* responsibility for accounting for options grants at KLA or that she even knew how the company was accounting for them.

The SEC specifically cites only two grants, both made nearly ten years ago, that were allegedly “backdated” to August 31, 1998 and October 19, 1998. *Id.* ¶¶ 28, 30. Notably, it does

---

[3] The only other KLA individual the SEC has charged is Kenneth Schroeder, KLA’s COO from April 30, 1997-June 30, 1999 and CEO from July 1, 1999-January 1, 2006. *See SEC v. Schroeder*, No. 5:07-cv-03798-JW (N.D. Cal. July 25, 2007) (RJN, Ex. A) (“*Schroeder* Compl.”). While the SEC alleges that Mr. Schroeder was a member of the Stock Option Committee in the 1997-1999 period, it makes clear that it is charging him only for conduct occurring after Ms. Berry left KLA. *See id.* ¶ 1 & Appx. A thereto. Thus, the SEC seeks to hold only Ms. Berry responsible for the alleged unlawful conduct at KLA from 1997 through mid-1999.

1    not allege any participation by Ms. Berry as to the August 31, 1998 grant. *Id*. ¶ 28. It asserts,

2    with no particularity whatsoever, that there were 10 other "backdated" grants with grant dates

3    from July 31, 1997 to June 15, 1999. *Id*. ¶ 32. Other than making a general assertion that Ms.

4    Berry and the unnamed, uncharged others were involved in backdating these additional,

5    unidentified grants, the SEC provides no specific information as to how Ms. Berry herself

6    participated in the alleged backdating of these grants.

7        The SEC also alleges that "shortly before" leaving KLA, Ms. Berry advised HR

8    employees about the procedure for granting options to new hires. *Id*. ¶ 34. This purportedly

9    included creating a list of new hires and highlighting for the Stock Option Committee,

10   presumably for *its* use in setting the exercise price pursuant to the procedures it created, the 3-4

11   lowest prices over a period of several weeks. *Id*. ¶ 34. Even accepting these allegations, they do

12   not plead Ms. Berry's understanding of the accounting consequences of the process. Indeed, not

13   only is it palpably implausible that Ms. Berry participated in a "scheme" to commit fraud whose

14   benefits could have been achieved only *after* she left KLA,[4] it is contrary to the SEC's fraud

15   allegation that Ms. Berry would have openly shared the purported "scheme" with HR employees,

16   as the SEC alleges she did.

17       **C.    Juniper's Stock Option Process**

18       From July 1999, Juniper had a Stock Option Committee with Ms. Berry as one of three

19   members. *Id*. ¶ 47. According to the SEC, Ms. Berry was responsible for Juniper's Stock

20   Administration department and stock option granting process. *Id*. ¶ 48. The SEC alleges that the

21   process at Juniper was similar to that allegedly used at KLA. *Id*. ¶¶ 1, 3.[5] Again, though the

---

22   [4] Remarkably, it appears the SEC seeks to use this document to hold Ms. Berry responsible for
     grants that were allegedly improperly "backdated" after Ms. Berry left KLA. *See* Compl. ¶ 34.
23   There is no legal basis for this overreaching effort, particularly in light of the fact that in the
     *Schroeder* Compl., at ¶¶ 29-32, the SEC alleges that at least one senior executive on the Stock
24   Option Committee received legal advice after Ms. Berry left KLA counseling against use of
     historical dates to set exercise prices.
25
     [5] The SEC does not allege any fraudulent motive to overstate earnings. Rather, it alleges that
26   Juniper adopted this alleged practice as a result of having gone public in 1999, experiencing rapid
     growth immediately thereafter, and hiring hundreds of employees through 2003. Compl. ¶ 42.
27   Because of this growth, the SEC alleges, Juniper had to make grants to all new employees, as
     well as continue to make grants to existing employees. *Id*. The SEC makes similar allegations in
28   its complaint against KLA. *See* RJN, Ex. B ¶ 9.

1    SEC's own allegations make clear that this process was open within Juniper and the SEC

2    specifically alleges the participation of "others at the" company in "selecting option grant dates

3    and prices with hindsight" (*id*. ¶ 4), the SEC has not charged a single other individual at Juniper

4    for participating in this alleged $900 million fraud.  Notably, and as with its KLA allegations, the

5    SEC fails to make even a single allegation as to Ms. Berry's knowledge or recklessness regarding

6    options accounting at Juniper:  it nowhere alleges that Ms. Berry knew how Juniper was

7    accounting for its options grants or that Juniper was not taking required compensation charges,

8    thereby leading to materially misstated financial statements.

9    **III.    ARGUMENT**

10           **A.    The SEC's Complaint Is Subject To The Heightened**
             **Pleading Standards Of Rule 9(b)**

11

12           In evaluating a Rule 12(b)(6) motion, "the Court must accept well-pleaded allegations as

13    true, but it is not required to accept 'legal conclusions cast in the form of factual allegations if

14    those conclusions cannot reasonably be drawn from the facts alleged.'"  *SEC v. Yuen*, 221 F.R.D.

15    631, 634 (C.D. Cal. 2004) (dismissing SEC complaint; quoting *Clegg v. Cult Awareness Network*,

16    18 F.3d 752, 754-55 (9th Cir. 1994)).  Moreover, even under the so-called "notice pleading"

17    standard of Rule 8(a)(2), the SEC is required to plead *specific facts* that, if proven, would

18    establish its claims.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007).

19           Because it has alleged fraud, the SEC faces two heightened pleading requirements.  *First*,

20    under Rule 9(b), its averments of fraud or mistake must be stated with particularity.  *See Yuen*,

21    221 F.R.D. at 634.  The SEC must specifically allege "the 'who, what, when, where, and how' of

22    the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

23    (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).[6]  Rule 9(b) applies not only to

24    fraud claims, but also to non-fraud claims grounded in allegations of fraudulent conduct, such as

25    all of the SEC's non-fraud claims here.  *Vess*, 317 F.3d at 1103-04; s*ee also SEC v. Baxter*, 2007

26    _____

27    [6] It is especially appropriate to enforce Rule 9(b) here, where the SEC investigated and gathered
     facts over an extended period before filing its Complaint.  *See*, *e.g.*, *SEC v. Tambone*, 417 F.
     Supp. 2d 127, 131 (D. Mass. 2006) (granting Rule 12(b)(6) dismissal and refusing to relax Rule
28    9(b) given the SEC's extensive pre-litigation investigation).

