# EXHIBIT 8

Not Reported in F.Supp.2d                                                                                            Page 1
Not Reported in F.Supp.2d, 2005 WL 1206841 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

**H**
S.E.C. v. Lucent Technologies Inc.
D.N.J.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
LUCENT TECHNOLOGIES INC., Nina Aversano, Jay Carter, Alice Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliot, Vanessa Petrini, Michelle Hayes-Bullock, and David Ackerman, Defendants.
No. Civ. 04-2315(WHW).

May 20, 2005.

Mark A. Adler, Larry Ellsworth, Charles E. Cain, Washington, D.C., for Securities and Exchange Commission.
Barry H. Evenchick, Walder, Hayden & Brogan, P.A., Roseland, NJ, Carmen J. Lawrence, David B. Hennes, Teresa M. Venezia, Ginny Edwards, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, NY, for Defendant.

OPINION
WALLS, J.
*1 Defendant Alice Leslie Dorn moves to dismiss the First, Third and Fourth Counts of the Complaint. The motion is decided without oral argument pursuant to Fed.R.Civ.P. 78.

FACTS AND PROCEDURAL BACKGROUND

Plaintiff SEC, by its Complaint alleges that: Lucent Technologies Inc. ("Lucent") fraudulently and improperly recognized revenue and pre-tax income in violation of generally accepted accounting principles ("GAAP") during its fiscal year 2000. As a result, Lucent improperly overstated its pre-tax income that fiscal year by sixteen percent. Lucent prematurely recognized $511 million of revenue and $91 million in pre-tax income in quarterly results during Lucent's fiscal year 2000. The remaining $637 million in revenue and $379 million in pre-tax income should not have been recognized during Lucent's fiscal year 2000. The SEC alleges that Lucent's violations of GAAP were due to the fraudulent and reckless actions of the named individual defendants, officers, executives and employees of Lucent. And, the GAAP violations were also the result of deficient internal controls which led to numerous accounting errors by others.

The defendant Dorn was Lucent's vice president of indirect sales for North America from November 1998 to December 2000. She reported directly to another defendant, Nina Aversano, the president of Lucent's North American sales and service provider networks. According to plaintiff, in the first quarter of Lucent's fiscal year 2000, Dorn and Aversano began engaging in a pattern and practice of orally granting two of Lucent's distributors, Anixter International, Inc. ("Anixter") and Graybar Electric Company ("Graybar"), certain rights and privileges beyond those enumerated in their respective distribution agreements. Granting Anixter and Graybar these rights made it improper under GAAP for Lucent to recognize revenue from sales to these distributors at the time of the sale. More specifically, the SEC alleges that Lucent violated FASB Concepts Statement No. 5, which prohibits revenue recognition unless and until realizable and earned, and FASB Statement No. 48, which identifies circumstances when revenues may not be recognized because they are not sufficiently realizable or earned. In the past, Lucent recorded transactions that exhibited such uncertainties as consignment sales, with revenue deferred until resale by the distributor. During Lucent's fiscal year 1999 until the end of its fiscal year 2000, however, Lucent modified its accounting policy and began recognizing revenue upon delivery to distributors. This change meant that Lucent violated GAAP in several transactions because the extra-contractual commitments made by Dorn to distributors resulted in uncertainties surrounding those transactions, so charges the SEC.

The SEC complains that despite knowing, or being

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reckless in not knowing, that the verbal side agreements made revenue recognition improper under GAAP, Dorn failed to inform Lucent's finance department of the side agreements and, on some occasions, affirmatively misrepresented the facts to members of Lucent's finance department.

*2 The SEC goes on to allege the following: Dorn gave explicit extra-contractual assurances in connection with five transactions. The first transaction was a sale to Anixter of approximately $335 million of product over the course of Lucent's fiscal years 1999 and 2000 for resale to MCI/Worldcom. About this transaction, Dorn was told by an Anixter executive that its exposure was too great to take on more of Lucent's product without assurances that Anixter could sell the product to a customer other than MCI/Worldcom or could return the product to Lucent if not sold. In Dorn's presence, Aversano assured the executive that it would not be an issue. Dorn herself also gave assurances to Anixter executives that if a resale did not go through, Lucent would substitute the product that Anixter bought for another product that its customer might need, Lucent would find other customers for Anixter to sell the product to and, if that did not work, Anixter could return the product to Lucent. When Dorn was questioned by Lucent's chief accountant sometime in June or July of 2000, Dorn falsely told him that there were no verbal agreements or side deals that would indicate there were any rights of return beyond the provisions noted in the distributor agreements. Then in October or November 2000, Dorn acknowledged to an Anixter executive that commitments had been made to Anixter and that if Anixter could not sell the product, Anixter would not have to continue to carry it.

