1   MELINDA HAAG (STATE BAR NO. 132612)
      mhaag@orrick.com
2   JAMES A. MEYERS (ADMITTED *PRO HAC VICE*)
      jmeyers@orrick.com
3   JAMES N. KRAMER (STATE BAR NO. 154709)
      jkramer@orrick.com
4   MOJI SANIEFAR (STATE BAR NO. 233330)
      msaniefar@orrick.com
5   REBECCA F. LUBENS (STATE BAR NO. 240683)
      rlubens@orrick.com
6   RANDALL S. LUSKEY (STATE BAR NO. 240195)
      rluskey@orrick.com
7   SHANEEDA JAFFER (STATE BAR NO. 253449)
      sjaffer@orrick.com
8   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
9   405 Howard Street
    San Francisco, CA 94105-2669
10  Telephone:    415-773-5700
    Facsimile:    415-773-5759
11

    Attorneys for Defendant
12  LISA C. BERRY

13

              UNITED STATES DISTRICT COURT
14
           NORTHERN DISTRICT OF CALIFORNIA
15
                SAN JOSE DIVISION
16

17
    SECURITIES AND EXCHANGE
18  COMMISSION,

19           Plaintiff,

20      v.

21  LISA C. BERRY,

22          Defendant.

| | |
|---|---|
| Case No. 5:07-cv-04431 RMW HRL | |

**DEFENDANT LISA C. BERRY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Date:      February 15, 2008
Time:     9:00 a.m.
Courtroom: 6, Fourth Floor

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3

I. INTRODUCTION ....................................................................................................... 1

4

II. ARGUMENT .............................................................................................................. 3

5

A. The SEC Is Held To Rule 9(b)'s Rigorous Pleading Standard ...................... 3

B. The SEC Has Failed To State A Claim For Securities Fraud ........................ 6

6

1. The SEC Has Not Adequately Pled Scienter ..................................... 6

7

2. The SEC Has Not Pled That Ms. Berry Made An Actionable Misstatement ............... 8

8

C. The SEC's Aiding And Abetting Claims Should Be Dismissed ................... 11

D. The SEC's Other Non-Fraud Claims Should Be Dismissed ........................ 12

9

E. Most Of The SEC's Requested Relief Is Time Barred ................................. 14

10

III. CONCLUSION .......................................................................................................... 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## CASES

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ................................................................................................ 3, 4

*Church of Scientology of Cal. v. Flynn*,
744 F.2d 694 (9th Cir. 1984) ............................................................................................ 3

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................................................................................ 3

*DSAM Global Value Fund v. Altris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002) ............................................................................................ 6

*FEC v. Williams*,
104 F.3d 237 (9th Cir. 1996) .......................................................................................... 15

*Hateley v. SEC*,
8 F.3d 653 (9th Cir. 1993) .............................................................................................. 15

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .......................................................................................... 9

*In re AutoDesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) .............................................................................. 7

*In re CNET Networks, Inc. Deriv. Litig.*,
483 F. Supp. 2d 947 (N.D. Cal. 2007) .............................................................................. 8

*In re Cray Inc. Deriv. Litig.*,
431 F.Supp.2d 1114 (W.D. Wash. 2006) .......................................................................... 3

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
2005 WL 3704688 (S.D. Tex. Dec. 5, 2005) .................................................................... 9

*In re GlenFed Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ......................................................................................... 3, 4

*In re Hansen Natural Corp. Sec. Litig.*,
2007 WL 3244646 (C.D. Cal. Oct. 16, 2007) .................................................................. 6

*In re Sportsline.com Sec. Litig.*,
366 F.Supp.2d 1159 (S.D. Fla. 2004) ............................................................................... 7

*In re Stac Elec. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ............................................................................................ 8

*In re Tibco Software, Inc.*,
2006 WL 1469654 (N.D. Cal. May 25, 2006) ................................................................ 10

*In re Verifone Sec. Litig.*,
784 F. Supp. 1471 (N.D. Cal. 1992) ................................................................................ 3

*In re Verisign, Inc. Deriv. Litig.*,
2007 WL 2705221 (N.D. Cal. Sept. 24, 2007) ................................................................ 6

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................................................ 1, 2

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Zoran Corp. Deriv. Litig.*,
  511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................................. 10

*Johnson v. SEC*,
  87 F.3d 484 (D.C. Cir. 1996) .............................................................................. 14

*K & S P'ship v. Continental Bank*,
  952 F. 2d 971 (8th Cir. 1991) ............................................................................. 12

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) .................................................................................. 1

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
  927 F. Supp. 1297 (C.D. Cal. 1996) ...................................................................... 4

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
  2007 WL 3047093 (S.D. Cal. Oct. 16, 2007) ........................................................ 5

*Miller v. Fortis Benefits Ins. Co.*,
  363 F. Supp. 2d 700 (D.N.J. 2005) ...................................................................... 15

*Monetta Fin. Servs., Inc. v. SEC*,
  390 F.3d 952 (7th Cir. 2004) .............................................................................. 12

*Morgan v. Prudential Group, Inc.*,
  81 F.R.D. 418 (S.D.N.Y. 1978) .......................................................................... 10

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ........................................................................................... 15

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .................................................................................. 2

*Renovitch v. Kaufman*,
  905 F.2d 1040 (7th Cir. 1990) ............................................................................ 12

*Samuels v. Mitchell*,
  155 F.R.D. 195 (N.D. Cal. 1994) .......................................................................... 7

*SEC v. Baxter*,
  2007 WL 2013958 (N.D. Cal. July 11, 2007) ..................................................... 4, 9

*SEC v. Collins & Aikman Corp.*,
  2007 WL 4480025 (S.D.N.Y. Dec. 21, 2007) ....................................................... 5

*SEC v. Fehn*,
  97 F.3d 1276 (9th Cir. 1996) .......................................................................... 10, 12

*SEC v. Fitzgerald*,
  135 F. Supp. 2d 992 (N.D. Cal. 2001) ................................................................. 14

*SEC v. Jones*,
  476 F. Supp. 2d 374 (S.D.N.Y. 2007) ................................................................. 14

*SEC v. Lucent Techs., Inc.*,
  2005 WL 1206841 (D.N.J. May 20, 2005) ............................................................ 7

*SEC v. Lucent Techs., Inc.*,
  363 F. Supp. 2d 708 (D.N.J. 2005) ...................................................................... 12

# TABLE OF AUTHORITIES
### (continued)

Page

*SEC v. Orr,*
  2006 WL 542986 (E.D. Mich. Mar. 6, 2006) ........................................................ 13

