# EXHIBIT 7

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 23219807 (D.Idaho)  
(Cite as: Not Reported in F.Supp.2d)

C  
U.S. v. Hamllmark Homes, Inc.  
D.Idaho,2003.  
Only the Westlaw citation is currently available.  
United States District Court,D. Idaho.  
UNITED STATES OF AMERICA, Plaintiff,  
v.  
HALLMARK HOMES, INC., et al., Defendants.  
No. CV01-432-N-EJL.

Filed Aug. 22, 2001.  
Sept. 29, 2003.

Nicholas J Woychick, U.S. Attorney's Office, Boise, ID, Marta Campos, U.S. Dept of Justice, Civil Rights Division, Washington, DC, Joan A Magagna, Timothy J Moran, Ralph F Boyd, Jr, Rigel C Oliveri, U.S. Dept of Justice, Civil Rights Division, Washington, DC, for USA, plaintiff.  
John F Magnuson, Coeur d'Alene, ID, Theresa L Kitay, Coughlin & Kitay, Norcross, GA, for Hallmark Homes, Inc., defendant.  
Robert E Covington, III, Hayden, ID, for Architects West, PA, defendant.  
Robert E Covington, III, (See above), for Kevin W Jester, defendant.  
John F Magnuson, Coeur d'Alene, ID, Theresa L Kitay, Coughlin & Kitay, Norcross, GA, for Hallmark Homes, Inc., cross-claimant.  
Robert E Covington, III, Hayden, ID, for Architects West, PA, cross-defendant.  
Robert E Covington, III, (See above), for Kevin W Jester, cross-defendant.

ORDER

LODGE, J.

*1 Plaintiff United States of America brings this action against Defendants Hallmark Homes, Inc., Architects West, P.A., and Kevin W. Jester (collectively, the "Defendants"), pursuant to the Fair Housing Act, as amended, 42 U.S.C. §§ 3601-3619 (the "Act"),[FN1] alleging that Defendants engaged in discriminatory housing practices. Specifically, Plaintiff alleges that Defendants failed to design and construct Creekside Meadows Apartments ("Creekside") in Coeur d'Alene, Idaho so as to be accessible to persons with disabilities, including persons using wheelchairs. Plaintiff now moves for summary judgment seeking, among other things, a determination that Defendants are liable under the Act. Defendants oppose Plaintiff's motion, and by way of cross motion, ask the Court to grant summary judgment in their favor after finding the Plaintiff's claims are barred by the applicable statute of limitations and/or certain affirmative defenses. The motions are now ripe. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.[FN2]

> FN1. The Fair Housing Act was originally enacted in 1968 and was then amended in 1988 to include "handicap" as a prohibited basis of discrimination. Unless noted otherwise, all references to the "Act" refer to the 1988 Act.
>
> FN2. Although the parties have requested oral argument on the motions for summary judgment, the parties have been afforded more than an adequate opportunity to present argument and evidence in the moving papers. For instance, in addition to opening briefs, responses, replies, affidavits and numerous exhibits, the parties have submitted a combined total of five supplemental filings. Therefore, the Court is confident that the record adequately reflects the respective position of each party. See Partridge v. Reich, 141 F.3d 920, 926 (9th Cir.1998) (holding that "a district court can decide [summary judgment] without oral argument if the parties .... ha[ve] had an adequate opportunity to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04431-RMW    Document 28-8    Filed 02/01/2008    Page 3 of 10

Not Reported in F.Supp.2d                                                                              Page 2
Not Reported in F.Supp.2d, 2003 WL 23219807 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d)

provide the trial court with evidence and a memorandum of law").

Background

The Act requires that "covered multifamily dwellings" constructed after March 13, 1991 contain certain features to make them accessible to persons with disabilities. The Creekside development contains seven non-elevator buildings, with each building comprised of two two-story units and two single-story units. Construction of Creekside commenced in 1993, with the final Certificate of Occupancy issuing on August 5, 1996. There is no dispute that the fourteen single-story units are "covered multifamily dwellings" as defined by the Act. Therefore the single-story units, as well as the common use areas of the complex, are subject to the accessibility requirements of the Act.

