1   MELINDA HAAG (STATE BAR NO. 132612)
    mhaag@orrick.com
2   JAMES A. MEYERS (ADMITTED *PRO HAC VICE*)
    jmeyers@orrick.com
3   JAMES N. KRAMER (STATE BAR NO. 154709)
    jkramer@orrick.com
4   NANCY E. HARRIS (STATE BAR NO. 197042)
    nharris@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
6   405 Howard Street
    San Francisco, CA  94105-2669
7   Telephone:      +1-415-773-5700
    Facsimile:      +1-415-773-5759
8

    Attorneys for Defendant
9   Lisa C. Berry

10
                     UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                          SAN JOSE DIVISION
13

14
    SECURITIES AND EXCHANGE              Case No.  C 07 4431 RMW HRL
15  COMMISSION,
                                         **LISA C. BERRY'S NOTICE OF**
16              Plaintiff,               **MOTION AND MOTION TO**
                                         **DISMISS THE FIRST AMENDED**
17        v.                             **COMPLAINT AND MEMORANDUM**
                                         **OF POINTS AND AUTHORITIES IN**
18  LISA C. BERRY,                       **SUPPORT THEREOF**

19              Defendant.
                                         Date:        August 15, 2008
20                                       Time:        9:00 a.m.
                                         Courtroom:   6, Fourth Floor
21

22

23

24

25

26

27

28
                                         LISA C. BERRY'S MEMO  P&A ISO
                                                MOTION TO DISMISS FAC
                                                    C 07 4431 RMW HRL

1

# TABLE OF CONTENTS

2

Page

3   I.      INTRODUCTION ................................................................................. 1

4   II.     PROCEDURAL HISTORY .................................................................. 3

5           A.   The SEC's Original Complaint And This Court's Order On Ms. Berry's
                 Motion To Dismiss .................................................................................. 3

6           B.   The SEC's First Amended Complaint ..................................................... 4

                 1.   Allegations Regarding KLA ............................................................ 4

7                2.   Allegations Regarding Juniper ........................................................ 5

8   III.    ARGUMENT ........................................................................................ 6

9           A.   The FAC Does Not Adequately Plead Ms. Berry's Primary Liability For
                 Any Alleged False Statement Or Omission ............................................ 6

10               1.   The SEC Has Failed To Allege That Ms. Berry Substantially
                      Participated In The Preparation Of Any Alleged Misstatement In
11                    Any Document She Did Not Sign ................................................... 7

12                    a.   KLA filings ......................................................................... 7

                      b.   Juniper filings .................................................................... 10

13               2.   The SEC Has Failed To Allege The Falsity Of Any Public Filing
                      That Ms. Berry Signed ................................................................. 11

14                    a.   The KLA Forms S-8 ........................................................ 11

15                    b.   The Juniper proxy statement notices and Forms S-8 ............ 12

16          B.   The SEC Fails To Plead "Scheme Liability" ........................................ 13

17               1.   The Supreme Court's Recent Decision in Stoneridge Confirms That
                      Scheme Liability Should Be Narrowly Construed ........................... 13

18               2.   The SEC Has Failed To Plead A Viable Scheme Liability Claim ........... 15

19                    a.   The SEC does no more than allege that Ms. Berry aided and
                           abetted the making of false statements by others ..................... 15

20                    b.   The SEC's allegations regarding the nature of the alleged
                           "scheme" do not satisfy Rule 9(b) .................................... 17

21                    c.   The SEC's allegations regarding Ms. Berry's conduct at
                           KLA do not satisfy the "in connection with" requirement .......... 18

22          C.   The SEC's FAC Fails To Adequately Plead That Ms. Berry Aided and
23               Abetted KLA's Or Juniper's Violations Of Filing Of False Proxy
                 Statements ............................................................................................. 19

24          D.   The SEC's Equitable Tolling Allegations Are Insufficient ................... 20

25               1.   The SEC Has Not Adequately Pled Fraudulent Concealment ................. 20

26                    a.   Ms. Berry took no affirmative steps to prevent discovery of
                           the alleged fraud ............................................................. 21

27                    b.   Mere allegations of "backdating" are insufficient to plead
                           that the alleged violation was "self-concealing" ...................... 22

28

LISA C. BERRY'S MEMO P&A ISO
MOTION TO DISMISS FAC
C 07 4431 RMW HRL

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3           c.     The SEC fails to allege its own due diligence .............................. 23

4   IV.     CONCLUSION ........................................................................................................ 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Burnett v. Rowzee*,
    2008 WL 638503 (C.D. Cal. Feb. 11, 2008)............................................................ 16, 17, 18

5

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 S. Ct. 164 (1994) ......................................................................................................... 14

6

*Dura Pharms., Inc. Sec. Litig.*,
    2008 WL 483613 (S.D. Cal. Feb. 20, 2008) ...................................................................... 15

7

*Howard v. Everex Sys., Inc.*,
    228 F. 3d 1057 (9th Cir. 2000).............................................................................................. 6

8

*In re Apple Computer Inc., Deriv. Litig.*,
    2007 WL 4170566 (N.D. Cal. Nov. 19, 2007)..................................................................... 17

9

*In re Ditech Networks, Inc. Deriv. Litig.*,
    2007 WL 2070300 (N.D. Cal. July 16, 2007)...................................................................... 17

10

11

*In re DVI, Inc. Sec. Litig.*,
    2008 WL 1900384 (E.D. Pa. April 29, 2008) ..................................................................... 15

12

*In re Dynegy Sec. Litig.*,
    339 F. Supp. 2d 804 (S.D. Tex. 2004) ................................................................................ 16

13

*In re Enron Corp. Sec. Litig.*,
    235 F. Supp. 2d 549 (S.D. Tex. 2002) ............................................................................ 8, 11

14

*In re ESS Tech., Inc. Sec. Litig.*,
    2004 WL 030058 (N.D. Cal. Dec. 1, 2004) .......................................................................... 6

15

16

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994)......................................................................................... 10, 11

17

*In re Global Crossing Ltd. Sec. Litig.*,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004)................................................................................. 17

18

*In re Nextcard, Inc. Sec. Litig.*,
    2006 WL 708663 (N.D. Cal. Mar. 20, 2006) ...................................................................... 17

19

*In re Parmalat Sec. Litig.*,
    376 F. Supp. 2d 472 (S.D.N.Y. 2005)................................................................................. 16

20

21

*In re Royal Dutch/Shell Transport Sec. Litig.*,
    2006 WL 2355402 (D.N.J. Aug. 14, 2006)............................................................ 16, 17, 18

22

*In re Seracare Life Sciences, Inc. Sec. Litig.*,
    2007 WL 935583 (S.D. Cal. Mar. 19, 2007) .................................................................. 9, 12

23

*In re Tibco Software, Inc.*,
    2006 WL 1469654 (N.D. Cal. May 25, 2006) ...................................................................... 9

24

*Katz v. Image Innovations Holdings, Inc.*,
    542 F. Supp. 2d 269 (S.D.N.Y. 2008)................................................................................. 15

25

26

*Klein v. Boyd*,
    No. 97-1143 (3d Cir. Feb. 12, 1998).................................................................................... 8

27

*Knollenberg v. Harmonic, Inc.*,

28

**TABLE OF AUTHORITIES**
(continued)

Page

152 Fed. App'x 674 (9th Cir. 2005) .................................................. 19

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) .......................................................... 11

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .............................................................. 12

*Ponce v. SEC*,
345 F.3d 722 (9th Cir. 2003) ...................................................... 3, 19

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) .......................................................... 15

*Rambus, Inc. v. Samsung Electronics Co., Ltd.*,
2007 WL 39374 (N.D. Cal. Jan. 4, 2007) ............................... 20, 21, 22

*Regents of the Univ. of Cal. v. Credit Suisse First Boston*,
482 F.3d 372 (5th Cir. 2007) .......................................................... 16

*SEC v. Collins & Aikman Corp.*,
524 F. Supp. 2d 477 (S.D.N.Y. 2007) ............................................. 18

*SEC v. Druffner*,
353 F. Supp. 2d 141 (D. Mass. 2005) ............................................. 19

*SEC v. Fehn*,
97 F.3d 1276 (9th Cir. 1996) ............................................................ 3

*SEC v. Fisher*,
2008 WL 2062699 (N.D. Ill. May 13, 2008) ................................... 23

*SEC v. Gann*,
2006 WL 616005 (N.D. Tex. Mar. 13, 2006) ................................... 20

*SEC v. Jones*,
476 F. Supp. 2d 374 (S.D.N.Y. 2007) ....................................... 20, 22

*SEC v. Todd*,
2007 WL 1574756 (S.D. Cal. May 30, 2007) .................................. 9, 13

*SEC v. Yuen*,
221 F.R.D. 631 (C.D. Cal. 2004) ............................................... 17, 23

*SEC v. Zandford*,
535 U.S. 813 (2002) ....................................................................... 18

*Siemers v. Wells Fargo & Co.*,
2007 WL 760750 (N.D. Cal. March 9, 2007) ........................... 8, 9, 11

*Simpson v. AOL Time Warner Inc.*,
452 F.3d 1040 (9th Cir. 2006) ........................................................ 15

