# Exhibit K

Nos. 97-1143; 97-1261

---

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

ELYSE S. KLEIN, RICHARD KASTNER, DORIS
KASTNER, and WARREN KASTNER,

Appellants,

v.

WILLIAM BALLANTINE BOYD, III, WILLIAM DISSTON
COLEMAN, THOMAS H. TARANTINO, LAWRENCE G.
STEVENS, GREGORY JAMGOCHIAN, DRINKER,
BIDDLE & REATH, MERCER SECURITIES, INC.,
and MERCER SERCURITIES, LTD.,

Appellees.

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

---

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
AMICUS CURIAE

---

RICHARD H. WALKER
General Counsel

JACOB H. STILLMAN
Associate General Counsel

KATHARINE B. GRESHAM
Assistant General Counsel

CHRISTOPHER PAIK
Senior Counsel

Of Counsel
PAUL GONSON
Solicitor

Securities and Exchange Commission
Washington, D.C.  20549

=====END OF PAGE 1======

TABLE OF CONTENTS

|  | PAGE |
|---|---|
| TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . | ii |
| INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION . . . | 1 |
| STATEMENT OF THE CASE . . . . . . . . . . . . . . . | 2 |
| 1.  The Facts . . . . . . . . . . . . . . . | 4 |
| 2.  The District Court's Decision . . . . . . . . | 6 |
| 3.  The Panel's Decision . . . . . . . . . . . . | 7 |
| ARGUMENT . . . . . . . . . . . . . . . . . . . . | 9 |
| I.  A RULE THAT IMPOSES LIABILITY ONLY WHEN A PERSON IS IDENTIFIED TO INVESTORS IS INCONSISTENT WITH CENTRAL BANK AND THE LANGUAGE OF SECTION 10(b)  . . | 9 |
| II.  A PERSON SHOULD BE LIABLE AS A PRIMARY VIOLATOR OF THE SECURITIES LAWS WHEN HE OR SHE, ACTING ALONE OR WITH OTHERS, CREATES A MISREPRESENTATION  . . . . . | 15 |
| CONCLUSION . . . . . . . . . . . . . . . . . . . . | 18 |

======END OF PAGE i======
- i -

□

TABLE OF AUTHORITIES

CASES                                                                    PAGE

Anixter v. Home-Stake Production Co.,
    77 F.3d 1215 (10th Cir. 1996)  . . . . . . . . . . .     10 n.4

Bateman Eichler, Hill Richards, Inc. v. Berner,
    472 U.S. 299 (1985) . . . . . . . . . . . . . . .        2

Blue Chip Stamps v. Manor Drug Stores,
    421 U.S. 723 (1975) . . . . . . . . . . . . . . .        2

Central Bank of Denver, N.A. v. First Interstate Bank
    of Denver, N.A., 511 U.S. 164 (1994) . . . . . . . .     2,3,9,
                                                            passim

SEC v. Fehn,
    97 F.3d 1276 (9th Cir. 1996), cert. denied,
    118 S. Ct. 59 (1997) . . . . . . . . . . . . . . .       3 n.1

Shapiro v. Cantor,
    123 F.3d 717 (2d Cir. 1997)  . . . . . . . . . . .       10 n.4,
                                               17

Newton v. Dean Witter Reynolds, Inc.,
    135 F.3d 266 (3d Cir. 1998) (en banc)  . . . . . . .     13

======END OF PAGE ii======
- ii -

STATUTES AND RULES                                      PAGE

Private Securities Litigation Reform Act of 1995,
   Pub. L. No. 104-67 . . . . . . . . . . . . . . . . .     3


Securities Act of 1933, 15 U.S.C. 77a, et seq. . . . . .    4


Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq.:

      Section 10(b), 15 U.S.C. 78j(b) . . . . . . . . .     9 n.3,
                                                           10

      Section 20(a), 15 U.S.C. 78t(a) . . . . . . . . .    11 n.5
      Section 20(f), 15 U.S.C. 78t(f) . . . . . . . . .     3
      Section 21D(b)(2) U.S.C. 78u-4(b)(2) . . . . . . .   13
      Section 21D(c), 15 U.S.C. 78u-4(c) . . . . . . . .   13


