# Exhibit Q

Home > News & Statements > Press Releases

# Symbol Technologies Agrees to Settle SEC Enforcement Action Charging the Company with Accounting Fraud

**FOR IMMEDIATE RELEASE**
**2004-74**

**Symbol Technologies Agrees to Pay $37 Million Penalty SEC Also Charges 11 Former Symbol Executives with Securities Fraud**

*Washington, D.C., June 3, 2004* -- The Securities and Exchange Commission today charged Symbol Technologies, Inc. with securities fraud and related violations of the reporting, record-keeping and internal control provisions of the federal securities laws. The SEC also charged eleven former Symbol executives in connection with their roles in the fraud.

The SEC's complaint alleges that from at least 1998 until early 2003, Symbol and the other defendants engaged in numerous fraudulent accounting practices and other misconduct that had a cumulative net impact of over $230 million on Symbol's reported revenue and over $530 million on its pre-tax earnings. Based in Holtsville, N.Y., Symbol supplies mobile information systems using bar code scanners and related technology and its stock is publicly traded on the New York Stock Exchange.

Symbol agreed to settle the case without admitting or denying the allegations. As part of the settlement, Symbol agreed to pay a $37 million penalty for its conduct. The entire penalty amount will be distributed to injured investors. In assessing the penalty amount, the Commission considered the scope and severity of the fraud, Symbol's initial efforts to cover up the misconduct and impede two internal investigations and the Commission's investigation, and the company's eventual cooperation and remediation.

"The scope and magnitude of the fraud at Symbol Technologies warrant the imposition of significant penalties — not just against individual wrongdoers, but also against the company responsible for having created and fostered the environment in which the wrongdoing took place," said Stephen M. Cutler, Director of the Commission's Division of Enforcement. "And while the company ultimately did cooperate with the government -- and received credit for having done so — its initial response to our investigation further harmed investors by delaying exposure of the fraud and allowing it to continue longer than it otherwise might have."

"This case presents another unfortunate example of deliberate misconduct at a public company and underscores the Commission's commitment to rooting out fraudulent financial reporting," added George N. Stepaniuk, Assistant Regional Director in the Commission's Northeast Regional Office in New York. "When companies deliberately falsify financial results to meet pre-determined targets, as Symbol did repeatedly, they commit securities fraud. They and the individuals who perpetrate such frauds will be held responsible for the harm they cause investors."

The Commission's complaint alleges as follows.

The defendants engaged in a fraudulent scheme to inflate revenue, earnings and other measures of financial performance in order to create the false appearance that Symbol had met or exceeded its financial projections. Defendant Tomo Razmilovic, Symbol's former president and CEO, and others at the company fostered a "numbers driven" corporate culture obsessed with meeting Wall Street estimates. With no regard for generally accepted accounting principles (GAAP) or their financial reporting obligations, the defendants used the following fraudulent schemes to align Symbol's reported financial results with market expectations: (a) a "Tango sheet" process through which baseless accounting entries were made to conform the unadjusted quarterly results to management's projections; (b) the fabrication and misuse of restructuring and other non-recurring charges to artificially reduce operating expenses, create "cookie jar" reserves and further manage earnings; (c) channel stuffing and other revenue recognition schemes, involving both product sales and customer services; and (d) the manipulation of inventory levels and accounts receivable data to conceal the adverse side effects of the revenue recognition schemes. Together

with Razmilovic, defendants Kenneth Jaeggi, Brian Burke, Michael DeGennaro and Frank Borghese comprised most of Symbol's senior management team during the relevant period and directed the fraud. Defendants Christopher DeSantis, James Heuschneider, Gregory Mortenson, James Dean and Robert Donlon were Symbol executives during this period and implemented the schemes.

While the accounting fraud was occurring, defendant Leonard Goldner, Symbol's former general counsel, manipulated stock option exercise dates to enable certain senior executives, including himself, to profit unfairly at the company's expense. Rather than use the actual exercise date as defined by the option plans, Goldner instituted, without board approval or public disclosure, a practice of using a more advantageous date chosen from a 30-day "look-back" period so as to reduce the cost of the exercise to the executive. To create the false appearance that these exercises actually occurred on the selected dates, Goldner had his staff backdate the requisite transactional documents and use the phony exercise dates in the forms on which the executives reported their acquisitions to the Commission and the public.

In addition to committing securities fraud, some of the defendants interfered with two internal investigations into Symbol's accounting practices and delayed the Commission's investigation. After the Commission began its investigation, Jaeggi directed subordinates to discard copies of "Tango sheets" and other incriminating documents. During the same relevant period, DeGennaro rigged the revenue recognition data provided to the forensic accountants involved in the first internal inquiry, instructed subordinates to withhold or delay providing information to subsequent internal investigators, and directed employees to sanitize key portions of schedules that they intended to provide to the investigators.

While these defendants were engaged in their efforts to derail the investigations and cover up the fraud, Symbol filed multiple periodic reports containing financial results that it has since restated, including its Form 10-K for 2001 and a Form 10-Q that Jaeggi falsely certified in violation of the new Sarbanes-Oxley certification provisions.

**Settlements**

Symbol has agreed to the following relief:

- a permanent injunction against future violations of the antifraud, reporting, books and records and internal controls provisions of the federal securities laws.

- a civil penalty of $37 million and nominal disgorgement of $1, all of which will be distributed to injured investors.

- various remedial measures, including the appointment of an independent examiner to review Symbol's accounting practices and internal control systems and assess the status of remedial actions undertaken or planned by the company in those and other areas, such as corporate governance.

Dean has also agreed, without admitting or denying the allegations, to the imposition of the non-monetary relief sought by the Commission. Specifically, he has agreed to a permanent injunction against committing, or aiding and abetting, future violations of the antifraud, reporting, books and records and internal controls provisions of the federal securities laws.

The Commission's claims for disgorgement and civil penalties against Dean, and all of its claims against the other individual defendants, remain pending.

\* \* \*

The Commission's investigation is also continuing. The Commission acknowledges the assistance and cooperation of the United States Attorney's Office for the Eastern District of New York and the U.S. Postal Inspection Service in this matter.

**For further information contact:**

- Mark K. Schonfeld (646) 428-1650
  Associate Regional Director, Northeast Regional Office

- George N. Stepaniuk (646) 428-1910
  Assistant Regional Director, Northeast Regional Office

*Last modified: 6/3/2004*