# Exhibit A

Case 5:07-cv-04431-RMW    Document 55-2    Filed 07/03/2008    Page 1 of 11

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Securities and Exchange Comm'n, | NO. C 07-03798 JW |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| Kenneth L. Schroeder, | |
| Defendant. | |

## I. INTRODUCTION

The Securities and Exchange Commission ("SEC") brings this civil enforcement action against Kenneth L. Schroeder ("Defendant"), alleging, *inter alia*, violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Sections 10(b), 13(b)(5), and 16(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78m(b)(5), 78p(a). Presently before the Court is Defendant's Motion to Dismiss. (hereafter, "Motion," Docket Item No. 39.) The Court found it appropriate to take the motion under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES Defendant's motion.

## II. BACKGROUND

In a Complaint filed on July 25, 2007, the SEC alleges as follows:

Defendant Schroeder resides in Los Altos Hills, California. He served as the President and CEO of KLA-Tencor Corporation ("KLA" or "the Company") after the Company's merger on April 30, 1997 until June 30, 1999, and then as the Company's CEO

until January 1, 2006. Defendant also served on KLA's Board of Directors and Stock Option Committee from 1997 through 2005. (Complaint ¶ 9, hereafter, "Complaint," Docket Item No. 1) KLA is a San Jose semiconductor company. (Id. ¶ 1.)

Under well-settled accounting principles in effect during the relevant period, KLA did not need to record an expense for "at-the-money" options, granted to employees at the current market price; however, the Company was required to record an expense in its financial statements for any "in-the-money" options, granted below the current market price. In order to provide KLA executives and employees with potentially far more lucrative "in-the-money" options, from mid-1999 to mid-2002, and once again in 2005, Defendant engaged in a scheme to backdate stock options granted to KLA executives and employees. (Id. ¶ 2.)

Defendant used dates and prices for stock option grants chosen with hindsight and concealed this practice, causing KLA to hide millions of dollars in expenses from investors and to significantly overstate the Company's income. Defendant continued to engage in this practice even after being specifically instructed by KLA counsel that retroactively selecting grant dates without adequate disclosure was improper. (Id. ¶ 1.) As a result of his practices, he personally benefitted by receiving several million dollars in compensation in the form of backdated options. (Id. ¶ 3.)

On the basis of the allegations outlined above, the SEC alleges the following causes of action against Defendant: (1) violation of Section 10(b) and Rule 10b-5 of the Exchange Act; (2) aiding and abetting violation of Section 10(b) and Rule 10b-5 of the Exchange Act; (3) violation of Section 17(a)(1) of the Securities Act; (4) violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act; (5) false statements and omissions to accountants and auditors in violation of Rule 13b2-2; (6) false periodic report – aiding and abetting violation of Section 13(a) and Rules 12b-20, 13a-1, 13a-11, and 13a-13 of the Exchange Act; (7) inaccurate books and records – aiding and abetting violation of Section 13(b)(2)(A) of the Exchange Act; (8) inadequate internal accounting controls – aiding and

2

abetting violation of Section 13(b)(2)(B) of the Exchange Act; (9) falsifying books and records or circumventing internal accounting controls – violation of section 13(b)(5) of the Exchange Act; (10) falsifying books and records – violation of Rule 13b2-1of the Exchange Act; (11) false proxy statements – aiding and abetting violation of Section 14(a) and Rule 14a-9 of the Exchange Act; (12) beneficial ownership reporting – violation of Section 16(a) and Rule 16a-3 of the Exchange Act; and (13) violation of Rule 13a-14 of the Exchange Act.

Presently before the Court is Plaintiffs' motion to dismiss the SEC's Complaint.

### III. DISCUSSION

Defendant moves to dismiss on the ground that third-party assertions of privilege in this case will prevent Defendant from accessing information necessary to defend against the SEC's claims in this action. (Motion at 19.)

When a plaintiff brings suit which implicates a privilege it holds against a defendant, courts will generally imply that the plaintiff has waived the privilege to the extent that the defendant needs access to the privileged information to assert a valid defense. See Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003) (*en banc*); United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999); Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). According to the Ninth Circuit, this rule prevents parties in a litigation from abusing the privilege "by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." Bittaker, 331 F.3d at 719. However, "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition." Id. at 721; cf. Lyons v. Johnson, 415 F.2d 540, 541-42 (9th Cir. 1969).