DEFENDANT'S MEMO P&A ISO MOTION TO
                                                                   DISMISS  - 5:07-CV-04431 RMW HRL

WL 2013958, at *3 (N.D. Cal. July 11, 2007). *Second*, though the Private Securities Litigation Reform Act ("PSLRA") does not apply to the SEC, numerous courts throughout the country have held that the SEC is nevertheless required to plead facts that raise a *strong inference* of scienter and have dismissed SEC complaints or claims therein for failure to meet this standard.[7]

### B.    The SEC Has Not Adequately Pled a Securities Fraud Claim

To plead a violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 thereunder, and Section 17(a)(1) of the Securities Act of 1933 ("Securities Act"), the SEC must allege facts that, if proven, would show that Ms. Berry made a misstatement or omission of a material fact, and that she did so with scienter. *See SEC v. Fehn*, 97 F.3d 1276, 1289 (9th Cir. 1996) (Exchange Act); *Aaron v. SEC*, 446 U.S. 680, 695-96 (1980) (Securities Act). The SEC has failed to plead such a violation here because it has not pled with sufficient particularity that Ms. Berry acted with scienter or made an actionable material misstatement or omission.

### 1.    The SEC Has Not Adequately Pled Ms. Berry's Scienter

Scienter is "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976). In certain extreme circumstances, scienter can be shown through proof of "highly unreasonable" conduct, "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *SEC v. Rubera*, 350 F.3d 1084, 1094 (9th Cir. 2003) (affirming judgment against SEC for failure to prove scienter under that standard). Here, the SEC has failed to adequately allege Ms. Berry's scienter under either a knowledge or recklessness theory.

### a.    Backdating Stock Options Is Not Illegal Per Se

Selecting historical dates for option grants is not illegal *per se*. "Backdating of

---

[7] *E.g.*, *SEC v. Durgarian*, 477 F. Supp. 2d 342, 353 (D. Mass. 2007); *SEC v. Roanoke Tech. Corp.*, 2006 WL 2470329, at *5-6 (M.D. Fla. Aug. 24, 2006); *SEC v. Lucent Techs. Inc.*, 2005 WL 1206841, at *5 (D.N.J. May 20, 2005) ("*Lucent I*"); *SEC v. Parnes*, 2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001).

1    options sounds bad, but the mere fact that options were backdated does not mean that the

2    securities laws were violated." Remarks by SEC Commissioner Paul Atkins Before the

3    International Corporate Governance Network 11th Annual Conference (July 6, 2006)

4    (http://www.sec.gov/news/speech/2006/spch070606psa.htm) (RJN, Ex. E); Letter from

5    Conrad Hewitt, SEC Chief Accountant, to Lawrence Salva and Sam Ranzilla (Sept. 19,

6    2006) (available at http://www.sec.gov/info/accountants/staffletters/fei_aicpa091906.htm)

7    ("Chief Accountant's Letter") (RJN, Ex. F) (using historical measurement dates for purposes

8    of APB 25, while not proper in "many" cases, is appropriate "in certain instances").

9    　　　To satisfactorily plead scienter here, the SEC must allege that Ms. Berry knew or was

10    reckless in not knowing that (i) the historical date was the wrong measurement date under APB

11    25; (ii) the selection of the wrong measurement date necessitated a compensation charge; and (iii)

12    the company failed to record the appropriate compensation charge, resulting in (iv) materially

13    misstated financial statements. *See Weiss v. Amkor Tech., Inc.*, 2007 WL 2808224, at *8 (D.

14    Ariz. Sept. 25, 2007) ("a complaint must allege specific facts that each individual defendant knew

15    that the accounting for the subject transactions was incorrect at the time it was determined").

16    Thus, the SEC must allege facts to show that Ms. Berry had the required knowledge of stock

17    options accounting. *See id.* at *10 (dismissing complaint because "[t]here are no particularized

18    allegations relating to these Defendants' notice of the stock option accounting"). Here, the SEC

19    has not pled any facts to sufficiently allege that Ms. Berry, a lawyer with no accounting

20    experience, knew or was reckless in not knowing that using historical prices would trigger

21    measurement date issues requiring compensation charges that KLA and Juniper failed to record,

22    resulting in materially misstated financial statements. Indeed, the Complaint is barren of a single

23    direct allegation that Ms. Berry knew the relevant accounting rules or how KLA or Juniper were

24    applying them. Absent specific, particularized factual allegations to connect Ms. Berry's alleged

25    actions in selecting historical grant dates to an awareness KLA and Juniper were, as a result,

26    improperly accounting for their options grants, the SEC has failed to state a claim for securities

27    fraud.

28

**b.**    **The SEC Does Not Plead Ms. Berry's Accounting Knowledge**

As mentioned, the SEC has failed to make any direct allegation that Ms. Berry had the accounting knowledge required for securities fraud. Its only indirect allegations in this regard are that she (i) majored in accounting in college (in the late 1970s); (ii) responded that she "understood" when a KLA HR employee questioned her about whether a certain grant would pass the "audit test"; (iii) participated in "conference calls and communications" relating to stock options accounting; and (iv) purportedly noted in one snippet of a November 1998 memorandum that "repricing executive stock options by using an earlier grant date with a lower price would result in KLA having to take 'a charge to its P&L.'" Compl. ¶¶ 11, 31, 33. These allegations, individually or collectively, are insufficient.[8]

The bare allegation that Ms. Berry majored in accounting in college (having graduated in or about 1980, according to the SEC's allegation of her age (*id.* ¶ 11)) is plainly insufficient absent additional specificity explaining what, if any, knowledge she gained in college in the late 1970s regarding stock options accounting that remained applicable in the late 1990s and early 2000s. The SEC here does not allege that Ms. Berry had any work experience in accounting, studied or understood stock options accounting, or understood financial reporting issues and Generally Accepted Accounting Principles ("GAAP"). The SEC also does not allege that Ms. Berry ever knew what the appropriate "measurement date" was for APB 25 purposes – in general or with particular regard to any KLA or Juniper grant – or that appropriate compensation charges were not being taken. *See Lucent I*, 2005 WL 1206841, at *5 (dismissing SEC complaint for failure to make specific factual "allegations from which the Court could infer that Dorn had any knowledge of accounting principles or that she had any role in Lucent's decision to recognize revenue in connection with the transactions that Dorn executed").