The second transaction was a sale to Anixter of approximately $38 million of product at the end of Lucent's first quarter of its fiscal year 2000. In connection with this sale, Dorn represented to several Anixter executives that Anixter would be able to sell the product, but that it could be returned to Lucent if it did not sell. Dorn explicitly told the executives that Aversano had authorized the right of return. Anixter was unable to sell the majority of the product and Lucent paid holding fees to Anixter until the inventory was returned to Lucent in September 2000.

Plaintiff further charges that the third transaction was a sale to Anixter of $89 million of product over the course of Lucent's second and third quarters of its fiscal year 2000 for resale to ICG Communications, Inc. ("ICG"). In connection with this sale, Dorn gave an Anixter executive assurances, including that it had the right to return the product if the sales did not work out. Dorn also agreed to give Anixter a holding fee to compensate it for each day the resale to ICG was delayed beyond the projected resale date, and to compensate it for any outstanding receivable balances from ICG. There were approximately $46 million in outstanding receivables from ICG and Lucent agreed to compensate Anixter for it.

The fourth transaction was a sale to Graybar of approximately $250 million of product over the course of Lucent's first through third quarters of its fiscal year 2000 for resale to U.S. West Communications, Inc. ("U.S.West"). In connection with this sale, Dorn made or authorized representations to Graybar employees. Dorn told Graybar executives that the Lucent product would be off Graybar's books by the end of the year, that Lucent would reconfigure the Lucent product and arrange its sale to another regional bell operating company if sales to U.S. West did not work out, and that Graybar would not get hurt in the transactions. Ultimately, nearly all of the product Graybar purchased in the second and third quarters of fiscal year 2000 was returned to Lucent.

*3 The fifth transaction was a sale to Graybar of approximately $61 million of product in Lucent's third quarter of fiscal year 2000 for resale to three local exchange carriers. Dorn told a Graybar executive that Graybar would not get hurt in the transaction, and that Lucent would help them sell the product to other customers if the transactions did not work out. The transactions did not work out and Graybar returned the product to Lucent.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The SEC complains that Dorn acted with knowledge or recklessly engaged in the fraudulent conduct described, and that as a result of her fraudulent conduct, Lucent violated GAAP. The SEC also alleges that Dorn knew, or was reckless in not knowing, that as a result of the fraudulent conduct, Lucent filed materially misleading forms 10-Q with the Securities and Exchange Commission for the first three quarters of its fiscal year 2000, and that revenue was improperly included in Lucent's October 23, 2000 unaudited financial statements that were filed with the Commission in a form 8-K on October 24, 2000. In December 2000, Lucent agreed to take back $352 million in inventory that Anixter and Graybar were unable to sell. Overall, Aversano and Dorn's fraudulent conduct resulted in Lucent materially overstating its pre-tax income for fiscal year 2000 by approximately seven percent.

Based on these allegations, plaintiff alleges four counts against Dorn. Count One of the Complaint alleges that Dorn violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5, and that she is also liable for aiding and abetting Lucent in violating such laws. Count Three alleges that Dorn aided and abetted Lucent in violating Section 13(a) of the Exchange Act, Rules 12b-20, 13a-11 and 13a-13 by causing Lucent to file materially false and misleading financial statements. Count Four alleges that Dorn aided and abetted Lucent in violating Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act by causing Lucent's books and records to be inaccurate and by assisting in Lucent's failure to maintain sufficient internal accounting controls. Count Five alleges that Dorn violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1 by knowingly circumventing Lucent's system of internal accounting controls and knowingly falsifying, or causing to be falsified, Lucent's books and records. Dorn now moves to dismiss Counts One, Three and Four for failure to state a claim upon which relief can be granted.

STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

*4 While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *Sentinel Trust Co. v. Universal Bonding Ins. Co.,* 316 F.3d 213, 216 (3d Cir.2003); *see also* 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 at 299 (2d ed.1990).