*SEC v. Rind,*
  991 F.2d 1486 (9th Cir. 1993) ........................................................................... 14

*SEC v. Tambone,*
  417 F. Supp. 2d 127 (D. Mass. 2006) ............................................................ 4, 11

*SEC v. Todd,*
  2006 WL 1564892 (S.D. Cal. May 30, 2006) ....................................................... 7

*SEC v. Todd,*
  2007 WL 1574756 (S.D. Cal. May 30, 2007) ..................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights Ltd.,*
  127 S. Ct. 2499 (2007) ........................................................................................ 5

*U.S. v. Hallmark Homes,*
  2003 WL 23219807 (D. Idaho Sept. 29, 2003) .................................................. 15

*U.S. v. Taigen,*
  303 F. Supp. 2d 1129 (D. Idaho 2003) .............................................................. 15

*Warshaw v. Xoma Corp.,*
  74 F.3d 955 (9th Cir. 1996) ............................................................................... 10

*Weiss v. Amkor Tech., Inc.,*
  2007 WL 2808224 (D. Ariz. Sept. 25, 2007) ............................................... 1, 6, 7

*Woods v. Barnett Bank of Fort Lauderdale,*
  765 F.2d 1004 (11th Cir. 1985) .......................................................................... 12

1

## I.    **INTRODUCTION**

Despite the strident tone of its Opposition ("Opp.") to Lisa Berry's Motion to Dismiss

("Motion" or "MTD"), the SEC has not cured the fatal pleading defects in its Complaint.  Ms.

Berry showed that the Complaint fails to allege with the particularity required by Fed. R. Civ. P.

9(b) facts that, if proven, would show that Ms. Berry (i) made an actionable misstatement; (ii)

knew not only the arcane, fact-intensive principles of APB 25 but also that APB 25 required

KLA-Tencor Corp. ("KLA") and Juniper Networks, Inc. ("Juniper") to take compensation

charges for their stock option grants and that those companies were not taking such charges; (iii)

substantially assisted a violation of the securities laws with actual knowledge; or (iv) realized

actual unlawful gains or profits as required to support its disgorgement claim.  Rather than

satisfactorily address these points, the SEC instead seeks to mask its Complaint's deficiencies

through a variety of diversionary tactics such as (i) saying the Complaint includes allegations it

never actually made; (ii) ignoring allegations it did make that are inconsistent with the notion that

Ms. Berry committed fraud or otherwise violated the securities laws; (iii) addressing arguments

not made in the Motion; and (iv) focusing on obsolete, erroneous pleading standards, while

ignoring recent case law regarding the pleading requirements applicable to the SEC.

For example, to try to buttress its deficient scienter allegations, the SEC now asserts that

Ms. Berry selected historical grant dates "in order to avoid recording hundreds of millions of

dollars in expenses over several years" and that "she concocted the backdating processes in order

to get around … accounting requirements."  Opp. at 1, 20.  No such allegations appear anywhere

in the Complaint, and the SEC never explains why Ms. Berry, and Ms. Berry alone, would have

such a motive.[1]  Certainly there was no financial motive, as the SEC does not allege that Ms.

Berry received even a single penny from the exercise of an allegedly "backdated" grant.[2]

---

[1] *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177 (C.D. Cal. 2007) (dismissing complaint because, *inter alia*, "plaintiffs have not pointed to any specific benefit that would inure to the defendants that would not be either generalized to all corporate directors or beneficial to all shareholders, not just the defendant directors specifically") (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).

[2] *See Weiss v. Amkor Tech., Inc.*, 2007 WL 2808224, at *11 (D. Ariz. Sept. 25, 2007) (dismissing options "backdating" case because, *inter alia*, there were no particularized facts to support "allegations that any named defendant exercised his Amkor options and sold the stock for gain");

- 1 -          DEFENDANT BERRY'S REPLY ISO MOTION TO
                                                                 DISMISS THE COMPLAINT
                                                                 Case No.  5:07-cv-04431 RMW HRL

1    In its Opposition, the SEC also omits all mention of the unidentified number of unnamed

2    "others" at both companies that it *repeatedly* alleged in its Complaint were responsible, in

3    addition to Ms. Berry, for the conduct here at issue.  Compl. ¶¶ 4, 27, 30, 32.  The SEC's own

4    allegations about the participation in the alleged scheme of an untold number of others at both

5    companies gut the notion that Ms. Berry fraudulently concealed her activities, including from the

6    companies' outside lawyers and auditors, nor does the Complaint contain any claims based on

7    concealment of information from the internal finance departments, outside counsel or the outside

8    auditors.  Indeed, unlike the vast majority of its other options "backdating" cases against

9    individuals, the SEC has *not* charged Ms. Berry with a violation of Securities Exchange Act

10   ("Exchange Act") Rule 13b2-2 for making false or misleading statements or omissions to

11   auditors.[3]  Thus, based on the SEC's claims in its Complaint, Ms. Berry did not conceal anything

12   from anybody within the companies or, more importantly, from their outside counsel or outside

13   auditors.  Having (by the SEC's own tacit admission) not concealed anything from the auditors,

14   and having seen that the auditors issued "clean" audit opinions, Ms. Berry had no reason to

15   believe that there was anything wrong with the companies' accounting for options grants.  This

16   circumstance precludes any inference that Ms. Berry acted with scienter.

17   Faced with its failure to allege that Ms. Berry made an actionable misstatement or knew or

18   recklessly disregarded that the companies' financial statements and disclosures were materially

19   misstated, the SEC instead dwells on its allegations concerning Ms. Berry's participation in the

20   options granting process and says that, under now-discarded "notice pleading" standards, they

21   suffice to state a claim.  The SEC's allegations fail Rule 9(b), given their remarkable vagueness.

22

23   *In re Wet Seal*, 518 F. Supp. at 1177-78 ("plaintiffs had to allege that defendants benefited in
     some concrete and personal way from the purported fraud") (quoting *Novak v. Kasaks*, 216 F.3d

24   300, 307-08 (2d Cir. 2000)); ("the lack of *any* tangible, personal benefit here further weighs
     against the Officer Defendants having scienter") (emphasis in original).

25   [3] According to the litigation releases and complaints linked on the SEC's webpage devoted to
     "Stock Options Backdating" (http://www.sec.gov./spotlight/optionsbackdating.htm), 22 of the 28

26   individuals (almost 80%) whom the SEC has charged (other than Ms. Berry) in 2006 or later,
     after options granting practices at many companies received wide-scale public attention, have

27   been charged under Rule 13b2-2.  Further, KLA (during Ms. Berry's tenure) and Juniper are the
     only companies as to which, after the SEC completed its investigation, not a single individual was

28   charged with a Rule 13b2-2 violation.