On March 24, 1999, Intermountain Fair Housing Council ("IFHC") filed a complaint with the United States Department of Housing and Urban Development ("HUD") alleging that Creekside failed to comply with the Act's design and construction accessibility requirements. On June 25, 2001, HUD issued a Charge of Discrimination. Pursuant to 42 U.S.C. § 3612(a), Defendants Architects West, P.A. and Jester elected to have the matter heard in federal court, rather than in the HUD administrative process. On August 22, 2001, the United States initiated this action and with respect to Defendants' election, asserted a First Claim for Relief on behalf of "aggrieved person" IFHC pursuant to 42 U.S.C. § 3612(o). The United States also asserted a Second Claim for Relief on its own behalf pursuant to 42 U.S.C. § 3614(a). As to both claims, Plaintiff alleges that Defendants "have designed and constructed Creekside in such a manner that the public use and common use portions are not readily accessible to and usable by individuals with disabilities," that the "doorways to the bedrooms and the master bathrooms ... are not sufficiently wide to allow passage by persons with disabilities who use wheelchairs," and that "the fourteen covered units have [numerous] deficiencies of adaptive design."(Compl.¶¶ 22, 27).

Discussion

*2 Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.*Summers v. A. Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir.1997). Many, if not all, of the legal issues raised by the parties' motions have been resolved by this Court in a decision issued in *United States v. Taigen & Sons, et. al.,* Case No. CV 01-337-N-EJL (hereinafter *"Taigen"* ), wherein the Court approved and adopted the Report and Recommendation issued by Chief Magistrate Judge Larry M. Boyle (8/22/03, docket no. 80 (hereinafter *"Taigen* R & R")). Further, consistent with the legal determinations made in *Taigen,* the presiding judge in yet another District of Idaho case reached the same conclusions when presented with similar legal issues. *See United States v. Pacific Northwest Electric, Inc., et. al,* Case No. CV 01-019-S-BLW (Memorandum, Decision, and Order, 3/19/03, docket no. 289 (hereinafter *"PNE"* )). Rather than repeat the detailed legal analysis set forth in those decisions, the Court will in some instances cite to those orders for the proposition relied upon in resolving the identical legal question presented here.

Defendants' Motions for Summary Judgment[FN3]

FN3. Defendants Architects West, P.A. and Jester filed a separate Motion for Summary Judgment but relied upon the memorandum filed by Defendant Hallmark Homes. Furthermore, the grounds explicitly identified in the Motion for Summary Judgment filed by Defendants Architects West, P.A. and Jester, namely statute of limitations and pattern or practice/matter of general public importance, are also grounds recited by Hallmark in support of its Motion for Summary. Accordingly, the Court will analyze the motions together.

A. Statute of Limitation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1. Continuing Violation

Defendants contend that both of Plaintiff's claims for relief are barred by the applicable statute of limitations. In response, Plaintiff first argues that the design and construction of Creekside constitutes a "continuing violation" of the Act that is not subject to the statute of limitations. "Under the continuing violation doctrine, a plaintiff's complaint will not be time-barred if the defendant's related wrongful acts continue into the statute of limitations time frame."*Moseke v. Miller and Smith, Inc.,* 202 F.Supp.2d 492, 500 n. 10 (E.D.Va.2002). The Court finds, however, that while the effects of Defendants' design and construction may be continuing today, there have been no acts since completion of the Creekside complex, on August 5, 1996, that could give rise to a violation of the Act. *SeeMoseke,* 202 F.Supp.2d at 502-09;*PNE* at 6-13; *Taigen* R & R at 10-16. Therefore, the Court concludes that the continuing violation doctrine is not applicable for purposes of this design and construction lawsuit.