*Simpson v. Homestore.com, Inc.*,
519 F.3d 1041 (9th Cir. 2008) ........................................................ 15

*Steed v. Warrior Capital, LLC*,
2007 WL 1110757 (W.D. Okla. Apr. 11, 2007) ................................ 15

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
128 S. Ct. 761 (2008) ...................................................... 3, 13, 14, 18

- iv -

**TABLE OF AUTHORITIES**
(continued)

Page

*TCS Capital Management, LLC v. Apaz Partners, L.P.*,
    2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) .......................................................................... 16

*Vess v. CIBA-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................................... 11

*Wenger v. Lumisys*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ................................................................................ 11

**STATUTES**

28 U.S.C. § 2462 ........................................................................................................ 1, 2, 4, 20, 25

**OTHER AUTHORITIES**

Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act
    of 1934 and Commission Statement on the Relationship of Cooperation to
    Agency Enforcement Decisions, Exchange Act. Rel. No. 44969
    (Oct. 23, 2001) ................................................................................................................... 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 15, 2008 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Ronald M. Whyte, United States District Court, 280 S. First Street, San Jose, CA 95113, Lisa C. Berry will move the court for an order dismissing the First Amended Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). This motion is based on the Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice, the [Proposed] Order; all pleadings on file in this action, oral argument of counsel, and any other matter that may be submitted at the hearing.

**STATEMENT OF ISSUES**

1.      Has the SEC pled specific, particularized facts that Ms. Berry had substantial or intricate involvement in preparing false statements made by others sufficient to state a claim for primary liability under (a) the anti-fraud provisions of the federal securities laws or (b) sections 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act")?

2.      Has the SEC pled specific, particularized facts that Ms. Berry engaged in inherently deceptive conduct in connection with the purchase or sale of securities sufficient to plead a primary violation under a "scheme liability" theory pursuant to Rules 10b-5(a) and (c) under the Securities Exchange Act of 1934 ("Exchange Act")?

3.      Has the SEC pled sufficient facts to escape the applicable statute of repose (28 U.S.C. § 2462) through use of the so-called "equitable tolling" theory?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

The SEC's First Amended Complaint ("FAC") against Lisa Berry, a former General Counsel of KLA-Tencor Corp. ("KLA") and Juniper Networks, Inc. ("Juniper"), does not correct the pleading deficiencies this Court identified in its May 7, 2008 Order Granting In Part And Denying In Part Ms. Berry's Motion to Dismiss ("Order"). The SEC still has not pled *facts* sufficient to charge Ms. Berry with primary liability as a non-speaker for alleged misstatements of others or under a "scheme liability" theory regarding stock options "backdating." Nor has it pled

1    sufficient facts to invoke the "equitable tolling" exception to § 2462's five-year statute of repose.

2         Even after the Court dismissed the great bulk of the SEC's securities fraud claims for

3    failure to plead a misstatement – noting that the SEC had found Ms. Berry's signature on only "a

4    limited number of [allegedly false] documents" and that the SEC's conclusory allegations that

5    Ms. Berry "reviewed, discussed and finalized" various public filings "fall short" of what is

6    required (Order at 15) – the SEC returns to this Court with a substantially similar complaint.  As

7    to documents that Ms. Berry signed, the FAC adds a single sentence alleging that Ms. Berry

8    signed additional documents, yet fails to allege with the required particularity that any of these

9    was false.  *See* ¶ 72.  As to allegedly false public filings Ms. Berry did *not* sign, rather than add

10   new *facts* that explain Ms. Berry's role, the SEC merely replaces the original complaint's old

11   verbs with new synonyms and then concludes that Ms. Berry was the "driving force" behind *all*

12   of the allegedly false public filings at KLA and Juniper.  *See* ¶¶ 40, 50, 51, 67, 70.[1]  None of these

13   fundamental questions are answered.  The FAC's new words do not cure the defects this Court

14   found in the original complaint, *i.e.*, the SEC's failure to plead specific facts to show Ms. Berry's

15   substantial or intricate involvement in preparing a material misstatement.

16        The SEC has failed to heed this Court's clear directive that it "allege *with particularity*

17   what Ms. Berry's role was in 'finalizing' [KLA's and Juniper's] filings"; this failure is especially

18   damning in light of the fact that the SEC "presumably knows what Ms. Berry's role was as it has

19   already obtained significant document discovery from Ms. Berry's former employers."  Order at

20   15 (emphasis added).  The SEC's failure to plead particular facts to support its conclusory

21   assertions is no mere inadvertent oversight.  Instead, it shows that even after having received tens

22   if not hundreds of thousands of documents and at least 55 witness interview memoranda from the

23   companies and conducting its own investigation, the SEC has no particularized facts to plead.

24        In its effort to rescue its primary liability claims against Ms. Berry, the SEC attempts to

---

25   [1] The SEC's overreaching regarding Ms. Berry's participation in the companies' public filings is
26   demonstrated most clearly by the allegation that Ms. Berry played a "central role in editing and
     finalizing" one of KLA's filings that was made four months *after* she left KLA.  ¶ 41 (re October
     15, 1999 proxy statement); *see* ¶ 11 (Ms. Berry left KLA in June 1999); Request for Judicial
27   Notice in Support of Lisa C. Berry's Motion to Dismiss First Amended Complaint ("RJN"), Ex.
     B.

28

1    repackage this case as a "scheme liability" case through new allegations. This effort fails as well.

2    The Supreme Court has very recently made clear that "scheme liability" is available, if at all, only

3    under very "narrow" circumstances (which are not present here). *Stoneridge Investment*

4    *Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 774 (2008). Even before *Stoneridge*,

5    numerous courts dismissed efforts such as the SEC makes here, *i.e.*, to invoke "scheme liability"

6    to pass off an alleged aider and abettor as a primary violator.[2] Following *Stoneridge*, lower courts

7    have been equally resolute in dismissing charges against corporate officers or employees for

8    conduct that allegedly resulted in materially misstated financial statements but who did not

9    themselves sign or make any actionable statements. Particularly in light of *Stoneridge* and its

10   progeny, the SEC has failed to allege a proper scheme liability case.

11          Finally, the SEC has pled no facts that would entitle it to invoke the doctrine of equitable

12   tolling. Nothing it has added to the FAC suggests that Ms. Berry concealed any information from

13   it or anyone else. More tellingly, it pleads no facts explaining its own lack of diligence in waiting

14   to pursue claims so long after the five-year statute of repose expired. Accordingly, the SEC's

15   pursuit of civil penalties for conduct prior to August 28, 2002 should be barred.

16   **II.    PROCEDURAL HISTORY**

17          **A.    The SEC's Original Complaint And This Court's Order On Ms. Berry's Motion To Dismiss**

18

19          The SEC filed its original complaint against Ms. Berry on August 28, 2007, asserting ten

20   claims for relief based on alleged violations of the anti-fraud and other provisions of the

21   Exchange and Securities Acts. On November 19, 2007, Ms. Berry filed a motion to dismiss.

22          In its May 7 Order, the Court found that "Rule 9(b)'s heightened pleading standard applies

23   to the SEC's claims grounded in a fraud." Order at 14. The Court held that the SEC had failed to

---

24   [2] The SEC's desperate effort to plead Ms. Berry's primary liability – whether under the
25   "substantial or intricate involvement" or the "scheme liability" theory – is a transparent bid to win
     for itself a lower standard of proof at trial in this action. In the Ninth Circuit, while a showing of
26   recklessness may suffice to plead primary liability for securities fraud, the SEC is required to
     plead and ultimately prove the more demanding standard of *actual knowledge of wrongdoing* to
27   establish aiding and abetting. *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003); *SEC v. Fehn*, 97
     F.3d 1276, 1288-95 (9th Cir. 1996). By recasting its complaint as a scheme liability case, the
28   SEC is seeking, impermissibly, to reduce its burdens of pleading and proof.

LISA C. BERRY'S MEMO P&A ISO
MOTION TO DISMISS FAC
C 07 4431 RMW HRL

1    allege any primary fraud violations based on purported misstatements, other than those arising

2    from two registration statements (Forms S-8) that Ms. Berry signed in 1998 as KLA's General

3    Counsel.  *Id*. at 16.  Specifically, the Court found that the SEC's allegation that Ms. Berry had

4    "reviewed, discussed, and finalized" public filings of KLA and Juniper was "insufficient to plead

5    (with particularity) Ms. Berry's role in the purported fraud."  *Id*. at 15.  The Court also found that

6    the SEC had not provided any "basis for concluding that the discussion regarding executive stock

7    option grants in the proxy statements was false."  *Id*. at 16.  The Court further held that the SEC's

8    request for civil penalties, to the extent it is based on claims arising before August 28, 2002, is

9    barred by § 2462's five-year statute of repose, unless the SEC could establish that § 2462 should

10    be equitably tolled.  *Id*. at 11.[3]

11    **B.    The SEC's First Amended Complaint**

12    The FAC contains several new paragraphs, but does not add any of the specificity or

13    necessary factual allegations absent from its prior pleading.[4]  Most importantly, the SEC cannot

14    cure the principal defects the Court found in its original complaint.  The SEC has not alleged any

15    additional misstatements by Ms. Berry, other than a single legal opinion attached as an exhibit to

16    a Form S-8.  ¶ 72.