Rule Under the Securities Exchange Act:

      Rule 10b-5, 17 C.F.R. 240.10b-5 . . . . . . . . .     9 n.3,
                                                           10


MISCELLANEOUS:

Conference Report on Securities Litigation Reform,
   H.R. Rep. No. 369, 104th Cong., 1st Sess. 31 (1995)  .   3

=====END OF PAGE iii======
- iii -

□

Nos. 97-1143; 97-1261

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

ELYSE S. KLEIN, RICHARD KASTNER, DORIS
KASTNER, and WARREN KASTNER,

Appellants,

v.

WILLIAM BALLANTINE BOYD, III, WILLIAM DISSTON
COLEMAN, THOMAS H. TARANTINO, LAWRENCE G.
STEVENS, GREGORY JAMGOCHIAN, DRINKER,
BIDDLE & REATH, MERCER SECURITIES, INC.,
AND MERCER SECURITIES, LTD.,

Appellees.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
AMICUS CURIAE

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION

The Securities and Exchange Commission, the agency principally
responsible for the administration and enforcement of the federal
securities laws, submits this brief, amicus curiae, to address an important
question concerning liability in private lawsuits, and possibly certain
Commission actions, brought under the antifraud provisions of the federal
securities laws:

> Is a person who makes a material misrepresentation, while acting
> with the requisite scienter, but who does not himself disseminate
> the misrepresentation to investors, and whose name is not made
> known to them, only an aider and abettor of the fraud, or is that
> person a primary violator subject to liability?

In the Commission's view, such a person is a primary violator of the
antifraud provisions.

The question arises because the Supreme Court, in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994), ruled that private actions cannot be brought against persons who aid and abet violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5, but only against "primary violators." The Supreme Court, however, expressly stated that persons like lawyers, accountants, bankers, or others who provide services to the central figures in a fraud, can be liable in private actions as primary violators, along with the central figures, when such "secondary actors" make misrepresentations. 511 U.S. at 191. This case involves the circumstances under which a law firm may be deemed to have "made" misrepresentations and thus may be adjudged to be a primary violator.

Meritorious private actions under the federal securities laws serve an important role, both because they provide compensation for investors who have been harmed by securities law violations and because, as the Supreme Court has repeatedly recognized, they "provide `a most effective weapon in the enforcement' of the securites laws and are `a necessary supplement to Commission action.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985), quoting J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964). See also Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730 (1975). Congress, in adopting the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, affirmed that "[p]rivate securities litigation is an indispensable tool with which defrauded investors can recover their losses" and that private lawsuits "promote public and global confidence in our capital markets and help to deter wrongdoing and guarantee that

=====END OF PAGE 2=====
- 2 -

□

corporate officers, auditors, directors, lawyers and others properly perform their jobs." Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31 (1995).

The Commission has a further interest in this case, beyond its implications for private actions. Because Central Bank was a private action, the Supreme Court did not explicitly address the Commission's authority to bring actions against aiders and abettors. After Central Bank, Congress reaffirmed the Commission's authority to bring such actions in the Litigation Reform Act. Securities Exchange Act Section 20(f), 15 U.S.C. 78t(f). Nonetheless, a decision in this case delineating the circumstances in which a person is a primary violator could affect the Commission's litigating authority in several areas.

First, assuming the Central Bank holding applies to the Commission, the courts have not resolved (except in one circuit <(1)>) whether the Congressional reaffirmation of the Commission's aiding and abetting authority is to be applied retroactively. Thus, it is unclear whether the Commission may proceed against persons as aiders and abettors whose fraudulent conduct occurred before Congress enacted the Litigation Reform Act. Second, the provision in the Litigation Reform Act reaffirming the Commission's authority to sue aiders and abettors requires a showing that the defendant provided assistance knowingly, thus raising a question about whether the scienter element in a securities fraud action against an aider and abettor can be satisfied by the reckless conduct that is sufficient to make a defendant liable as a

<(1)>    See SEC v. Fehn, 97 F.3d 1276 (9th Cir. 1996), cert. denied, 118 S.Ct. 59 (1997).