The Court proceeds to consider whether access to privileged information will prevent Defendant from asserting a valid defense, and if so, whether dismissal of this action is the appropriate remedy.

3

### 1. Whether Access to Privileged Information Will Prevent Defendant from Asserting a Valid Defense

In return for leniency, KLA cooperated extensively with the SEC to expedite the SEC's investigation of Defendant. (Motion, Exs. 3, 8.) KLA voluntarily provided information to the SEC that otherwise would not have been uncovered or available, including: (1) privileged Special Committee documents, (2) privileged Company documents, and (3) privileged witness interviews. (Id., Ex. 8.) While many of these documents have been provided to Defendant by the SEC, there is evidence that KLA has asserted privilege to prevent any further discovery regarding these documents. For example, on January 24, 2008, counsel for KLA wrote the following in response to Defendant's request for such discovery:

> With regard to materials protected by the work product doctrine and/or attorney-client privileges, as you know and as we have discussed with you on numerous occasions, KLA provided protected material to the SEC under an express confidentiality agreement that production did not waive applicable privileges. Based on the circumstances of the SEC investigation, under the common-interest exception to waiver doctrine and case law recognizing a "selective waiver," . . . KLA has not intended to waive any privileges and has vigorously intended to preserve the privilege as to Mr. Schroeder and others who are adverse to the Company. Mr. Schroeder's claim that those privileges have been waived is incorrect.

(Motion, Ex. 10.) Defendant contends that based on the allegations in the Complaint, Defendant is entitled to discover certain documents in possession of KLA to mount valid defenses. (Motion at 21-22.) The Court reviews the evidence Defendant contends is necessary for his defense.

First, part of the SEC's theory of liability against Defendant is that he received legal advice in March 2001, which evidences he knew, or was reckless in not knowing, that stock option grant prices cannot be retroactively set below the current market price without taking a compensation expense. (Complaint ¶¶ 29-31.) The Complaint alleges that Defendant received this legal advice in the form a memorandum from KLA's then General Counsel, on or about March 19, 2001. (Id. ¶ 31.)

From October 25, 1999 to October 16, 2006, Stuart Nichols was the General Counsel of KLA. (Motion, Ex. 9 at 22:12-14.) Defendant contends that the testimony of Nichols regarding this memorandum is important for establishing that Defendant did not violate the securities laws. (Motion at 9-10.) In colloquy between counsel at the deposition of Nichols, counsel for KLA

4

informed counsel for Defendant that it would direct Nichols not to answer any questions regarding the substance of the March 19, 2001 memorandum as well as any questions regarding certain communications related to the memorandum. (Id., Ex. 9 at 199-202, 218.) Additionally, counsel for KLA stated that all other parties to these communications would be directed not to answer. (Id.)

Second, Defendant contends that communications between former KLA General Counsel, Lisa Berry, and KLA personnel are also crucial to his defense. (Motion at 17.) For instance, in this case, the SEC alleges that Defendant "engineered a scheme to create option grant approvals which falsely represented the date of the grant." (Complaint ¶ 18.) However, in the case it has filed against Berry, the SEC alleges that she "devised the improper backdating scheme while serving as General Counsel of KLA . . . ." (Case No. 07-cv-04431-RMW, Complaint, Docket Item No. 1.) Berry was the General Counsel of KLA from 1997 until the fall of 1999. (Id. ¶ 3.)

Upon review, the Court finds that KLA's assertions of privilege regarding the communications between Defendant and Nichols may have prevented Defendant from receiving discovery which may tend to show that he did not have the requisite knowledge for securities laws violations. If KLA asserts the same broad privilege with respect to Berry as it has regarding Nichols, the assertion may prevent Defendant being able to fully present Berry's role in the backdating at the Company. This evidence may tend to show that Berry was solely responsible for the conduct of which the SEC complains.

Further, the agreement with KLA, which allowed the SEC to receive production of materials from the Company, does not permit the SEC to argue waiver of any privilege with respect to those materials. Specifically, the agreement provides that the SEC will not "assert that the production of the [materials] to the [SEC] constitutes a waiver of the protection of the attorney work product doctrine, the attorney-client privilege, or any other privilege applicable as to any third-party." (Id., Ex. 14.) While this agreement lets the SEC to use privileged communications against Defendant, it also appears to allow KLA to assert privilege in a way that may prevent the Defendant from defending against the SEC's allegations.