---

[8] In the *Schroeder* Compl. (¶¶ 29-37), the SEC relies heavily on the alleged fact that Mr. Schroeder was cautioned *in March 2001* against the use of historical dates. *See* RJN, Ex. A. Thus, the primary evidence the SEC has uncovered after its investigation into KLA to suggest knowledge that selecting grant prices in hindsight required KLA to take a compensation charge is a communication issued nearly two years *after* Ms. Berry left KLA.

1        The SEC relies heavily on an email in which a KLA HR employee asked questions

2    about whether a grant with an October 19, 1998 date would "pass the 'audit' test," to which

3    the SEC claims Ms. Berry responded by "acknowledging she understood, but nevertheless

4    allowed KLA to use a backdated grant date and corresponding low price without

5    appropriately accounting for the in-the-money option grant." Compl. ¶ 31. The SEC's glib,

6    conclusory assertion that Ms. Berry herself "allowed KLA to use a backdated grant date …

7    without appropriately accounting for" the grant cannot be squared with either (i) the SEC's

8    repeated allegations that it was the Stock Options Committee that determined the grant dates;

9    or (ii) the SEC's failure to allege any facts to show that Ms. Berry knew how KLA accounted

10    for options grants. In any event, there is nothing in this email to suggest Ms. Berry's

11    knowledge of wrongdoing. Contrary to the SEC's characterization of it, Ms. Berry's actual

12    response was: "I think we can use the October 19 date because that was the date it was

13    discussed at the board meeting – the approval date was up to the stock option committee."

14    RJN, Ex. G. (The HR employee herself had noted that the board "met on October 19 and

15    authorized the Stock Option Committee to determine the actual date and price of the stock"

16    and that the "Committee chose October 19 as the grant date").[9] *Id.* There is nothing in this

17    email chain that imputes to Ms. Berry knowledge about options accounting, much less any

18    intent to defraud. To the contrary, the exchange evidences Ms. Berry's understanding that

19    the Stock Option Committee had properly used the board meeting date of October 19, 1998

20    as the date of the option grant; there is nothing in the exchange to suggest that Ms. Berry

21    understood that there was anything improper about that date or that she knew whether KLA

22    took a compensation charge or how KLA ultimately accounted for the grant.

23        The SEC's conclusory references to Ms. Berry's alleged participation in unidentified,

24    undated "conference calls and communications discussing accounting rules related to stock

25    options" (*id.* ¶ 33) are also insufficient to allege fraud. Peppering a complaint with vague

26

---

27    [9] The email indicates that the Committee approved the grant on October 19. *See* RJN, Ex. G. At worst, therefore, it appears that there may have been administrative delays in finalizing the grant.

28    As SEC Commissioner Atkins has stated, "there is no securities law issue if backdating results from an administrative, paperwork delay." *See* RJN, Ex. E.

1   references to communications, without describing the specifics of the discussion, is simply

2   insufficient under Rule 9(b).  Without any such specifics, it is as likely as not that any

3   discussion would undercut, rather than support, an inference of Ms. Berry's scienter.

4        Finally, the SEC discusses a memorandum Ms. Berry wrote in which the SEC claims

5   she "acknowledged that repricing executive stock options by using an earlier grant date with

6   a lower price would result in KLA having to take 'a charge to its P&L."  Compl. ¶ 33.

7   Rather than sufficiently pleading Ms. Berry's scienter, this document does just the opposite.

8   This memorandum was addressed to KLA's outside counsel.  *See* RJN, Ex. H.  In it, Ms.

9   Berry stated that she and others had consulted with KLA's independent auditors and received

10  advice about stock options issues.  She explicitly detailed the procedures that KLA used with

11  respect to a particular grant, making clear that on September 30, 1998, the Stock Option

12  Committee chose a grant date of August 31, 1998, apparently in part "to maximize the value

13  to employees."  *Id*. at KLA-SEC 000127.  The SEC does *not* allege that outside counsel or

14  anyone else cautioned her or KLA in the 1998-1999 time frame against the use of historical

15  pricing in this manner.  These facts show that the option process employed at KLA was

16  openly shared with KLA's outside counsel, and was not fraudulently concealed; if Ms. Berry

17  were engaged in a securities fraud scheme, she would not have alerted the company's outside

18  lawyers to the purported plot.  More importantly, this document shows that outside counsel

19  either approved or did not object to the way KLA was pricing its options grants.  Further, the

20  SEC overreaches in asserting that Ms. Berry herself acknowledged in this document that

21  repricing options by using an earlier grant date would result in a charge to P&L.  In the

22  passage in question, Ms. Berry was simply reporting on comments made by a KLA senior

23  executive.  *Id.* at KLA-SEC 000129.  Under these circumstances, the SEC cannot plausibly

24  maintain that Ms. Berry knew or recklessly disregarded that there was anything wrong with

25  KLA's stock option granting process or KLA's stock options accounting.[10]

26

---

27  [10] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2505 (2007) (inference of
    scienter "must be more than merely plausible or reasonable – it must be cogent and at least as
28  compelling as any opposing inference of non-fraudulent intent").

DEFENDANT'S MEMO P&A ISO MOTION TO
DISMISS  - 5:07-CV-04431 RMW HRL

**c.**    **The Juniper Scienter Allegations Are Equally Deficient**

As to Juniper, the Complaint is similarly void of any allegations regarding Ms. Berry's scienter.  The SEC alleges that the options granting process used at Juniper was similar to that used at KLA.  Since Ms. Berry knew that KLA's outside counsel (also Juniper's outside counsel) had not objected to that practice at KLA (or at Juniper), there is no basis for asserting that Ms. Berry knew or recklessly disregarded that Juniper was improperly accounting for its stock options grants.

The SEC's allegations as to Juniper, even if credited, show only that many Juniper options may have been granted using historical prices.  Again, however, the SEC does not connect the dots between the alleged granting of "backdated" options and Ms. Berry's knowledge about the accounting consequences of this process or how Juniper was in fact accounting for the grants.  Absent this connection, there is no basis for inferring scienter.  *See In re Verisign, Inc. Deriv. Litig.*, 2007 WL 2705221, at *29 (N.D. Cal. Sept. 24, 2007) (dismissing for lack of scienter; even though the complaint "pleads numerous 'facts,' those facts are little more than generalities – that dozens of options were backdated, that such alleged backdating violated the applicable option plans, that the alleged backdating occurred on multiple occasions…").