"A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Federal Reserve Bank of N.Y.,* 359 F.3d 251, 255 n. 5 (3d Cir.2004) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Id.*

DISCUSSION

*I. Count One-Primary Liability*

Dorn's main challenge to the Complaint is that the SEC has failed to plead facts demonstrating that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dorn knew, or was reckless in not knowing, that any of the conduct she engaged in was improper from an accounting perspective. With regard to the requirement that a plaintiff plead facts demonstrating that a defendant acted with scienter, the Third Circuit has defined "scienter" in the context of securities fraud as "a mental state embracing intent to deceive, manipulate or defraud, or, at a minimum, highly unreasonable (conduct), involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."*In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 148 (3d Cir.2004) (quoting *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 667 (3d Cir.2002)). Rule 9(b) provides that, in the context of pleading fraud, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." As this Court has previously noted, the additional requirement of the Private Securities Litigation Reform Act of 1995 ("PLSRA") that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), does not apply to actions brought by the SEC. *SEC v. Lucent Technologies, Inc.*, 2005 WL 771228, *6 (D.N.J. April 6, 2005).

*5 To adequately plead scienter, regardless whether the PSLRA applies, plaintiffs "must allege facts that could give rise to a 'strong' inference of scienter."*Burlington Coat Factory*, 114 F.3d at 1422. A plaintiff must either "(1) identify circumstances indicating conscious or reckless behavior by defendants or (2) allege facts showing both a motive and a clear opportunity for committing the fraud."*Id.* As said, because the PSLRA does not apply, the SEC is exempt from the PSLRA's additional requirement of pleading scienter with particularity. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 533-35 (3d Cir.1999) (the PSLRA differs from the previous standard for pleading scienter only in that it requires that it be pled with particularity).

A. Conscious or Reckless Behavior

Dorn charges that only two of the paragraphs in the Complaint address scienter, that those allegations are conclusory, and that the SEC has not pled any facts to support the allegations. Dorn relies on *Burlington Coat Factory* where the circuit held that "[i]t is not enough for plaintiffs to allege generally that defendants 'knew or recklessly disregarded each of the false and misleading statements for which [they were] sued'; plaintiffs must allege facts that could give rise to a 'strong' inference of scienter." 114 F.3d at 1422 (citations omitted). The SEC counters that it has satisfied the requirements for pleading scienter, regardless of whether the Court evaluates the allegations under the "strong inference" standard articulated in *Burlington Coat Factory,* or under Rule 9(b) which allows scienter to be pled generally.

There are no allegations from which the Court could infer that Dorn had any knowledge of accounting principles or that she had any role in Lucent's decisions to recognize revenue in connection with the transactions Dorn executed. The SEC relies on *SEC v. Dunlap,* 2002 WL 1007626, *6 (S.D.Fla. March 27, 2002), for the proposition that persons who are not accountants can still be held liable when the companies they work for violate GAAP. The *Dunlap* court found that knowledge or recklessness could be inferred by virtue of the defendant's position with the company. *Id.* at *6, n. 8. The Third Circuit, however, has indicated its unwillingness to impute knowledge on the basis of one's position within a company in the context of pleading fraud in accordance with Rule 9(b): "[g]eneralized imputations of knowledge do not suffice, regardless of the defendants' positions within the company."*Advanta,* 180 F.3d at 539. Furthermore, while the SEC alleges that Lucent changed its accounting policy, thereby making the side agreements significant for revenue recognition purposes, the SEC does not allege, nor can the Court infer, that Dorn was aware of this change in policy and that it affected her business group. As to the SEC's allegation that Dorn made an affirmative misrepresentation to Lucent's chief accountant that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

there were no side agreements granting a right of return greater than what was already specified in the distributor agreements, this allegation does not give rise to the strong inference of scienter that is required. Had the SEC alleged that Dorn possessed some knowledge of accounting principles and Lucent's change in accounting policy, then this allegation would be sufficient. Without such supporting factual allegations, however, the Court cannot stretch this allegation as far as the SEC wishes. That Dorn did not tell the chief accountant about the side agreements does not mean that she knew the agreements would be significant to how revenue from those transactions was recognized, and it would be unreasonable to infer such without additional factual allegations. While the SEC charges that Dorn did not need to be an accountant to realize that the side agreements would lead to improper revenue recognition, the SEC offers no compelling reason why this Court should charge regular business people with knowledge of accounting principles. For these reasons, the Court finds that the SEC has failed to adequately plead scienter by way of facts that provide strong circumstantial evidence of conscious misbehavior or reckless.