DEFENDANT BERRY'S REPLY ISO MOTION TO
DISMISS THE COMPLAINT
Case No. 5:07-cv-04431 RMW HRL

1    *E.g.*, Opp. at 5-6 ("approximately 10 occasions" at KLA and "more than 50 grants" at Juniper,

2    without any particularity as to dates, Ms. Berry's alleged participation, etc.).  But, even if the SEC

3    had pled these allegations with greater particularity, they would still be insufficient.  In addition

4    to alleging "backdating" of options grants, the SEC must also allege additional facts that the

5    financial statements and disclosures were materially misstated as a result, the defendant knew or

6    recklessly disregarded that circumstance, and herself made an actionable misstatement.  The SEC

7    has not done so here and, accordingly, its Complaint should be dismissed.

8    **II.    ARGUMENT**

9        **A.    The SEC Is Held To Rule 9(b)'s Rigorous Pleading Standard**

10            The SEC recognizes that Rule 9(b) applies to its Complaint and requires that the

11   "circumstances constituting fraud or mistake shall be stated with particularity."  Opp. at 9.

12   However, the SEC seeks to minimize that burden by conflating Rules 9(b) and 8(a) and asserting

13   that "a claim may not be dismissed 'unless it appears beyond doubt that plaintiff can prove no set

14   of facts in support of his claim which would entitle him to relief.'"  *Id.* at 8 (quoting *Church of

15   Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984))[4].  But, in *Bell Atlantic Corp. v.

16   Twombly*, 127 S. Ct. 1955, 1968 (2007), the Supreme Court discarded this standard, taken from

17   *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), because *Conley*'s "no set of facts" language

18   "would allow a wholly conclusory statement of claim [to] survive a motion to dismiss whenever

19   the pleadings left open the possibility that a plaintiff might later establish some 'set of

20   [undisclosed] facts to support recovery.'"[5]  *See also In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541,

21   1547 (9th Cir. 1994) (improper to "collapse" the requirements of Rule 9(b) into Rule 8(a))[6].

22   ─────────────────────
     [4] The SEC also requests that Rule 9(b)'s requirements be relaxed where "certain matters are

23   within the opposing party's knowledge."  Opp. at 13 n.1.  However, even in the limited cases
     where this has been allowed, courts "continue to require significant particularity in the pleading."

24   *In re Cray Inc. Deriv. Litig.*, 431 F.Supp.2d 1114, 1130 (W.D. Wash. 2006); *In re Verifone Sec.
     Litig.*, 784 F. Supp. 1471, 1487 (N.D. Cal. 1992) (stating that even if there is cause to relax Rule

25   9(b)'s particularity requirements, "this special rule does not read Rule 9(b) out of existence" and
     "[m]ere conclusory allegations of fraud" will be insufficient).

26   [5] The SEC's only reference to *Twombly* is to say that it overruled *Conley* "on other grounds"
     without acknowledging that the "other grounds" were the rejection of the "no set of facts"

27   standard that the SEC nevertheless continues to press here.

28   [6] The SEC's heavy reliance on *GlenFed* in its Opposition is misplaced.  In addition to holding
     that Rule 8(a) does not reduce a plaintiff's burden under Rule 9(b), the Ninth Circuit also held

1   *Twombly* requires, even under Rule 8(a), that "[f]actual allegations must be enough to raise a right

2   to relief above the speculative level" and that there is a "need at the pleading stage plausibly

3   suggesting (not merely consistent with)" the required elements of the offense.  127 S. Ct. at 1965-

4   66.  Here, far from plausibly suggesting Ms. Berry acted with intent to defraud or knew or

5   recklessly disregarded that KLA and Juniper were fraudulently accounting for their options

6   grants, the SEC's allegations and non-allegations – most notably, the failure to bring any claims

7   based on false statements to auditors – are *in*consistent with such a theory of liability.

8         The SEC concedes that Rule 9(b) requires it to allege the "time, place and nature of the

9   alleged fraudulent activities," what is false or misleading about a statement, and why it is false.

10  Opp. at 9.  It asserts, however, that "nothing in rule 9(b), nor in any other rule or statute that

11  applies to a Commission enforcement action, supports imposing upon the Commission any

12  increased burden with respect to pleading the bases for allegations that defendant acted with

13  requisite intent, or scienter." *Id.*  The SEC thus fails to acknowledge cases such as *SEC v.*

14  *Tambone*, 417 F. Supp. 2d 127, 130 (D. Mass. 2006), in which the court (i) dismissed the

15  complaint due to the SEC's failure to plead with Rule 9(b)'s required particularity; (ii) "in

16  essence, concur[red]" with defendant's argument that it was "preposterous" for the SEC to assert,

17  as it does here (Opp. at 16 n.7) "that Rule 9(b) must be read alongside" Rule 8 so as not to require

18  it "to set out in detail each and every fact upon which it bases its claims or to plead evidentiary

19  matters"; and (iii) accordingly "reject[ed] the SEC's argument in favor of relaxing the strictures

20  of Rule 9(b)."  The SEC's observation that "intent, knowledge, and other condition of mind of a

21  person may be averred generally" (Opp. at 9, 14) overlooks this Court's holding that "under Rule

22  9(b) scienter may be averred generally *only* where the matter does not involve fraud or mistake."

23  *SEC v. Baxter*, 2007 WL 2013958, at *8 n.8 (N.D. Cal. July 11, 2007) (emphasis added).  *See*

24  _____

25  that Rule 9(b) "requires particularized allegations of the circumstances *constituting* fraud," i.e.,
    not only the who, what, when, where, and how of the alleged misconduct, but "what is false or
    misleading about a statement, and why it is false" and, in securities cases, "an explanation as to
26  why the disputed statement was untrue or misleading when made." *GlenFed*, 42 F.3d at 1547-49.
    (emphasis by the Court).  Moreover, Congress rejected the scienter standard set forth in *GlenFed*
27  when it passed the Private Securities Litigation Reform Act ("PSLRA"), which established a
    uniform national standard for pleading scienter in private actions.  *See Marksman Partners, L.P.*
28  *v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D. Cal. 1996).

1   *also Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, 2007 WL 3047093, at *4 (S.D. Cal.