2. Discovery Rule

a. First Claim for Relief

Plaintiff next argues that its claims were timely filed pursuant to the "discovery rule." "The discovery rule ... permits a plaintiff to raise a claim outside the statutory time frame upon [the] discovery of a defendant's wrongful act."*Moseke,* 202 F.Supp.2d at 500 n. 10. Applicability of the discovery rule is dependent, in part, on the wording of the relevant statute of limitations. With regard to Plaintiff's First Claim for Relief, the controlling provision required IFHC, as an aggrieved person, to file its complaint with HUD "not later than one year after an alleged discriminatory housing practice has occurred or terminated."42 U.S .C. § 3610(a)(1)(A)(i). This language is not susceptible to an interpretation that permits incorporation of the discovery rule. *Cf.Moseke,* 202 F.Supp.2d at 509. Therefore, the discovery rule does not apply to Plaintiff's First Claim for Relief, and because IFHC did not file its administrative complaint pursuant to 42 U.S.C. § 3610(a) until March 24, 1999, more than one year after completion of the Creekside complex on August 5, 1996, the First Claim for Relief is untimely and barred by the statute of limitations. *SeeMoseke,* 202 F.Supp.2d at 510. Thus, the Court will grant summary judgment in favor of Defendants on this claim.

b. Second Claim for Relief

i. Civil Penalties

*3 With respect to Plaintiff's Second Claim for Relief, the provision authorizing the initiation of a civil action provides that the Attorney General of the United States may do so whenever there is

reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this title, or that any group of persons has been denied any of the rights granted by this title and such denial raises an issue of general public importance....

42 U.S.C. § 3614(a). Because the above provision does not have a specific statute of limitations attached to it, the statute of limitations controlling such a civil action varies according to the requested remedy. Here, Plaintiff first asks for civil penalties. The applicable statute of limitation provides that an action seeking civil penalties must be "commenced within five years from the date when the claim first accrued."28 U.S.C. § 2462. In construing when a "claim first accrued," the Court finds that a cause of action for civil penalties under the Act must be commenced within five years of the date of the alleged violation, which is the date that the design and/or construction is completed. *PNE* at 13-18; *Taigen* R & R at 16-19. Accordingly, the discovery rule does not operate to extend the time for filing a cause of action for civil penalties. *PNE* at 13-18; *Taigen* R & R at 16-19.

Design and construction of Creekside was completed by August 5, 1996. Because Plaintiff did not file this action for civil penalties until August 22, 2001, more than five years after completion of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Creekside complex, it is barred by the applicable statute of limitations and Defendants are entitled to summary judgment regarding any civil penalties.

ii. Compensatory Damages

Plaintiff also seeks compensatory damages. Unlike the statute of limitations governing civil penalties, the statute of limitations applicable to compensatory damages, while only three years in length, is subject to an explicit discovery rule exception. See 28 U.S.C. § 2415(b). Pursuant to 28 U.S.C. § 2416(c), the three year limitations period established by § 2415(b) shall exclude "all periods during which ... facts material to the right of action are not known and reasonably could be known by an official of the United States charged with the responsibility to act in the circumstances."

Here, under an interpretation of § 2416(c) most favorable to Defendants, an official of the United States charged with responsibility to act might reasonably have known of facts material to the right of action when IFHC filed its administrative complaint with HUD on March 24, 1999. This lawsuit was filed on August 22, 2001, within three years of the administrative filing. Thus, Plaintiff's action for compensatory damages is timely, and Defendants' motions for summary judgment must be denied as to this matter.[FN4]

> FN4. Because even under an interpretation most favorable to Defendants, the Plaintiff's claim for compensatory damages is timely, the Court need not resolve with certainty the question of when the government knew or reasonably should have known of facts material to the right of action.

iii. Injunctive Relief

*4 Defendants concede that no statute of limitations applies to bar the action for injunctive relief. Defendants argue, however, that "preventive" injunctive relief is not an appropriate remedy because (1) the alleged violations at issue occurred in the past, and (2) Defendants could not comply with any injunction since they no longer own or control Creekside.