17    **1.    Allegations Regarding KLA**

18    The SEC adds no new KLA misstatements beyond those alleged in its original complaint,

19    alleging once again that Ms. Berry should be held liable for the following KLA public filings:

| Type of Filing | Date(s) | Ms. Berry's Alleged Role | Signed by Ms. Berry? |
|---|---|---|---|
| Form 10-K | 9/28/98 9/28/99 | Ms. Berry "reviewed, discussed and finalized" these two KLA annual reports.  ¶¶ 21, 37. | NO |

[3] The Court also stated that the SEC had not alleged that Ms. Berry "ever exercised a backdated stock option" or "ever directly benefitted from backdating at KLA or at Juniper."  Order at 9.  The FAC's allegations in this regard are identical to those of the original Complaint.  Accordingly, in a separate pleading, Ms. Berry moves to strike the SEC's prayer for disgorgement.

[4] For the Court's convenience, Ms. Berry is providing a "black-lined" comparison of the FAC against the original Complaint.  *See* Declaration of Rebecca Lubens, Ex. A.

| Type of Filing | Date(s) | Ms. Berry's Alleged Role | Signed by Ms. Berry? |
|---|---|---|---|
| Proxy Statements | 9/28/98<br>10/15/99 | Ms. Berry "reviewed, discussed and finalized" these two KLA proxy statements.  ¶¶ 20, 21.[5] | **NO** |
| Form 10-Q | 1997 – 3/31/99 | Ms. Berry "reviewed, discussed, and helped finalize" KLA's quarterly reports.  ¶ 38. | **NO** |
| Form S-8 | 1/30/98<br>8/7/98 | Ms. Berry "reviewed and prepared" these two Form S-8 offering documents and signed them.  These filings incorporated financial statements.  ¶ 39. | **YES** |

### 2.    Allegations Regarding Juniper

The SEC attempts to impose liability on Ms. Berry for a number of Juniper related statements, including many statements she did not make.  The chart below lists those statements where the SEC seeks to impose liability and whether those statements were signed by Ms. Berry:

| Type of Filing | Date | Ms. Berry's Alleged Role | Signed by Ms. Berry? |
|---|---|---|---|
| Form 10-K | 1999-2002 | Ms. Berry was "substantially and intricately involved . . . with preparing these Forms 10-K …"  She "was responsible for, controlled and managed the drafting and preparation of the Forms 10-K" and "made sure all tasks associated with preparing the Forms 10-K were completed."  She "reviewed all sections of the Forms 10-K before they were filed and weighed in where changes needed to be made."  She also "communicated with Juniper's auditors on issues of concern to the auditors."  ¶ 67. | **NO** |
| Form 10-Q | 1999- 2003 | Same as for Form 10-K.  ¶ 70. | **NO** |
| Proxy Statements | 4/13/00<br>3/28/01<br>4/11/02<br>3/28/03 | Ms. Berry "drafted, edited and signed" each of the proxy statements "announcing Juniper's annual meeting of shareholders."  ¶ 50. | **YES**<br>(as to Notice of Share-holder Meeting) |
| Form 8-K | 4/10/03<br>7/10/03<br>10/9/03 | Ms. Berry "decided if and when the company should file Form 8-K's." ¶ 71.<br><br>She "was also responsible for and controlled" the preparation of the 8-K's "in that she determined what information each Form 8-K that contained these false representations should contain."  *Id*. | **NO** |

---

[5] The Order indicates that Ms. Berry signed the KLA Proxy statements.  Order at 6.  The SEC did not and does not so allege, and Ms. Berry respectfully submits she did not.

| Type of Filing | Date | Ms. Berry's Alleged Role | Signed by Ms. Berry? |
|---|---|---|---|
| Form S-8 | 3/14/00<br>8/18/00<br>12/12/00[6]<br>3/29/01<br>12/21/01<br>7/9/02 | Ms. Berry "was responsible for the preparation of and reviewed each of these registration statements filed on Form S-8." ¶ 72.<br><br>She also "prepared and signed a legal opinion filed as an exhibit to each Form S-8 . . . that stated that Juniper had authorized the issuance of shares." *Id.* | **YES**<br>(as to the legal opinion exhibit) |

While the FAC contains new adjectives and phrases to describe Ms. Berry's supposed role with respect to the companies' public filings, those new words do nothing to help the SEC meet its burden of "alleg[ing] with particularity what Ms. Berry's role was in 'finalizing' these filings." Order at 15. The SEC has also added conclusory allegations about Ms. Berry's "concealment" of the operative facts, presumably to bolster the "equitable tolling" theory that the Court has given it leave to plead. However, the SEC fails to allege that it acted with due diligence or to provide any facts to support any such allegation. Nor, despite its repeated incantation of the word "concealment," does the SEC plead the facts sufficient to allege the kind of concealment that could trigger the equitable tolling doctrine.

## III.  ARGUMENT

### A.  The FAC Does Not Adequately Plead Ms. Berry's Primary Liability For Any Alleged False Statement Or Omission

To plead that Ms. Berry "made" a misstatement, the SEC must allege that she either (1) signed a public filing containing a misstatement; or (2) substantially participated or was intricately involved in the preparation of allegedly fraudulent statements she did not make or sign. *Howard v. Everex Sys., Inc.*, 228 F. 3d 1057, 1061 n.5 (9th Cir. 2000); *see* Order at 15-16. To survive a motion to dismiss on a "substantial participation" theory, the SEC must "state, *with particularity*, facts indicating that the individual defendant was *directly involved* in the preparation of the allegedly misleading statements." *In re ESS Tech., Inc. Sec. Litig.*, 2004 WL 030058, at *12 (N.D. Cal. Dec. 1, 2004) (Whyte, J.) (emphasis added); *see also* Order at 15. The

---

[6] Although the SEC's allegations indicate that this S-8 was filed on 12/12/00, its actual filing date was 12/20/00. RJN, Ex. J.

1    FAC fails to meet either standard.

2          The SEC has pled no new fact that would establish that Ms. Berry should be liable for any

3    claimed misstatement actually made by her.  Nor are its new vague, generalized allegations about

4    Ms. Berry's so-called participation in the preparation of KLA's and Juniper's public filings

5    sufficient to establish she should be liable for statements that she demonstrably did not make.

6          **1.     The SEC Has Failed To Allege That Ms. Berry Substantially
               Participated In The Preparation Of Any Alleged Misstatement In Any
7               Document She Did Not Sign**

8                    **a.     KLA filings**

9          The SEC does not directly attribute to Ms. Berry any specific alleged misrepresentations

10   relating to options granting practices in KLA's Forms 10-K or 10-Q (both of which contain

11   financial statements) or in any proxy statement.  Instead, as before, it simply repeats in various

12   formulations its allegation that she "reviewed," "discussed," and "finalized" those filings

13   containing alleged misstatements.  *See* ¶¶ 21, 37, 38.  As this Court has already held, these

14   allegations "fall short" of pleading Ms. Berry's substantial or intricate involvement in any false

15   statement.  Order at 15.

16         To try to cure this fatal pleading defect, the SEC opts for style over substance, alleging no

17   new *facts* detailing Ms. Berry's role in the preparation of the misleading portion of any particular

18   financial statements or proxy statement at KLA.  Instead, it alleges – in the only paragraph that

19   adds anything to its allegations regarding Ms. Berry's role in any misstatement at KLA – that Ms.

20   Berry "was the driving force behind finalizing the preparation of drafts of KLA's annual reports

21   [and] quarterly reports."  ¶ 40.  The paragraph continues with an innocuous, generalized litany of

22   job functions that Ms. Berry allegedly performed, contending that she (1) "coordinated edits to

23   such documents which she received from other persons or offered herself, and organized the final

24   drafts of such documents"; (2) "controlled the drafts and the final products"; (3) "had a significant

25   role and frequently acted as the final decision maker regarding any changes to these drafts"; and

26   (4) was "ultimately in charge of ensuring the completion of KLA's SEC filings."  *Id*.  These new

27   allegations fail to state a primary liability claim.

28         *First*, while these allegations elaborate on Ms. Berry's purported administrative role in

- 7 -

finalizing SEC filings generally, they do not sufficiently plead that Ms. Berry had any substantive role in any statement concerning the company's accounting or financial statements, let alone particular involvement in alleged misstatements about APB 25 in the footnotes to KLA's audited financial statements. *Cf.* ¶¶ 18-19 (citing the APB 25 language in the 10-Ks and 10-Qs as the alleged misstatement). Nor do they suggest that Ms. Berry prepared the executive compensation discussion in KLA's proxy statements. *Cf.* ¶ 20. The SEC's inability to specifically allege that Ms. Berry finalized the allegedly misleading passages in these public statements is fatal to its claims. As the SEC itself has advocated:

> a person who prepares a truthful and complete portion of a document would not be liable as a primary violator for misrepresentations in other portions of the document. Even assuming such a person knew of misrepresentations elsewhere in the document and thus had the requisite scienter, he or she would not have created those misrepresentations.