=====END OF PAGE 3=====
- 3 -

☐

primary violator.  Third and finally, this case could have a bearing upon
the Commission's authority to proceed against violators of the antifraud
provisions of the Securities Act of 1933, 15 U.S.C. 77a et seq.. The
Supreme Court's rejection of aiding and abetting liability under Section
10(b) of the Securities Exchange Act could be applied to the Securities Act
as well.  The Litigation Reform Act, however, does not give the Commission
authority to proceed against aiders and abettors of violations of the
Securities Act.

STATEMENT OF THE CASE

1.   The Facts

Defendant Drinker Biddle & Reath, a Philadelphia law firm, was
retained in 1992 by William Coleman, a securities salesman with a long
history of regulatory troubles and customer complaints, to assist in
setting up a brokerage firm, Mercer Securities, Ltd.   District Court slip
op. at 4-5.

The plaintiffs, who were social acquaintances and customers of
Coleman, made two series of limited partnership investments in Mercer.  Id.
at 2, 3-5.  Only the second series is at issue in this case.  The first
series, however, is relevant because it bears on whether Drinker Biddle &
Reath knew of Coleman's disciplinary history and the customer complaints
against him.

In the first series of investments, in the fall of 1992, the
plaintiffs were solicited by Coleman and invested money before the law firm
had completed the partnership agreement and accompanying disclosure
documents.  Id. at 3.  In February 1993, Drinker Biddle & Reath completed a
disclosure package for investors that included details of outstanding state

======END OF PAGE 4======
- 4 -

supervisory orders and judgments entered against Coleman.  Id. at 4.  The law firm gave the package to a principal of Mercer to give to investors. Ibid.

When the law firm partner handling Mercer matters learned some months later that the disclosure package had not been given to the investors, he urged Mercer officials to forward the information to them immediately.  Id. at 5.  The plaintiffs allege that they never received the February disclosure package.  Id. at 4.

In the fall of 1993, Coleman solicited the plaintiffs to make further investments in Mercer.  Id. at 5.  For this second series of investments, Drinker Biddle & Reath prepared a new disclosure package, which the plaintiffs were given.  Ibid.  The plaintiffs allege that the new disclosure package, unlike the first one, did not contain information about outstanding state supervisory orders, judgments entered, and customer complaints against Coleman.  Id. at 6. <(2)>  The cover letter transmitting the new disclosure package was signed by a Mercer principal, not by Drinker Biddle & Reath, and the law firm's name did not appear in the documents in the disclosure package.  Ibid.

Mercer eventually failed and the plaintiffs lost the money they provided in the second series of investments.  Id. at 9.          2.    The

        <(2)>    Plaintiffs allege that the second disclosure package
                 concealed adverse facts about Coleman, including his
                 censure by the Chicago Board of Options Exchange,
                 consent orders with Vermont and Minnesota barring him
                 from certain broker-dealer positions, a four-year bar
                 imposed by California preventing him from holding any
                 position as a broker-dealer or investment advisor, his
                 long history of customer complaints of fraudulent
                 conduct, and Mercer's agreement with the National
                 Association of Securities Dealers to limit his conduct
                 with clients.  Id. at 6.

                        ======END OF PAGE 5======
                               - 5 -

District Court's Decision

The district court dismissed plaintiffs' Section 10(b) and Rule 10b-5 securities fraud claim against Drinker Biddle & Reath because, even though the law firm had prepared documents that were given to investors, it did not sign those documents and its name did not appear in them. Id. at 64-65. The district court noted that the plaintiffs had no direct communication with the law firm and did not know that it was involved with Mercer. Id. at 65.

The district court also ruled that the plaintiffs had not presented sufficient evidence to create a genuine issue of material fact as to whether Drinker Biddle & Reath had scienter. Id. at 65-68.