5

Accordingly, the Court finds that KLA's assertion of privilege, if later confirmed by the Court, may prevent Defendant from asserting potentially viable defenses.

### 2. Remedies Available to Defendant

In dispute is the remedy available to Defendant in light of third-party KLA's assertion of privilege. Defendant contends that this case must be dismissed because KLA, as a third-party, cannot be deemed to have waived its privilege. (Motion at 22.) The SEC contends that less drastic remedies are available, which Defendant has not exhausted. (The SEC's Opposition to Defendant's Motion to Dismiss at 7, hereafter, "Opposition," Docket Item No. 66.) Neither of the parties' briefs analyze a case in federal court addressing the remedies available to a Defendant in a SEC enforcement action, which is deprived of a defense by a third-party assertion of privilege. Rather, the parties analogize the facts of this case to certain state court cases involving attorney-client and work product privilege as well as to certain federal court cases involving the assertion of state secrets privilege.

In Solin v. O'Melveny & Myers, LLP, an attorney brought an action against a law firm, alleging that the defendant misadvised him concerning matters connected with two of his clients. 89 Cal. App. 4th 451, 453-57 (2001.) The California Court of Appeal affirmed the trial court's decision to dismiss the action because the defendant could not defend itself without revealing information plaintiff told defendant about his clients, which was privileged. (Id.) While Solin and this case each involve third-party privilege, Solin is distinguishable from the this case insofar as it applies a state standard which is more strict than the federal standard for attorney-client privilege. See Fed. R. Evid. 501. Under California law, "there can be no balancing of the attorney-client privilege against the right to prosecute a lawsuit to redress a legal wrong;" whereas, in federal court, the doctrine of waiver may allow such a case to go forward. Compare Solin, 89 Cal. App. 4th 457-58 with Bittaker, 331 F.3d at 719; Murdoch v. Castro, 365 F.3d 699 (9th Cir. 2004).

In McDermott, Will & Emery v. Superior Court, the California Court of Appeal found that a derivative action against a corporation's outside counsel could not proceed, since the action raised

6

Case 5:07-cv-03798-JW    Document 73-2    Filed 05/22/2008    Page 7 of 10
Case 5:07-cv-04431-RMW    Document 55-2    Filed 05/23/2008    Page 8 of 11

attorney-client privilege issues which foreclosed defendant from mounting a meaningful defense to the action. 83 Cal. App. 4th 378, 385 (2000). The shareholders who brought the suit were deemed to have no right to waive the privilege of the corporation even though they were suing on its behalf. Id. at 384-85. More so than Solin, McDermott, Will & Emery addresses the issue presented by this case. There, the nominal defendant, a corporation, held a privilege which prevented the other defendant, the corporation's own outside counsel, from defending itself. In this case, third-party KLA, which is also a corporation, may hold a privilege which would prevent Defendant, KLA's own former CEO, from defending himself. However, once again, McDermott, Will & Emery v. Superior Court is distinguishable because "the strict principles set forth in the Evidence Code of California . . . preclude[] any judicially created exceptions to the attorney-client privilege" such as those available in federal court. Id. at 385.

In the state secrets context, the parties cite Kasza v. Browner,[1] as well as Fitzgerald v. Penthouse Int'l, Ltd.[2] However, the Court finds that the more recent cases in which the government is a third-party that seeks to intervene in an action to assert state secrets privilege requires dismissal of the case. See Al-Haramain Islamic Foundation, Inc. v. Bush, 507 F.3d 1190, 1197 (9th Cir. 2007); El-Masri v. United States, 479 F.3d 296, 304 (4th Cir. 2007). Those cases articulate the analysis of state secrets privilege as requiring a court to take three steps:[3] (1) the court must "ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied," Id. at 304; (2) the court must make an independent determination whether the information is privileged, Id.; and (3) the court must consider "how the matter should proceed in light of the successful privilege claim." Id. "[I]f the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary

---

[1] 133 F.3d 1159 (9th Cir. 1998).

[2] 776 F.2d 1236 (4th Cir. 1985).

[3] The Ninth Circuit's recent decision in Al-Haramain, 507 F.3d at 1202, adopted this three step analysis, which was first articulated in El-Masri, 479 F.3d at 304.