**d.**    **Scienter Based On Receipt Of Backdated Options Is Insufficient**

Motive allegations based on receipt of backdated options to plead scienter do not suffice.  *Weiss*, 2007 WL 2808224 at *11.  The SEC must allege facts that Ms. Berry realized a *direct economic gain* from an option grant.  The mere allegation that Ms. Berry "personally benefited" in some non-concrete way from allegedly "backdated" grants (*see* Compl. ¶¶ 2, 69-70) – without any allegation that she actually exercised those options to her profit, *an allegation the SEC never makes* – is insufficient either to plead scienter or to establish the SEC's entitlement to disgorgement of unlawful profits.[11]  The SEC's similarly cleverly worded allegation that Ms.

---

[11] Apparently, the SEC alleges that Ms. Berry received these benefits only at KLA, not at Juniper, since it makes a direct allegation that she received apparently unexercised options resulting from a "backdated" grant at KLA (Compl. ¶ 29), but does not make any similar assertion in the entirety of its Juniper allegations (*id.* ¶¶ 41-68).

1    Berry exercised *other* options (i.e. non-"backdated" options) at a profit (*id.* ¶ 71) is also

2    insufficient to plead scienter or to entitle the SEC to disgorgement.[12]  The SEC does not allege

3    that there was anything improper or unlawful about those options grants, so there is no basis for

4    inferring scienter from Ms. Berry's profitable exercise of those options or for requiring Ms. Berry

5    to disgorge her profits therefrom.  For these reasons, Ms. Berry requests that the Court not only

6    (i) reject any inference of scienter from the SEC's allegations that Ms. Berry received grants of

7    allegedly "backdated" options and profitably exercised *other* options grants, but also (ii) dismiss

8    the SEC's claim for disgorgement.

9    ## 2.        The SEC Fails To Sufficiently Allege Recklessness

10           The SEC has also failed to sufficiently plead that Ms. Berry was reckless.  Conduct is

11   not reckless unless it constitutes an "extreme departure" from the ordinary standard of care

12   and the danger of misleading investors "is either known to the defendant or is so obvious that

13   the actor must have been aware of it."  *Rubera*, 350 F.3d at 1094.  The Ninth Circuit thus

14   requires "deliberate recklessness."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974

15   (9th Cir. 1999).  The SEC has failed to meet this pleading burden.

16           Accounting for stock options requires knowledge of APB 25, a complex set of rules

17   that require "accounting expertise and judgment."  *Weiss*, 2007 WL 2808224, at *9 ("the

18   misapplication of accounting rules to a particular company's stock option grants cannot be

19   construed as a glaring example of scienter because the measurement date criteria embodied

20   in APB No. 25 are far from obvious") (quoting *In re Sportsline.com Sec. Litig.*, 366 F. Supp.

21   2d 1159, 1168-69 (S.D. Fla. 2004)).  Since enactment of APB 25, there have been several

22   attempts to provide guidance for determining the appropriate "measurement date."  As

23   illustrated by SEC Commissioner Atkins' speech and the SEC Chief Accountant's Letter (*see*

24

25   ---
     [12] *See Weiss*, 2007 WL 2808224, at *11 (plaintiffs failed to plead scienter by alleging that
     defendants manipulated the exercise price by making grants to themselves at opportune times,
26   since there were no particularized facts to support "allegations that any named defendant
     exercised his Amkor options and sold the stock for gain"); *Hateley v. SEC*, 8 F.3d 653, 655 (9th
27   Cir. 1993) ("the purpose of disgorgement is to deprive a person of 'ill-gotten gains' and prevent
     unjust enrichment"; disgorgement must be the amount actually *retained* as a result of unjust
28   enrichment).

- 14 -

1 | *supra* at p. 9), the SEC itself is well aware of the confusion surrounding APB 25.

2 |      Given the SEC's recognition of the difficulties in applying APB 25, Ms. Berry, a non-

3 | accountant, cannot reasonably be expected to have understood its complicated accounting or

4 | related disclosure requirements.  It is unreasonable to charge Ms. Berry with securities

5 | violations for noncompliance with these highly judgmental and ambiguous rules.  Moreover,

6 | because of the accounting complexities associated with APB 25, it was reasonable for Ms.

7 | Berry to have relied on internal accountants and external experts for guidance.  *See SEC v.*

8 | *Todd*, 2007 WL 1574756, at *11 (S.D. Cal. May 30, 2007).  As evidenced by the November

9 | 1998 memorandum quoted in ¶ 33 of the Complaint (*see supra* at p. 12), Ms. Berry was in

10 | fact not reckless, but cautious and diligent in dealing with accounting issues that surfaced in

11 | the course of performing her regular duties.  Similarly, it was reasonable for Ms. Berry to

12 | have relied on those tasked with financial accounting and reporting within KLA and Juniper

13 | to handle accounting for stock options.  It certainly cannot be expected that Ms. Berry,

14 | dealing with the many legal issues at her companies, would have knowledge as to or

15 | responsibility for difficult stock option accounting issues.  A corporate officer is not only

16 | permitted, but expected, to rely on the expertise of other corporate officers and their staff in

17 | performing her duties.  *See Rubera*, 350 F.3d at 1095 (no scienter where owner of company

18 | relied in good faith on employees).

19 |      In short, Ms. Berry had no reason to believe that KLA and Juniper were not properly

20 | accounting for stock options or that the companies' disclosures were inaccurate.  Given the

21 | ambiguities in the stock option accounting rules and Ms. Berry's accounting inexperience,

22 | the Complaint fails to sufficiently allege that she was reckless with respect to the appropriate

23 | accounting treatment for KLA's and Juniper's stock option grants.

### 3.    The SEC Fails To Allege Facts That Ms. Berry Made A Material Misstatement

26 |      A defendant is not liable under Section 10(b) unless (s)he makes a material misstatement,

27 | signs a document containing a material misstatement, or substantially participates in the making

28 | of a material misstatement.  *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir.