B. Motive and Opportunity

*6 Even though the SEC has failed to sufficiently plead scienter under the "conscious or reckless behavior" test, the Court must consider whether the SEC has adequately pled scienter under the "motive and opportunity" test articulated in *Burlington Coat Factory*. "Motive entails allegations that the individual corporate defendants stood to gain in a concrete and personal way from one or more of the allegedly false or misleading statements and wrongful nondisclosures." *Wilson v. Bernstock*, 195 F.Supp.2d 619, 633 (D.N.J.2002). Opportunity refers to "the means and likely prospect of achieving such concrete benefits by the means alleged." *Id.*

With regard to motive and opportunity, the SEC alleges:
In their drive to realize revenue, meet internal sales targets and/or obtain sales bonuses, Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliot, Vanessa Petrini, and Michelle Hayes-Bullock, in their respective capacities as officers, executives and employees of Lucent improperly granted, and/or failed to disclose, various side agreements, credits and other incentives (collectively "extra-contractual commitments") to induce Lucent's customers to purchase the company's products.

(Compl. at ¶ 3.) Dorn argues that the SEC has failed to sufficiently plead motive and opportunity because this sole allegation refers to reasons that courts have found insufficient to constitute scienter. In *In re Crown American Realty Trust Sec. Litig.*, 1997 WL 599299, *25 (W.D.Pa.Sctp.15, 1997), the court found that the plaintiffs' allegations were tantamount to an assertion that the reason the defendant failed to disclose certain information was because of its desire to improve its financial situation to enhance its ability to finance further capital improvements. The court held that "such a motive, without more" was insufficient to plead scienter in compliance with Rule 9(b).*Id.* Moreover, in *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir.1994), the court found that to allege motive "a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold." The court cited approvingly *Ferber v. Travelers Corp.*, 785 F.Supp. 1101, 1107 (D.Conn.1991) for the statement that "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations."

To rebut Dorn's argument, the SEC advances *Weiner v. The Quaker Oats Co.*, 129 F.3d 310, 318 n. 8 (3d Cir.1997), for the proposition that a desire to preserve one's job is a sufficient motive for purposes of scienter. In *Weiner,* the complaint alleged that "Quaker's management took advantage of specific opportunities to communicate with the investment community in order to inflate the price of Quaker stock, fend off a widely-rumored potential takeover, and preserve management's own jobs." The SEC's reliance on this case is misplaced.

First, as the complaint alleged more than continued employment as the motive for the defendants actions, it would be misleading to say that a desire to keep a job alone is sufficient to show motive. Second, and even more significant is that the SEC did not allege that Dorn was motivated by a desire to remain employed, but rather a related desire to obtain a sales bonus. As the Second Circuit has recognized, however, incentive compensation is insufficient for purposes of pleading scienter under the motive and opportunity test.*Shields,* 25 F.3d at 1130. For these reasons, the SEC's allegations fall far short of satisfying the "motive and opportunity" test. *See Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068-69 (5th Cir.1994) (allegation that defendants acted for the purpose of creating an artificially inflated picture of the company's financial condition, increasing market share, gaining competitive advantage, maintaining an inflated stock price, preserving defendants' positions, obtaining compensation for themselves, and/or inflating the value of their shares and stock "does not set out facts sufficient to lead to a proper inference of scienter.").

*7 The SEC's failure to adequately plead scienter under either the "conscious or reckless behavior" test or the "motive and opportunity" test requires the Court to grant Dorn's motion to dismiss Count One of the Complaint.

*II. Count One-Aiding and Abetting Liability*

In addition to alleging a primary violation of Section 10(b) and Rule 10b-5, the SEC also asserts a claim against Dorn for aiding and abetting liability for providing substantial assistance to Lucent in its primary violation of these laws. To state a claim for aiding and abetting, a plaintiff must show: (1) that there has been an underlying securities violation; (2) that the alleged aider-abettor had knowledge of that act; and (3) that the aider-abettor knowingly and substantially participated in the wrongdoing. *Monsen v. Consolidated Dressed Beef Co., Inc.,* 579 F.2d 793, 799 (3d Cir.1978). Dorn argues that the SEC has failed to allege facts that would support a finding that Dorn knowingly and substantially participated in Lucent's violation. Dorn relies on *Cammer v. Bloom,* 711 F.Supp. 1264, 1299-1300 (D.N.J.1989). In *Cammer,* the defendant was charged with an aiding and abetting claim under Rule 10b-5. The plaintiff stock holders alleged that the company had improperly recognized revenue. In discussing the knowing and substantial participation element of aiding and abetting liability, the court found that the broad conclusory allegation that the defendant knowingly and recklessly participated in the issuance of false and misleading statements to the investing public to be insufficient. *Id.* It was alleged that the defendant was a director and outside attorney for the company and that he sold certain amounts of company stock during the class period. *Id.* In finding the allegations insufficient, the court said:

There are no allegations, for example, that Kagan, as part of his duties as a director, was on the audit committee of the Board of Directors. There are no allegations that he exercised any responsibility for the Company's day to day operations. Indeed nothing at all is alleged in the Amended Complaint from which it can be inferred that Kagan knew of or participated in the fraud.

*Id.* (footnote omitted). The court dismissed the claim against Kagan and granted the plaintiff leave to amend their complaint to "replead with particularity any facts which would suggest Kagan had knowledge of, or involvement in, the accounting and reporting practices at Coated Sales."*Id.*

As in *Cammer,* no facts have been alleged here that would suggest that Dorn knowingly participated in Lucent's misstatement of revenue and income. Without allegations that show Dorn had knowledge of accounting principles or Lucent's policy regarding how and when revenue should be recognized in transactions such as the ones Dorn is alleged to have executed, the SEC has not sufficiently pled the third element of an aiding and abetting claim. For this reason, the SEC cannot maintain its Section 10(b) aiding and abetting claim against Dorn, and Dorn's motion to dismiss this claim is granted.

*III. Counts Three and Four*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*8 Count Three alleges that Dorn aided and abetted Lucent in violating Section 13(a) of the Exchange Act and Rules 12b-20, 13a-11 and 13a-13 by causing Lucent to file materially false and misleading financial statements in forms 10-Q for the first three quarters of its fiscal year 2000 and in a form 8-K filed on October 24, 2000 with regard to Lucent's fourth quarter results.[FN1] Count Four alleges that Dorn aided and abetted Lucent's failures to keep accurate books, records, and accounts that fairly reflected Lucent's transactions and assets in violation of Section 13(b)(2)(A). Count Four also alleges that Dorn aided and abetted Lucent's failures to maintain an adequate system of internal accounting controls such that there could be a reasonable assurance that Lucent's financial statements would be prepared in conformity with GAAP in violation of Section 13(b)(2)(B).[FN2] The elements for these aiding and abetting claims are the same as those for a Section 10(b) claim: (1) a primary violation by Lucent, (2) the aider-abettor had knowledge of that act, and (3) the aider-abettor knowingly and substantially participated in the wrongdoing. *Monsen,* 579 F.2d at 799. Dorn challenges these claims on the ground that the SEC failed to allege any facts that would suggest that she knowingly and substantially participated in the misstatement of Lucent's financials, its failure to keep accurate books and records, or its failure to maintain an adequate system of internal controls. Because the SEC did not allege facts that would support an inference that Dorn knew it was improper to recognize revenue in the transactions she executed, the third element of its aiding and abetting claims has not been adequately pled. It follows then that Counts Three and Four must also be dismissed.

> FN1. Section 13(a) and the rules referenced provide that an issuer of securities must file certain documents with the SEC and that such documents must contain certain information so as to not be misleading. Implicit in these provisions is the requirement that the information submitted be true and correct. *GAF Corp. v. Milstein,* 453 F.2d 709, 720 (2d Cir.1971).

> FN2. Sections 13(b)(2)(A) and 13(b)(2)(B) provide:
> (2) Every issuer which has a class of securities registered pursuant to section 78l of this title and every issuer which is required to file reports pursuant to section 78o(d) of this title shall-
> (A) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;
> (B) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that-
> (i) transactions are executed in accordance with management's general or specific authorization;
> (ii) transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;
> (iii) access to assets is permitted only in accordance with management's general or specific authorization; and
> (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

## CONCLUSION

Defendant Dorn's Motion to Dismiss is GRANTED. Counts One, Three and Four of the Complaint are dismissed without prejudice.

D.N.J.,2005.
S.E.C. v. Lucent Technologies Inc.
Not Reported in F.Supp.2d, 2005 WL 1206841 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.