2   Oct. 16, 2007) (factual basis for scienter must be pled even where scienter is averred generally).

3        The SEC creates a red herring by suggesting that Ms. Berry seeks to force the

4   requirements of the PSLRA on SEC enforcement actions. Opp. at 1, 14. Ms. Berry never made

5   such an argument. To the contrary, she expressly recognized that the PSLRA "does not apply to

6   the SEC" but, citing four cases, explained that "numerous courts throughout the country have

7   held that the SEC is nevertheless required to plead facts that raise a *strong inference* of scienter

8   and have dismissed SEC complaints or claims therein for failure to meet this standard." MTD at

9   8 & n.7 (emphasis in original). *See also SEC v. Collins & Aikman Corp.*, 2007 WL 4480025, at

10  *6 (S.D.N.Y. Dec. 21, 2007) (even though the PSLRA does not apply to SEC actions, the SEC

11  must nevertheless "plead a 'strong inference' of scienter"). The SEC's only effort to address this

12  string of cases is to say they are "district court cases outside of the Ninth Circuit," but the SEC

13  offers no *principled* reason to distinguish them.[7] Opp. at 15 n.3.

14       In the same vein, the SEC misconstrues the import of *Tellabs, Inc. v. Makor Issues &*

15  *Rights Ltd.,* 127 S. Ct. 2499 (2007). The SEC asserts that *Tellabs* applies only to private

16  litigation, not SEC enforcement actions. Opp. at 14-15. In *Tellabs*, the Supreme Court held that

17  a "strong inference" of scienter (a requirement that numerous courts have imposed on the SEC

18  separate and apart from the PSLRA) is one that is cogent, compelling, and "*at least as compelling*

19  *as any opposing inference* one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2510

20  (emphasis added). This is precisely the standard that the SEC itself urged the Court to adopt,

21  writing in its amicus brief: "When the facts alleged in the complaint give rise to a substantial

22  possibility that the defendant acted without scienter, the necessary 'strong inference' of scienter

23  will be lacking, because there will be an insufficient likelihood that the conclusion that the

24  ――――――――――――――

[7] The SEC cites this Court's decision in *Baxter* for the proposition that the PSLRA's pleading
25  standard applies only to private actions. Opp. at 14. But, this Court in *Baxter* said nothing about
application of the PSLRA to SEC enforcement actions. In fact, defendant in *Baxter* did not raise
26  lack of scienter in his motion to dismiss, and this Court discussed scienter because it is a required
element of § 10(b) and Rule 10b-5. It held that the SEC's allegations that defendant had signed
27  financial statements and management representation letters to the auditors despite knowing "of
potentially alarming information" contrary to the financial statements and representations
28  satisfactorily pled scienter. *Id*. at *7. The SEC makes no such allegations here against Ms. Berry.

1    defendant acted with scienter follows from the facts alleged in the complaint as a whole." *See*

2    Request for Judicial Notice in Support of Reply, Ex. A at 25.  Given the SEC's view of the law as

3    stated in its *Tellabs* brief, it is both ironic and untenable for the agency now to maintain, as it does

4    here (Opp. at 15 & n.4), that this Court may not consider the anti-scienter inferences of the SEC's

5    own allegations.

6            **B.    The SEC Has Failed To State A Claim For Securities Fraud**

7                **1.    The SEC Has Not Adequately Pled Scienter**

8            The SEC argues that it does not need to allege facts regarding Ms. Berry's accounting

9    knowledge to plead scienter.  Opp. at 17.  The SEC asserts that even in private actions, "this

10   Court has not required a complaint to allege familiarity with an accounting provision."  *Id*.  But,

11   the mere fact that reference was not made to accounting knowledge in the cases the SEC cites

12   does not absolve it in *this* case from pleading knowledge of APB 25 and how the companies were

13   applying it.  In the cases the SEC cites, there is no indication from the opinions that the

14   defendants argued that plaintiffs were required to plead their knowledge of the relevant

15   accounting principles.  By contrast, where the issue has been raised, including specifically in

16   options cases, the courts have required plaintiffs to satisfactorily plead defendants' knowledge

17   that the accounting was improper.[8]

18          Here, the SEC simply rehashes its allegations that Ms. Berry "had majored in accounting

19   in college and had become the top legal officer of two public companies."  Opp. at 7.  It also

20   asserts – without citation to any allegation in the Complaint or, more fundamentally, to any

21   specific fact alleged in the Complaint – that Ms. Berry "knew well how the creation of false

22   documents, and the specific lies about the dates on which options were granted … caused each

23

24   [8] *See*, *e.g.*, *Weiss*, 2007 WL 2808224, at *8 (dismissing options case and stating that "complaint
     must allege specific facts that each individual defendant knew that the accounting for the subject
25   transactions was incorrect at the time it was determined"); *In re Verisign, Inc. Deriv. Litig.*, 2007
     WL 2705221, at *28 (N.D. Cal. Sept. 24, 2007) (dismissing options case in part because, *inter
26   alia*, plaintiffs pled no facts indicating how defendants were supposed to have known of the
     accounting impact of the alleged backdating).  *See also In re Hansen Natural Corp. Sec. Litig.*,
27   2007 WL 3244646, at *12 (C.D. Cal. Oct. 16, 2007) ("plaintiff must show that defendants 'knew
     or must have been aware of improper revenue recognition'") (quoting *DSAM Global Value Fund
28   v. Altris Software, Inc.*, 288 F.3d 385, 390-91 (9th Cir. 2002)).

1    company to misrepresent … expenses." *Id.* There are many flaws with the SEC's position, even

2    putting aside that no such allegation appears in the Complaint. *First*, simply referencing Ms.

3    Berry's college accounting major in the 1970s does not support an inference that she understood

4    the complex accounting rules associated with options grants as they were applied 20 or more

5    years later.[9] *Second*, Ms. Berry's position as General Counsel does not qualify her as an options

6    accounting expert or as knowledgeable as to her companies' accounting treatment of options

7    grants. The SEC cites no authority for this proposition, and the case law is to the contrary.[10]

8    Indeed, one court has aptly stated that "[a]ccounting concepts are a foreign language to some

9    lawyers in almost all cases, and to almost all lawyers in some cases." *Samuels v. Mitchell*, 155

10   F.R.D. 195, 198 (N.D. Cal. 1994). *Third*, the Complaint's mere allegations that Ms. Berry

11   participated in conference calls without in any way describing the content of those calls, and an

12   elliptical allusion in one document to a "charge to … P&L," (Compl. ¶ 33) do not support the

13   inferences the SEC now seeks to draw from them.[11]

---

14   [9] *Weiss*, 2007 WL 2808224, at *9 ("the accounting rules at issue, specifically APB No. 25, are

15   complex and require accounting expertise and judgment); *In re Sportsline.com Sec. Litig.*, 366
     F.Supp.2d 1159, 1168-69 (S.D. Fla. 2004) (the misapplication of accounting rules to a particular

16   company's stock option grants cannot be construed as a glaring example of scienter because the
     measurement date criteria embodied in APB No. 25 are "far from obvious").