Pursuant to 42 U.S.C. § 3614(d)(1), the Act provides that a court may award "preventative relief," but also specifically states that a court "may award such other relief as the court deems appropriate...." Thus, the relief available is broad, is not limited to preventative relief, and could include a order that directs Defendants to deposit money into a fund for retrofitting Creekside and/or to seek the cooperation of the current owner in retrofitting the property. See United States v. Jamestown Center-In-The-Grove Apartments, 557 F.2d 1079, 1080 (5th Cir.1977); PNE at 29-30; Taigen R & R at 25-26. The Court will therefore deny Defendants summary judgment on Plaintiff's claim for injunctive relief.

B. Lack of Appropriate Foundation for Second Claim for Relief

Having determined that Plaintiff's requests for compensatory damages and injunctive relief under the Second Claim for Relief are not barred by the applicable statute of limitations, the Court next considers Defendants' contentions that there is no appropriate foundation for Plaintiff's Second Claim for Relief.

1. Authority of Attorney General to Bring Second Claim for Relief

Defendants first note that in the Second Claim for Relief Plaintiff asserts the original jurisdiction of the Attorney General pursuant to 42 U.S.C. § 3614(a). Defendants then argue that because this action was first filed in federal court after Defendants Architects West, P.A. and Jester elected under § 3612(a) to remove the First Claim for Relief from the HUD administrative process, "the United States has used the fortuitous event of an election by some of Defendants to bootstrap an inappropriate and unfounded claim under 42 U.S.C. § 3614(a), which is not proper."(Defs.' Mem of Supplemental Authority

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

at 6).

However, nothing in the Act or case law supports the limitation Defendants seek to impose on the Attorney General's authority to file an action pursuant to *both* § 3612 and § 3614(a) after a party elects to have an aggrieved person's complaint heard in federal court. Consequently, courts routinely entertain claims under both provisions. *See, e.g.Park Place Home Brokers v. P.K. Mobile Home Park,* 773 F.Supp. 46, 48 (N.D.Ohio 1991). This asserted basis, then, will not support the entry of summary judgment on Plaintiff's Second Claim for Relief.

2. Jurisdiction under § 3614(a)

Defendants next argue that Plaintiff's have failed to come forward with any colorable evidence sufficient to establish the required bases for jurisdiction under § 3614(a). As set forth above, the text of § 3614(a) provides the Attorney General with authority to file a civil action where (1) a person or group of persons has engaged in a pattern or practice of resistance to the rights granted by the Act, and/or (2) a group of persons has been denied any rights granted by the Act and such denial raises a matter of general public importance. Thus, the Attorney General may bring a discriminatory housing action based on a "pattern or practice" theory and/or a theory of "general public importance."

a. Pattern or Practice

*5 To establish a pattern or practice, Plaintiff must do more than submit proof of discrimination; it must show "by a preponderance of evidence that ... discrimination was the company's standard operating procedure, the regular rather than the unusual practice."*United States v. Garden Homes Management, Corp.,* 156 F.Supp.2d 413, 420 (D.N.J.2001). Defendants contend that the facts set forth in the record show that, at most, any discrimination was isolated or sporadic and not the "standard operating procedure" of Defendants.

However, "there is no threshold number of incidents that must occur before the Government may initiate litigation" and therefore "each case must turn on its own facts."*Id.* at 420.For this reason, "[w]hether the evidence presented demonstrates a pattern or practice is ordinarily a question of fact for the jury,"*Id.*Likewise in this case, the Court finds that the size of the construction project at Creekside, the length of time it involved and the number of alleged violations, when considered together, present sufficient evidence to create a genuine issue of material fact as to whether Defendants engaged in a pattern or practice of discrimination. *SeePNE* at 19-20; *Taigen* R & R at 7-8. Accordingly, Defendants' motions for summary judgment must be denied on this ground.