*See* Brief of the Securities and Exchange Commission as Amicus Curiae, *Klein v. Boyd*, No. 97-1143, at 19 (3d Cir. Feb. 12, 1998) (RJN, Ex. K);[7] *see also Siemers v. Wells Fargo & Co.*, 2007 WL 760750, at *19 (N.D. Cal. March 9, 2007) (where "there is no allegation that the passages of the [financial statements] reviewed by [defendant] were the passages that were misleading," the complaint "fall[s] far short of demonstrating substantial participation or intricate involvement") (internal quotations omitted).

Here, the SEC does not allege that Ms. Berry had any role in the preparation of the accounting for or disclosures regarding stock options grants or, more generally, in the preparation of the companies' financial statements. KLA had an accounting and finance department whose duties included preparation and review of financial statements. These public filings contain lengthy descriptions of KLA's business and/or finances and cover numerous topics. *See*, *e.g.*, RJN, Ex. E. Absent specific allegations that would, if true, establish that Ms. Berry acted as the decision maker regarding specific misstatements in the financial statements, the FAC fails to state a claim for a primary violation of the securities laws.

*Second*, none of the ¶ 40 allegations meets the threshold for "substantial or intricate

---

[7] The SEC reaffirmed this position in the private securities litigation involving Enron. *See In re Enron Corp. Sec. Litig.*, 235 F. Supp. 2d 549, 588 (S.D. Tex. 2002).

1  involvement" required to state a claim.  The SEC must plead particularized facts showing direct

2  involvement in the making of an allegedly false statement.  *In re Tibco Software, Inc.*, 2006 WL

3  1469654, at *28 (N.D. Cal. May 25, 2006) ("Plaintiffs must plead that the officer was directly

4  involved not only in the day-to-day affairs of the company in general but also in the preparation

5  of its allegedly misleading statements in particular.").  Simply embellishing its previous

6  allegations with phrases like "driving force" and "final decision-maker" does not obscure the

7  glaring absence of facts connecting Ms. Berry to any allegedly false statement.  *See In re*

8  *Seracare Life Sciences, Inc. Sec. Litig*., 2007 WL 935583, at *10 (S.D. Cal. Mar. 19, 2007)

9  (allegations that defendant "participated in editing and approving the 10-Qs, and that [defendant]

10  evaluated them, falls significantly short of the type of participation that the Ninth Circuit found

11  sufficed to establish liability under a substantial participation theory"); *Siemers*, 2007 WL

12  760750, at *19 (allegations that defendant "provided comments and edits" and "reviewed

13  passages" of certain public filings failed to plead "substantial participation"); *SEC v. Todd*, 2007

14  WL 1574756, at *4 (S.D. Cal. May 30, 2007) (allegations that defendants signed management

15  representation letter to the auditors in connection with a particular Form 10-Q held insufficient to

16  establish "substantial participation in the drafting of the 10-Q").

17      *Third*, the SEC does not link any one of these new conclusory allegations to any particular

18  filing that it challenges.  Thus, despite KLA's provision to the SEC of tens of thousands of pages

19  of documents and 55-60 witness interview memoranda – not to mention the SEC's own

20  investigation – the FAC remains bereft of a single particularized allegation that Ms. Berry had

21  any substantive role with respect to any allegedly false public statement (putting aside the two

22  registration statements, discussed *infra* at 11-12).

23      *Fourth*, the SEC's new allegations concerning grants to KLA executives (¶¶ 20-21, 41)

24  are deficient not only for the reasons just discussed, but for additional reasons as well.[8]  The SEC

25  alleges that Ms. Berry is primarily liable for alleged misstatements in KLA's September 28, 1998

---

[8]  The SEC presumably added these allegations in response to the Court's finding (Order at 16) that "at no point" in the original complaint did "the SEC clearly allege with particularity that KLA backdated stock options to executives."  Absent such an allegation, there is no basis to conclude that the discussion regarding executive option grants in the proxy statements was false.

LISA C. BERRY'S MEMO P&A ISO
MOTION TO DISMISS FAC
C 07 4431 RMW HRL

1  and October 15, 1999 proxy statements.  *See* ¶¶ 20, 21.  However, there is no allegation that the

2  September 28, 1998 proxy statement was false.[9]  And, as to the Oct. 15, 1999 proxy statement,

3  the SEC simply overreaches:  as the SEC itself pleads, Ms. Berry was *not even employed by KLA*

4  at or anywhere near that time.  ¶ 11 (Ms. Berry left KLA in June of 1999).

5               **b.    Juniper filings**

6           The SEC does not directly attribute alleged misrepresentations in any of Juniper's Forms

7  10-K and 10-Q financial statements or 8-K periodic reports to Ms. Berry.  Rather, while still

8  failing to plead the required *facts* to show that Ms. Berry substantially participated in the

9  preparation of any of these filings, the SEC peppers the FAC with new verbs and rhetorical

10  flourishes to disguise its insufficient "reviewed, discussed and finalized" allegations.  ¶¶ 67, 71.

11  Thus, instead of Ms. Berry having "discussed" Juniper's financial statements, she now apparently

12  "was responsible for, controlled and managed the drafting and preparation of the Forms 10-K."

13  ¶ 67; ¶ 70 (same for Forms 10-Q); ¶ 71 (same for Forms 8-K).  And, instead of having

14  "reviewed" these public filings, the FAC alleges that Ms. Berry "weighed in where changes

15  needed to be made."  ¶ 67.

16           The SEC's sleight of hand is insufficient as a matter of law.  The SEC alleges no new

17  facts about Ms. Berry's involvement in preparing Juniper's financial statements or current reports

18  and the new verbs it employs do not allege substantial participation.  *See* cases cited *supra* at 8-9.

19  Most notably (and for each of the first three reasons discussed above as to KLA), the SEC fails to

20  allege with particularity that Ms. Berry had any involvement in the preparation of those portions

21  of the Juniper public filings that the SEC claims were false.  *See* ¶¶ 48, 49 (referencing Juniper's

22  disclosures relating to the exercise price of incentive stock options, nonstatutory stock options,

23  ─────────────────
   [9] The September 28, 1998 proxy statement relates to the July 1, 1997-June 30, 1998 period.  *See*

24  RJN, Ex. A.  The SEC does not allege with particularity that KLA backdated stock options *to*
   *executives* prior to September 28, 1998.  Instead, it alleges only that "[o]n approximately ten

25  occasions for grants backdated to July 31, 1997 through grants backdated to June 15, 1999, Berry
   and others thus used hindsight to choose option exercise prices for new hire, peak performance/

26  focal and other grants made to KLA employees and executives."  ¶ 32.  Even if one were to
   hypothesize that one of these "approximately ten" grants referenced in ¶ 32 was a "backdated"

27  executive grant during the period covered by the September 28, 1998 proxy statement, such
   speculation is insufficient to meet the pleading requirements of Rule 9(b).  *See In re GlenFed,*

28  *Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*).

1    and APB 25).  The SEC's failure to connect Ms. Berry's involvement in Juniper filings to the

2    claimed misrepresentations is fatal to its primary liability theory.  *Siemers*, 2007 WL 760750, at

3    *19; *In re Enron Corp. Sec. Litig.*, 235 F. Supp. 2d at 588.

4

5                    **2.       The SEC Has Failed To Allege The Falsity Of Any Public Filing That**
                               **Ms. Berry Signed**

6              The SEC "must adequately specify the statements it claims were false or misleading, give

7    particulars as to the respect in which [it] contends statements were fraudulent, state when and

8    where the statements were made, and identify those responsible for the statement."  *In re*

9    *GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548 n.7.  To satisfy this standard, the SEC must provide

10   "specific references" to "specific facts" as the basis for an allegation that a statement is false or

11   misleading.  *Wenger v. Lumisys*, 2 F. Supp. 2d 1231, 1250 (N.D. Cal. 1998).  Failure to plead

12   fraud with the requisite specificity results in dismissal.  *Moore v. Kayport Package Express, Inc.*,

13   885 F.2d 531, 540 (9th Cir. 1989).  As to the filings that Ms. Berry the SEC alleges Ms. Berry did

14   actually sign – two KLA Forms S-8, notices sent to Juniper shareholders announcing Juniper's

15   annual shareholder meetings, and legal opinion exhibits attached to Juniper's Forms S-8 – the

16   SEC does not allege that these filings were false when filed.

17                             **a.       The KLA Forms S-8**

18             The SEC seeks to hold Ms. Berry directly liable for alleged misstatements in two Forms

19   S-8, filed with the SEC on January 30, 1998 and August 7, 1998.  ¶ 39.  While the FAC alleges

20   that Ms. Berry signed these Forms, it fails to allege how these statements were fraudulent.  *See*

21   *Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*,

22   137 F.3d 616, 627 (9th Cir. 1997)) (plaintiff must allege with particularity "the who, what, when,

23   where, and how" of the misconduct charged).