3. The Panel's Decision

A panel of this Court reversed the district court's grant of summary judgment on the federal securities fraud claim. The panel noted that when the Supreme Court ruled in Central Bank that there was no private cause of action for aiding and abetting, it was careful to state that there could still be liability for "secondary actors" -- i.e., "those who provide services to participants in the securities business" (Central Bank, 511 U.S. at 188). Panel slip op. at 15. Such a secondary actor can be liable if he or she "`makes a material misstatement (or omission) on which a purchaser or seller of securities relies.'" Id. at 15, quoting Central Bank, 511 U.S. at 191.

=====END OF PAGE 6=====
- 6 -

☐

The panel held that, despite the fact that Drinker Biddle & Reath was not identified in any of the documents that went to investors, it could be

liable because

> "lawyers and other secondary actors who significantly participate
> in the creation of their client's misrepresentations, to such a
> degree that they may fairly be deemed authors or co-authors of
> those misrepresentations, should be held accountable as primary
> violators under section 10(b) and Rule 10b-5 even when the
> lawyers or other secondary actors are not identified to the
> investors, assuming the other requirements of primary liability
> are met."

Id. at 18.  When a lawyer elects to speak, the panel stated, he or she has

a duty to speak truthfully, even when speaking "behind the scenes."  Id. at

20.  A lawyer who prepares a document knowing that it will be given to

investors "has elected to speak to the investors, even though the document

not may be facially attributed to the lawyer."  Ibid.

   In response to Drinker Biddle & Reath's argument that the plaintiffs

had not shown reliance because they did not know of the law firm's

involvement, the panel held that the federal securities laws require a

plaintiff to demonstrate "reliance on the misleading statement; they do not

require the plaintiff to demonstrate that he or she relied on the

defendant's role in the preparation or dissemination of the statement."

Id. at 18 (emphasis in original).

   The panel made clear that a lawyer who only provides "substantial

assistance" to a client, and who could have been liable as an aider and

abettor before Central Bank eliminated aiding and abetting liability in

private actions, would not be liable under the panel's test.  In the

panel's view, a person "has done more than provide mere substantial

assistance" when his or her involvement was "sufficiently significant that

======END OF PAGE 7======
- 7 -

□

the [fraudulent] statement can properly be attributed to the person as its

author or co-author."  Id. at 20-21; see also id. at 22.

With respect to the law firm's scienter, the panel reversed the district court's ruling that the plaintiffs had not presented sufficient evidence to create a genuine issue of material fact.  The panel stated that a trier of fact could reasonably find that the law firm knew that investors never received the earlier disclosure package that included material information about Coleman's regulatory difficulties, and that the law firm prepared the second disclosure package without including this information. Id. at 24.  The panel also stated that a trier of fact could reasonably infer from the evidence that the law firm concealed this information so that the plaintiffs would not withdraw their investments, Mercer would remain solvent, and Drinker Biddle & Reath would not be exposed to liability as a result of "possible oversights in [its] representation of Mercer LP."  Id. at 24-25.

ARGUMENT

I.   A RULE THAT IMPOSES LIABILITY ONLY WHEN A PERSON IS IDENTIFIED TO
     INVESTORS IS INCONSISTENT WITH
     CENTRAL BANK AND THE LANGUAGE OF SECTION 10(b).

The Supreme Court cautioned in Central Bank that the elimination of aiding and abetting liability in private actions does not mean that only the central figure in a securities fraud is liable.  The Supreme Court stated that "secondary actors" could be liable as well:

> "The absence of □ 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the Securities Acts.  Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming all of the requirements for primary liability under Rule 10b-5 are met.  In

======END OF PAGE 8======
- 8 -

□

any complex securities fraud, moreover, there are likely to be multiple violators * * *."