7

judgment to the defendant." <u>Kasza</u>, 133 F.3d at 1166. However, under the second step in the test for analyzing state secrets privilege, dismissal is an appropriate remedy only after the court first finds a valid assertion of privilege. To the extent that the analogy between state secrets cases and this case is warranted, this is the element that would be missing.

With respect to this case, the validity of KLA's assertion of privilege remains untested, and it remains plausible that the assertion of privilege may be deemed waived. <u>Bittaker</u>, 331 F.3d at 719. Further, in discovery disputes, Defendant has repeatedly represented that he intends to file a motion to compel, which would challenge the privilege assertions of KLA and its attorneys. For instance, at the deposition of Nichols, counsel for Defendant represented that the purpose of the deposition was, in part, to make a deposition record for the Defendant's intended motion to compel against KLA. (Declaration of Susan F. LaMarca in Support of the SEC's Opposition to Defendant's Motion to Dismiss ¶ 6, hereafter, "LaMarca Decl.," Docket Item No. 67.) Counsel for Defendant also represented that Defendant intended to file such a motion by mid-January along with a similar motion against KLA's lawyers. (<u>Id.</u>) On January 29, 2008, the parties attended a discovery conference with Magistrate Judge Howard Lloyd. (<u>See</u> Docket Item No. 65.) In an order following the conference, Judge Lloyd noted:

> [Defendant Schroeder] has the ability to move the court now to clarify the privilege issues which impact [its] depositions. (At a recent discovery conference, Schroeder indicated to the court that he would be filing such a motion shortly. According to the SEC, Schroeder has stated since December that he would be bringing such a motion, and the SEC says that it agreed to postpone the deposition of Skadden attorney Elizabeth Harlan for that reason.) But Schroeder has now changed his mind. He just told this court at oral argument that he has no intention of seeking relief as to KLA's asserted privilege until after his motion to dismiss is resolved. Indeed, he indicated that he made a deliberate and conscious decision *not* to challenge KLA's asserted privilege now so that he could pursue that request for dismissal.

(<u>Id.</u>; LaMarca Decl. ¶ 8.) If Judge Lloyd's understanding of Defendant's representations is correct, then it appears that Defendant is purposely postponing its motion to compel. Dismissal of a case with prejudice is a remedy of last resort, even when privilege bars access to information necessary for the Defendant to maintain a defense. <u>Kasza</u>, 133 F.3d at 1166; <u>Fitzgerald</u>, 776 F.2d 1242, 1244; cf. <u>Yourish v. California Amplifier</u>, 191 F.3d 983, 990 (9th Cir. 1999). The record reflects that

8

Defendant has not fully explored all of the less drastic remedies which are available to him. Additionally, Defendant has not established that KLA and its lawyers have asserted a valid privilege. Until he has done these things, the Court cannot reach a final determination of whether the Complaint should be dismissed.

### IV. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss without prejudice. The parties shall appear for the previously scheduled Further Case Management Conference on **June 2, 2008 at 10 a.m.** The parties shall file a Joint Case Management Statement on or before **May 28, 2008.**

Dated: May 22, 2008

JAMES WARE
United States District Judge

9

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Alice L. Jensen ajensen@fenwick.com
   David Allen Priebe david.priebe@dlapiper.com
3  Elena Ro roe@sec.gov
   Elliot Remsen Peters epeters@kvn.com
4  Jeffrey Bruce Coopersmith jeff.coopersmith@dlapiper.com
   Jeffrey S. Facter jfacter@shearman.com
5  Jonathan B. Gaskin jgaskin@orrick.com
   Joni L. Ostler jostler@wsgr.com
6  Judith L. Anderson andersonju@sec.gov
   Marc J. Fagel fagelm@sec.gov
7  Mark Philip Fickes fickesm@sec.gov
   Matthew Eric Sloan Matthew.Sloan@skadden.com
8  Shirli Fabbri Weiss shirli.weiss@dlapiper.com
   Steven Keeley Taylor skt@kvn.com
9  Stuart L. Gasner slg@kvn.com
   Susan F. LaMarca lamarcas@sec.gov
10 Thomas R. Green tgreen@morganlewis.com

11

12 Dated: May 22, 2008                    **Richard W. Wieking, Clerk**

13                                        By:  /s/ JW Chambers
                                               **Elizabeth Garcia**
14                                             **Courtroom Deputy**

United States District Court
For the Northern District of California