DEFENDANT'S MEMO P&A ISO MOTION TO
DISMISS  - 5:07-CV-04431 RMW HRL

1  2006); *In re Tibco Software, Inc.*, 2006 WL 1469654, at *28 (N.D. Cal. May 25, 2006)

2  (dismissing claim against officer where plaintiff failed to plead that defendant was directly

3  involved in preparation of allegedly misleading statements).  Here, the Complaint fails to allege

4  that Ms. Berry made an actionable statement.

5      The SEC repeatedly asserts in various formulations that Ms. Berry "reviewed,"

6  "discussed," "finalized," and/or "prepared" the SEC filings containing the allegedly materially

7  misleading statements.  See Compl. ¶¶ 21, 37-38, 46, 62, 65-67.  Such conclusory allegations do

8  not satisfy Rule 9(b)'s particularity requirement of specifically alleging facts linking Ms. Berry to

9  the making of an allegedly material misstatement.  *See, e.g.*, *Moore v. Kayport Package Express,*

10  *Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  The SEC's theory is premised on the alleged fact that

11  KLA's and Juniper's financial statements, contained in their annual (10-K) and quarterly (10-Q)

12  filings, were materially misstated due to the failure to record a compensation expense for "in the

13  money" options grants.  Compl. ¶¶ 1, 4.  The SEC must plead particular facts to show that Ms.

14  Berry made or substantially participated in making these alleged misstatements.

15      The SEC alleges no specific facts regarding the time, place, or nature of Ms. Berry's

16  supposed participation in the making of the allegedly false statements in the referenced SEC

17  filings.  *See id.*; *In re ESS Tech., Inc. Sec. Litig.*, 2004 WL 3030058, at *12 (N.D. Cal. Dec. 1,

18  2004).  There is no allegation, and no reason to believe, that Ms. Berry, as General Counsel of

19  KLA and Juniper, had any role in the preparation of the accounting for or disclosures regarding

20  stock options grants.  Both KLA and Juniper had an accounting and finance department whose

21  duties explicitly included preparation and review of financial statements.  The SEC fails to make

22  the required allegation that Ms. Berry drafted those particular statements.  Instead, it repeatedly

23  asserts bare conclusions without supporting facts that Ms. Berry was involved in some

24  unidentified way in the review, discussion, or finalization of the filings at issue.  These

25  conclusions are insufficient under Rule 9(b).  *See In re Tibco Software*, 2006 WL 1469654, at *28

26  (dismissing complaint where plaintiffs "failed to provide any particulars regarding [officer's]

27  involvement in preparing any of the challenged statements").

28      The SEC alleges in three paragraphs (¶¶ 16, 39, & 46) that Ms. Berry signed certain

1    documents filed with the SEC, i.e., (i) KLA's primary stock option plan; (ii) several Forms S-8

2    registration statements filed by KLA; and (iii) several proxy statements filed by Juniper.  In an

3    obvious attempt to overcome the pleading shortcomings discussed above, the SEC would tie Ms.

4    Berry to a material misstatement through her signature on these documents.  However, none of

5    the documents Ms. Berry allegedly signed contained the statements the SEC has alleged to be

6    false and misleading – the misstated financial statements central to the SEC's theory of liability in

7    this case – and are not grounds for liability under 10(b).[13]

8        **C.**    **Other Allegations**

9            **1.**    **The SEC Has Failed To Plead Aiding And Abetting Liability**

10           The SEC claims that Ms. Berry aided and abetted "KLA, Juniper and/or other persons" in

11   alleged violations of several Exchange Act provisions and related rules.  Specifically, the SEC's

12   Second, Fifth, Sixth, Seventh, and Tenth Claims for Relief charge Ms. Berry with, respectively,

13   aiding and abetting KLA's and Juniper's (i) making untrue statements of material facts; (ii) filing

14   of false reports with the SEC; (iii) failure to maintain accurate books and records; (iv) failure to

15   devise and maintain an adequate system of internal controls; and (v) filing of false or misleading

16   proxy statements.  *See* ¶¶ 85-88, 89-92, 93-96, 103-106.  To survive a motion to dismiss, the SEC

17   must plead specific facts demonstrating both Ms. Berry's *actual knowledge* of her role in the

18   alleged violation of securities laws and her *substantial assistance* in that alleged violation.  *Ponce*

19   *v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003); *Fehn*, 97 F.3d at 1288-95.  An allegation of

20   recklessness is insufficient.  *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334-

21   335 (S.D.N.Y. 2006) ("recklessness, even for fiduciaries, is no longer sufficient"; "knowing

22   misconduct must now be shown").  In addition, the SEC must, in accordance with Rule 9(b),

23   allege particular facts that, if proven, would show these elements.

24           The same strict standards and pleading requirements – including the actual knowledge

---

[13] The Forms S-8 (¶ 39) are alleged to have incorporated by reference KLA's financial
statements.  However, the language incorporated by reference was boilerplate.  *See* 17 C.F.R. §
230.428.  This is not the stuff of a securities fraud claim.  *See In re Enron Corp. Sec. Deriv. &
"ERISA" Litig.*, 2005 WL 3704688, at *10-12 (S.D. Tex. Dec. 5, 2005) (dismissing with
prejudice securities fraud claim against law firm for alleged role in preparing offering memoranda
incorporating allegedly false financial statements by reference).

requirement – apply to the SEC's claims of aiding and abetting the alleged non-fraud violations of the Exchange Act, even if scienter is not required to state a claim for a primary violation of those provisions. *Ponce*, 345 F.3d at 737; *Cedric Kushner*, 417 F. Supp. 2d at 334; *Baxter*, 2007 WL 2013958, at *9. The SEC recognizes these principles, pleading in each of its aiding and abetting claims that Ms. Berry "knowingly" provided "substantial assistance" to the alleged primary violator(s). *See* Compl. ¶¶ 77, 87, 91, 95. Aiding and abetting allegations are also subject to Rule 9(b)'s particularity requirement. *See SEC v. Lucent Techs., Inc.,* 363 F. Supp. 2d 708, at 727-28 (D.N.J. 2005) (Rule 9(b) applies to §§ 13(a) & (b) aiding and abetting violations) ("*Lucent II*").