17   [10] *See e.g.*, *In re AutoDesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) ("plaintiffs

18   must do more than allege that these key officers had the requisite knowledge by virtue of their
     'hands on' positions"); *SEC v. Todd*, 2006 WL 1564892, at *20 (S.D. Cal. May 30, 2006)

19   (entering summary judgment against SEC because it had produced no evidence that CEO was
     aware of accounting implications); *SEC v. Lucent Techs., Inc.*, 2005 WL 1206841, at *5 (D.N.J.

20   May 20, 2005) ("the SEC offers no compelling reason why this Court should charge regular
     business people with knowledge of accounting principles").

21   [11] In ¶ 33 of its Complaint, the SEC quoted a 5-word snippet from a memorandum that Ms. Berry
     wrote to KLA's outside counsel regarding various option grant issues to support its contention

22   that Ms. Berry "acknowledged that repricing executive stock options by using an earlier grant
     date with a lower price would result in KLA having to take 'a charge to its P&L.'" In the portion

23   on which the SEC relies, Ms. Berry informed outside counsel about discussion from a part of a
     KLA Board meeting from which it appears she had been excused. Request for Judicial Notice

24   ("RJN"), Ex. H at KLA-SEC 000133. The verbatim text of the statement, without any
     "interpretation" or "inference," is: "Ken Levy presented to each of the Board members a

25   compromise that would not cost the company a charge to its P&L (if we were to have used the
     October 19 date, the charge would been approximately $3.5 million)." *Id.* at KLA-SEC 000134.

26   This sentence, apparently reporting on what Mr. Levy (KLA's then-Chairman) told her he had
     said in executive session (*see id.* at KLA-SEC 000133 ("Later Ken explained to me …")), hardly

27   shows Ms. Berry's "admitted understanding" (Opp. at 15) on any subject. If anything, it reflects
     Ms. Berry's understanding that the KLA Board was making options grant decisions so as to

28   comply with applicable accounting principles, which in turn defeats any inference of scienter.

1    It is ironic that the SEC castigates Ms. Berry for purportedly "div[ing] into the underlying

2    evidence" (Opp. at 16 n.7), then itself spends 2-3 pages discussing the documents it selectively

3    quoted from, but did not attach to, its Complaint (*id*. at 15-17).  Contrary to the SEC, Ms. Berry

4    does not "advocate the meticulous weighing of 'inferences'" (*id*. at 1), nor does the Court need to

5    do so in order to grant her Motion.  Rather, Ms. Berry has asked the Court to apply the well-

6    established incorporation by reference doctrine, which expressly authorizes the Court to consider

7    on a motion to dismiss the entirety of documents whose contents are alleged in the complaint.  *In*

8    *re Stac Elec. Sec. Litig*., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).  *See generally* RJN.

9    Perhaps because it is unable to plead any *facts* to show Ms. Berry's scienter, the SEC falls

10   back (Opp. at 11) to implying that "backdating" is inherently fraudulent, relying chiefly on *In re*

11   *CNET Networks, Inc. Deriv. Litig.*, 483 F. Supp. 2d 947, 956 (N.D. Cal. 2007).  The SEC

12   misleadingly quotes from *CNET*, which actually dismissed the complaint in question.

13   Immediately preceding the sentences the SEC quotes, the *CNET* court stated that "determining

14   the correct measurement date depends on the facts" and that there is the "possibility of innocent

15   error – using an incorrect measurement date to price the options with no intent to find an

16   advantageously low price."  *Id*.  Thus, *CNET* stands for no more than the innocuous proposition

17   that backdating is fraudulent when it "is done to avoid recognizing compensation expense."  *Id*.

18   The SEC has not alleged any facts to support any such allegation against Ms. Berry.

19        **2.      The SEC Has Not Pled That Ms. Berry Made An Actionable**
             **Misstatement**

20   Ms. Berry demonstrated that the SEC's Complaint fails to allege sufficient facts that Ms.

21   Berry made an actionable misstatement.  MTD at 15-17.  Despite devoting considerable space in

22   its Opposition to its allegations that KLA's and Juniper's public filings contained materially false

23   financial statements – an issue Ms. Berry did not ask the Court to consider on her Motion – the

24   SEC remains unable to point to any actionable misstatement by Ms. Berry.  In its Opposition (at

25   5), it references its allegation that Ms. Berry signed two KLA Form S-8 registration statements

26   "which incorporated the false financial statements."  Compl. ¶ 39.  As Ms. Berry explained, such

27   bare "incorporation" allegations are insufficient to state a claim.  MTD at 17 n.13 (citing *In re*

28

1   *Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 2005 WL 3704688, at *10-12 (S.D. Tex. Dec. 5,

2   2005)).  Tellingly, the SEC does not address, much less refute, this point or this decision in its

3   Opposition.  The SEC also takes impermissible liberties with its own allegations, citing ¶¶ 61-67

4   for the proposition that Ms. Berry "often signed" alleged fraudulently misstated Juniper public

5   filings and ¶¶ 62-67 of the Complaint for the proposition that she "signed the company's

6   registration statements."  Opp. at 7-8.  There is not a single allegation in any of those paragraphs

7   that Ms. Berry signed any document or public filing.

8            Not surprisingly, therefore, the SEC falls back on its allegations that Ms. Berry

9   "reviewed," "discussed," or "prepared," or "finalized" the companies' 10-K, 10-Q, and 8-K

10  filings.  Opp. at 13.  Such allegations do not state a claim that Ms. Berry herself made a false or

11  misleading statement or omission.  The SEC has not cited any case in which a corporate insider's

12  mere review or the like – without signing a filing or making a public statement – was deemed

13  sufficient.  In all of the cases it cites (*see* Opp. at 12), the defendants actually signed the allegedly

14  false SEC filings.  Thus, the SEC's reliance on *Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th

15  Cir. 2000), for the proposition that it need not allege specific statements made by Ms. Berry so

16  long as it has alleged her "substantial participation or intricate involvement in the preparation of

17  fraudulent statements" (Opp. at 12) is misplaced.  In *Howard*, the Ninth Circuit held that a CEO's

18  signature on a filing containing an allegedly false and misleading financial statement, when