b. General Public Importance

Pursuant to § 3614(a), Plaintiff also asserts that Defendants' housing denied rights to a group of persons, raising a matter of general public importance. Defendants contend that this theory is unsupportable because Plaintiff fails to identify any person with a disability that has been a victim of the Defendants' allegedly discriminatory conduct. However, "nothing in the Act demands, or even implies, that damages are proper only for people the government knows about at the time it files its complaint."*United States v. Balistrieri,* 981 F.2d 916, 935 (7th Cir.1992), *cert. denied,*510 U.S. 812 (1993); *see alsoDavoll v. Webb,* 194 F.3d 1116, 1147-48 (10th Cir.1999) (stating that the government is "not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the ... discriminatory policy").

Furthermore, the Attorney General's determination that a matter raises an issue of general public importance has been consistently recognized as unreviewable by the courts. *See, e.g.,United States v. Reece,* 457 F.Supp. 43, 47 n. 10 (D.Mont.1978) ("The Attorney General's power to bring suit under 42 U.S.C. § 361[4] may be triggered either by a pattern or practice or an issue of general public importance. While the existence of a pattern or prac-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04431-RMW    Document 28-8    Filed 02/01/2008    Page 7 of 10

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 23219807 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d)

tice is generally a question of fact, courts have generally held that the determination of when an issue of general public importance is raised is left to the discretion of the executive branch."). Thus, the Plaintiff need not demonstrate nor must the court require evidence that an issue of general public importance exists as a prerequisite to the liability determination. *United States v. Northside Realty Associates, Inc.*, 474 F.2d 1164, 1168 (5th Cir.1973), *after remand,* 501 F.2d 181 (5th Cir.1974), *cert. denied,* 424 U.S. 977 (1976); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 125 n. 14 (5th Cir.1973), *cert. denied,* 414 U.S. 826 (1973); *United States v. University Oaks Civic Club,* 653 F.Supp. 1469, 1474 (S.D.Tex.1987); *United States v. Housing Authority of City of Chickasaw,* 504 F.Supp. 716, 726 (S.D.Ala.1980); *United States v. Youritan Construction Company,* 370 F.Supp. 643, 651 (N.D.Cal.1973).

*6 For this reason, as the Court considers the merits of Plaintiff's Motion for Summary Judgment below, it need not require proof on the issue of general public importance because a determination that Defendants have inadequately designed and constructed Creekside to serve persons with disabilities would necessarily also establish a denial of rights constituting a matter of "general public importance." *SeePNE* at 22 ("It is of course obvious that housing that is inadequately designed and constructed to serve persons with disabilities denies that class of persons rights granted by the Act ... [and] that 'denial raises an issue of general public importance.' " (quoting *United States v. Hartz Constr. Co.,* No. 97-C-8175, 1998 WL 42265 (N.D.Ill. January 28, 1998) (rejecting contention that the action had to be dismissed because the United States "failed to identify any group of persons denied a right granted by the" Act as a result of the defendants' alleged conduct))).

C. Summary

The Plaintiff's First Claim for Relief and the Plaintiff's request for civil penalties under the Plaintiff's Second Claim for Relief are barred by the applicable statute of limitations and Defendants are entitled to the entry of summary judgment in their favor as to these matters. Defendants' motions for summary judgment are denied as to all other aspects of Plaintiff's Second Claim for Relief.

Plaintiff's Motion for Summary Judgment

Plaintiff asserts that there are no material issues of fact regarding the Second Claim for Relief and that it is entitled to judgment as a matter of law on the issue of whether the ground floor apartments at Creekside, and common use areas of the complex, were designed and constructed in violation of the Act. In response, Defendants first assert several affirmative defenses.

A. Affirmative Defenses

1. Act's Compliance Standards Are Vague

Defendants argue that the standards for accessibility under the Act are vague and ambiguous and therefore unenforceable. Defendants note that to "pass constitutional muster, statutory enforcement by the federal government must involve clear principles."(Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 4).