24             The SEC appears to contend that these two Forms S-8 were false because they

25   incorporated allegedly false financial statements.  ¶ 39.  But the SEC's allegations tell a different

26   story.  The January 30, 1998 Form S-8 incorporated only KLA's 1997 Form 10-K and its Q1

27   1998 Form 10-Q.  *See* RJN, Ex. C at 3.  The August 7, 1998 Form S-8 incorporated only KLA's

28   1997 10-K and its Q1–Q3 10-Qs for 1998.  *See* RJN, Ex. D at II-1.  The SEC does not allege that

1    the 1997 10-K contained *any* material misstatement.  ¶¶ 19, 37 (alleging only that the 1998 and

2    1999 10-Ks contained false statements regarding options).  While the FAC alleges that the

3    quarterly reports for Q1–Q3 1998 "contained materially false and misleading financial

4    statements" (¶ 38), that allegation cannot stand given that the *earliest* backdated options grant the

5    SEC pleads involved an August 31, 1998 grant date (according to the SEC, it was actually

6    granted in October 1998); this was *five months after* the end of period covered by the Q3 1998

7    10-Q filing.  *See* ¶ 28.  Given the SEC's failure to allege with the requisite particularity that KLA

8    unlawfully backdated options grants in the periods covered by the January 30, 1998 and August 7,

9    1998 registration statements, the SEC's claims based on those statements should be dismissed.

10              **b.        The Juniper proxy statement notices and Forms S-8**

11              The FAC alleges that Ms. Berry "signed as Juniper's General Counsel … Juniper proxy

12    statements."  ¶ 50.  Judicially noticeable facts establish otherwise.  Ms. Berry did *not* sign

13    Juniper's proxy statements, but rather signed only the *meeting notices* attached to the proxy

14    statements.  *See* RJN, Exs. F-I at 2.  While the FAC alleges (albeit in a vague, conclusory fashion)

15    that the executive compensation disclosures in Juniper's proxy statements were false (¶ 50), it

16    does not allege that the meeting notices themselves were false.  And how could it?  The notices

17    merely stated that Juniper planned to hold the annual shareholder meeting on a certain date and

18    listed the agenda for the meeting.  *Id.*[10]

19              In its effort to find Ms. Berry's signature on any document, the SEC now alleges for the

20    first time that Ms. Berry "signed a legal opinion filed as an exhibit to each Form S-8 … that

21    stated that Juniper had authorized the issuance of the shares."  ¶ 72.  The SEC's failure to specify,

22    with particularity, how Ms. Berry's statement was false is unacceptable under Rule 9(b).

23    *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (plaintiff must identify the circumstances

24    constituting falsity so that a defendant may prepare an adequate answer, "not just deny that they

25    have done anything wrong.").  Juniper's CFO – as opposed to Ms. Berry – signed, authorized and

26    _____

[10] As an apparent fallback, the SEC alleges that Ms. Berry "worked with Juniper's finance
27    department to draft the compensation data that each of these proxy statements contained."  ¶ 50.
For the reasons shown above, at 8-9, these allegations fail to meet the required "substantial
28    participation" threshold.  *See also In re Seracare*, 2007 WL 935583, at *10.

1    certified each of the allegedly false Forms S-8.  *See, e.g.*, RJN, Ex. J at 4.  The SEC's fallback

2    allegation that Ms. Berry "prepar[ed] … and reviewed" Juniper's Forms S-8 falls short of

3    sufficiently pleading substantial participation.  *See* Order at 15-16.[11]

4        **B.      The SEC Fails To Plead "Scheme Liability"**

5            Seizing on the Court's discussion of so-called "scheme liability" (*see* Order at 16-17), the

6    SEC adds significant new allegations in the FAC designed to plead a scheme liability theory

7    against Ms. Berry.  *See* ¶¶ 41-42, 67, 70.  Despite these new allegations, the SEC has failed to

8    plead scheme liability under the governing legal standard.

9            **1.      The Supreme Court's Recent Decision in *Stoneridge* Confirms That**
                        **Scheme Liability Should Be Narrowly Construed**
10

11          In *Stoneridge*, *supra*, the Supreme Court very recently considered the scope of primary

12   liability of a "secondary actor" (*i.e.*, someone who does not herself make the allegedly false

13   statement or omission or engage in the conduct that allegedly deceives investors, in this case the

14   allegedly misstated financial statements) under Rules 10b-5(a) and (c).  There, the defendant

15   secondary actors were suppliers to Charter Communications, Inc., the company in which

16   plaintiffs had invested; plaintiffs alleged that these suppliers entered into sham transactions with

17   Charter knowingly or recklessly disregarding that Charter intended to use the transactions to

18   inflate its revenues and that investors would rely on Charter's resulting allegedly false financial

19   statements.  *See* 128 S. Ct. at 766-67.

20   _____

21   [11] The Court dismissed the SEC's "non-scienter" fraud claims under §§ 17(a)(2) and (a)(3) of the
     Securities Act (other than those based on the two Forms S-8 she signed at KLA) on grounds
22   similar to the basis for its dismissal of the scienter fraud claims:  "the SEC [was] vague with its
     accusations that Ms. Berry committed securities fraud on the basis of misrepresentations because
23   it appears she made very few representations."  Order at 19.  The Court also observed that the
     SEC's focus on Ms. Berry's alleged "review" of statements that she had not signed "overlooks"
24   the fact that that "review" is "insufficient by itself to establish liability."  *Id.*  As detailed above,
     the SEC has returned to this Court with a FAC that fails to cure these fatal deficiencies.  The
25   FAC's one additional allegation regarding statements made by Ms. Berry – her signature on the
     legal opinion filed as an exhibit to six Juniper registration statements (¶ 72) – is insufficient to
26   establish §§ 17(a)(2) or (3) liability because it contains no "material misrepresentations in the
     offer or sale of securities."  *SEC v. Todd*, 2007 WL 1574756, at *1.  Nor do the virtually identical
27   allegations regarding her supposed participation in the preparation of public filings at KLA and
     Juniper suffice to establish that Ms. Berry made any representations at all.  Accordingly, the
28   Court should dismiss the SEC's Fourth Claim for Relief with prejudice.

1    The Court affirmed Rule 12(b)(6) dismissal of the complaint in that action, concluding

2    that any "scheme" theory of primary liability under Rule 10b-5(a) or (c) must be interpreted with

3    "narrow dimensions" given that it was "a right of action Congress did not authorize when it first

4    enacted the statute and did not expand when it revisited the law." *Id*. at 774.  Though the Court

5    stated that defendants' participation in the allegedly sham transactions was "too remote to satisfy

6    the requirement of reliance," which is not an element in an SEC enforcement action, it also

7    suggested that defendants' conduct failed the "in connection with" the purchase or sale of

8    securities requirement, which *is* an element of an SEC enforcement action.  *Id*. at 770 ("§ 10(b)

9    provides that the deceptive act must be 'in connection with the purchase or sale of any security.'

10   … [T]he emphasis on a purchase or sale of securities does provide some insight into the deceptive

11   acts that concerned the enacting Congress.").  The Court also expressed concern that plaintiffs'

12   "view of primary liability makes any aider and abettor liable under § 10(b) if he or she committed

13   a deceptive act in the process of providing assistance."  *Id*. at 771.   In that regard, the Court

14   observed that "[s]econdary actors are subject to criminal penalties, see, *e.g.*, 15 U.S.C. § 78ff, and

15   civil enforcement by the SEC, see, *e.g.*, § 78t(e)."  *Id*. at 773.  Notably, 15 U.S.C. § 78t(e) is the

16   provision of the Exchange Act that gives the SEC power to pursue *aiding and abetting* claims

17   against secondary actors; it does not give the SEC authority to pursue primary liability claims

18   against such actors.[12]  In short, while the SEC may pursue aiding and abetting claims in

19   appropriate circumstances, *Stoneridge* makes clear that such secondary liability is conceptually

20   distinct from – and may not be relabeled, by private plaintiffs *or* the SEC, as – Rule 10b-5(a) or

21   (c) primary liability.  *See id*. at 769 (for primary liability to attach, "[t]he conduct of a secondary

22   actor must satisfy each of the elements or preconditions for liability").

23   The lower courts have consistently interpreted *Stoneridge* as "ultimately reject[ing] an

---

24   [12] *Stoneridge* must be considered in conjunction with the Supreme Court's prior decision in
25   *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 S. Ct. 164 (1994), in
     which the Court held that "§ 10(b) liability did not extend to aiders and abettors.  The Court found
26   the scope of § 10(b) to be delimited by the text, which makes no mention of aiding and abetting."
     *Stoneridge*, 128 U.S. at 768.  In the wake of *Central Bank*, Congress passed the Private Securities
27   Litigation Reform Act ("PSLRA"), which gave the SEC authority to prosecute aiding and
     abetting claims.  However, neither in passing the PSLRA nor otherwise did Congress expand the
28   SEC's power to pursue primary liability claims against secondary actors.

1    expansion of liability under section 10(b) premised on a broad conception of scheme liability." *In*

2    *re DVI, Inc. Sec. Litig.*, 2008 WL 1900384, at *21 (E.D. Pa. Apr. 29, 2008). The lower courts

3    have equally consistently interpreted *Stoneridge* to require the dismissal of charges against

4    corporate officers or employees for their conduct that allegedly resulted in materially misstated

5    financial statements but who did not themselves sign or make any actionable statements.[13]  The

6    Ninth Circuit responded to *Stoneridge* by vacating its decision in *Simpson v. AOL Time Warner*

7    *Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), which had been the leading case on scheme liability in

8    this Circuit. *Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008).