511 U.S. at 191 (citations omitted) (emphasis added). <(3)>

The issue in this case is whether, as Drinker Biddle & Reath contends, the phrase "makes a material misstatement (or omission)" means that a law firm or other secondary actor can be primarily liable for a misrepresentation only if it signs the document containing the misrepresentation or is otherwise identified to investors.  Drinker Biddle & Reath argues, in effect, that even if it prepared a disclosure package for investors that it knew was materially false or misleading, it cannot be liable under Central Bank because the disclosure package did not reveal its identity.  Thus, in Drinker Biddle & Reath's view, "[p]articipation in the drafting, no matter how significant," cannot by itself result in liability. Rehearing Petition at 6. <(4)>

This view of Central Bank is incorrect.  Nothing in Central Bank indicates that when the Supreme Court used the word "makes," it meant that

> <(3)>    The phrase "employs a manipulative or deceptive device" is from Section 10(b); the phrase "makes a material misstatement (or omission)" follows the language of Rule 10b-5(b).
>
> <(4)>    In support of its position, Drinker Biddle & Reath cites, inter alia, Anixter v. Home-Stake Production Co., 77 F.3d 1215, 1226-27 (10th Cir. 1996), and Shapiro v. Cantor, 123 F.3d 717, 720-21 (2d Cir. 1997). Rehearing Petition at 3, 5, n.3.  Those cases, however, involved very different factual situations, and therefore do not provide guidance for this case.  In Anixter, the defendant was an accounting firm that had actually signed fraudulent documents, and therefore was liable under any standard.  In Shapiro, the defendant accounting firm was not alleged to have been involved in creating any misrepresentation, but only to have been aware that its client was making a misrepresentation.

======END OF PAGE 9======
- 9 -

only persons who sign documents or are otherwise identified to investors can be primarily liable.  Indeed, such an interpretation would be

inconsistent with the language of Section 10(b), which makes it unlawful "for any person, directly or indirectly * * * [t]o use or employ * * * any manipulative or deceptive device or contrivance." (Emphasis added.) A person who creates a misrepresentation, but takes care not to be identified publicly with it, "indirectly" uses or employs a deceptive device or contrivance and should be liable.

The rule Drinker Biddle & Reath proposes would have the unfortunate and unwarranted consequence of providing a safe harbor from liability for everyone except those identified with misrepresentations by name. Creators of misrepresentations could escape liability as long as they concealed their identities. <5> Not only outside lawyers would benefit from such a rule; others who are retained to prepare information for dissemination to investors, including accountants and public relations firms, could immunize themselves by remaining anonymous. Indeed, in-house counsel and other corporate officials and employees could avoid liability for misrepresentations they created, as long as their identities were not made known to the public. In sum, by providing a safe harbor for anonymous creators of misrepresentations, a rule that imposes liability only when a person is identified with a misrepresentation would place a premium on

<5>    "Controlling persons" of those publicly identified as responsible for the misrepresentation would be liable under Section 20(a) of the Exchange Act, 15 U.S.C. 78t(a). However, a person can be a creator of a misrepresentation without controlling the person in whose name the misrepresentation is issued.

======END OF PAGE 10======
- 10 -

☐

concealment and subterfuge rather than on compliance with the federal securities laws.

Drinker Biddle & Reath contends that it was "the Supreme Court's clear intention in Central Bank to adopt a bright-line rule for imposing liability" in order to protect securities lawyers from being named as defendants in securities fraud suits.  Rehearing Petition at 1, 6-7.  While the Supreme Court was concerned that there should be limits on the liability of lawyers and others who provide services to the central figures in a securities fraud (see 511 U.S at 188-89), the bright line rule Drinker Biddle & Reath advocates, with its resulting unwarranted consequences, goes beyond any reasonable reading of Central Bank.  The Supreme Court did not set forth a bright line rule for liability, much less one that turns on whether the identity of a defendant is disclosed.  Indeed, the Supreme Court used the word "makes" in discussing the involvement that could lead to liability -- a word that requires further interpretation, as the panel recognized.  Panel Slip Op. at 15 (discussing the need "to clarify the circumstances under which a statement may fairly be said to have been 'made' by a secondary actor").  <(6)>

> <(6)>  Nor did the Supreme Court forbid a fact-oriented test, as Drinker Biddle & Reath contends, pointing to the Supreme Court's discussion of policy arguments against such a test.  See Rehearing Petition at 6.  Rather, the Supreme Court discussed those arguments only to make the point that the policy arguments that the Commission made in its Central Bank brief in favor of aiding and abetting liability were not determinative.  Policy considerations, the Court stated, could be taken into account "to the extent that they may help to show that adherence to the text and structure would lead to a result 'so bizarre' that Congress could not have intended it." 511 U.S. at 188 (citations omitted).  However, "[p]olicy considerations cannot override [the
> (continued...)