### a.    The SEC Fails To Plead Ms. Berry's Actual Knowledge of Furthering Violations of Securities Laws

To survive a motion to dismiss, the SEC must first plead facts sufficient to demonstrate that Ms. Berry actually knew of the illegality of the conduct. *Fehn*, 97 F.3d at 1283-84; *Ponce*, 345 F.3d at 737 (requiring an aider and abettor's "knowledge" for Section 13 violations). The SEC has not met that burden here. As detailed above, the SEC has pled no facts that, if proven, would support a finding that Ms. Berry *actually knew* that KLA and Juniper (i) fraudulently made material misstatements (Second Claim);[14] (ii) filed materially false and misleading annual and quarterly reports with the SEC (Fifth Claim); (iii) did not make and keep accurate books and records (Sixth Claim); (iv) failed to devise and maintain a sufficient system of internal accounting controls (Seventh Claim); or (v) solicited proxies through false and misleading statements or omissions (Tenth Claim). All of these charges flow from the same premise, i.e., that KLA's and Juniper's options accounting was improper and improperly disclosed. But, the SEC does not and cannot allege that Ms. Berry possessed the required actual knowledge because, among other things, it does not and cannot allege in the first instance that Ms. Berry actually knew (i) the

---

[14] The SEC's complaint against KLA filed on July 25, 2007 does not charge the company with fraud. RJN, Ex. B. The failure to charge KLA with fraud requires dismissal of the SEC's Second Claim for Relief to the extent the SEC alleges that Ms. Berry aided and abetted KLA's purported fraud. *See SEC v. Druffner*, 353 F. Supp. 2d 141, 151 (D. Mass. 2005) (Rule 12(b)(6) dismissal of SEC claim "that the defendant brokers aided and abetted their clients' uncharged violations of Section 10(b) or Rule 10b-5"); *SEC v. Gann*, 2006 WL 616005, at *8 (N.D. Tex. Mar. 13, 2006) (dismissing claim for aiding and abetting "uncharged violations of the securities fraud laws").

1  applicable accounting principles (particularly how the "measurement date" was determined under

2  APB 25); (ii) what KLA and Juniper were using as the "measurement date"; or (iii) that KLA and

3  Juniper needed to take, but were not taking, a compensation charge under APB 25.

4       Rather than allege such facts, the SEC rests its allegations on patchworked conclusions

5  unsupported by specific facts. *See Monetta Fin. Serv., Inc. v. SEC*, 390 F.3d 952, 956-57 (7th

6  Cir. 2004) (SEC must present facts to show that the alleged aider and abettor "was, in fact, aware

7  that disclosure ... was required" to satisfy the knowledge requirement). As demonstrated above

8  (*see supra* at pp. 10-15), the facts and circumstances that the SEC alleges (e.g., the accounting

9  major, the memo to outside counsel regarding the August 31, 1998 KLA grant, the ensuing email

10  exchange with an HR employee regarding the October 19, 1998 KLA grant) are not sufficient to

11  plead even that Ms. Berry was reckless, much less that she had *actual knowledge* of wrongdoing.

12
                     **b.      The SEC Has Not Pled That Ms. Berry "Substantially
13                              Assisted" A Violation Of The Securities Laws**

14      The SEC has failed to allege facts showing that Ms. Berry *knowingly* rendered *substantial*

15  *assistance* in furthering a primary violation. *SEC v. Rogers,* 790 F.2d 1450, 1461 (9th Cir. 1986)

16  (affirming district court judgment against SEC, in which district court found that defendant did

17  not participate in the sale of unregistered securities or himself make any actionable misstatement),

18  *overruled on other grounds by Pinter v. Dahl*, 486 U.S. 622, 650 (1988). Specifically, the SEC

19  must plead facts that demonstrate that Ms. Berry's conduct was a substantial causal factor in the

20  underlying violation. *See Cedric Kushner*, 417 F. Supp. 2d at 334-335; *Tambone*, 417 F. Supp.

21  2d at 136. Allegations of Ms. Berry's review and approval of financial statements are not

22  sufficient. *See SEC v. Morris*, 2005 WL 2000665, at *9-10 (S.D. Tex. Aug. 18, 2005).

23      In *Cedric Kushner*, the court found that the defendant was not a substantial causal factor

24  in the company's alleged fraud where he had a "very limited" role of "gathering backup

25  documentation for [the company's] accountants and auditors, and answering questions about

26  subsequent events and pending litigation ...." 417 F. Supp. 2d at 336. Similarly, in *Tambone*, 417

27  F. Supp. 2d at 136-37, the court made clear, in a situation where the SEC claimed that the

28  defendants failed to make purportedly required disclosures, that the SEC is required to meet the

1  "particularly exacting" standard of pleading *facts* that, if proven, would show a "conscious intent"

2  to assist the alleged primary violation.  Applying these principles, the court dismissed the aiding

3  and abetting claim because the SEC had "made no allegation to suggest that the defendants

4  consciously threw in their lot with the primary violators."  *Id.* at 137.

5          Similarly here, though the SEC alleges that Ms. Berry "oversaw" the administration of the

6  grant process and "was involved in" the granting process at both KLA and Juniper (Compl. ¶¶ 23,

7  33), the facts it alleges do not rise to the level of "substantial assistance."  There is also no

8  allegation that Ms. Berry had a significant role in the accounting for the options grants or the

9  "drafting" of SEC filings.  Accordingly, the SEC's aiding and abetting claims against Ms. Berry

10  should be dismissed.

11          **2.      The SEC Has Failed To Plead A Primary "Books**
               **And Records" Violation**
12

13          The SEC also brings claims against Ms. Berry for alleged violations of § 13(b)(5) of the

14  Exchange Act (Eighth Claim) and Rule 13b2-1 (Ninth Claim).  Section 13(b)(5) expressly

15  requires knowledge, which the SEC recognizes by pleading that Ms. Berry violated § 13(b)(5) by

16  "knowingly circumventing a system of internal accounting, or knowingly falsifying certain books,

17  records, and accounts."  Compl. ¶ 98.  The Complaint charges Ms. Berry with violating Rule

18  13b2-1 by "falsif[ying] ... KLA's and Juniper's respective books, records and accounts ...."