19  coupled with scienter on the CEO's part, was sufficient to demonstrate that the officer made the

20  statement.  228 F.3d at 1061.  This Court put it equally directly in *Baxter*, another case on which

21  the SEC improperly relies for its position:  "a corporate officer's signature on the document

22  containing the alleged false and misleading statements, when coupled with scienter on the part of

23  the officer, is sufficient to show that he made the statement."  2007 WL 2013958, at *6.[12]  Here,

---

24  [12] Citing *Baxter*, the SEC asserts that it is not necessary to attribute particular fraudulent conduct
    to each defendant when corporate fraud is alleged.  Opp. at 12.  But, this Court there held that,
25  despite the difficulty of attributing particular fraudulent conduct to each defendant, even the SEC
    must include allegations describing "the roles of the individual defendants in the alleged
26  misrepresentations."  2007 WL 2013958, at *6.  The SEC passed that test in *Baxter* because it
    specifically alleged that the defendant, who was CFO and Vice President of Finance, with
27  knowledge, directed the company's controller to reclassify certain balances to conceal them from
    auditors and signed misstated Forms 10-Q and 10-K.  The SEC has made no such specific
28  allegations against Ms. Berry.

DEFENDANT BERRY'S REPLY ISO MOTION TO
DISMISS THE COMPLAINT
Case No.  5:07-cv-04431 RMW HRL

1    the SEC has not pled either prong of this test, and therefore has not pled that Ms. Berry made any

2    statement for purposes of its § 10(b) claim.[13]

3        Moreover, the SEC's vague allegations fail Rule 9(b).  The SEC does not allege Ms.

4    Berry's purported role with respect to any particular filing or whether she was involved in the

5    review, etc., of the particular statements that allegedly rendered the filings false.  The SEC

6    illogically leaps from its vague allegations that Ms. Berry "reviewed," "discussed," "finalized"

7    and/or "prepared" SEC filings containing the alleged materially misleading statements to a bald

8    assertion that Ms. Berry was therefore "the corporate officer responsible for the preparation of the

9    companies' public filings who also knew about the stock option program and the backdating

10   scheme" and that, "as a consequence, the misrepresentations contained in each of the [SEC

11   filings] were Berry's own."[14]  Opp. at 13.  Notably, however, the Complaint nowhere alleges,

12   with particularity or otherwise, that Ms. Berry was "the corporate officer responsible for the

13   preparation of the companies' public filings."  In fact, both companies had accounting and

14   finance departments explicitly charged with preparing and reviewing financial statements.  Nor

15   does the SEC cites any authority for its claim that "[w]hen defendant reviewed, discussed,

16   prepared, finalized, or signed these various filings, it was her responsibility to ensure that this

17   material information was not misstated or omitted."  Opp. at 13.  Under this theory, any person

18   who has any role, no matter how marginal, in the preparation of SEC filings and public

19   disclosures would be under such a duty and therefore primarily liable.  If this is so, why did the

---

20   [13] The other cases the SEC cites are equally inapposite.  *In re Zoran Corp. Deriv. Litig.,* 511 F.
21   Supp. 2d 986, 1011 (N.D. Cal. 2007), held that the defendant CEO and CFO could be liable for
     knowingly signing false and misleading financial statements and Sarbanes-Oxley ("SOX")
22   certifications when, under SOX, they were responsible for the accuracy of the statements they
     signed.  *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996), held that defendants could be
23   liable for public statements they made to mislead analysts.  And, *SEC v. Fehn*, 97 F.3d 1276 (9th
     Cir. 1996), involved only aiding and abetting liability, not whether a defendant can be primarily
24   liable for omissions with respect to statements (s)he did not make.

25   [14] These "pleading by position" allegations are insufficient to establish actual knowledge or to
     comport with Rule 9(b).  *See In re Tibco Software, Inc.*, 2006 WL 1469654, at *28 (N.D. Cal.
26   May 25, 2006) (plaintiffs' "conclusory allegations that 'defendants were involved in drafting,
     producing, reviewing and/or disseminating the false and misleading statements,' and that they
27   'participated in drafting, preparation and/or approval of the various public and shareholder and
     investor reports'" were insufficient); *Morgan v. Prudential Group, Inc.*, 81 F.R.D. 418, 425
28   (S.D.N.Y. 1978) ("participation in drafting" allegations insufficient even for aiding and abetting).

DEFENDANT BERRY'S REPLY ISO MOTION TO
DISMISS THE COMPLAINT
Case No. 5:07-cv-04431 RMW HRL

1   SEC bring an action only against Ms. Berry and not also against the untold number of "others" at

2   both companies whom it alleges were involved in the purported schemes?

3              **C.    The SEC's Aiding And Abetting Claims Should Be Dismissed**

4              The SEC does not dispute (*see* Opp. at 18-19) Ms. Berry's showing that, to sufficiently

5   plead its aiding and abetting claims, it must allege specific facts to demonstrate both Ms. Berry's

6   *actual knowledge* of her role in the purported primary violation and her *substantial assistance* in

7   it.  MTD at 17-20.  As to actual knowledge, the SEC in its Opposition nowhere addresses the

8   critical shortcomings of its Complaint:  its failure to allege that Ms. Berry either (i) understood

9   the accounting ramifications of using historical options prices; or (ii) was ever aware that KLA or

10  Juniper were not properly accounting for their option grants.  *Id.* at 17-19.  Further, the SEC

11  offers no particularized facts to show that Ms. Berry ever provided substantial assistance in the

12  commission of the alleged primary violations.  MTD at 19-20.  Though it labels Ms. Berry the

13  "prime mover" in both companies' alleged fraudulent schemes (Opp. at 19 (emphasis deleted)), it

14  points to no alleged facts that, if proven, would show that she had a "conscious intent" to assist

15  the purported primary violation.  *Tambone*, 417 F. Supp. 2d at 136-37.[15]

16             Here, the SEC does not and cannot even allege that Ms. Berry knew of the accounting

17  irregularities, let alone that she was aware of some purported scheme to conceal them and had a

18  "conscious intent" to further it.  Instead, the SEC simply incants in conclusory fashion that Ms.