The requirements of the Act, however, have been defined in several respects. First, pursuant to § 3604(f)(4): "compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people (commonly cited as "ANSI" A117.1) suffices to satisfy the requirements."Further, a builder or architect that does not wish to follow ANSI because these standards may exceed the Act's requirements, can look to the "Fair Housing Accessibility Guidelines," developed by HUD to describe the "minimum standards of compliance with the specific accessibility requirements of the Act."56 Fed.Reg. 9472, 9476-77 (Mar. 6, 1991). The Guidelines, while setting forth the "minimum standards," are not mandatory and so a builder or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04431-RMW   Document 28-8   Filed 02/01/2008   Page 8 of 10

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 2003 WL 23219807 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d)

architect may also choose to follow other accepted accessibility standards that meet the requirements of the Act. 42 U.S.C. § 3604(f)(5)(A).

*7 These detailed accessibility descriptions are more than sufficient to provide the "clear principles" necessary to inform a defendant of the design and construction requirements imposed by the Act. The Court, therefore, cannot agree that the Act is vague or ambiguous. *See Taigen* R & R at 31-32.

2. Duty to Inform

Defendants contend that they have submitted evidence sufficient to avoid summary judgment as to whether "HUD has properly educated and informed the parties it regulates about the specific provisions and interpretations of the accessibility requirements of Fair Housing Act."(Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 14). In this regard, Defendants argue that HUD has a statutory duty "to inform those it regulates [ ] what it expects of them."(*Id.* at 9).

HUD, however, has no legal duty to inform the Defendants in particular of the Act's requirement. As explained above, HUD issued Guidelines, in March of 1991, that set forth the minimum standards of compliance with the accessibility requirements of the Act. Defendants' ignorance of the law does not excuse liability. *See Jones v. United States,* 121 F.3d 1327, 1330 (9th Cir.1997) (concluding that publication of regulations in the Federal Register "is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance"), *cert. denied,* 523 U.S. 1121 (1998); *see also Morgan v. Secretary of Housing and Urban Dev.,* 985 F.2d 1451, 1461 (10th Cir.1993) (concluding that "ignorance of the law will not defeat liability," but it is a fact to consider in determining civil penalties); *Bennett v. Office of Workers' Comp, Programs,* 717 F.2d 1167, 1169 (7th Cir.1983) ("[P]ublication of regulations in the Federal Register has the legal effect of constructive notice of their contents to all who are affected thereby.").

Accordingly, the denial of Plaintiff's motion for summary judgment on this ground is not appropriate. *See Taigen* R & R at 32-35.

B. Limited Involvement

In addition to the arguments raised above, Defendants Architects West, P.A. and Jester contend that their limited involvement in the Creekside project precludes summary judgment on the issue of their liability. However, there is no dispute that Defendants Architects West, P.A. and Jester did participate to some extent in the design of the Creekside project. (Aff. of Kevin Jester at ¶¶ 5, 7, 8, 12, 13). As such, Defendants Architects West, P.A. and Jester had an independent, non-delegable duty to comply with the Act's requirements, and if violated, these Defendants may be held liable for denying individuals with disabilities the rights granted by the Act. *See PNE* at 19-20, 27-28.

C. Liability for Violations of the Act

Plaintiff contends that there is no genuine issues of material fact as to whether Creekside's common use areas and the fourteen single-story units violated the Act's accessibility requirements.[FN5] To support this proposition Plaintiff submits the declaration of William Endelman, an expert in accessibility compliance. Mr. Endelman notes that under the Act and Guidelines, a builder or architect must meet the following minimum requirements: (1) accessible and usable public and common use areas; (2) an accessible building entrance on an accessible route; (3) usable doors; (4) an accessible route into and through the covered dwelling unit; (5) light switches, electrical outlets, thermostats and other environmental controls in accessible locations; (6) reinforced walls for the installation grab bars; and (7) usable kitchens and bathrooms. (Pl's Mot. for Summ. J., Ex. A at 4). Mr. Endelman's analysis of each category results in a conclusion that in every instance Creekside violates the Act. (*Id.* at 6-13).