9              **2.      The SEC Has Failed To Plead A Viable Scheme Liability Claim**

10                  **a.      The SEC does no more than allege that Ms. Berry aided and**
                              **abetted the making of false statements by others**

11

12          Despite *Stoneridge*'s mandates, the SEC now seeks to repackage its case as a "scheme

13    liability" case, and to characterize Ms. Berry as a primary violator in a so-called "scheme" as

14    opposed to an aider and abettor of the false statements of others. *See* ¶¶ 41, 42, 67, 70. In truth,

15    however, this is a case challenging Ms. Berry's conduct in purportedly aiding and abetting KLA's

16    and Juniper's issuance of allegedly materially false financial statements.

17          A plaintiff may not – as the SEC plainly attempts to do here – simply invoke the word

18    "scheme" in an attempt to recast a "statement that is, in essence, a misrepresentation (or omission)

19    claim under subsection (b) … as a claim under subsection (a) or (c) so as to evade the pleading

20    requirements which apply in misrepresentation cases." *Steed v. Warrior Capital, LLC*, 2007 WL

21    1110757, at *5 (W.D. Okla. Apr. 11, 2007). Nor may a plaintiff circumvent the limitations on

---

22    [13]  *See, e.g., Pugh v. Tribune Co.*, 521 F.3d 686, 696-98 (7th Cir. 2008) (affirming Rule 12(b)(6)
      dismissal with prejudice of scheme liability claims against employee who had pled guilty to
23    criminal conduct and was the so-called "mastermind" of a "scheme" to overstate newspaper
      circulation numbers; "Sito participated in a fraudulent scheme but had no role in preparing or
24    disseminating Tribune's financial statements or press releases."); *Katz v. Image Innovations*
      *Holdings, Inc.*, 542 F. Supp. 2d 269, 272-73 (S.D.N.Y. 2008) (Rule 12(b)(6) dismissal of scheme
25    liability allegations as to all corporate officer defendants who did not sign the allegedly fraudulent
      financial statements because, *inter alia*, the amended complaint "fails to particularize any
26    material misstatements or omissions by these defendants"); *Dura Pharms., Inc. Sec. Litig.*, 2008
      WL 483613, at *11 (S.D. Cal. Feb. 20, 2008) (Rule 12(b)(6) dismissal of scheme liability
27    allegations because, *inter alia*, plaintiffs did not allege that corporate officer defendant "made any
      materially false statements").

28

1   Rule 10b-5(b) liability for non-speakers by pleading "scheme" liability; specifically, a plaintiff

2   may not "circumvent *Central Bank*'s limitations on liability for a secondary actor's involvement

3   in the preparation of false and misleading statements," *In re Dynegy Sec. Litig.*, 339 F. Supp. 2d

4   804, 916 (S.D. Tex. 2004), by "resurrecting aiding and abetting liability under the guise of

5   primary liability for a fraudulent scheme." *Burnett v. Rowzee*, 2008 WL 638503, at *4 (C.D. Cal.

6   Feb. 11, 2008). Thus, participation in a scheme through which misleading statements were made

7   does not satisfy the pleading burden under Rules 10b-5(a) or (c) and may not be used as a "back

8   door into liability for those who help others make a false statement or omission." *In re Parmalat*

9   *Sec. Litig.*, 376 F. Supp. 2d 472, 503 (S.D.N.Y. 2005); *see also In re Royal Dutch/Shell Transport*

10  *Sec. Litig.*, 2006 WL 2355402, at *8 (D.N.J. Aug. 14, 2006); *Regents of the Univ. of Cal. v. Credit*

11  *Suisse First Boston*, 482 F.3d 372, 378, 390 (5th Cir. 2007).

12      Here, while the SEC now purports to plead a "scheme" liability case against Ms. Berry

13  relating to allegedly "backdated" option grants, the very first sentence of the FAC (like the very

14  first sentence of the original complaint) reveals that the gravamen of the SEC's claims is the

15  allegedly false financial statements that resulted from alleged improper accounting for option

16  grants, and Ms. Berry's purported participation in making those statements: "From 1997 through

17  2003, the in-house corporate attorney for two different public companies *caused each of those*

18  *companies to report false financial information to the investing public* by repeatedly backdating

19  stock option grants and falsifying related paperwork." ¶ 1 (emphasis added). The FAC's

20  remaining allegations make similarly clear that this is a "statements" case, not a scheme liability

21  case. *E.g.*, ¶¶ 4, 35, 59, 67. It is thus apparent that the "so-called 'deception'" that forms the

22  basis of the SEC's "scheme" liability claim "is nothing more than a reiteration of the

23  misrepresentations and omissions that underlie [its] disclosure claim." *TCS Capital Management,*

24  *LLC v. Apaz Partners, L.P.*, 2008 WL 650385, at *22 (S.D.N.Y. Mar. 7, 2008). As that post-

25  *Stoneridge* case held, such an attempt to "re-labe[l] the alleged misstatements and omissions as

26  'manipulative and deceptive conduct'" does not "magically transform [the SEC's] disclosure

27  claim into a [scheme liability] claim." *Id.*

28      Judge Fogel has similarly addressed this issue in other alleged options "backdating" cases.

In *In re Ditech Networks, Inc. Deriv. Litig.*, 2007 WL 2070300, at *6 (N.D. Cal. July 16, 2007),
he dismissed plaintiffs' Rule 10b-5(a) and (c) claims because of the complaint's "emphasis on the
alleged production and dissemination of false financial statements, proxy statements, and Form
4's," despite plaintiffs' insistence that their claim was not for violation of 10b-5(b).  *See also In re
Apple Computer Inc., Deriv. Litig.*, 2007 WL 4170566, at *7 n.9 (N.D. Cal. Nov. 19, 2007) (pre-
*Stoneridge* decision in options case against corporate officers and directors allowing plaintiffs to
plead scheme liability in amended complaint but expressing "considerable doubt that Plaintiffs
will be able to state a claim for scheme liability").  In *In re Nextcard, Inc. Sec. Litig.*, 2006
WL 708663, at *2 (N.D. Cal. Mar. 20, 2006), a non-options case, Judge Fogel held that when "a
straightforward reading of the [complaint] makes clear that the gravamen of Plaintiffs' § 10(b)
claim is that Defendants committed fraud … by means of material misstatements or omissions,"
the "focus" of the Court's analysis in ruling on the motion to dismiss "must be on the alleged
misrepresentations and omissions made by Defendants."  Since the SEC has failed to plead any
"scheme" allegations against Ms. Berry, apart from her alleged participation in misrepresentations
regarding KLA's and Juniper's stock options, this Court should similarly limit its focus to claims
under Rule 10b-5(b).

### b.    The SEC's allegations regarding the nature of the alleged "scheme" do not satisfy Rule 9(b)

The SEC may not get by with "conclusory statements concerning the general nature of the
scheme" it alleges to plead scheme liability.  *Burnett*, 2008 WL 638503, at *4.  To plead a
violation of Rule 10b-5(a) or (c) with the particularity Rule 9(b) requires, it "must specify, with
particularity, what manipulative acts were performed, which defendants performed them, when
the manipulative acts were performed and what effect the scheme had on the securities at issue."
*In re Royal Dutch*, 2006 WL 2355402 at *7 (quoting *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d
at 432); *see also In re Global Crossing Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 329 (S.D.N.Y.
2004).  Thus, in *SEC v. Yuen*, 221 F.R.D. 631, 636-37 (C.D. Cal. 2004), the court rejected the
SEC's "theory of a 'complex fraudulent scheme'" that the SEC had "devised … as a means to get
around the pleading requirements for the individual Defendants," on the ground that "the SEC

1    had not [pled] any specifics as to the individual Defendants' alleged participation in the scheme

2    such as who devised the scheme, when it was devised and when each Defendant joined it." *See*

3    *also SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 486-87 (S.D.N.Y. 2007).

4            The FAC does not provide the particularity required to give Ms. Berry notice of the

5    "schemes" in which she allegedly participated.  The FAC fails to allege how or when such actions

6    were performed, who else performed them, and what effect these allegedly deceptive acts had on

7    KLA's or Juniper's securities.  *In re Royal Dutch*, 2006 WL 2355402 at *7.  In particular, the

8    FAC contains numerous allegations of other employees or officers involved in the allegedly

9    fraudulent "schemes," yet fails to allege the identity of a single one of the other alleged scheme

10   participants, the extent of any such person's participation, or the role any such person played.

11   *See*, *e.g.*, ¶¶ 2, 4, 24, 41; p. 6 (heading).  The SEC's failure to allege these critical factual details

12   renders the FAC deficient under Rule 9(b).