=====END OF PAGE 11=====
- 11 -

Drinker Biddle & Reath further contends that without a bright-line test, lawyers will be named as defendants in every securities fraud suit

filed in this Circuit.  Id. at 6-7.  This contention, however, fails to take into account the scienter requirement, which gives lawyers (and other defendants) substantial protection against frivolous securities fraud lawsuits.  In a Section 10(b) securities fraud suit, the plaintiff must both plead and prove that the defendant acted with scienter, defined by this Court to mean deliberately or recklessly.  Newton v. Dean Witter Reynolds, Inc., 135 F.3d 266, 273 (3d Cir. 1998) (en banc).

The scienter element has become particularly important at the pleading stage of a suit in light of a key provision of the Litigation Reform Act, which requires the plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]."  Securities Exchange Act Section 21D(b)(2), 15 U.S.C. 78u-4(b)(2).  This requirement means that a securities fraud plaintiff must state a strong and specific case in order to avoid dismissal of his or her claim.  This protection substantially lessens the possibility that plaintiffs will be able to bring frivolous suits against lawyers.  Moreover, the Litigation Reform Act provides for mandatory sanctions against plaintiffs who fail to comply with the pleading requirements.  Securities Exchange Act Section 21D(c), 15 U.S.C. 78u-4(c).  Thus, if the Court rejects Drinker Biddle & Reath's bright line test, it is unlikely that there will be a flood of lawsuits against lawyers in this Circuit.

<(6)>(...continued)
          Court's] interpretation of the text and structure of
          the Act."  Ibid.

======END OF PAGE 12======
- 12 -

□

Finally, Drinker Biddle & Reath contends that imposing liability on it when the investors did not know of its involvement in the creation of the

misrepresentation would negate the element of reliance required in a private action for securities fraud.  Rehearing Petition at 3, 6.  This contention is incorrect.  The reliance a plaintiff in a securities fraud action must plead is reliance on a misrepresentation, not on the fact that a particular person made that misrepresentation.  The Supreme Court stated in Central Bank that liability exists where "[a]ny person or entity, including a lawyer, accountant, or bank

* * * makes a material misstatement (or omission) on which a purchaser or seller of securities relies." 511 U.S. at 191 (emphasis added).  Thus, the Court placed the focus on the misrepresentation, not on the fact that a particular person made it.

Drinker Biddle & Reath nonetheless points to the Supreme Court's statement that the argument made by the plaintiffs in Central Bank "'would impose 10b-5 aiding and abetting liability when at least one element critical for recovery under 10b-5 is absent:  reliance.'"  Rehearing Petition at 3, quoting 511 U.S. at 180.  This problem, it asserts, will be present unless there is a requirement that a plaintiff rely on the person who makes the representation.

Drinker Biddle & Reath, however, does not quote the entire passage from Central Bank.  The Supreme Court went on to say that "[w]ere we to allow the aiding and abetting action proposed in this case, the defendant could be liable without any showing that the plaintiff relied upon the aider and abettor's statements or actions." 511 U.S. at 180 (emphasis added).  In Central Bank, the defendant, a bank that had been the indenture

=====END OF PAGE 13=====
- 13 -

trustee for a defaulted bond issue, had not created any misrepresentations, but had failed to update the appraisal for land securing the bonds.  The

investors thus could not be said to have relied on any misrepresentations "made" by the bank.  In contrast, the plaintiffs in this case allege that Drinker Biddle & Reath created the misrepresentations upon which the investors relied.

## II.  A PERSON SHOULD BE LIABLE AS A PRIMARY VIOLATOR OF THE SECURITIES LAWS WHEN HE OR SHE, ACTING ALONE OR WITH OTHERS, CREATES A MISREPRESENTATION.