19  Though Rule 13b2-1 does not on its face contain any mental state requirement, it should be

20  construed in accordance with § 13(b)(5), under which it was promulgated.  *See*, *e.g.*, *SEC v.*

21  *Mercury Interactive, LLC*, No. 5:07-cv-02822-JF, Third Claim for Relief (in options case) at p. 39

22  ("Section 13(b)(5) … and Rule 13b2-1 Thereunder") (N.D. Cal. complaint filed May 31, 2007)

23  (RJN, Ex. D).  Further, the Eighth and Ninth claims both "sound in fraud," thus requiring the SEC

24  to plead these claims with particularity under Rule 9(b).  *Vess*, 317 F.3d at 1103-04; *Baxter*, 2007

25  WL 2013958, at *3.[15]

---

26  [15] *See also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996) ("particularity
requirements of Rule 9(b) apply to claims brought under Section 11 when ... they are grounded in
27  fraud," even though "no scienter is required for liability under Section 11"); *Lucent II*, 363 F.
Supp. 2d at 727-28 (same for § 13 violations); *In re Suprema Specialties, Inc. Sec. Litig.*, 438
28  F.3d 256, 271 (3d Cir. 2006) (where the "wordings and imputation of the complaint are

Notably, the SEC did not charge *either* KLA *or* Juniper with violations of these provisions, thus rendering it unfair and anomalous at best for the agency to charge Ms. Berry with such violations.  *See* RJN, Ex. B, C.  In any event, the Complaint is void of any specific factual allegations that, if proven, would show that Ms. Berry *knowingly* circumvented or *knowingly* failed to implement a system of internal accounting controls, or *knowingly* falsified any of KLA's or Juniper's books or records.  The SEC does not even plead what controls were insufficient or circumvented.  Pleading the mere existence of internal control deficiencies is insufficient to state a claim.  *See SEC v. Kahn*, 2002 WL 1163723, at *14 (N.D. Ill. May 31, 2002) (while some acts "*presumably* violated some accounting protocols, the facts remain that the SEC has not identified what controls were circumvented") (emphasis in original).

### 3.    The SEC Has Failed to Plead A Violation Of Section 17(a)(2) Or 17(a)(3) Of The Securities Act

The SEC's Fourth Claim for Relief alleges that Ms. Berry violated §§ 17(a)(2) and (3) of the Securities Act, which are so-called "non-scienter fraud" provisions that prohibit an individual, "in the offer or sale of securities," from, respectively, (i) obtaining money by misstating or omitting a material fact necessary to make the individual's statement not misleading under the circumstances, or (ii) engaging in transactions, practices, or courses of business that deceive purchasers of securities.[16]  Courts have interpreted these provisions to permit liability where an individual acted without scienter (but at least with negligence), provided that the jurisdictional "in the offer or sale" requirement (a much more restrictive term than the broader "in connection with the purchase or sale" of securities sufficient for an Exchange Act violation) is met and the alleged misstatement is material.  *Aaron*, 446 U.S. at 687-88.

The only offerings alleged in the Complaint against Ms. Berry were offerings made by

---

classically associated with fraud," Rule 9(b) applies even if scienter is not a necessary element), quoting *Rombach v. Chang,* 355 F.3d 164, 172 (2d Cir. 2004).

[16] It is noteworthy that the SEC has separated its claims for relief under § 17 between § 17(a)(1) in its Third Claim for Relief and §§ 17(a)(2) and (a)(3) in its Fourth Claim for Relief.  As shown *supra* at p. 8, § 17(a)(1) requires scienter; §§ 17(a)(2) and 17(a)(3) do not.  This indicates the SEC's unspoken acknowledgement that it has not sufficiently alleged scienter in this case.

KLA.  *See* Compl. ¶ 39.  But, the SEC's complaint against KLA did not charge the company with any violation of §§ 17(a)(2) or (3).  *See* RJN, Ex. B.  The SEC cannot fairly charge Ms. Berry with fraud (even non-scienter fraud) for simply signing KLA's offering documents, when it declined to charge KLA itself for making the offerings.  *See id.*[17]

At all events, the claim must fail because the SEC has failed to allege facts showing either that Ms. Berry herself committed a primary violation (by herself "obtain[ing] money or property" or herself engaging in a transaction, practice, or course of business) or that she acted negligently by unreasonably breaching any duty in discharging her responsibilities as General Counsel of KLA and Juniper.  *See SEC v. Fitzgerald*, 135 F. Supp. 2d 992, 1028 (N.D. Cal. 2001) (to establish negligence, the SEC must show that defendants failed to conform with the standard of care a reasonable underwriter would exercise);  *SEC v. Arthur Young & Co.*, 590 F.2d 785, 788 (9th Cir. 1979) (accountant not negligent unless he failed to act "with reasonable care in the discharge of his professional duties").  As General Counsel, Ms. Berry had no responsibility for accounting and financial reporting.  Rather, she reasonably relied on the judgment of accounting and finance personnel for (i) accounting for stock options; (ii) compilation of financial statements; and (iii) financial statement reporting.  The SEC has not alleged any facts even to suggest that Ms. Berry's professional duties included accounting and reporting of financial statements.  Thus, the SEC's claim for violations of §§ 17(a)(2) and (a)(3) must fail.

### D.    The Majority of Conduct Underlying The Allegations In The Complaint Are Precluded By The Statute Of Repose Of 28 U.S.C. § 2462

The majority of acts alleged in the SEC's Complaint must be dismissed because of the applicable statute of repose set forth in 28 U.S.C. § 2462, which states that "an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued …."  The purpose of this statute of repose is to protect defendants

---

[17] The SEC's complaint against Juniper did charge violations of §§ 17(a)(2) and (3) (*see* RJN, Ex. C at p. 10), but the facts that form the basis of those charges (*id.* ¶ 37) are not included in the Complaint against Ms. Berry, making clear that the only offerings as to which the SEC charges Ms. Berry with violating §§ 17(a)(2) and (3) were made by KLA.

1   from defending stale claims.  In its Complaint against Ms. Berry, the SEC attempts to breathe

2   life into stale events.  Specifically, the SEC seeks various forms of punitive relief against Ms.

3   Berry for alleged conduct going back *ten years*.  Under § 2462, however, any penalty against

4   Ms. Berry is limited to conduct that occurred on or after August 28, 2002 (five years prior to

5   the filing of this action).