19  Berry "knew of important information about backdating that rendered the statements made by

20  both companies in the Forms 10-K, 10-Q, 8-K, and in proxy and registration statements

21  materially misleading" and that Ms. Berry had a "hand in preparing, reviewing, finalizing or

22  signing such documents."  Opp. at 19.  But neither in its Complaint nor in its Opposition does the

23  SEC specify how that unidentified "important information" would have alerted Ms. Berry that a

24  _____

25  [15] In her Motion (at 18 n.14), Ms. Berry noted that the SEC's failure to charge KLA with fraud requires dismissal of the SEC's Second Claim for Relief to the extent the SEC alleges that she aided and abetted KLA's purported fraud.  Ms. Berry cited two cases dismissing SEC aiding and

26  abetting claims for this very reason.  In response, the SEC asserts – without citation to any supporting authority and without even acknowledging the existence of, much less attempting to

27  distinguish, the two cases Ms. Berry cited – that "claims against other persons are irrelevant to Berry's liability."  Opp. 20 n.10.  The Court should reject this peremptory assertion and dismiss

28  the SEC's claim against Ms. Berry for aiding and abetting KLA's purported fraud.

1    compensation expense was required.[16]  At bottom, the SEC's theory is no more than that Ms.

2    Berry "must have known" that the use of historical grant dates necessarily required a

3    compensation charge, a theory that is wrong as a matter of GAAP and in any event a plainly

4    insufficient basis for alleging *actual knowledge*.[17]

5           **D.     The SEC's Other Non-Fraud Claims Should Be Dismissed**

6           The SEC's claims for alleged violations of § 13(b)(5) of the Exchange Act, Rule 13b2-1,

7    and §§ 17(a)(2) and (3) of the Securities Act should be dismissed.  The SEC concedes that §

8    13(b)(5) expressly requires knowledge.  Opp. at 19.  The § 13(b)(5) claims against Ms. Berry also

9    clearly "sound in fraud" and are governed by Rule 9(b)'s particularity requirements.  *SEC v.*

10   *Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 727-28 (D.N.J. 2005).  Here, for the reasons stated

11   above and in her Motion (at 20-21), the SEC has failed to allege that Ms. Berry *knowingly*

12   violated § 13(b)(5) and, in any event, it has also failed to identify with Rule 9(b) particularity

13   what controls were insufficient or how Ms. Berry circumvented them.

14          The Rule 13b2-1 allegations also should be dismissed.  Though the SEC goes to great

15   lengths to argue that Rule 13b2-1 does not require scienter (Opp. at 19-20 & n. 9), it never

16   addresses or disputes the fact that, because the Rule "sounds in fraud," the SEC is required to

17   plead these allegations with Rule 9(b) particularity.  MTD at 20 & n.15.  To the contrary, the SEC

18   acknowledges that its non-fraud claims are "[r]elated" to its fraud claims.  Opp. at 18 (emphasis

19   deleted).  Here, the Complaint fails to plead with particularity that or how Ms. Berry falsified

20   specific books and records, and the Opposition merely asserts – without citing any allegation in

---

21   [16] The SEC relies exclusively on *Fehn*, 97 F.3d at 1295, to support its claim that Ms. Berry
22   "knowingly" aided and abetted fraud.  But, in *Fehn*, there was ample evidence of actual
     knowledge that is missing here:  the Court of Appeals expressly found that the defendant, a
23   seasoned securities lawyer, "became aware that [the company] was not in compliance with certain
     reporting requirements" but nevertheless edited and approved SEC filings that he knew did not
24   contain the required disclosures.  *Id.* at 1281.  Here, the SEC has not alleged any facts to show
     Ms. Berry's actual knowledge of false or misleading public statements.

25   [17] *See, e.g., Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 956-57 (7th Cir. 2004) (SEC must
     present facts to show that the alleged aider and abettor "was, in fact, aware that disclosure … was
26   required" to satisfy knowledge requirement); *K & S P'ship v. Continental Bank*, 952 F. 2d 971,
     977 (8th Cir. 1991) (plaintiff must "demonstrate actual awareness") (quoting *Woods v. Barnett*
27   *Bank of Fort Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985)); *Renovitch v. Kaufman*, 905 F.2d
     1040, 1047 (7th Cir. 1990) (plaintiff "may not rest on a bare inference that the defendant 'must
28   have had' knowledge of the facts").

DEFENDANT BERRY'S REPLY ISO MOTION TO
                                                                    DISMISS THE COMPLAINT
                                                                    Case No.  5:07-cv-04431 RMW HRL

1  the Complaint – that "Berry relied principally on the falsification of corporate records – the false

2  dating of stock option grants."  Opp. at 20.  Such assertions do not meet the threshold

3  requirements of Rule 9(b).  *See SEC v. Orr*, 2006 WL 542986, at *15 (E.D. Mich. Mar. 6, 2006)

4  (SEC's "general assertion" that alleged violations were "at Orr's direction" was "insufficient to

5  meet the particularity requirements of FRCP 9(b)").

6       At all events, the § 13(b)(5) and Rule 13b2-1 charges against Ms. Berry cannot stand in

7  light of the SEC's failure to charge either KLA or Juniper with such violations.  It is simply

8  incongruous for the SEC to maintain that Ms. Berry falsified those companies' books and records

9  when it did not charge the companies themselves with falsified books and records.  *See supra*

10  n.15; MTD at 21 & 18 n.14.

11      The SEC has also failed to satisfactorily plead a violation of §§ 17(a)(2) or (3) of the

12  Securities Act.  The only offerings with which the SEC alleges Ms. Berry had any direct or

13  indirect involvement were KLA offerings in 1998.  Compl. ¶ 39.  The SEC, however, declined to

14  charge KLA under § 17(a) for these offerings and, therefore, cannot fairly charge Ms. Berry with

15  the same.  *See supra* n.15; MTD at 21-22 & 18 n.14.  While itself overlooking this point, the SEC

16  responds that Ms. Berry "overlooks" ¶ 67 of the Complaint, which mentions six allegedly false

17  Juniper registration statements "during Ms. Berry's tenure as Juniper's General Counsel."  Opp.

18  at 21.  But, unlike the two KLA registration statements that the SEC alleges Ms. Berry signed, the

19  SEC does not allege that Ms. Berry signed, helped to prepare, or had any involvement in the

20  Juniper registration statements other than to say, in wholly conclusory fashion, that she

21  "reviewed" them.  Compl. ¶ 67.  The SEC's request to apply § 17(a) under these circumstances

22  must be denied; Section 17(a) "is not flexible enough to be stretched that far."  *SEC v. Todd*, 2007

23  WL 1574756, at *2 (S.D. Cal. May 30, 2007) (dismissing § 17(a) claims where "there was no

24  evidence that defendant" signed the registration statement or "was involved in its preparation").