> FN5. As noted above, while there is a genuine issue of material fact as to whether

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04431-RMW   Document 28-8   Filed 02/01/2008   Page 9 of 10

Not Reported in F.Supp.2d                                                                                                              Page 8
Not Reported in F.Supp.2d, 2003 WL 23219807 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d)

Defendants are liable for a pattern or practice of discrimination pursuant to § 3614(a), there is no dispute that under § 3614(a)'s alternative theory of liability, violations of the Act would raise an issue of general public importance.

*8 Defendants contend that in reaching his conclusions Mr. Endelman improperly relies on the Guidelines and/or ANSI, which are not mandatory, to establish the Act's violations. However in every category Mr. Endelman not only noted variations from the Guidelines and/or ANSI but also noted that Defendants failed to comply with any recognized accessibility standard and, further, that for articulated reasons, in his professional opinion Creekside was not accessible or usable by persons with disabilities. This evidence, if uncontested, is sufficient to establish Defendants' liability in all categories.

In fact Defendants concede that for the most part Creekside does not comply with the Act's requirements. (*See, e.g.,* Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 7 ("Defendant Hallmark does not contend that Creekside Meadows in fact is completely compliant with the accessibility provisions of the [Act].")). Indeed, Defendant Hallmark has *admitted* to many of the violations. (Pl.'s Resp. to Def.'s Mem. of Supplemental Authority, Attach. (Hallmark's Resp. to Pl.'s First Set of Req. for Admis.)). However, with regard to the category concerning usable kitchens and bathrooms, and with regard to the location of electrical outlets, Defendants have raised issues of fact which preclude the entry of summary judgment as to these matters. (*See, e.g.,* Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 8-9).

D. Summary

Plaintiff's Motion for Summary Judgment will be denied on the Second Claim for Relief with respect to Defendant's liability for violation of the Act's design and construction requirements concerning usable kitchens and bathrooms and accessible location of electrical outlets. Plaintiff's Motion for Summary Judgment will be granted on the Second Claim for Relief with respect to Defendant's liability for all other violations of the Act's design and construction requirements.

ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is HEREBY ORDERED that

Defendants' Motions for Summary Judgment (docket nos. 46 and 54) are GRANTED in part and DENIED in part as follows:

1. Plaintiff's First Claim for Relief is DISMISSED as to all Defendants;

2. Plaintiff's claim for civil penalties under the Second Claim for Relief is DISMISSED as to all Defendants; and

3. In all other respects, Defendants' motions for summary judgment are DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (docket no. 30) is GRANTED in part and DENIED in part as follows:

1. Summary Judgement is GRANTED in favor of Plaintiff and against Defendants on the question of whether violations of the Act raise an issue of general public importance;

2. Plaintiff's Motion for Summary Judgment is DENIED as to Defendants' liability for violations of the Act's requirements concerning usable kitchens and bathrooms and accessible location of electrical outlets; and

3. Plaintiff's Motion for Summary Judgment is GRANTED in all other respects as to the Defendants' liability for design and construction violations of the fourteen single-story units of the Creekside complex and the common use areas.

*9 IT IS FURTHER ORDERED that Plaintiff's Motion for Oral Argument (docket no. 69) is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04431-RMW     Document 28-8     Filed 02/01/2008     Page 10 of 10

Not Reported in F.Supp.2d                                                                                   Page 9
Not Reported in F.Supp.2d, 2003 WL 23219807 (D.Idaho)
**(Cite as: Not Reported in F.Supp.2d)**

DENIED.

D.Idaho,2003.
U.S. v. Hamllmark Homes, Inc.
Not Reported in F.Supp.2d, 2003 WL 23219807 (D.Idaho)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.