13                   **c.      The SEC's allegations regarding Ms. Berry's conduct at KLA
                              do not satisfy the "in connection with" requirement**
14

15           Even in a scheme liability case, "§ 10(b) provides that the deceptive act must be 'in

16   connection with the purchase or sale of any security.'"  *Stoneridge*, 128 S. Ct. at 770.  While this

17   standard is to be liberally construed (*see SEC v. Zandford*, 535 U.S. 813 (2002)), its bounds are

18   not limitless.  Rather, "it is imperative that the Court limit its consideration to allegations relevant

19   to the purchase or sale of securities."  *Burnett*, 2008 WL 638503 at *4.  In *Burnett*, the court held

20   insufficient allegations that one of the defendants erased data on his laptop in furtherance of a

21   purported Ponzi scheme.  According to the court, such allegations "concern the functioning of the

22   … scheme rather than the sale of securities pursuant to that scheme" and were therefore

23   insufficient under *Stoneridge*.  *Id.* at *5.  The same defect permeates the SEC's allegations.  The

24   SEC's allegations against Ms. Berry do not satisfy the "in connection with" requirement.  As in

25   *Burnett*, the SEC, with respect to Ms. Berry, describes her internal conduct at KLA and Juniper,

26   but it does not make the required allegations to connect her to the purchase or sale of securities.

27   Accordingly, the SEC has not sufficiently pled a scheme liability claim against Ms. Berry.

28

1

2

**C.      The SEC's FAC Fails To Adequately Plead That Ms. Berry Aided and
Abetted KLA's Or Juniper's Violations Of Filing Of False Proxy Statements**

3          In its Tenth Claim for Relief, the SEC alleges that Ms. Berry aided and abetted violations

4   by KLA and Juniper of § 14(a) of the Exchange Act and Rule 14a-9.  To survive a motion to

5   dismiss that claim, the SEC must plead specific facts to establish that (1) KLA and/or Juniper

6   made false and misleading statements in proxy solicitations; (2) Ms. Berry had actual knowledge

7   of those misstatements and her role in furthering them; and (3) she provided substantial assistance

8   in those alleged violations.  *Knollenberg v. Harmonic, Inc.*, 152 Fed. App'x 674, 682 (9th Cir.

9   2005); *Ponce*, 345 F.3d at 737 (citations omitted).  Although this Court found with regard to all

10  aiding and abetting claims collectively that the SEC's original complaint sufficiently pled the

11  "actual knowledge" and "substantial assistance" requirements (Order at 17-18), the Court also

12  stated that the SEC's original complaint did not allege, with the required particularity, that the

13  KLA proxy statements Ms. Berry allegedly reviewed, discussed and finalized contained material

14  misstatements or omissions:  "[T]he SEC must also allege, among other things, 'how' these

15  statements were fraudulent, which is where the SEC's complaint fails."  *Id.* at 16.

16         While the SEC has inserted the words "and executives" throughout the FAC, it adds no

17  particularized facts regarding specific backdated grants to KLA executives.  ¶¶ 27, 28, 35.

18  Moreover, its reference to Ms. Berry's "central role in editing and finalizing" proxy statements at

19  KLA (¶ 41) is belied by the fact that one of the two statements referenced was filed four months

20  after the SEC alleges that Ms. Berry left KLA (*see* ¶ 11).  The SEC's allegations regarding the

21  proxy statements that Ms. Berry allegedly signed at Juniper similarly fail.  While the SEC alleges

22  that the four proxy statements Ms. Berry "drafted, edited and signed" at Juniper (¶ 50) described

23  executive compensation and represented that options were granted at fair market value on the date

24  of the grant, the FAC does not specifically link any backdated grant to executives or any other

25  alleged misstatement to any or all of the proxy statements that Ms. Berry signed.

26         Where the SEC has not sufficiently pled a predicate violation of the securities laws by the

27  primary parties, it does not state a claim for aiding and abetting.  *SEC v. Druffner,* 353 F. Supp.

28  2d 141, 150-51 (D. Mass. 2005) (dismissing SEC aiding and abetting because SEC failed to

- 19 -

1    allege the underlying primary violation); *SEC v. Gann*, 2006 WL 616005, at *7 (N.D. Tex. Mar.

2    13, 2006) (same).  Since the SEC has failed to plead with particularity any misstatement in the

3    proxy solicitations, it has not stated a claim against Ms. Berry.  Accordingly, its claim for aiding

4    and abetting violations of § 14(a) and Rule 14a-9 should be dismissed.

5              **D.      The SEC's Equitable Tolling Allegations Are Insufficient**

6              In its Order, this Court held that the civil penalties the SEC seeks for conduct occurring

7    before August 28, 2002 are barred by § 2462's five-year statute of repose.  However, it gave the

8    SEC leave to amend to plead equitable tolling of § 2462, requiring the SEC to allege and

9    ultimately prove that (1) Ms. Berry's conduct resulted in concealment of the operative facts; (2)

10   the SEC failed to discover the operative facts within the limitations period; and (3) the SEC acted

11   with due diligence before it discovered the  alleged backdating at KLA and Juniper.  Order at 11.

12   In response to that invitation, the SEC has added several new allegations to the effect that Ms.

13   Berry "concealed" options grant dates and otherwise engaged in "concealment" of facts.  ¶¶ 44,

14   45, 75, 76.  As shown below, these new allegations are too conclusory in nature and

15   fundamentally at odds with both (1) the SEC's more detailed allegations that make clear that Ms.

16   Berry did not conceal anything from executives and others at KLA or Juniper, the companies'

17   outside lawyers and auditors, or the investing public; and (2) the SEC's new scheme liability

18   allegations.  Moreover, the SEC makes no effort to plead facts that it acted diligently in

19   uncovering the alleged wrongdoing.  The SEC, with its powerful investigatory tools, should not

20   be allowed to invoke the equitable tolling doctrine to thwart the statute of repose when it has

21   failed to allege that it took any steps at all to uncover what it now contends was "concealed."

22              **1.      The SEC Has Not Adequately Pled Fraudulent Concealment**

23              To plead fraudulent concealment, the SEC must allege that either (1) Ms. Berry took

24   "affirmative steps" to prevent discovery of the alleged fraud, or (2) the fraud itself was of such a

25   nature as to be "self-concealing."  *SEC v. Jones*, 476 F. Supp. 2d 374, 382 (S.D.N.Y. 2007).

26   Since they are grounded in fraud, these allegations must satisfy Rule 9(b)'s particularity

27   requirements.  *See Rambus, Inc. v. Samsung Electronics Co., Ltd.*, 2007 WL 39374, at *6 (N.D.

28   Cal. Jan. 4, 2007) (Whyte, J.).

LISA C. BERRY'S MEMO  P&A ISO
MOTION TO DISMISS FAC
C 07 4431 RMW HRL

1

2

a.      **Ms. Berry took no affirmative steps to prevent discovery of the alleged fraud**

3       The SEC must allege facts "'showing affirmative conduct upon the part of the defendant

4  which would, under the circumstances of the case, lead a reasonable person to believe that he did

5  not have a claim for relief.'"  *Id*. at *6 (quoting *Rutledge v. Boston Woven Hose and Rubber Co.*,

6  576 F.2d 248, 250 (9th Cir. 1978)).  Here, the SEC fails to plead with particularity that Ms. Berry

7  took affirmative steps to fraudulently conceal the alleged backdating "scheme" at either company.

8  To the contrary, the thrust of the SEC's allegations is that Ms. Berry, "*working with others*,

9  established procedures to falsify the options grant records to make it appear that the options had

10  been granted at-the-money" and that she "*and others* at the respective companies" caused the

11  companies to grant undisclosed in-the-money options. ¶¶ 2, 4 (emphasis added).  *See also id*. ¶¶

12  27, 30, 32, 52, 55, 56.  The alleged scheme at KLA was so out-in-the-open, according to the SEC,

13  that before she left the company she "instructed employees in KLA's HR department how to

14  backdate stock option grants so that they could carry on with the scheme after she had departed."

15  *Id.* ¶ 34.  The SEC's allegations regarding Juniper are similarly illogical:  Ms. Berry is alleged to

16  have concealed facts from Juniper's CFO and CEO that would have revealed accounting errors;

17  yet, the SEC acknowledges that both the CFO and CEO were members of the Stock Option

18  Committee that generated the allegedly backdated stock options.  *Compare* ¶¶ 52 and 67.  In light

19  of its own allegations, the SEC cannot tenably allege that she fraudulently concealed anything

20  from anyone at the companies.

21       Unable to plead that Ms. Berry affirmatively concealed the "scheme" from anyone at the

22  companies, the SEC attempts to plead concealment by now charging Ms. Berry with failing to

23  inform "various persons who relied on the documentation she helped to create, including KLA's

24  outside auditor and the Audit Committee … that stock option grants were priced at KLA with the

25  benefit of hindsight."  ¶ 44.  Even crediting this new allegation – though there is substantial

26  reason to discredit it, based on the SEC's own allegations[14] – the SEC fails to allege the required

27

28

---

[14] One of the documents on which the SEC relies heavily in this action shows that Ms. Berry consulted with KLA's outside auditor and outside counsel on the subject of options grants and

1    fact that Ms. Berry (as opposed to the personnel in the companies' accounting and finance

2    departments) had any duty to disclose to the auditors. "Silence or passive conduct of the

3    defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the

4    defendant to make disclosure." *Rambus*, 2007 WL 39374 at *6 (citing *Rutledge*, 576 F.2d at

5    250). Accordingly, the SEC's new allegations of failure to inform the auditors are insufficient to

6    plead fraudulent concealment.