As we have shown in Argument I, Drinker Biddle & Reath is incorrect in arguing that liability may be imposed only when a defendant is identified to investors.  The correct standard, we submit, is that when a person, acting alone or with others, creates a misrepresentation, the person can be liable as a primary violator -- assuming, of course, that he or she acts with the requisite scienter.

While the Commission, as amicus curiae, takes no position as to the truth of the allegations in the complaint, under the Commission's standard those allegations, if proven to be true, would establish that Drinker Biddle & Reath was a primary violator of the antifraud provisions.

The Commission's proposed test makes clear that more than one person may be involved in creating a misrepresentation.  As the Supreme Court stated in Central Bank, "[i]n any complex securities fraud * * * there are likely to be multiple [primary] violators."  See 511 U.S. at 191.  Moreover, it would not be necessary for a person to be the initiator of a misrepresentation in order to be a primary violator.  Provided that a plaintiff can plead and prove scienter, a person can be a primary violator if he or she writes misrepresentations for inclusion in a document to be

======END OF PAGE 14======
- 14 -

□

given to investors, even if the idea for those misrepresentations came from someone else.

Under the Commission's test, however, a person who prepares a truthful and complete portion of a document would not be liable as a primary violator for misrepresentations in other portions of the document.  Even assuming such a person knew of misrepresentations elsewhere in the document and thus had the requisite scienter, he or she would not have created those misrepresentations.

The test proposed by the Commission differs somewhat from the test enunciated by the panel, which concluded that

"lawyers and other secondary actors who significantly participate in the creation of their client's misrepresentations, to such a degree that they may
fairly be deemed authors or co-authors of those misrepresentations, should be held accountable as
primary violators under section 10(b) and Rule 10b-5
even when the lawyers or other secondary actors are
not identified to the investor."

Panel slip op. at 18.  In the Commission's view, the panel's phrase "significantly participate in the creation of their client's misrepresentations" is susceptible to misinterpretation.  The phrase "significantly participate," although consistent with responsibility for the creation of a misrepresentation, could also be taken to encompass lesser degrees of involvement.  Drinker Biddle & Reath argues that the panel's test would make defendants liable for conduct that is "indistinguishable" from the aiding and abetting conduct held to be not actionable in Central Bank.  Rehearing Petition at 2-3.  While the Commission does not agree with this view, it recognizes some potential for misinterpretation in the panel's formulation.  See Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997) ("Allegations of `assisting,' `participating

=====END OF PAGE 15=====
- 15 -

☐

in,' `complicity in' and similar synonyms used throughout the complaint all fall within the prohibitive bar of Central Bank.").  The Commission

believes that its proposed formulation -- "creates a misrepresentation, acting alone or with others" -- will help to avoid this difficulty.

In sum, the word "makes" as used in Central Bank does not have a precise meaning independent of the circumstances of the particular case. Drinker Biddle & Reath's test would define "makes" as "signs." But, as noted earlier, nothing in Central Bank indicates that the Supreme Court meant to give such a restrictive definition to the word, and indeed, such a definition would be inconsistent with the "directly or indirectly" language of Section 10(b). The Commission believes that a test that looks to what a secondary actor does in "creating a misrepresentation" provides the appropriate focus for determining when the secondary actor "makes" a misrepresentation.

======END OF PAGE 16======
- 16 -

CONCLUSION

For the foregoing reasons, the Commission urges this Court to hold

that a person who has the requisite scienter can be liable as a primary violator of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder when he or she, acting alone or with others, creates a misrepresentation, whether or not the person is identified with the misrepresentation by name.

                          Respectfully submitted,

                          RICHARD H. WALKER
                          General Counsel

                          JACOB H. STILLMAN
                          Associate General Counsel

                          KATHARINE B. GRESHAM
                          Assistant General Counsel

                          CHRISTOPHER PAIK
Of Counsel                Senior Counsel
   PAUL GONSON
   Solicitor              Securities and Exchange Commission
                          Washington, D.C.  20549

April 1998

=====END OF PAGE 17=====
- 17 -

**ATTACHMENT TWO**

<u>United States v. O'Hagan</u> Brief