6          To determine whether § 2462 applies to a particular form of requested relief, courts look

7   at the consequences of such relief to assess whether it amounts to a form of punishment.  *See SEC*

8   *v. Jones*, 476 F. Supp. 2d 374, 383 (S.D.N.Y. 2007) ("whether the Commission's action for a

9   permanent injunction is subject to the five-year limitations period in § 2462 depends on whether

10  the injunction is a penalty or a remedial measure").  The distinction between equitable and

11  punitive remedies is crucial in determining whether § 2462 will bar relief.  Equitable relief

12  remedies a past wrong, by "correcting or undoing the effects" of a defendant's conduct.  *Johnson*

13  *v. SEC*, 87 F.3d 484, 491 (D.C. Cir. 1996).  In contrast, a penalty is a "form of punishment …

14  which goes beyond remedying the damage caused to the harmed parties by the defendant's

15  actions."  *Id.* at 488.  Thus, if nominally "equitable" relief is in reality punitive or if the SEC

16  cannot provide sufficient justification that the requested relief serves a remedial purpose, the 5-

17  year statute of limitations under § 2462 will apply to preclude the relief.  *Id.* at 488-89 (SEC order

18  censuring and suspending broker due to conduct occurring more than five years before

19  commencement of proceedings was a penalty under § 2462).

20         The Court of Appeals in *Johnson* identified two factors in assessing whether relief is

21  remedial or punitive: (i) the collateral consequences to the defendant and (ii) the future risk the

22  defendant poses to the public (or the danger of recurrent violations).  *Id.* at 488-490.  In *Jones*, the

23  court applied these factors to enter summary judgment against the SEC.  The court first held that

24  "the potential collateral consequences of a permanent injunction are quite serious."  476 F. Supp.

25  2d at 385.  It then added that the result of any permanent injunction would "stigmatize Defendants

26  in the investment community and significantly impair their ability to pursue a career."  *Id.*  If the

27  consequences of a permanent injunction carry the "sting of punishment," the requested injunctive

28  relief is deemed punitive and § 2462 applies.  *Id.*  The court also noted that other than allegations

1    of past violations, the SEC had offered nothing to suggest any cognizable danger of recurrent

2    violations and that several years had passed since the claimed wrongdoing without any more

3    allegations of misconduct.  *Id*. at 384.

4         In considering the collateral consequences in this case, an injunction or officer and

5    director bar would subject Ms. Berry to disbarment proceedings in two states where she currently

6    holds a license to practice law.  Compl. ¶ 11.  Disbarment is considered a penalty.  *See In re*

7    *Ruffalo,* 390 U.S. 544, 550 (1968).  Even an officer and director bar will restrict or even preclude

8    Ms. Berry's ability to pursue her vocation and earn a living.  *SEC v. DiBella,* 409 F. Supp. 2d

9    122, 127-28 & n.3  (D. Conn. 2006) (§ 2462 applies to an officer and director bar).  *See also*

10   *Johnson,* 87 F.3d at 488-890 (censure and 6-month suspension from appearing before the SEC

11   were punitive because they "restricted [defendant's] ability to earn a living" and "the suspension

12   was also likely to have longer-lasting repercussions on her ability to pursue her vocation").

13        The same is true here.  Entry of an injunction or an officer and director bar for alleged

14   conduct occurring 4-10 years ago will surely preclude Ms. Berry from working for any

15   public company and may also result in suspension or revocation of her license to practice

16   law.  She will be stigmatized in the legal and business communities. These consequences

17   have the "sting of punishment" – rather than serve any remedial purpose, they will serve only

18   to punish Ms. Berry.

19        In assessing the risk of future harm in this case, the Complaint has not alleged any facts

20   that suggest Ms. Berry poses a future risk to the public.  The last alleged violation by Ms. Berry

21   occurred in "mid-2003," more than four years before the filing of this action.  Compl. ¶ 48.

22   Since leaving Juniper, Ms. Berry has not worked at a public company, and she has been

23   unemployed for about the last six months.  Moreover, Ms. Berry's only alleged violations of law

24   relate to stock options accounting issues occurring 4-10 years ago.  The SEC makes no

25   allegations to suggest that Ms. Berry committed any other violations or that there is any

26   cognizable danger that she will do so in the future.  In December 2004, the Financial Accounting

27   Standards Board issued Statement of Financial Accounting Standard No. 123 (revised 2004),

28   *Share Based Payment*, ("FAS 123(R)"), eliminating APB 25's ambiguous intrinsic value method

- 24 -

DEFENDANT'S MEMO P&A ISO MOTION TO
DISMISS  - 5:07-CV-04431 RMW HRL

1  and created an accounting rule for stock options so that all companies now follow the same

2  accounting standard.  As a result, there is no longer a danger that options will be backdated,

3  because employee stock options must be recorded as an expense in the financial statements,

4  whether or not the exercise price is at fair market value.  Thus, there is no basis for injunctive

5  relief.

6      There is strong circumstantial evidence that this action against Ms. Berry is purely

7  punitive.  As previously mentioned, despite alleging in numerous places that an untold

8  number of unidentified "others" participated with Ms. Berry in alleged "backdating" schemes

9  at KLA and Juniper, the SEC has charged only Ms. Berry with respect to Juniper and with

10  respect to the time period she was at KLA, and it has charged her with aiding and abetting

11  KLA's purported fraud and "non-scienter fraud" violations when it did not even charge KLA

12  with those violations.  Under these circumstances, this action, and the relief the SEC seeks,

13  can be regarded only as punitive.  Accordingly, the SEC's requests for relief should be barred

14  under 28 U.S.C. § 2462 to the extent they are based on conduct occurring before August 28,

15  2002, which includes all allegations as to KLA and most of the allegations as to Juniper.

16  **IV.    CONCLUSION**

17      For the foregoing reasons, Ms. Berry's motion to dismiss should be granted, and the

18  SEC's Complaint against her should be dismissed with prejudice.

19

20  Dated: November 19, 2007                    Respectfully submitted,

21                                              /s/ Melinda Haag
                                           _____
                                                MELINDA HAAG
22                                              JAMES A. MEYERS
                                                JAMES N. KRAMER
23                                              MOJI SANIEFAR
                                                RANDALL S. LUSKEY
24                                              LUCY E. BUFORD
                                         ORRICK, HERRINGTON & SUTCLIFFE LLP
25                                              Attorneys for Defendant
                                                Lisa C. Berry

26

27

28

DEFENDANT'S MEMO P&A ISO MOTION TO
                                                    DISMISS  - 5:07-CV-04431 RMW HRL