25      With specific regard to its § 17(a)(2) claim for allegedly "obtain[ing] money or property

26  by means of any" material false statement or omission, the SEC observes that it has alleged that

27  Ms. Berry exercised certain stock options she received and sold some shares she received based

28  on her exercises of those options.  Opp. at 21 (quoting Compl. ¶ 71).  But, as Ms. Berry pointed

DEFENDANT BERRY'S REPLY ISO MOTION TO
DISMISS THE COMPLAINT
Case No. 5:07-cv-04431 RMW HRL

1   out in her Motion (at 13-14) – *and as the SEC nowhere disputes* – the SEC never alleged that Ms.

2   Berry ever exercised options from any alleged "backdated" grant or that the options she did

3   exercise (and any shares she sold from those exercises) resulted from "backdated" grants.  Thus,

4   the SEC has failed to allege that Ms. Berry received any money or property "by means of" any

5   material false statement or omission she made.  And, even if scienter is not required for claims

6   under §§ 17(a)(2) or (3), the SEC has nevertheless failed to allege Ms. Berry's negligence.  Ms.

7   Berry discharged her legal duties responsibly and reasonably relied on the judgments of internal

8   accounting and finance personnel for stock options accounting as well as outside counsel and

9   auditors.  *See SEC v. Fitzgerald*, 135 F. Supp. 2d 992, 1028 (N.D. Cal. 2001) (requiring the SEC

10  to show that defendants failed to conform with the standard of care a reasonable underwriter

11  would exercise).  The SEC's generic reference to Ms. Berry as a "gatekeeper" (Opp. at 19) cannot

12  disguise the absence of any alleged facts that would establish that Ms. Berry's professional duties

13  somehow included accounting and financial statement reporting.

14  **E.    Most Of The SEC's Requested Relief Is Time Barred**

15  Relying chiefly on *SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993), the SEC labels Ms.

16  Berry's arguments regarding the statute of repose under 28 U.S.C. § 2462 "nonsensical."  Opp. at

17  21.  But *Rind* never addressed § 2462; it involved the then-applicable statute of limitations for

18  private actions.  Following *Rind*, courts have frequently invoked § 2462 to dismiss time-barred

19  SEC requests for relief.  *E.g.*, *SEC v. Jones*, 476 F. Supp. 2d 374, 383 (S.D.N.Y. 2007); *Johnson*

20  *v. SEC*, 87 F.3d 484, 492 (D.C. Cir. 1996).

21  Once again creating a straw man, the SEC asserts, citing MTD at 22, that Ms. Berry

22  requests that the Court dismiss *allegations* from the complaint.  Opp. at 24.  However, Ms. Berry

23  nowhere made such a request at that page or elsewhere.  Rather, she expressly asked that "the

24  SEC's requests for relief … be barred under 28 U.S.C. § 2462 to the extent they are based on

25  conduct occurring before August 28, 2002."  MTD at 25.  Under applicable case law, this would

26  include, *inter alia*, *all* relief to which the SEC would be entitled based on its allegations

27  concerning KLA,[18] particularly given the punitive nature of this action (*see* MTD at 25).[19]  Far

28  _____
[18] As shown in Ms. Berry's Motion, under the circumstances of this case, § 2462 bars the SEC's

DEFENDANT BERRY'S REPLY ISO MOTION TO
DISMISS THE COMPLAINT
Case No. 5:07-cv-04431 RMW HRL

1    from being "premature and inappropriate on a motion to dismiss" (Opp. at 24), dismissing the

2    requests for relief based on conduct allegedly occurring at KLA pursuant to § 2462 would greatly

3    streamline discovery and, if necessary, the trial of this action if the Court were not to dismiss the

4    SEC's Complaint in its entirety.[20]  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)

5    (dismissal of claim based on one of multiple issues of law can "streamline litigation by dispensing

6    with needless discovery and factfinding"); *Miller v. Fortis Benefits Ins. Co.*, 363 F. Supp. 2d 700,

7    703 (D.N.J. 2005) (one of multiple claims may be subject to dismissal under 12(b)(6) based on

8    statute of limitations grounds).

9    **III.    CONCLUSION**

10       For the forgoing reasons, the Complaint should be dismissed with prejudice.

11   Dated: February 1, 2008           ORRICK, HERRINGTON & SUTCLIFFE LLP

12                                   /s/ MELINDA HAAG

13                              By:  MELINDA HAAG
                            Attorneys for Defendant

14                                 Lisa C. Berry

15

16

---

17   requests for civil penalties, injunctive relief, and an officer-and-director bar.  Contrary to the
SEC's suggestion (Opp. at 23), Ms. Berry did not argue that § 2462 bars the SEC's request for

18   disgorgement.  The SEC's disgorgement claim is barred by virtue of the fact that the SEC has not
pled that Ms. Berry received any unlawful *gains* or *profits* that are subject to disgorgement.  *See*

19   MTD 13-14; *Hateley v. SEC*, 8 F.3d 653, 655 (9th Cir. 1993).  The SEC never addressed, much
less refuted, this argument in its Opposition.

20   [19] The SEC asserts that Ms. Berry "never identified" the circumstances that make this action
punitive.  Opp. at 23.  To the contrary, she expressly identified them:  (i) the SEC has charged

21   only Ms. Berry even though it alleges that an unidentified number of "others" participated in the
alleged "backdating" schemes at KLA and Juniper; and (ii) the SEC has charged Ms. Berry with

22   aiding and abetting alleged securities violations by KLA when it did not even charge KLA with
the alleged primary violations.  MTD at 25.

23

24   [20] The SEC incorrectly relies on *FEC v. Williams*, 104 F.3d 237, 241 (9th Cir. 1996), to support
"equitable tolling" of § 2462's 5-year repose period.  In *Williams*, the Court of Appeals held that

25   § 2462 applies not only to civil penalties but to claims for injunctive relief (directly contrary to
the position the SEC takes here), rejected the application of the discovery rule to the running of §

26   2462's repose period, and ruled that, while "equitable tolling" theoretically applies to § 2462, it
does so only in limited circumstances not applicable there.  *Id.*  Following *Williams*, courts within

27   the Ninth Circuit have repeatedly declined to apply a discovery rule to extend § 2462's repose
period.  *U.S. v. Taigen*, 303 F. Supp. 2d 1129, 1143-4 (D. Idaho 2003); *U.S. v. Hallmark Homes*,
2003 WL 23219807, at *2 (D. Idaho Sept. 29, 2003).  To our knowledge, no court has applied

28   *Williams* to extend the § 2462 repose period due to equitable tolling.

DEFENDANT BERRY'S REPLY ISO MOTION TO
DISMISS THE COMPLAINT
Case No.  5:07-cv-04431 RMW HRL