7                    **b.    Mere allegations of "backdating" are insufficient to plead that
                             the alleged violation was "self-concealing"**
8

9           "Standing alone, allegations of fraud are generally insufficient to demonstrate that a

10   particular act is self-concealing." *Jones*, 476 F. Supp. 2d at 382. For alleged fraud to be "self-

11   concealing," Ms. Berry "must have engaged in 'some misleading, deceptive or otherwise

12   contrived action or scheme, *in the course of committing the wrong*, that [was] designed to mask

13   the cause of action.'" *Id.* (quoting *Hobson v. Wilson*, 737 F.2d 1, 34 (D.C. Cir. 1984)) (emphasis

14   in original). "Self-concealing" fraud "is, by its nature, unknowable"; plaintiff, "even by the

15   exercise of due diligence, could not uncover it…" *Id.* (quoting *Long v. Abbott Mortgage Corp.*,

16   459 F. Supp. 108, 118, 120 (D. Conn. 1978)).

17          The court in *Jones* held that the SEC had failed to show that defendants' deception was

18   unknowable and thus self-concealing, finding that the SEC "simply rehashe[d] the underlying

19   allegations of fraud and label[ed] them as self-concealing." *Id.* (noting the SEC had "enjoyed the

20   benefit of full discovery."). "[W]hile Defendants' allegedly fraudulent acts of misrepresentation

21   may not have been affirmatively disclosed to the Commission, the record does not support a

22   finding that they were incapable of being known." *Id.* at 383. Although *Jones* involved summary

23   judgment as opposed to a motion to dismiss, the SEC here has similarly had extensive pre-

24   litigation discovery, as well as extensive cooperation from the companies (*see infra* n. 16), and

25   should thus be able to plead its concealment claims with particularity. *See* Order at 15.

26

27   _____

28   option grant dates. *See* Ms. Berry's Motion To Dismiss, RJN, Ex. H (filed Nov. 19, 2007).

1               **c.**       **The SEC fails to allege its own due diligence**

2         Finally, the SEC has failed to plead "its due diligence in policing stock option grants."

3 Order at 12. Although the SEC alleges that it "diligently pursued its own investigation" *after* the

4 two companies' public announcements in mid-2006 that they were investigating their options

5 granting practices (¶¶ 45, 76), it fails to plead facts that support that assertion. Specifically,

6 beyond receiving documents, witness interview memoranda and other forms of cooperation that

7 the companies volunteered to it in their efforts to receive leniency (*see infra* n. 16), it does not

8 allege what, if any, efforts it made on its own to support the required showing of its own due

9 diligence.[15] Nor, more fundamentally, does the SEC plead a single fact as to its diligence in

10 policing stock option granting practices "*before it discovered Ms. Berry's alleged backdating*"

11 (Order at 11; emphasis added), instead referring only in the most conclusory way to "its

12 diligence" with respect to Juniper before Juniper announced an internal investigation (¶ 76);

13 notably, the SEC does not make the same allegation of its "diligence," even in such conclusory

14 form, with respect to KLA before KLA announced an internal investigation. ¶ 45.

15         The SEC's conclusory allegations of diligence must be evaluated in the context of the

16 agency's extraordinary pre-litigation investigative power. *See SEC v. Fisher*, 2008 WL 2062699,

17 at *6 (N.D. Ill. May 13, 2008) ("the power to issue subpoenas before a suit is filed is one of the

18 advantages the SEC enjoys vis-à-vis a private securities plaintiff.); *see also Yuen*, 221 F.R.D. at

19 637 ("given the SEC's substantial pre-filing investigatory powers and the significant discovery

20 already conducted in this case," the SEC's vague pleading is "misplaced and inappropriate"). *See*

21 *generally* Exchange Act § 21(a) (giving the SEC and its staff broad investigative powers,

22 including the power to issue compulsory process).[16] Here, the SEC does not plead how it

---

23 [15] The SEC alleges for the first time in the FAC that Ms. Berry asserted her Fifth Amendment
24 privilege during the SEC's investigation. ¶¶ 45, 51. Such allegations are wholly irrelevant to
whether the SEC acted diligently *before* it discovered the alleged backdating or even to whether
25 Ms. Berry concealed relevant facts; Ms. Berry's invocation concealed nothing from the SEC. In
any event, the SEC does not allege that Ms. Berry's invocation precluded it from obtaining all the
26 evidence and information needed to bring this case.

27 [16] In addition to its subpoena power, the SEC's ability to secure "cooperation" from the
companies it is investigating – in the form of production of even materials that the company
28 otherwise regards as privileged – gives the SEC immeasurable leverage in extracting information

1   exercised its extensive investigative powers, and has thus failed to plead its due diligence.

2           According to the SEC, it had no reason to question the accuracy and reliability of the

3   companies' representations in their public filings until after the two companies on their own

4   announced in May 2006 that they were investigating their options granting practices.  ¶ 45

5   (KLA); ¶ 76 (Juniper).  The SEC's own record of investigation in the options area contradicts this

6   assertion.  The SEC was actively bringing enforcement actions regarding options granting

7   practices against other tech companies as early as 2003-2004 (meaning it had begun investigating

8   even prior to then).  For example, the SEC filed a complaint against Peregrine Systems on June

9   30, 2003 alleging that Peregrine improperly accounted for in-the-money stock options priced by

10  selecting a historical grant date.  *See* RJN, Ex. O at ¶ 29.  In another options case brought long

11  before this one, the SEC filed a complaint against Symbol Technologies and its former General

12  Counsel on June 3, 2004, alleging he "cherry picked" stock option exercise dates from a 30-day

13  "look-back" period, typically choosing the second most advantageous price during the "look-

14  back" period.  RJN, Ex. P at ¶ 3.  In the SEC's official press release announcing the charges, an

15  SEC Assistant Regional Director commented that "[t]his case … underscores the Commission's

16  commitment to rooting out fraudulent financial reporting."  RJN, Ex. Q.

17          In failing to plead a single fact as to its diligence prior to the companies' announcements,

18  the SEC fails to provide any reason for distinguishing this case from Peregrine or Symbol

19  Technologies.  The presence of allegedly illegal options backdating practices at these two tech

20  companies should have put the SEC on notice of potential improprieties at other companies,

---

21  from companies that are desperate to avoid or minimize the impact of an enforcement action
22  although, as here, the leniency usually extends only to the company and not to its former
    employees.  Indeed, in this matter, the SEC went out of its way to praise both KLA and Juniper
23  for their "cooperation" in its investigations stating that it "declined to charge [KLA] with fraud or
    seek a monetary penalty, based in part on the company's swift, extensive, and extraordinary
24  cooperation" and that, in deciding to accept Juniper's settlement offer, which also included no
    monetary penalty, it "took into account the cooperation that Juniper provided Commission staff
25  during its investigation."  RJN,  Exs. L and M.  *See generally* Report of Investigation Pursuant to
    Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement on the
26  Relationship of Cooperation to Agency Enforcement Decisions, Exchange Act. Rel. No. 44969, at
    point 11 & n.3 (Oct. 23, 2001) (SEC will take into account the nature and extent of a company's
27  production of information, including information that the staff did not request and that the
    company might otherwise regard as privileged, in determining whether to credit company with
28  cooperation).  RJN, Ex. N.

LISA C. BERRY'S MEMO  P&A ISO
MOTION TO DISMISS FAC
C 07 4431 RMW HRL

1  particularly given its stated commitment in mid-2004 to "root[] out" improper backdating

2  practices. These circumstances negate any inference (and inference is all there is, because there is

3  no allegation) that the SEC displayed diligence sufficient to invoke the equitable tolling doctrine.

4  Regardless, the SEC's failure to plead a single fact as to its diligence before the companies' own

5  announcements of internal investigations dooms its new equitable tolling theory.

6  **IV.    <u>CONCLUSION</u>**

7           Despite being given leave to amend, the SEC still cannot satisfactorily plead Ms. Berry's

8  substantial or intricate involvement in making any material misstatement in the companies' public

9  filings. Nor can it demonstrate that it is entitled to proceed under a scheme liability theory.

10  Accordingly, Claims 1, 3, 4 and 10 should be dismissed with prejudice. In addition, because the

11  SEC has not adequately pled the elements of equitable tolling of § 2462, any civil penalty for

12  alleged conduct occurring more than five years before the filing of the original Complaint should

13  be barred.

14

15  Dated: June 20, 2008                          MELINDA HAAG
                                                   JAMES A. MEYERS
16                                                 JAMES N. KRAMER
                                                   NANCY E. HARRIS
17                                                 Orrick, Herrington & Sutcliffe LLP

18                                                 _____
                                                            /s/ Melinda Haag
19                                                        MELINDA HAAG
                                                        Attorneys for Defendant
20                                                          Lisa C. Berry

21

22

23

24

25

26

27

28