# Exhibit B

1   SHIRLI FABBRI WEISS (Bar No. 079225)
    DAVID PRIEBE (Bar No. 148679)
2   JEFFREY B. COOPERSMITH (Bar No. 252819)
    **DLA PIPER US LLP**
3   2000 University Avenue
    East Palo Alto, CA 94303-2248
4   Tel: (650) 833-2000
    Fax: (650) 833-2001
5   Email: shirli.weiss@dlapiper.com
    Email: david.priebe@dlapiper.com
6   Email: jeff.coopersmith@dlapiper.com

7   ELLIOT R. PETERS (Bar No. 158708)
    STUART L. GASNER (Bar No. 164675)
8   **KEKER & VAN NEST LLP**
    710 Sansome Street
9   San Francisco, CA 94111
    Tel: (415) 391-5400
10  Fax: (415) 397-7188
    E-mail: EPeters@KVN.com
11  E-mail: SGasner@KVN.com

12  Attorneys for Defendant
    KENNETH L. SCHROEDER

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                  SAN JOSE DIVISION

17

18  SECURITIES AND EXCHANGE          No. C 07 3798 JW
    COMMISSION,
19                                   **MOTION OF KENNETH L. SCHROEDER**
            *Plaintiff,*             **TO COMPEL FURTHER RESPONSES TO**
20                                   **DISCOVERY REQUESTS (TESTIMONY**
        v.                           **AND DOCUMENTS) BY (1) KLA-TENCOR**
21                                   **CORPORATION AND (2) SKADDEN,**
    KENNETH L. SCHROEDER,            **ARPS, SLATE, MEAGHER & FLOM LLP,**
22                                   **ATTORNEYS FOR THE SPECIAL**
            *Defendant.*             **COMMITTEE OF KLA'S BOARD OF**
23                                   **DIRECTORS**

24                                   **Fed. R. Civ. P. 37(a)(3)(B) and 45(c)(2)(B)(i)**

25                                   Date:      July 15, 2008
                                     Time:      10:00 a.m.
26                                   Courtroom: 8
                                     Judge:     Magistrate Judge Howard R. Lloyd
27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

RELIEF SOUGHT .............................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 3

I.   INTRODUCTION ...................................................................................................... 3

II.  PERTINENT FACTS ................................................................................................ 5

    A.   Kenneth L. Schroeder's Career At KLA............................................................ 5

    B.   KLA's Special Committee Investigation And Cooperation With The SEC .......... 5

    C.   The SEC's Use Of Attorney-Client Communications Supplied By KLA As
        The Cornerstone Of Its Complaint Against Mr. Schroeder ................................... 7

    D.   KLA's Strategy To Gain Leniency By Waiving Privilege ................................... 8

    E.   KLA's Broad Assertion Of Privilege Objections To Testimony Concerning
        Attorney Communications Produced To The SEC ............................................... 10

    F.   The Special Committee's Assertion Of Privilege And Refusal To Produce
        Its Original Interview Notes And Draft Memoranda And To Allow
        Skadden Attorneys To Testify .............................................................................. 14

    G.   KLA And The Special Committee's Assertion of Privilege Over
        Documents Shared With KLA's Outside Auditors ............................................... 16

III. PERTINENT RULINGS: THIS COURT'S ORDER GRANTING KLA'S
     MOTION FOR A PROTECTIVE ORDER AND THE DISTRICT COURT'S
     RULING ON MR. SCHROEDER'S MOTION TO DISMISS THE COMPLAINT ....... 16

IV.  SUMMARY OF ARGUMENT .................................................................................. 18

V.   ARGUMENT ............................................................................................................ 21

    A.   The Testimony And Documents Sought Are Highly Relevant To The Case ....... 21

    B.   The Person Claiming Privilege Has The Burden Of Proving Both A Valid
        Privilege And That The Privilege Has Not Been Waived..................................... 23

    C.   KLA Cannot Establish That The Discovery Sought Relating To The
        Special Committee Investigation Was Ever Subject To The Attorney-Client
        Privilege Or The Work Product Protection........................................................... 24

    D.   KLA Cannot Establish That Attorney-Client Communications And
        Memoranda Created Before The Special Committee Investigation Are
        Work Product ....................................................................................................... 25

    E.   KLA Waived Any Applicable Privilege Or Protection For Documents
        Produced To Government Agencies ...................................................................... 26

    F.   KLA Waived Any Applicable Privilege For Documents Disclosed In Any
        Way To Governmental Agencies ......................................................................... 27

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
-i-

SEC V. SCHROEDER, C-07-3798 (JW)
MOTION OF KENNETH L. SCHROEDER TO COMPEL

Case 5:07-cv-03798-JW    Document 55-3    Filed 06/09/2008    Page 2 of 48

## TABLE OF CONTENTS
### (continued)

| | | | Page |
|---|---|---|---|
| G. | | KLA And The Special Committee Waived The Attorney-Client Privilege And The Work Product Protection As To The Subject Matter of KLA's Option Granting And Accounting Practices And The Special Committee Investigation | 28 |
| | 1. | Communications Between Skadden And The Special Committee | 28 |
| | 2. | Interview Notes And Draft Interview Memoranda | 30 |
| H. | | KLA And The Special Committee Cannot "Selectively" Waive Attorney-Client Privilege or Attorney Work Product Protection | 31 |
| | 1. | KLA Did Not Have A "Common Interest" With The SEC | 31 |
| | 2. | The Concept of Selective Waiver Has Been Almost Universally Rejected | 32 |
| | 3. | KLA's Confidentiality Agreement With The SEC Cannot Prevent Waiver | 36 |
| I. | | KLA And The Special Committee Waived Attorney-Client Privilege And Work Product Protection On Communications And Work Product Given To KLA's Outside Auditors | 37 |
| CONCLUSION | | | 40 |

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
-ii-

SEC V. SCHROEDER, C-07-3798 (JW)
MOTION OF KENNETH L. SCHROEDER TO COMPEL

# TABLE OF AUTHORITIES

**Page**

## CASES

Bank of Am., N.A. v. Terra Nova Ins. Co.,
    212 F.R.D. 166 (S.D.N.Y. 2002) .................................................. 28

Bittaker v. Woodford,
    331 F.3d 715 (9th Cir. 2003)...................................................... 26

In re Broadcom Corp. Sec. Litig.,
    No. SACV 01275GLTMLGX, 2005 WL 1403513 (C.D. Cal. Apr. 7, 2005) .................... 29

Chevron Corp. v. Penzoil Co.,
    974 F.2d 1156 (9th Cir. 1992)..................................................... 38

In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,
    293 F.3d 289 (6th Cir. 2002)...................................26-27, 32-33, 36

Diasonics Securities Litigation,
    No. C-83-4584-R, 1986 WL 53402 (N.D. Cal. June 15, 1986) .......................... 38

Genetech, Inc. v. U.S. Int'l Trade Comm'n,
    122 F.3d 1409 (Fed. Cir. 1997).................................................... 33

Gottlieb v. Wiles,
    143 F.R.D. 241 (D. Colo. 1992).................................................... 25

Info. Resources, Inc. v. Dun & Bradstreet Corp.,
    999 F. Supp. 591 (S.D.N.Y. 1998).................................................. 36

Initial Pub. Offering,
    --- F. Supp. 2d at -- 2008 WL 400933 (S.D.N.Y. Feb. 14, 2008) .......... 31-32, 36

In re JDS Uniphase Corp. Sec. Litig.,
    No. C-02-1486 CW (EDL), 2006 WL 2850049 (N.D. Cal. Oct. 5, 2006) ................. 39

In re Leslie Fay Cos. Sec. Litig.,
    161 F.R.D. 274 (S.D.N.Y. 1995) ............................................... 28-29

In re McKesson HBOC, Inc. Sec. Litig.,
    No. C-99-20743 RMW, 2005 US Dist. LEXIS 7098 (N.D. Cal. Mar. 31, 2005)....... 32, 35

McMorgan & Co. v. First Cal. Mortgage Co.,
    931 F. Supp. 703 (N.D. Cal. 1996) ................................................ 24

Medinol, Ltd. v. Boston Scientific Corp.,
    214 F.R.D. 113 (S.D.N.Y. 2002) ................................................... 39

Moreno v. Autozone, Inc.,
    No. C-05-4432 CRB (EMC), 2008 WL 906510 (N.D. Cal. Apr. 1, 2008) ................. 30

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
-iii-

SEC V. SCHROEDER, C-07-3798 (JW)
MOTION OF KENNETH L. SCHROEDER TO COMPEL

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Qwest Commc'ns Int'l Inc. Sec. Litig.*,
    450 F.3d 1179 (10th Cir. 2006) ........................................................................ 32, 36

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    No. 01-cv-01451-REB-CBS, 2005 U.S. Dist. LEXIS 19129 (D. Colo. Aug. 15,
    2005) .......................................................................................................................... 39

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    230 F.R.D. 433 (D. Md. 2005) ............................................................................ 28

*Ryan v. Gifford*,
    No. 2213-cc, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007) ............................. 29

*Samuels v. Mitchell*,
    155 F.R.D. 195 (N.D. Cal. 1994) ........................................................................ 39

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) ............................................................................ 29

*In re Sealed Case*,
    877 F.2d 976 (D.C. Cir. 1989) ............................................................................ 29

*In re Subpoenas Duces Tecum*,
    738 F.2d 1367 (D.C. Cir. 1984) ........................................................................ 33, 36

*In re Syncor ERISA Litig.*,
    229 F.R.D. 636 (C.D. Cal. 2005) ................................................................... *passim*

*United States v. Bergonzi*,
    216 F.R.D. 487 (.N.D. Cal. 2003) .................................................................. *passim*

*United States v. Graham*,
    No. Crim. 03-CR-089-RB, 2003 WL 23198792 (D. Colo. Dec. 2, 2003) ....... 30

*United States v. Gurtner*,
    474 F.2d 297 (9th Cir. 1973) ............................................................................... 38

*United States v. Higa*,
    55 F.3d 448 (9th Cir. 1995) ................................................................................. 23

*United States v. Martin*,
    278 F.3d 988 (9th Cir. 2002) ............................................................................... 23

*United States v. Mass. Inst. of Tech.*,
    129 F.3d 681 (1st Cir. 1997) ............................................................................... 33

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
-iv-

SEC V. SCHROEDER, C-07-3798 (JW)
MOTION OF KENNETH L. SCHROEDER TO COMPEL

**TABLE OF AUTHORITIES**
(continued)

**Page**

*United States v. Pollard (In re Martin Marietta Corp.),*
    856 F.2d 619 (4th Cir. 1988)...........................................................................29, 30

*United States v. Reyes,*
    239 F.R.D. 591 (N.D. Cal. 2006)...................................................................*passim*

*Weil v. Investment/Indicators, Research & Mgmt., Inc.,*
    647 F.2d 18 (9th Cir. 1981)..........................................................................24, 29

*Westinghouse Elec. Corp. v. Republic of the Philippines,*
    951 F.2d 1414 (3d Cir. 1991).......................................................................27, 33

*In re Worlds of Wonder Sec. Litig.,*
    147 F.R.D. 208 (N.D. Cal. 1992)..........................................................................33

**FEDERAL STATUTES**

Fed. R. Civ. P. 26 ....................................................................................10, 22, 26

Fed. R. Civ. P. 30(a)(1) .........................................................................................21

Fed. R. Civ. P. 37(a)(3)(B)(i) ...............................................................................21

Fed. R. Civ. P. 45 ..................................................................................................21

Fed. R. Evid. 613(b)..............................................................................................23

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
-v-

SEC V. SCHROEDER, C-07-3798 (JW)
MOTION OF KENNETH L. SCHROEDER TO COMPEL

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 15, 2008, at 10:00 a.m., or at such other date and time as the Court may order, in Courtroom 8 of the above-entitled court, located at 280 S. First Street, San Jose, California, Defendant Kenneth L. Schroeder will and hereby does move, pursuant to Federal Rules of Civil Procedure 37(a)(3)(B) and 45(c)(2)(B)(i), for an order compelling further discovery responses (documents and testimony) from KLA-Tencor Corporation ("KLA"); and from the attorneys representing KLA's Special Committee of the Board of Directors (the "Special Committee"), Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), concerning KLA's option granting and accounting practices and the Special Committee's investigation in connection therewith.[1]  This motion is based on this Notice, the Memorandum of Points and Authorities in Support, *infra,* the Declaration of Jeffrey B. Coopersmith and attached exhibits, the two Statements in Compliance with Local Rule 37-2, and any argument of counsel entertained by the Court at the hearing.  Filed herewith is the Certification required by Fed. R. Civ. P. 37(a)(1) regarding counsel's efforts to resolve this dispute.

## RELIEF SOUGHT

Mr. Schroeder seeks an order compelling testimony and documents concerning KLA's stock option granting and accounting practices for the time period prior to May 2006, as well as testimony and documents relating to KLA's internal investigation into such practices that it commenced in May 2006.  KLA and its attorneys have refused to produce documents and have prevented testimony on purported grounds of attorney-client privilege and work product protection.  Mr. Schroeder seeks an order: (1) compelling KLA to produce documents and to permit its current and former attorneys, officers, directors, and employees to testify about communications with or involving the Company's inside and outside attorneys relating to KLA's option granting and accounting practices, and to refrain from instructing such persons not to

---

[1] In accordance with the Court's directive at the January 29, 2008 discovery conference, Mr. Schroeder is submitting a joint 40-page motion concerning both KLA and Skadden, in lieu of two individual motions of 25 pages each.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 1

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

answer or otherwise preventing discovery on the grounds of attorney-client privilege and/or work product protection; (2) compelling Skadden and its individual attorneys to produce their original notes and all versions of memoranda they prepared based on witness interviews they conducted on behalf of the Special Committee, and to testify in connection therewith; (3) compelling KLA and Skadden to produce documents and provide testimony concerning all communications with government agencies and/or the NASD, including documents orally referenced in discussions with government agencies and/or the NASD, but not left with them; (4) compelling Skadden and its individual attorneys to produce all documents and communications concerning the Special Committee investigation; and (5) compelling KLA and Skadden to produce all documents and communications shared with KLA's outside auditors relating to KLA's option granting practices and the Special Committee investigation.

## STATEMENT OF ISSUES TO BE DECIDED

1.        Should KLA be ordered to permit its current and former attorneys,[2] directors, officers, and employees to testify about communications between and among KLA attorneys and KLA personnel relating to KLA's options granting practices, without instructing such persons not to answer on grounds of privilege, and to produce all related documents, where KLA and/or the Special Committee has already (a) voluntarily produced to the SEC attorney-client communications created contemporaneously with the option granting events involved in this lawsuit; (b) allowed its attorneys, directors and employees to be questioned by the SEC regarding communications between and among KLA attorneys and KLA personnel regarding KLA's option granting practices, without asserting any attorney-client privilege or work product protection; and (c) provided the SEC with its Special Committee's memoranda of its interviews of KLA's current and former attorneys, directors, officers, and employees wherein they answered questions about attorney-client communications, and where attorney-client communications are relied on in the Complaint?

---

[2] Such attorneys include KLA's former in-house counsel, Stuart Nichols and Lisa Berry, and its former outside counsel, the law firm of Wilson Sonsini Goodrich & Rosati ("WSGR").

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 2

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1        2.     Has KLA, including the Special Committee and its counsel, by voluntarily

2 producing to the SEC a version of memoranda from an internal investigation purporting to reflect

3 questions to and answers of witnesses ("Final Interview Memoranda"), waived any applicable

4 attorney-client privilege and/or work product protection as to (a) the original notes on which the

5 Final Interview Memoranda were based; (b) earlier drafts of the Final Interview Memoranda; and

6 (c) testimony of the attorneys who took the original interview notes and who prepared or edited

7 any version of the interview memoranda?

8        3.     Has KLA waived any applicable attorney-client privilege and/or work product

9 protection as to all documents (including PowerPoint and other presentations) relating to its

10 Special Committee investigation that were shown to, compiled for, or read to the SEC, the DOJ or

11 the NASD, by orally providing part or all of the contents of those documents to those agencies?

12        4.     Has KLA, by voluntarily providing the SEC with selected purportedly privileged

13 documents relating to the Special Committee investigation, waived any applicable attorney-client

14 privilege and/or work product protection as to the subject matter of the Special Committee

15 investigation, including all communications between Skadden and the Special Committee?

16        5.     Has KLA waived any applicable attorney-client privilege and/or work product

17 protection as to documents or communications that it shared with its outside auditors?

18               **MEMORANDUM OF POINTS AND AUTHORITIES**

19 **I.**      **INTRODUCTION**

20        The SEC has sued Kenneth L. Schroeder, a former Director and CEO of KLA, alleging

21 that KLA's accounting and disclosures related to its employee stock option grants from 1999

22 through 2005 violated various provisions of the federal securities laws, and that Mr. Schroeder

23 participated in, knew about, or recklessly failed to know about those practices. As shown both by

24 documents produced by the SEC and by the SEC's selective quotation from KLA's attorneys'

25 communications — both in the Complaint here and the complaint the SEC filed in a separate case

26 against a former KLA General Counsel (Lisa Berry) — KLA's legal department and its outside

27 counsel (WSGR) were heavily involved in KLA's stock option granting process. Not

28 surprisingly, therefore, communications between and among legal counsel and KLA personnel

DLA PIPER US LLP
SAN DIEGO
SEC v. Schroeder
C-07-3798 (JW)
Page 3
MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    created during the period of the stock option grants in question, as well as interview memoranda

2    and other documents relating to KLA's Special Committee investigation of its stock option

3    granting practices, are at the heart of both the claims and defenses in this case. Indeed, one of

4    those documents, a memorandum purportedly written by the General Counsel of KLA, is cited by

5    the SEC in its Complaint and represented to be integral to its claims against Mr. Schroeder.

6           Throughout this litigation, KLA, the Special Committee, and its counsel[3] have placed

7    blame almost entirely on Mr. Schroeder while (with the SEC's complicity) preventing him from

8    presenting a full and fair defense to the SEC's claims. To obtain leniency from the SEC, KLA

9    volunteered documents and communications to the SEC that it claims are attorney-client

10   privileged and/or attorney work product, while at the same time denying Mr. Schroeder access to

11   those documents and to testimony about them. The SEC facilitated KLA's strategy by entering

12   into a "confidentiality agreement" with KLA that purports to allow the SEC to use allegedly

13   privileged materials and statements against Mr. Schroeder, while leaving KLA free to assert

14   privilege objections to block Mr. Schroeder's defense. This gamesmanship is especially

15   egregious in this case, because the SEC has made attorney-client communications provided to it

16   by KLA the core allegations of its Complaint against Mr. Schroeder.[4]

---

[3] As noted above, counsel for the Special Committee was Skadden. Counsel for the Company is the law firm of Morgan Lewis & Bockius LLP ("MLB"). Mr. Schroeder has served subpoenas on KLA and Skadden, and on individual Skadden attorneys who attended interviews of witnesses during the Special Committee investigation: Elizabeth Harlan, Galen Bellamy, Jack DiCanio, Zvi Gabby, Victoria Holstein-Childress, Cale Keable, Morgan Lopez, Richard Marmaro, Thomas McDonald, Lanelle Meidan, Jonah Van Zandt and Sheryl Wu (the individual attorneys are included collectively in the references herein to "Skadden.").

[4] The SEC also specifically referenced the purportedly privileged communications in highly prejudicial comments to the press. See, e.g., Siobhan Hughes, 3rd UPDATE: SEC CHARGES Former KLA-Tencor CEO In Backdating, Wall Street Journal Online, July 25, 2007 (attached as Exhibit 1 to the Declaration of Jeffrey B. Coopersmith) ("Coopersmith Decl.") (quoting SEC assistant regional director as stating: "At least here, the CEO was correctly advised not to backdate, and how to properly disclose the company's stock options practices. He chose to ignore that advice."); see also SEC Charges Former KLA-Tencor CEO With Fraud For Improper Stock Options Backdating: Commission Also Settles Claims Against KLA-Tencor, SEC Litig. Release No. 2007-143 (July 25, 2007) (Coopersmith Decl. Ex. 2) (quoting Director of Enforcement Linda Chatman Thompson, following references to alleged communications from KLA's General Counsel, as stating: "KLA dramatically overstated its reported financial results, depriving investors of accurate information about the company's compensation costs and financial performance. It is especially troubling for a public company to engage in such misconduct even after being cautioned that these practices were impermissible.").

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 4

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    KLA's decision to seek leniency from the government by voluntarily disclosing

2    allegedly privileged documents and communications to the SEC and other third parties is

3    fundamentally incompatible with the policies underlying the attorney-client privilege and the

4    work product doctrine.  As a threshold matter, because a number of the documents Mr. Schroeder

5    seeks in this motion were created for the purpose of turning them over to the government as part

6    of a cooperation strategy, no privilege ever attached to those documents.  To the extent that

7    privilege ever attached to those or other communications in question, under applicable law, the

8    disclosures by KLA and the Special Committee effected a clear waiver of any privilege or

9    protection as to both the documents and their entire subject matter.  Nonetheless, KLA, including

10   the Special Committee and its counsel, relying on an almost universally rejected theory of

11   "selective waiver," have continually refused to allow Mr. Schroeder to obtain the documents and

12   testimony that he needs to defend himself in this case.  This motion seeks to compel the

13   production of those documents and that testimony.

14   **II.**    **PERTINENT FACTS**

15        **A.**    **Kenneth L. Schroeder's Career At KLA**

16        Mr. Schroeder served KLA in non-accounting leadership positions for approximately 22

17   years.  He served on KLA's Board of Directors from 1991 to January 2006, was KLA's

18   President and Chief Operating Officer from 1991 to mid-1999 and was its CEO from mid-1999

19   to January 2006.  KLA grew and prospered under his leadership and thrives to this day.

20   Mr. Schroeder is not an accountant and never served in any capacity in KLA's accounting

21   department.  KLA never looked to him to do its accounting for options or for anything.  He was

22   never on any company's audit committee.  He has no legal training.

23        **B.**    **KLA's Special Committee Investigation And Cooperation With The SEC**

24        Following news media coverage in May 2006 raising suspicions that KLA mis-

25   accounted for its employee stock option grants, both the SEC and the Department of Justice

26

27

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 5

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  ("DOJ") began investigating KLA's option grant practices.[5] Upon learning that it was the

2  subject of both a criminal and regulatory probe, KLA formed its own "Special Committee" to

3  investigate itself. KLA quickly and publicly promised that the Company would "cooperate fully

4  with any government or regulatory investigation into these matters." *See* KLA-Tencor Corp.,

5  Current Report (Form 8-K) (May 24, 2006) (Coopersmith Decl. Ex.4).[6] Accordingly, KLA

6  compiled and produced tens of thousands of pages of documents to the SEC, including

7  documents reflecting communications between KLA personnel and two lawyers who had served

8  as its General Counsel, Mr. Nichols and Ms. Berry, as well as communications with outside

9  lawyers at WSGR.[7]

10       KLA's cooperation did not stop with producing historic documents that included

11  attorney-client communications. As part of the Special Committee investigation, Skadden

12  interviewed at least 55 witnesses (principally current and former directors, officers and other

13  employees), *see* Coopersmith Decl. ¶ 2, and voluntarily provided the SEC with lawyer-revised

14  memoranda generated from its notes of witness interviews. Among the documents it produced to

15  the SEC were memoranda purporting to reflect Skadden's interviews of Mr. Nichols and of

16  WSGR attorneys Brett DiMarco and Roger Stern. *See* Coopersmith Decl. ¶ 2. KLA also

17  arranged for Mr. Nichols to be interviewed by the government about his communications with

18  KLA regarding its option granting practices, placing no restrictions on that interview. Indeed,

19  KLA specifically instructed Mr. Nichols to provide information to the government that might

20  _____

21  [5] *See* KLA-Tencor Corp., Annual Report (Form 10-K) at 23, (Jan. 29, 2007) (Coopersmith Decl.
    Ex. 3) ("On May 23, 2006, we received a subpoena from the United States Attorney's

22  Office…and a letter of inquiry from the [SEC] regarding our stock option practices.").

23  [6] As shown by documents produced by the SEC in this litigation, early in its investigation, facing
    possible criminal and civil penalties, KLA elected to exchange cooperation for leniency. *See*
    Letter from Matthew Michael Haut, to the SEC (June 29, 2007), and excerpts from enclosure

24  (Coopersmith Decl. Ex 5). Cooperation allowed KLA to obtain favorable treatment from the
    government and shape its perceptions of current and former management.

25  [7] KLA and its Special Committee produced materials to the SEC pursuant to a "confidentiality

26  agreement" signed on October 12, 2006 (the "Confidentiality Agreement") (Coopersmith Decl.
    Ex. 6). The net effect of the Confidentiality Agreement has been to allow the SEC to selectively

27  use privileged communications *against* Mr. Schroeder while at the same time to allow KLA's
    broad assertion of privilege to *block* Schroeder from defending the case.

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 6

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    otherwise be covered by the attorney-client privilege and/or the work product doctrine.[8]

2        KLA's cooperation strategy was highly successful. It placed the blame almost entirely

3    on Mr. Schroeder, who had retired as CEO and a Director before the investigation and hence was

4    expendable from the Company's perspective. The SEC then settled with the Company for no

5    monetary penalties and with no finding of fraud, praising its "cooperation."[9]

6      **C.**    **The SEC's Use Of Attorney-Client Communications Supplied By KLA As**

7            **The Cornerstone Of Its Complaint Against Mr. Schroeder**

8        The SEC relied very heavily on the lawyer-revised Final Interview Memoranda produced

9    by Skadden, including the memoranda purporting to reflect interviews of KLA lawyers.[10] In fact,

10    the SEC used information it selected from those and other materials produced by KLA and

---

11 [8] *See* Transcript of the Deposition of Stuart J. Nichols, Jan. 27, 2008 ("Nichols Tr."), at 24-26

12 (Coopersmith Decl. Ex. 7):

     Q. While you were questioned about your communications with KLA personnel,

13      did you assert the attorney-client privilege on behalf of the company in response

     to those questions or did your attorney assert them on your behalf?

14

     MR. BELNICK [counsel to Mr. Nichols]: Maybe I can help with this. . . . I called

15      KLA's then general counsel, Mr. Gross I believe his name was, and either he or

     someone from his office confirmed to me over the telephone that . . . with respect

16      to the Justice Department and the SEC, ***Mr. Nichols was free to answer any***

     ***inquiry even though it might otherwise be considered subject to the attorney-***

17      ***client privilege or work product immunity.*** And on that basis, thereafter I made

     no objections on privilege grounds. [emphasis added]

18

     MS. WEISS: And so your understanding . . . was that you were not obliged or

19      even requested to assert the attorney-client privilege in response to questions

     about Mr. Nichols' communications with KLA personnel; is that correct?

20

     MR. BELNICK: That's correct. Not only that I was not obliged to and that I

21      should not.

     MS. WEISS: And the same question with respect to the work product doctrine,

22      that you were not either requested or required to assert that privilege, and that

     indeed you were being requested by the company to respond -- to have Mr.

23      Nichols respond to the questions of both the SEC and the U.S. Attorneys Office;

     is that correct?

24

     MR. BELNICK: Essentially, yes.

25 [9] *See* Consent of Defendant KLA-Tencor Corporation to Entry of Final Judgment, *SEC v. KLA-*

*Tencor Corp.*, No. C 07-3799 (N.D. Cal. July 25, 2007) (Coopersmith Decl. Ex. 8).

26

[10] The SEC produced <u>no</u> investigative testimony transcripts in its initial document disclosures,

27 because the agency largely relied on the Special Committee interviews in lieu of taking its own

investigative testimony of witnesses against Mr. Schroeder in this case.

28

SEC v. Schroeder
C-07-3798 (JW)
Page 7

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    Skadden as the cornerstone of its Complaint against Mr. Schroeder.  The SEC's core allegations,

2    designed to show the crucial element of scienter in support of its securities fraud claims, are based

3    almost entirely on the SEC's (and the Special Committee's) interpretation of communications

4    between KLA's attorneys and Mr. Schroeder as to which KLA now claims privilege.  *See*

5    Complaint ¶¶ 29-34.  The Complaint alleges, *inter alia*, that Mr. Schroeder  received

6    communications from outside counsel and in-house counsel, and then it selectively quotes out of

7    context and misinterprets those communications to support the SEC's contentions that

8    Mr. Schroeder ignored advice of counsel and engaged in improper backdating.

9        **D.**       **KLA's Strategy To Gain Leniency By Waiving Privilege**

10         The full extent to which KLA hastened to provide the SEC with allegedly privileged

11    documents in a bid for leniency was outlined in the following PowerPoint presentation presented

12    and produced to the SEC by KLA's current outside counsel, MLB, in June 2007:[11]



- Cooperation has been exemplary by all accounts and was designed to expedite SEC investigation
  - Immediately shared attorney-client privileged information pursuant to confidentiality agreement
  - Immediately shared results of Special Committee investigation with SEC staff
  - Immediately provided critical documents in manner designed to assist SEC staff
  - Promptly responded to every request for documents or information

Morgan Lewis

19         The Company expressly reminded the government of its provision of purportedly

20    attorney-client privileged documents and access to KLA witnesses:

---

[11] *See* Letter from Matthew M. Haut to the SEC (June 29, 2007), and attached excerpts of PowerPoint presentation (Coopersmith Decl. Ex. 5).  Mr. Schroeder obtained this PowerPoint presentation from a production of documents by the SEC — MLB refused to produce it.

DLA Piper US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 8

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

- Critical information voluntarily provided to SEC that would not otherwise have been uncovered and available
  - Privileged Special Committee documents
  - Privileged Company documents
  - Privileged witness interviews



- Privileged Special Committee Documents
  - Interview memoranda of over 60 witnesses
  - Presentations to SEC and DOJ
  - PowerPoint presentations
    - To Board of Directors
    - To Auditors



- Company Document Productions Designed to Assist and Expedite SEC Investigation
  - Witness binders highlighting relevant documents
  - Productions made on timely basis as requested
- Witness Availability
  - All requested witnesses made available on timely basis, including current and former employees
- Privileged Witness Interviews

KLA also emphasized that it had turned over to the SEC privileged communications with its former *inside* (Ms. Berry and Mr. Nichols) and *outside* (WSGR) counsel, created during the time underlying the options investigation:



- Privileged Company Documents
  - Stu Nichols memorandum and related e-mail
  - Lisa Berry memoranda and related e-mail
  - E-mail and other documents prepared by outside counsel

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 9

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

E.   **KLA's Broad Assertion Of Privilege Objections To Testimony Concerning Attorney Communications Produced To The SEC**

On October 19, 2007, Mr. Schroeder served KLA with a subpoena which demanded production of all documents produced to the SEC, including communications between KLA personnel and KLA's inside and outside attorneys concerning KLA's options granting and accounting practices. *See* Subpoena for Records to KLA-Tencor Corporation (Oct. 19, 2007) ("KLA Subpoena"), at 5 (Coopersmith Decl. Ex. 9). KLA refused to produce any attorney communications produced to or shared with the government on grounds of attorney-client privilege and work product protection. *See, e.g.*, Third Party KLA-Tencor Corporation's Amended and Supplemental Objections and Responses to Defendant's Subpoena for Records (Dec. 14, 2007) ("KLA Response"), at 6-7 (Coopersmith Decl. Ex. 10).[12]

On January 24, 2008, in response to Mr. Schroeder's effort to meet and confer regarding KLA's broad assertions of privilege and its failure to produce documents in response to Mr. Schroeder's subpoena, counsel for KLA wrote that:

> With regard to materials protected by the work product doctrine and/or attorney-client privileges, as you know and as we have discussed with you on numerous occasions, KLA provided protected material to the SEC under an express confidentiality agreement that production did not waive applicable privileges. Based on the circumstances of the SEC investigation, under the common-interest exception to waiver doctrine and caselaw recognizing a "selective waiver," including *In re McKesson HBOC, Inc. Sec. Litig.*, 2005 WL 934331 (N.D.Cal. Mar. 31, 2005), KLA has not intended to waive any privileges and has vigorously intended to preserve the privilege as to Mr. Schroeder and others who are adverse to the Company. Mr. Schroeder's claim that those privileges have been waived is incorrect.

---

[12] KLA provided Mr. Schroeder with a privilege log consisting of a one-page list of Bates Numbers. *See* Letter from Joseph E. Floren to Shirli F. Weiss (Dec. 14, 2007) (Coopersmith Decl. Ex. 11). KLA's purported privilege log does not provide any of the required descriptive information about the documents concerning its option granting practices and the Special Committee investigation that it is withholding based on privilege claims. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that . . . will enable other parties to assess the claim"). Skadden and its individual attorneys provided Mr. Schroeder with privilege logs indicating that Skadden possesses responsive documents concerning the Special Committee investigation that it did not produce to the SEC, including notes of witness interview and draft interview memoranda. *See* Privilege Log for Skadden (Coopersmith Decl. Ex. 12); Privilege Log for Elizabeth Harlan (Coopersmith Decl. Ex. 13).

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 10

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  Letter from Joseph E. Floren to Shirli Fabbri Weiss (Jan. 24, 2008) (Coopersmith Decl. Ex. 14).

2        Mr. Schroeder's counsel was not aware of just how broadly KLA intended to assert the

3  privileges until January 27, 2008, the day that she attempted to take Mr. Nichols' deposition.

4  Mr. Nichols served as the General Counsel of KLA from Fall 1999 through Fall 2006, and, as

5  noted, his alleged communications with Mr. Schroeder are central to the Complaint and were

6  used by the SEC with the press in its publicity campaign in this case.  During Mr. Nichols'

7  deposition, KLA's lawyers blocked Mr. Schroeder from obtaining any substantive information

8  about the SEC's cornerstone allegations against him.  One of the lawyers for KLA (Mr. Hemann)

9  summarized the Company's position as follows:

10        MR. HEMANN:  Shirli, I think this is probably a good time for me to interject
          that as a general matter, we have advised Mr. Nichols through his attorney that
11        KLA-Tencor, which would include any committees or members of the board of
          director -- the directors of KLA-Tencor or their counsel, do not waive any
12        privilege that might be applicable, including the attorney-client or the attorney
          work product privilege.  And we have requested Mr. Nichols through his counsel,
13        Mr. Belnick, that he adhere to his ethical statutory and fiduciary duties, such as
          they are, and take all necessary steps to protect both the attorney-client privilege
14        and the attorney work product privilege doctrine as he answers questions today.
          And I don't know where exactly this particular set of questions is going, but I
15        wanted to make it clear that the company has made that request.  To the extent
          that a question that you ask would reveal in Mr. Nichols' answer privileged
16        information; privileged under either the work product doctrine, the attorney-client
          privilege, we've asked Mr. Nichols to decline to answer the question.  And
17        Mr. Belnick will make an observation if he feels that Mr. Nichols' answer will
          reveal such information, and on that basis of Mr. Belnick's observation, we would
18        ask Mr. Nichols not to answer the question.

19  Nichols Tr. at 32-33 (Coopersmith Decl. Ex. 7).

20        Mr. Schroeder's subsequent attempts to inquire into the allegations of the SEC Complaint,

21  including the circumstances surrounding the March 2001 Nichols memorandum, were met with

22  objections and instructions not to answer from another KLA lawyer (Ms. Heintz):

23        BY MS. WEISS:

24        **MS. WEISS:  Miss Heintz, is it the company's position that it will instruct
          Mr. Nichols not to testify with respect to Exhibit 78 [an email from Mr.
25        Schroeder responding to Mr. Nichols' March 2001 memorandum] on the
          grounds of the attorney-client privilege?**
26
          **MS. HEINTZ:  Yes.**
27

28                                    . . .

1    **MS. WEISS:  Would you instruct Mr. Schroeder and Mr. Kispert not to**
     **respond if the questions were posed about Mr. Nichols' communications to**
2    **Mr. Schroeder?**

3    **MS. HEINTZ:  Yes.**

4    MS. WEISS:  And would that be your position with respect to questions posed by
     the SEC as well as Mr. Schroeder's counsel or only Mr. Schroeder's counsel?
5

6    MS. HEINTZ:  No with respect to both.

7    **MS. WEISS:  Okay.  So if the SEC asks questions of Mr. Nichols about**
     **Exhibit 77 and 78, you would instruct him not to answer.  Same thing with all**
8    **these other people that are cc'd on the memorandum that is Exhibit 77 [Mr.**
     **Nichols March 2001 memorandum]; correct?**
9    **MS. HEINTZ:  Yes.**

10   Nichols Tr. at 204-06 (Coopersmith Decl. Ex. 7).

11          Mr. Schroeder's attempt to ask specifically about the communications alleged in

12   paragraphs 31 through 33 of the Complaint — the key allegations giving rise to the SEC's theory

13   that Mr. Schroeder possessed the requisite scienter — was also met with objections and

14   instructions not to answer.  KLA also claimed that communications among non-lawyer officers of

15   the Company about Mr. Nichols' communications are privileged and non-discoverable:[13]

16   **Q.  All right.  Now, as I understand your instruction from counsel, you're**
     **going to refuse to testify with respect to this memorandum [of March 2001]**
17   **on the grounds of attorney-client privilege.  Is that correct?**

18   **MS. HEINTZ:  That's correct.**

19   BY MS. WEISS:

20   Q.  Okay.  And I think you've already testified that you did not prepare the
     memorandum in anticipation of litigation; correct?
21
     A.  Correct.
22
                                        . . .
23
     Q.  And is it the company's position that it will instruct Ms. Lamb, Mr. Kispert,
24
     _____
25   [13] For example, there is evidence that after Mr. Nichols sent the March 2001 memorandum that is
     alleged in paragraph 31 of the Complaint to Mr. Schroeder, John Kispert (CFO), Maureen Lamb
26   (VP-Finance), and Joy Nyberg (HR Director of Global Compensation), those witnesses discussed
     the Nichols memorandum not only with Mr. Nichols but also among themselves.  The Company
     has objected on privilege grounds to testimony from those witnesses regarding communications
27   about the March 2001 memorandum, regardless of whether the communications were with or
     involved Mr. Nichols.  *See* Nichols Tr. at 199-206 (Coopersmith Decl. Ex. 7).
28

SEC v. Schroeder
C-07-3798 (JW)
Page 12

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    Joy Nyberg [persons copied on the Nichols' memo] and Mr. Schroeder not to
2    testify with respect to this communication from the general counsel Stu Nichols?

3    MS. HEINTZ:  We're prepared to instruct with respect to Mr. Nichols at this
     time.  We can discuss other applications of the privilege after the deposition.

4    **MS. WEISS:  And so is it your statement that you will not commit on the
5    record at this time as to whether or not you will instruct the people that I
     mentioned that are addressees of this memorandum not to testify?**

6    **MS. HEINTZ:  With respect to this memorandum, we would instruct them
7    not to testify.**

8    **MS. WEISS:  Okay.  So it is the company's position that none of these people
9    will be permitted to testify with respect to Exhibit 77 should they be called as
     witnesses, including Mr. Schroeder?**

10   **MS. HEINTZ:  Yes.**

11   Nichols Tr. at 200-02 (Coopersmith Decl. Ex. 7).

12       As shown by this record, KLA's broad assertions of privilege have resulted in a situation

13   where the SEC is relying on privileged communications to make its case in court (and in the

14   press), while KLA prevents Mr. Schroeder from inquiring of lawyers and non-lawyers alike about

15   those communications, with the obvious acquiescence of the SEC.  Mr. Schroeder will be met

16   with the same obstacles when he attempts to inquire with request to Ms. Berry's communications.

17   After it settled with KLA, the SEC also filed a separate action against former KLA General

18   Counsel Ms. Berry (whose role in KLA's option practices the Special Committee had virtually

19   ignored when she refused to talk with them), alleging that she "devised" and "engineered" an

20   options backdating scheme both at KLA and at her subsequent employer, Juniper Networks.  It is

21   unclear how Mr. Schroeder could have "engineered" an options backdating scheme while Ms.

22   Berry was "devising" and "engineering" that same scheme, but KLA's privilege position

23   precludes Mr. Schroeder from inquiring into those matters.  Further, KLA's privilege position

24   will preclude Mr. Schroeder from asking any questions about the allegations of paragraph 23 of

25   the SEC Complaint against him, which alleges that Ms. Berry (not Mr. Schroeder) specifically

26   advised HR personnel to backdate stock options.[14]

27
     _____

28   [14] The "KLA executive" referenced in paragraph 23 of the SEC's Complaint against

DLA Piper US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 13

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

**F.**   **The Special Committee's Assertion Of Privilege And Refusal To Produce Its Original Interview Notes And Draft Memoranda And To Allow Skadden Attorneys To Testify**

The privilege claims of the Special Committee and Skadden have blocked Mr. Schroeder from obtaining information equally essential to his defense. As noted, the Special Committee volunteered Final Interview Memoranda for at least 55 witnesses to the SEC. These are likely second or third generation, lawyer-revised memoranda prepared by Skadden, and were subsequently produced to Mr. Schroeder in the SEC's Rule 26 disclosures. However, it is essential to Mr. Schroeder's defense that he obtain the underlying *original interview notes* taken by the Skadden attorneys and earlier drafts of the witness interview memoranda and be permitted to question the Skadden lawyers about them. Those notes may be the closest to what the witnesses actually said during their interviews, which, in turn, is essential to their effective cross-examination, as well as to the possible calling of Skadden lawyers as impeachment witnesses if the witnesses testify contrary to their interviews.

Mr. Schroeder has requested these documents. In November 2007, Mr. Schroeder served subpoenas on Skadden, seeking documents relating to the Special Committee investigation and its witness interviews.[15] The subpoena to Skadden demanded, among other things:

**PRODUCTION DEMAND NO. 7**

ALL DOCUMENTS CONCERNING notes and/or memoranda of witness interviews WHICH [SKADDEN] conducted on behalf of the SPECIAL COMMITTEE, including but not limited to: (1) YOUR handwritten notes; (2) all drafts of interview memoranda, whether dictated, handwritten, typed or otherwise memorialized; (3) the metadata of any electronically created and edited electronic DOCUMENTS showing when they were edited; (4) all exhibits or other DOCUMENTS referenced in any such memoranda or notes; and (5) all DOCUMENTS showing edits of such memoranda or notes.

---

Mr. Schroeder is Ms. Berry, the General Counsel of KLA from 1997 through mid-1999. This is clear from the allegations in paragraph 34 of the SEC's Complaint against Ms. Berry, which are almost identical to the allegations in paragraph 23 of the Complaint against Mr. Schroeder. *See* Complaint ¶ 34, *SEC v. Berry*, No. C07-4431 RMW (N.D. Cal. Aug. 28, 2007).

[15] *See* Subpoena for Records to Skadden, Arps, Slate, Meagher & Flom LLP (Nov. 12, 2007) ("Skadden Subpoena") (Coopersmith Decl. Ex. 15). Mr. Schroeder also served subpoenas on other Skadden attorneys (*see* fn.2, *supra*). The subpoenas served on the Skadden attorneys are similar in material respects. To avoid unduly burdening the Court, Mr. Schroeder attaches only the subpoena served on Skadden associate Elizabeth Harlan. *See* Subpoena for Records to Elizabeth Harlan (Nov. 7, 2007) ("Harlan Subpoena") (Coopersmith Decl. Ex. 16).

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 14

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   See Skadden Subpoena at 6 (Coopersmith Decl. Ex. 15). The subpoenas to the individual

2   Skadden attorneys made virtually the same request. *See, e.g.,* Harlan Subpoena at 5 (Coopersmith

3   Decl. Ex. 16).

4            Skadden and its individual attorneys refused to produce the original notes of the witness

5   interviews as well as the draft interview memoranda on the purported grounds that they are

6   protected from disclosure by the attorney-client privilege and/or the work product doctrine.[16] In

7   "meet and confer" correspondence designed to avoid unnecessary depositions prior to resolution

8   of privilege issues, Skadden also advised Mr. Schroeder's counsel that it would not permit its

9   lawyers to answer deposition questions concerning the original notes or drafts that preceded the

10  Final Interview Memoranda. In a letter dated December 27, 2007, Skadden stated that:

11           [W]e will not produce any of Ms. Harlan's handwritten "notes" about the
             interviews, or any "drafts" or revisions of the interview memoranda, and we will
12           not allow her to answer any questions on such handwritten notes or drafts, as such
             information is squarely protected by the attorney work product doctrine. *See*
13           *Hickman v. Taylor*, 329 U.S. 495, 508."[17]

14           Once it learned that the SEC had already produced the Final Interview Memoranda to Mr.

15  Schroeder in its Rule 26 initial disclosures, Skadden offered to produce the same Final Interview

16  Memoranda and permit its lawyers to answer limited questions, but continued its refusal to

17  produce original notes or drafts.[18]

18
    _____

19  [16] *See* Non-Party Skadden, Arps, Slate, Meagher & Flom LLP's Responses and Objections to
    Defendant Kenneth L. Schroeder's Subpoena for Records (Dec. 10, 2007) ("Skadden Response"),
20  at 12 (Coopersmith Decl. Ex. 17) ("Skadden also refuses to produce any of the Interview
    Memorana, or any of the privileged documents or exhibits attached thereto, on the additional
    grounds that such documents are protected from discovery by the attorney client privilege, the
21  work product doctrine, or other applicable privileges."); Non-Party Elizabeth Harlan's Responses
    And Objections To Defendant Kenneth L. Schroeder's Subpoena for Records (Nov. 21, 2007), at
22  4-5 (Coopersmith Decl. Ex. 18). Skadden also made additional, boilerplate objections to the
    production of the interview notes and memoranda, *see* Skadden Response at 11-12, but Mr.
23  Schroeder believes, based on meet and confer sessions, that Skadden's refusal to produce those
    documents is based on its claims that they are protected by the attorney-client privilege and the
24  work product doctrine.

25  [17] Letter from Matthew Sloan to Shirli F. Weiss (Dec. 27, 2007), at 2 (Coopersmith Decl. Ex. 19).

26  [18] Skadden offered to allow Mr. Schroeder to question Skadden attorneys limited to the Final
    Interview Memoranda and their recollections of the interviews if Mr. Schroeder signed a
27  "stipulated confidentiality order." *See* Letter from Matthew Sloan to Shirli F. Weiss (Dec. 3,
    2007), at 1-2 (Coopersmith Decl. Ex. 20). Mr. Schroeder will not agree to Skadden's proposed
28  confidentiality order because, even if he did, Skadden would still not give Mr. Schroeder access

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 15

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

**G.    KLA And The Special Committee's Assertion of Privilege Over Documents Shared With KLA's Outside Auditors**

In his subpoenas to KLA and to Skadden, Mr. Schroeder also demanded the production of all documents concerning the Special Committee investigation that were shared with KLA's independent outside auditors, PricewaterhouseCoopers LLP ("PwC"):

**PRODUCTION DEMAND NO. 4**

ALL DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized, presented to or received from PwC.

KLA Subpoena at 5 (Coopersmith Decl. Ex. 9); Skadden Subpoena at 5 (Coopersmith Decl. Ex. 15). Skadden and KLA both refused to produce documents responsive to Mr. Schroeder's request on the basis of the attorney-client privilege and the work product protection. *See* Skadden Response at 8 (Coopersmith Decl. Ex. 17); KLA Response at 7 (Coopersmith Decl. Ex. 10).

**III.    PERTINENT RULINGS: THIS COURT'S ORDER GRANTING KLA'S MOTION FOR A PROTECTIVE ORDER AND THE DISTRICT COURT'S RULING ON MR. SCHROEDER'S MOTION TO DISMISS THE COMPLAINT**

Following Mr. Nichols' deposition, KLA filed a motion with this Court for a protective order precluding depositions of KLA attorneys and personnel until the Court ruled on privilege issues. This Court granted that motion on February 20, 2008.[19]

As noted above, the SEC, which had obtained and used KLA's purportedly privileged communications, precluded itself by contract from arguing that KLA had waived the privilege. After KLA and Skadden rebuffed Mr. Schroeder's efforts to obtain the documents and testimony necessary to defend himself against the SEC's core allegations while the SEC stood silently by, Mr. Schroeder's counsel undertook a review of applicable law and concluded that KLA's selective use of the privilege against him with the aid of the SEC worked to deprive Mr. Schroeder of his Constitutional Due Process right to a fair trial. Thereupon, on February 1, 2008, Mr. Schroeder filed a Motion to Dismiss.

---

to important documents — the interview notes and draft memoranda — and testimony that he has requested.

[19] Order Granting KLA-Tencor's Motion For Protective Order (Feb. 20, 2008) (docket no. 65).

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 16

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1      In ruling on the motion, Judge Ware found that the agreement between the SEC and KLA

2   indeed appeared to allow KLA to assert privilege in a way that "may prevent Defendant from

3   asserting potentially viable defenses." *See* Order Denying Defendant's Motion to Dismiss (May

4   22, 2008) (docket no. 73) ("May 22 Order"), at 6.  The Court's findings explained the importance

5   of the discovery Mr. Schroeder seeks, and are therefore set forth at length:

> In return for leniency, KLA cooperated extensively with the SEC to expedite the
> SEC's investigation of Defendant. ***KLA voluntarily provided information to the***
> ***SEC that otherwise would not have been uncovered or available, including: (1)***
> ***privileged Special Committee documents, (2) privileged Company documents,***
> ***and (3) privileged witness interviews. While many of these documents have***
> ***been provided to Defendant by the SEC, there is evidence that KLA has asserted***
> ***privilege to prevent any further discovery regarding these documents.*** . . .
>
> * * * *
>
> First, part of the SEC's theory of liability against Defendant is that he
> received legal advice in March 2001, which evidences he knew, or was reckless in
> not knowing, that stock option grant prices cannot be retroactively set below the
> current market price without taking a compensation expense.  The Complaint
> alleges that Defendant received this legal advice in the form a memorandum from
> KLA's then General Counsel, on or about March 19, 2001.
>
> From October 25, 1999 to October 16, 2006, Stuart Nichols was the
> General Counsel of KLA.  Defendant contends that the testimony of Nichols
> regarding this memorandum is important for establishing that Defendant did not
> violate the securities laws.  In colloquy between counsel at the deposition of
> Nichols, counsel for KLA informed counsel for Defendant that it would direct
> Nichols not to answer any questions regarding the substance of the March 19,
> 2001 memorandum as well as any questions regarding certain communications
> related to the memorandum.  Additionally, counsel for KLA stated that all other
> parties to these communications would be directed not to answer.
>
> Second, Defendant contends that communications between former KLA
> General Counsel, Lisa Berry, and KLA personnel are also crucial to his defense.
> For instance, in the case, the SEC alleges that Defendant "engineered a scheme to
> create option grant approvals which falsely represented the date of the grant."
> However, in the case it has filed against Berry, the SEC alleges that she "devised
> the improper backdating scheme while serving as General Counsel of KLA . . . ."
> Berry was the General Counsel of KLA from 1997 until the fall of 1999.
>
> Upon review, ***the Court finds that KLA's assertions of privilege***
> ***regarding the communications between Defendant and Nichols may have***
> ***prevented Defendant from receiving discovery which may tend to show that he***
> ***did not have the requisite knowledge for securities laws violations.  If KLA***
> ***asserts the same broad privilege with response to Berry as it has regarding***
> ***Nichols, the assertion may prevent Defendant being able to fully present Berry's***

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 17

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    *role in the backdating at the Company.*  This evidence may tend to show that
2    Berry was solely responsible for the conduct of which the SEC complains.

3    Further, the agreement with KLA, which allowed the SEC to receive
     production of materials from the Company, does not permit the SEC to argue
4    waiver of any privilege with respect to those materials.  Specifically, the
     agreement provides that the SEC will not "assert that the production of the
5    [materials] to the [SEC] constitutes a waiver of the protection of the attorney
     work product doctrine, the attorney-client privilege, or any other privilege
6    applicable as to any third-party."  *While this agreement lets the SEC . . . use
     privileged communications against Defendant, it also appears to allow KLA to
7    assert privilege in a way that may prevent the Defendant from defending against
     the SEC's allegations.*

8    Accordingly, the Court finds that *KLA's assertion of privilege, if later
9    confirmed by the Court, may prevent Defendant from asserting potentially
     viable defenses.*

10

11   May 22 Order at 4-6 (emphasis added) (internal citations omitted).

12   The Court ultimately denied the Motion to Dismiss, but without prejudice to the refiling of

13   such a motion, on the ground that Mr. Schroeder should first move to compel the requested

14   discovery.  This motion followed.

15   **IV.    SUMMARY OF ARGUMENT**

16   The Court should compel production of all of the testimony and documents sought by this

17   motion so that Mr. Schroeder can fairly defend himself in this lawsuit where the SEC has had

18   unfettered access to, and has used as its core allegations, the information that the Company and its

19   attorneys are now withholding.

20   First, Mr. Schroeder seeks the testimony of, and documents reflecting, communications

21   with or involving two lawyers who served as General Counsel of KLA (Mr. Nichols and

22   Ms. Berry), outside counsel for KLA who advised the company on option granting practices

23   (WSGR), and KLA personnel about their communications with those lawyers or amongst

24   themselves about communications with those lawyers, all without the company instructing the

25   witnesses not to answer.  As Judge Ware recognized in the May 22 Order, without this material

26   Mr. Schroeder cannot prepare his defense.  There is no work product protection associated with

27   this information, because the historical communications concerning KLA's option granting

28   practices were not created in anticipation of any litigation.  To the extent that the testimony and

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 18

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    documents in this category were covered at one time by the attorney-client privilege, the

2    Company waived any privilege by: (1) producing documents to the government reflecting

3    communications with or involving Mr. Nichols, Ms. Berry, and WSGR; (2) producing

4    memoranda reflecting interviews with those witnesses to the government; and (3) in at least the

5    case of Mr. Nichols, instructing Mr. Nichols to provide complete information to the SEC about

6    his involvement in stock options granting practices without regard to matters of privilege.

7        Second, this motion seeks the production of the original notes taken by Skadden attorneys

8    at the over 55 witness interviews conducted during the Special Committee investigation, along

9    with all drafts of the Final Interview Memoranda that were created based on the notes and drafts.

10   The original notes and prior drafts are entitled to no greater protection under the work product

11   doctrine than the Final Interview Memoranda, which Skadden produced to the government.  In

12   fact, the notes, drafts, and Final Interview Memoranda are not even covered by any privilege or

13   protection because Skadden created them with the specific intention that their contents and

14   substance would be shared with the government.  Even if Skadden could establish that the

15   interview memoranda and notes were protected under the work product doctrine, those documents

16   would be entitled to only the limited protection afforded to "fact" work product.  Having

17   produced the Final Interview Memoranda to the government, Skadden waived any fact work

18   product protection as to not only the final memoranda, but also as to the notes and drafts, based

19   on the subject matter waiver doctrine discussed below.

20       Moreover, the SEC took no investigative testimony and instead largely outsourced its

21   investigation to Skadden.  As a result, there are no substantive SEC investigative transcripts in

22   this case, and it is therefore vitally important for Mr. Schroeder to receive the original notes,

23   because they are more likely to reflect what witnesses actually said than the edited Final

24   Interview Memoranda that were prepared for production to the government.  Mr. Schroeder needs

25   the original notes and draft memoranda because he needs to take discovery from the Skadden note

26   takers to learn what the witnesses actually said and to determine whether the Skadden note takers

27   will be called at trial to testify under Fed. R. Evid. 613.

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 19

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1        Third, KLA and the Special Committee waived any applicable privilege or protection as

2    to any materials that they shared in any way with the SEC (or any other agency), even if they did

3    not provide the SEC with copies of those materials.  It does not matter whether counsel for KLA

4    and its Special Committee left copies of materials with the government, or whether counsel orally

5    summarized or read from the materials.  Sharing the substance of documents with the

6    government, even orally, waives the attorney-client privilege and work product protection.

7        Fourth, the decision of KLA and its Special Committee to voluntarily produce ostensibly

8    privileged materials to the government in exchange for leniency results in a complete waiver of

9    privilege as to the entire subject matter of the Special Committee investigation.  The law does not

10   allow KLA to strategically pick and choose which materials to share with the government and

11   which to withhold, and to later invoke privilege to shield the unproduced material from disclosure

12   to Mr. Schroeder in this case.  The very reason for the doctrine of subject matter waiver is to

13   prevent such selective, strategic disclosure of privileged material to present a distorted picture of

14   the truth.  It is surprising that a federal agency that outsourced its investigation to the extent that

15   the SEC did in this case would not have insisted on simultaneous production of the original notes

16   with the revised versions, but its failure to do so and its reliance on lawyer-revised versions of

17   interview memoranda should not work to deny Mr. Schroeder of notes and earlier drafts.

18       Fifth, the Company cannot rely on the so-called "selective waiver" doctrine or on its

19   Confidentiality Agreement with the SEC to justify its refusal to provide Mr. Schroeder with the

20   requested discovery.  "Selective waiver" — the concept that a waiver of privilege as to the

21   government does not operate as a waiver as to other parties and the rest of the world — has been

22   roundly rejected by the overwhelming majority of courts that have considered it.  It would also be

23   grossly unfair for the Court to permit selective waiver in this case, because it would endorse

24   KLA's attempt to stack the deck by arming the government as fully as possible while denying

25   Mr. Schroeder the means to defend himself.  The KLA-SEC Confidentiality Agreement does not

26   change this calculus, because it allows the privilege to be used against Mr. Schroeder as a sword

27   and a shield, and because by its own terms the agreement allows the SEC to use privileged

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 20

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    material as it sees fit, a provision hardly consistent with a genuine desire by KLA and its Special

2    Committee to safeguard any privileges.

3        Sixth, KLA and its Special Committee have waived any privilege that might otherwise

4    have attached to materials that they elected to share with outside auditors. The Ninth Circuit and

5    many other courts have held that such disclosure to outside auditors waives privilege.

6    **V.    ARGUMENT**

7        **A.    The Testimony And Documents Sought Are Highly Relevant To The Case**

8        Under Federal Rule of Civil Procedure 26(b), a party "may obtain discovery regarding any

9    nonprivileged matter that is relevant to any party's claim or defense." Parties can obtain

10   discovery from non-parties in a number of ways, such as by subpoenaing documents or by

11   deposition. *See* Fed. R. Civ. P. 30(a)(1); Fed. R. Civ. P. 45. When a non-party refuses to comply

12   with a discovery request, the seeking party can request a court order compelling it. *See* Fed. R.

13   Civ. P. 37(a)(3)(B)(i) (permitting motion to compel where a "deponent fails to answer a

14   question"); Fed. R. Civ. P. 45(c)(2)(B)(i) (if objection is made to document subpoena, "the

15   serving party may move the issuing court for an order compelling production").

16       The documents and testimony that Mr. Schroeder seeks from KLA and Skadden fall into

17   the following categories: (1) testimony from KLA personnel and attorneys and documents

18   concerning communications between KLA's attorneys and KLA personnel that were

19   contemporaneously created at the time of KLA's option grants; (2) the original interview notes

20   and earlier drafts of the Final Interview Memoranda that were produced to the SEC, and

21   testimony relating to those documents;[20] (3) all documents relating to the Company's 2006-07

22   Special Committee investigation that were produced or orally discussed with the SEC, the DOJ,

23   and/or the NASD; (4) all documents and testimony relating to the Special Committee

24   _____

25   [20] Mr. Schroeder understands that the SEC has produced to Mr. Schroeder all of the documents
     that KLA has produced to it. Mr. Schroeder does not seek a "double production" of those
     documents. Mr. Schroeder does seek all documents related to KLA's Special Committee

26   investigation and its option granting practices that KLA may not have produced to the SEC. In
     this category are the Special Committee original interview notes and draft memoranda and

27   documents produced to the auditors. Mr. Schroeder also seeks testimony about all of the
     documents on which KLA has claimed privilege that were produced to the SEC.

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 21

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    investigation, including Skadden's communications with the Special Committee about the

2    investigation; and (5) all documents KLA gave to its auditors.

3            Category 1, testimony about historical attorney-client communications among KLA's in-

4    house and outside attorneys — particularly Mr. Nichols and Ms. Berry — and other KLA

5    executives including Mr. Schroeder, is highly relevant, as is the context surrounding those

6    communications.  KLA produced those communications to the SEC, as well as Special

7    Committee witness interviews of both inside and outside counsel where they were asked

8    numerous questions relating to KLA's options processes.  Although the SEC provided Mr.

9    Schroeder with copies of the documents that it received from KLA, Judge Ware's May 22 Order

10   highlighted the importance of testimony surrounding these communications when it recognized

11   that KLA's assertion of privilege to prevent Mr. Schroeder from obtaining testimony or any other

12   discovery concerning those documents may well prevent Mr. Schroeder from defending himself.

13   *See* May 22 Order at 4-6.

14           Similarly, the documents and testimony in categories 2-5, including all documents and

15   communications relating to Special Committee investigation, are plainly relevant to the claims

16   and defenses in this case.  *See United States v. Reyes*, 239 F.R.D. 591, 599 (N.D. Cal. 2006)

17   (stating, in response to defense motion to compel documents related to an option grant

18   investigation, that "[t]here can be no dispute that any summaries, notes, memoranda, and reports

19   generated by [lawyers for the Audit Committee and for the Company] in the context of the Audit

20   Committee's internal investigation" were relevant to claims and defenses).

21           The original witness interview notes and iterations of the interview memoranda made

22   before the lawyers turned them into the Final Interview Memoranda for the SEC are highly

23   relevant because both the SEC and Mr. Schroeder may seek to admit prior statements of

24   witnesses under various exceptions to the hearsay rules.  Indeed, the very first deposition that the

25   SEC noticed was the deposition of Skadden lawyer Elizabeth Harlan, who took notes and

26   prepared draft memoranda reflecting Mr. Schroeder's interview by the Special Committee before

27   the Final Interview Memoranda were produced to the SEC.  If Ms. Harlan testifies from memory

28   about Mr. Schroeder's statements or uses the final interview memorandum of his interview to

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 22

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   refresh her recollection, Mr. Schroeder should be able to cross-examine her fully with the original

2   notes and all revisions of the memorandum.  Mr. Schroeder seeks the original notes of the

3   interviews of other witnesses in order to cross-examine the note taker and in order to establish a

4   record of what those witnesses said to the Special Committee, for possible impeachment

5   purposes.  *See* Fed. R. Evid. 613(b) (permitting use of extrinsic evidence of prior inconsistent

6   statements); *United States v. Higa*, 55 F.3d 448, 451-53 (9th Cir. 1995) (district court properly

7   permitted lawyer and customs agents to testify to witness's prior inconsistent statements).

8          Similarly, the original notes and iterations of the interview memoranda are highly relevant

9   to determine: (1) what might actually have been said by the witnesses and whether Skadden

10  omitted any statements recorded in the original notes when it made its various transitions to the

11  Final Interview Memoranda; and (2) whether words, phrases or emphasis were changed in any

12  way.  Obviously a word or phrase change can alter substantially the meaning of a statement.

13  Mr. Schroeder should not be restricted to lawyer-revised and edited notes in cross-examining the

14  witness note takers or the witnesses themselves.

15         It is self-evident that documents read to or presented to the SEC, the DOJ, or the NASD

16  by KLA (but not left with them), such as summaries of the Special Committee's findings, are also

17  highly relevant, as are documents KLA produced to the auditors, which summarized the

18  investigation's findings and form the basis of KLA's restatement referenced in the Complaint.

19  **B.    The Person Claiming Privilege Has The Burden Of Proving Both A Valid
20         Privilege And That The Privilege Has Not Been Waived**

21         Any person who claims an exemption from disclosure on the basis of the attorney-client

22  privilege or work product doctrine has the burden of establishing that the protection applies.

23  *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) ("The burden is on the party

24  asserting the privilege to establish all the elements of the privilege.") (citing *United States v.*

25  *Munoz* 233 F.3d 1117, 1128 (9th Cir. 2000)); *United States v. Bergonzi*, 216 F.R.D. 487, 492

26  (N.D. Cal. 2003) (*prima facie* showing of privilege is required); *In re Syncor ERISA Litig.*, 229

27  F.R.D. 636, 644 (C.D. Cal. 2005) ("The party claiming work product immunity has the burden of

28  proving the applicability of the doctrine.").  Conclusory assertions of privilege or work product

SEC v. Schroeder
C-07-3798 (JW)
Page 23

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    are insufficient; rather, a party must establish privilege through competent evidence. *Syncor*, 229

2    F.R.D. at 644 ("[A]n assertion of privilege without evidence to support it will not prevail.").

3            In addition, a party claiming privilege bears the burden of establishing that it has not

4    waived the privilege it asserts. *See Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18,

5    25 (9th Cir. 1981) ("One of the elements that the asserting party must prove is that it has not

6    waived the privilege."); *McMorgan & Co. v. First Cal. Mortgage Co.*, 931 F. Supp. 703, 707

7    (N.D. Cal. 1996) ("In the Ninth Circuit, the party asserting a privilege bears the burden of proving

8    that the privilege applies and that the privilege has not been waived. Thus, [the party resisting

9    discovery] bears the burden of demonstrating that it did not waive the attorney-client privilege

10   and work product doctrine by producing otherwise privileged material to the [Department of

11   Labor].") (citation omitted).

12   **C.    KLA Cannot Establish That The Discovery Sought Relating To The Special
             Committee Investigation Was Ever Subject To The Attorney-Client Privilege**
13   **        Or The Work Product Protection**

14           It is axiomatic that documents created with the intention of disclosing them to an adverse

15   third-party do not acquire protection from disclosure as attorney-client privileged or as work

16   product. *See Syncor*, 229 F.R.D. at 645 ("[N]either the attorney-client privilege nor the work

17   product doctrine applies to . . . documents . . . prepared during the internal investigation of

18   Syncor, since those documents were created with the intent to disclose them to the Government, if

19   necessary, to benefit Syncor in any governmental investigation; thus, they were never

20   privileged."); *Bergonzi*, 216 F.R.D. at 493 ("[C]ommunications between client and attorney for

21   the purpose of relaying communication to a third party is [sic] not confidential and not protected

22   by the attorney-client privilege.").

23           As shown above, KLA and Skadden bear the threshold burden of establishing that the

24   documents and testimony they withheld are subject to a valid claim of privilege. KLA and

25   Skadden cannot satisfy that burden with respect to any of the witness interview notes in this case

26   because KLA and Skadden created them with the intent to disclose them to the government. Here

27   it is readily apparent, and a more than reasonable inference by this Court, that Skadden's entire

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 24

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1 investigation, including its witness interviews, was conducted with the intent of disclosure to the

2 SEC and DOJ, based on: (1) KLA's prompt announcement to investors on May 24, 2006,

3 contemporaneous with forming its Special Committee and receipt of government subpoenas, that

4 it would "cooperate fully with any regulatory or governmental investigation";[21] (2) Skadden's

5 constant warning to witnesses that it could turn the interview notes over to the government at any

6 time;[22] (3) KLA's PowerPoint presentation to the SEC emphasizing the promptness and

7 comprehensiveness of its production of interview notes and other privileged material; and (4) the

8 SEC Confidentiality Agreement itself.  Because the evidence is so strong that KLA conducted the

9 entire Special Committee investigation with the desire and intent of sharing the results, including

10 the interview memoranda, with the government in a prayer for indulgence, KLA cannot meet its

11 burden of showing that any privilege ever attached to the interview notes or any other documents

12 created in the Special Committee investigation.  Accordingly, KLA and Skadden cannot validly

13 refuse to testify or to produce all documents created in the Special Committee investigation.

**D.    KLA Cannot Establish That Attorney-Client Communications And Memoranda Created Before The Special Committee Investigation Are Work Product**

16 Similarly, although the historical attorney-client communications (such as those of

17 Mr. Nichols, Ms. Berry and WSGR) may at some point have had an attorney-client privilege

18 (which, as explained below, has been waived), KLA cannot show that those communications

19 were ever subject to work product protection.  The work product doctrine, a qualified protection,

---

[21] Full cooperation by a company with criminal and regulatory investigators at that time was known to include a waiver of the attorney-client privilege. *See* Memorandum from Larry D. Thompson, Deputy Attorney General, to U.S. Attorneys (Jan. 20, 2003) (the "Thompson Memo") ("In gauging the extent of the corporation's cooperation, the prosecutor may consider the corporation's willingness . . . to waive the attorney-client and work product protection."); Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions, Exchange Act Release No. 44969 (Oct. 23, 2001).

[22] *See, e.g., Gottlieb v. Wiles*, 143 F.R.D. 241, 249 (D. Colo. 1992) (attorney-client privilege did not attach to interview memoranda where interviewees were told "that the company would make all the decisions concerning whether and to whom the information obtained would be released"; "These facts demonstrate beyond peradventure that neither the interviewees nor the interviewers had any real expectation that the information obtained during the interview process would remain confidential . . . .").

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 25

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   applies only to documents created or prepared "in anticipation of litigation." *See* Fed. R. Civ. P.

2   26(b)(3)(A). KLA cannot meet its burden of showing with competent evidence that any of the

3   historical attorney communications and memoranda constitutes attorney work product. All of the

4   relevant communications are, on their face, documents created as part of ongoing advice

5   concerning options granting practices, *not* in anticipation of litigation. Indeed, Mr. Nichols

6   unequivocally confirmed at his deposition that his March 19, 2001 memorandum to

7   Mr. Schroeder — the document that forms the core of the SEC's scienter allegations against him

8   — was *not* created in anticipation of litigation. *See* Nichols Tr. at 201 (Coopersmith Decl. Ex. 7)

9   ("Q. . . . And I think you've already testified that you did not prepare the [March 19, 2001]

10  memorandum in anticipation of litigation; correct? A. Correct."). Nor can KLA plausibly show

11  with competent evidence, as it must, that any other of the historical attorney communications at

12  issue were created in anticipation of litigation. Accordingly, none of the documents, or testimony

13  about the documents or communications, in category 1 are work product.

14       **E.**     **KLA Waived Any Applicable Privilege Or Protection For Documents**
              **Produced To Government Agencies**

15

16       Assuming, for the sake of argument alone, that KLA and Skadden could meet their burden

17  of showing that a privilege or protection attached to any of the documents or testimony withheld,

18  any such privilege or protection was irretrievably lost when Special Committee gave the

19  privileged documents to the SEC (or any other government agency). Having voluntarily given

20  the SEC protected communications in order to gain cooperation credit, KLA cannot now avoid

21  the consequences of those strategic disclosures.

22       It is firmly established that any voluntary disclosure of attorney-client privileged

23  communications to a third party waives the privilege. *See Bittaker v. Woodford*, 331 F.3d 715,

24  720 (9th Cir. 2003) (noting that "once documents have been turned over to another party

25  voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery

26  of the information and related communications by his adversaries"); *In re Columbia/HCA*

27  *Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) ("As a general rule,

28  the attorney-client privilege is waived by voluntary disclosure of private communications by an

SEC v. Schroeder
C-07-3798 (JW)
Page 26

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    individual or corporation to third parties.") (internal quotation marks omitted); *Westinghouse*

2    *Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991) ("[I]t is well-

3    settled that when a client voluntarily discloses privileged communications to a third party, the

4    privilege is waived."). Similarly, any disclosure of work product to a potential adversary waives

5    work product protection. *See Syncor*, 229 F.R.D. at 646 ("[O]nce a party has disclosed work

6    product to an adversary, it has waived work product protection as to all other adversaries.");

7    *Bergonzi*, 216 F.R.D. at 497 ("Work product protection is waived where disclosure of the

8    otherwise privileged documents is made to a third party . . . .").

9           KLA produced to the SEC, and thereby waived the attorney-client privilege and any work

10   product protection as to, (1) historical communications of its in-house and outside lawyers created

11   during the time period relevant to this case, and (2) all communications of Skadden relating to the

12   Special Committee investigation, including the Final Interview Memoranda and all of the exhibits

13   referenced therein, and all references to Skadden's communications with the Special Committee

14   and the Board. Accordingly, KLA cannot prevent testimony regarding these communications or

15   avoid their production to the extent the SEC has not already produced them.

16   **F.      KLA Waived Any Applicable Privilege For Documents Disclosed In Any Way
             To Governmental Agencies**

17

18          In addition, to the extent that KLA and the Special Committee showed or described any

19   documents or communications to the SEC or any other government or regulatory agency that they

20   did not physically produce, such disclosure also amounts to a waiver of the attorney-client

21   privilege and work product protection. Voluntary disclosure of protected communications waives

22   the privilege, regardless of the form that the disclosure takes. *See Reyes*, 239 F.R.D. at 604

23   ("[The law firms] suggest that the privileges still apply because no written materials were

24   provided to the government. The Court finds this argument specious. It makes no difference

25   whether a privilege-holder copies a written text, reads from a written text, or describes a written

26   text to an outside party. The purpose and effect is the same in all cases; the transmission of

27   privileged information is what matters, not the medium through which it is conveyed."); *see also*

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 27

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 174-75 (S.D.N.Y. 2002) (holding that

2   oral presentation to government authorities concerning investigation constituted subject matter

3   waiver of work product protection as to "any and all documents" relating to the investigation in

4   existence at the time of presentation).  Accordingly, the Court should order KLA and Skadden to

5   produce any documents or communications they shared in any manner with the SEC or any other

6   agency.

7       **G.**    **KLA And The Special Committee Waived The Attorney-Client Privilege And**
8               **The Work Product Protection As To The Subject Matter of KLA's Option**
            **Granting And Accounting Practices And The Special Committee**
9               **Investigation**

10        KLA's  and the Special Committee's waiver is not limited to the documents and

11  communications that were actually disclosed to the SEC.  Rather, KLA and the Special

12  Committee have waived any applicable privilege or protection as to the entire subject matter of

13  the Special Committee investigation, including all notes and prior drafts of the Final Interview

14  Memoranda created by Skadden and all communications between it and the Special Committee.

15      **1.**    **Communications Between Skadden And The Special Committee**

16        KLA and the Special Committee produced both historical attorney-client communications

17  and purportedly protected documents, memoranda and communications from the internal

18  investigation to the SEC, seeking leniency from the SEC.  Where a party makes such self-serving,

19  selective use of allegedly privileged documents or communications, fairness dictates that the

20  party's waiver of privilege necessarily extends to the subject matter of the documents or

21  communications disclosed.  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 437

22  (D. Md. 2005) ("[T]o the extent that Royal Ahold offensively has disclosed information

23  pertaining to its internal investigation in order to improve its position with investors, financial

24  institutions, and the regulatory agencies, it also implicitly has waived its right to assert work

25  product privilege as to the underlying memoranda supporting its disclosures."); *In re Leslie Fay*

26  *Cos. Sec. Litig.*, 161 F.R.D. 274, 283 (S.D.N.Y. 1995) (applying subject matter waiver where

27  failure to provide party with access to documents underlying company's Audit Committee report

28  would "significantly impair [the party's] ability to defend itself against charges of improprieties;"

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 28

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    company's affirmative use of report while claiming privilege as to underlying documents was

2    "the exact conduct that the subject matter waiver doctrine was formulated to address").

3          A waiver of the attorney-client privilege through disclosure of even a single privileged

4    communication waives the privilege not just for that communication, but for *all other*

5    *communications* relating to the same subject matter. *See Weil*, 647 F.2d at 24 ("[I]t has been

6    widely held that voluntary disclosure of the content of a privileged attorney communication

7    constitutes waiver of the privilege as to all other such communications on the same subject."); *In*

8    *re Broadcom Corp. Sec. Litig.*, No. SACV 01275GLTMLGX, 2005 WL 1403513, *2 (C.D. Cal.

9    Apr. 7, 2005) ("Once the privilege is waived, all communications relating to the 'same subject

10   matter' are discoverable."). *In re Sealed Case*, 877 F.2d 976, 980-81 (D.C. Cir. 1989) ("[A]

11   waiver of the privilege in an attorney-client communication extends 'to all other communications

12   relating to the same subject matter.'") (citation omitted).

13          Here, because the Special Committee disclosed attorney-client communications

14   concerning the internal investigation to the SEC, it has waived the privilege as to all such

15   communications with Skadden relating to the investigation. *See Ryan v. Gifford*, No. 2213-CC,

16   2007 WL 4259557, *3 (Del. Ch. Nov. 30, 2007) ("Though plaintiffs have demonstrated waiver of

17   the privilege only as to the presentation of the report, this partial waiver operates as a complete

18   waiver for all communications regarding this subject matter. Therefore . . . plaintiffs are entitled

19   to all communications between Orrick and the Special Committee related to the investigation and

20   final report.").

21          Similarly, any waiver of the work product protection also waives the protection for all

22   "fact" work product relating to the same subject matter. *See United States v. Pollard (In re*

23   *Martin Marietta Corp.)*, 856 F.2d 619, 625 (4th Cir. 1988) (holding that company's disclosures to

24   the U.S. Attorney waived all fact work product relating to investigation conducted by company);

25   *In re Sealed Case*, 676 F.2d 793, 822 (D.C. Cir. 1982) (disclosure of report waived work product

26   protection as to additional documents that "were necessary for any fair evaluation of the report").

27

28

SEC v. Schroeder
C-07-3798 (JW)
Page 29

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  ## 2.  __Interview Notes And Draft Interview Memoranda__

2          Interview notes and memoranda — such as those created by Skadden in this case — that

3  are intended primarily, if not exclusively, to gather facts and recount the witnesses' statements

4  made during an interview fall clearly within the category of *fact* work product.[23]  *See Martin*

5  *Marietta*, 856 F.2d at 626.  Because Skadden's notes and draft interview memoranda are nothing

6  more than factual summaries of what witnesses said, the notes and drafts are clearly "fact" work

7  product subject to subject matter waiver.  *See id.* at 626 n.2 ("[W]ork product protection has been

8  waived as to most of the internal notes and memoranda on these interviews.");  *United States v.*

9  *Graham*, No. Crim. 03-CR-089-RB, 2003 WL 23198792, *6 (D. Colo. Dec. 2, 2003) ("[I]f the

10  statement was recorded to preserve it as representing what the witness said as opposed to what the

11  attorney thought about what the witness said, then it is 'fact,' not 'opinion' work-product.");

12  *Moreno v. Autozone, Inc.*, No. C-05-4432 CRB (EMC), 2008 WL 906510, *2 (N.D. Cal. Apr. 1,

13  2008) (holding that witness statements were fact, not opinion, work product).

14          Thus, by producing the Final Interview Memoranda to the SEC, Skadden also waived any

15  protection for its notes and draft memoranda, and the Court should order Skadden to produce

16  those documents immediately.  *See Graham*, 2003 WL 23198792 at *6-7 (finding subject matter

17

---

18  [23] The Final Interview Memoranda that KLA and the Special Committee produced to the SEC

19  begin with nearly identical, boilerplate statements designed to try to ensure that the memoranda
   are found to be work product:

20          This memorandum is not a verbatim accounting of the above interview, but
           instead contains my words, mental impressions, personal recollection, creative
21          thought processes, opinions and discussion of the events described below.  This
           memorandum also serves to communicate certain facts and mental impressions to
22          the client in connection with the provision of legal advice.  I have prepared this
           memorandum in anticipation of potential civil, administrative, and/or criminal
23          litigation and proceedings.  Accordingly, this memorandum constitutes
           confidential attorney work product and is also protected by the attorney-client
24          privilege.

25  Of course, such self-serving boilerplate cannot confer privileged status where, as noted, the
   memoranda were created with the intention of disclosing them to the government.  Moreover,
26  even a cursory review of the memoranda makes clear that, if the memoranda are work product,
   they are entitled only to the limited protection given to *fact* work product.  The final memoranda
27  contain no discernable mental impressions or thought processes of the drafting attorneys; they
   purport only to recount the witnesses' statements during the interviews.

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 30

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    waiver of work product protection and ordering party to produce notes of witness interviews).

2    Indeed, given Judge Ware's finding that KLA's use of privilege to prevent Mr. Schroeder from

3    discovery into the context of the historical Nichols and Berry communications could

4    prevent Mr. Schroeder from defending himself fully against the SEC's claims, this case should

5    not proceed if the Court were to find anything less than a full subject matter waiver.

**H.    KLA And The Special Committee Cannot "Selectively" Waive Attorney-Client Privilege or Attorney Work Product Protection**

KLA has asserted that its voluntary production of documents is only a "selective" waiver

solely in favor of the SEC, and that KLA purportedly had a "common interest" with the SEC.

Those arguments are wholly without merit.

**1.    KLA  Did Not Have A "Common Interest" With The SEC**

Although some courts have recognized in some cases that a disclosure of privileged

communications or work product to a third party may not waive the protection where the parties

share a "common interest," courts have almost universally rejected arguments by companies

under governmental investigation that they share some common interest with the agency

conducting the investigation.  In his recent decision in *United States v. Reyes*, 239 F.R.D. 591

(N.D. Cal. 2006), another case involving stock option granting practices, Judge Breyer summarily

rejected an almost identical argument where lawyers for Brocade Communications sought to

prevent disclosure to its former CEO, a defendant in a government action, of discovery Brocade

had given to the government:

> [The law firms] attempt[] to portray the law firms as sharing a "common interest"
> with the SEC and DOJ—either in their mutual effort to uncover the truth about
> Brocade's backdating scandal, or perhaps in the more abstract sense of promoting
> the transparent operation of public markets.  The argument is unconvincing . . . .
> It strains credulity to argue that a company under threat of imminent regulatory
> action by the SEC shares a common interest with that agency, which is why
> courts have almost universally refused to include government officials in the
> "small circle of 'others' with whom information may be shared without loss of the
> privilege."

*Id.* at 604 (quoting *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997)); *see
also, e.g., In re Initial Pub. Offering Sec. Litig.*, --- F. Supp. 2d ----, 2008 WL 400933, *7
(S.D.N.Y. Feb. 14, 2008) (rejecting, as "baseless," company's argument that it disclosed

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 31

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  documents pursuant to common interest with government investigators where company

2  "disclosed the Memoranda to escape or limit liability"); *In re McKesson HBOC, Inc. Sec. Litig.*,

3  No. C 99-20743, 2005 U.S. Dist. LEXIS 7098, at *33-34, (N.D. Cal. Mar. 31, 2005) (rejecting

4  company's claim of common interest where company was "potential target" of SEC investigation

5  and SEC therefore "maintained a potentially adversary position to McKesson").

6      In this case, the adversarial nature of the relationship between KLA and the SEC while

7  KLA was providing cooperation was clear and forecloses any claim of a common interest.

8  Whatever other motivations KLA may claim in cooperating with the SEC investigation, the SEC

9  was first and foremost an adversary with the power to greatly penalize the Company. Indeed, the

10  SEC still sued KLA and, in settling, KLA agreed to an injunction prohibiting further violations of

11  the federal securities laws. *See Bergonzi*, 216 F.R.D. at 496 ("[T]he company and the

12  Government did not have a true common goal, as it could not have been the Company's goal to

13  impose liability onto itself, a consideration always maintained by the Government.").[24]

14      **2.   The Concept of Selective Waiver Has Been Almost Universally Rejected**

15      KLA's and Skadden's attempt at a selective waiver of the attorney-client privilege and the

16  work product protection solely in favor of the government cannot be upheld. Federal courts have

17  overwhelmingly rejected claims of "selective" or "limited" waiver of the attorney-client privilege

18  and work product protection — *i.e.*, rejected claims that a party's disclosure of documents or

19  communications to one adversary (often a government investigator) does not waive the attorney-

20  client privilege or work product protection as to other parties. *See, e.g., In re Qwest Commc'ns

21  Int'l Inc. Sec. Litig.*, 450 F.3d 1179, 1192 (10th Cir. 2006) (refusing to adopt selective waiver

22  doctrine "as an exception to the general rules of waiver upon disclosure of protected material");

23  *Columbia/HCA Healthcare Corp.*, 293 F.3d at 303-07 ("When a party discloses protected

---

24  [24] Nor does KLA's self-serving statement in the Confidentiality Agreement with the SEC that the
25  Company shared a "common interest in investigating and analyzing the circumstances and people
   involved in the events at issue," *see* Confidentiality Agreement (Coopersmith Decl., Ex. 6), serve
26  to create a common interest where one does not otherwise exist. *See Initial Pub. Offering*, --- F.
   Supp. 2d at ----, 2008 WL 400933 at *7 ("Credit Suisse contends that the Memoranda were
27  produced to the SEC pursuant to an agreement that stated the entities had common interests.
   However, such an agreement cannot manufacture a common interest *ipse dixit*.").

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 32

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    materials to a government agency investigating allegations against it, it uses those materials to

2    forestall prosecution (if the charges are unfounded) or to obtain lenient treatment (in the case of

3    well-founded allegations)."); *Mass. Inst. of Tech.*, 129 F.3d at 687; *Genetech, Inc. v. U.S. Int'l*

4    *Trade Comm'n*, 122 F.3d 1409, 1415-18 (Fed. Cir. 1997) (holding that government audit agency

5    was adversary even though disclosing party "hoped that there would be no actual controversy,"

6    because "the potential for dispute and even litigation was certainly there"); *Westinghouse Elec.*

7    *Corp.*, 951 F.2d at 1424-30; *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1369-72 (D.C. Cir.

8    1984) (holding that SEC was "adversary" of corporation where corporation made voluntary

9    disclosures to SEC "for which it received the *quid pro quo* of lenient punishment for any

10   wrongdoings exposed in the process").

11          In addition, although the Ninth Circuit has not ruled directly on the issue, several district

12   courts in this circuit have squarely rejected attempts at selective waiver. *Reyes*, 239 F.R.D. at

13   602-03 (rejecting selective waiver of attorney-client privilege and/or work product protection

14   based on theory of "common interest" where documents related to option backdating

15   investigation had been produced to the government); *Syncor*, 229 F.R.D. at 647-48 (refusing to

16   apply selective waiver in part because disclosures to government were made "in a manner 'to gain

17   tactical or strategic advantage'" and were therefore made with disclosing parties' "complete,

18   knowing and full consent"); *Bergonzi*, 216 F.R.D. at 495-98 (holding that Skadden and its client

19   waived attorney-client privilege and work product protection by producing report and interview

20   memoranda to the government); *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 208, 211-12

21   (N.D. Cal. 1992).

22          In *Reyes*, defendant Gregory Reyes, former CEO of Brocade, sought production of

23   documents related to Brocade's Audit Committee investigation of Brocade's option dating

24   practices over a multi-year period.  Brocade had disclosed certain protected documents to the

25   government in connection with an investigation that ultimately resulted in both an SEC action and

26   a criminal indictment of Reyes, but Brocade resisted Reyes' request for those documents, citing

27   privilege.  The court ruled that Brocade's production of the privileged material to the government

28   waived both the attorney-client privilege and work product protection. *See Reyes*, 239 F.R.D. at

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 33

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    602 ("The court holds . . . that [counsel for the company and the Audit Committee] surrendered

2    whatever privileges may have attached to the subpoenaed materials when they shared their

3    contents with the government. Because the law firms waived both the attorney-client privilege

4    and the work-product privilege when they disclosed the substance of their investigative

5    interviews, reports, and conclusions with the government, the Court finds that these privileges

6    pose no obstacle to Reyes' attempt to subpoena them.").

7        The *Reyes* court dismissed the argument that the ordinary waiver rules should not apply to

8    disclosure to a governmental entity. *See id.* at 603 ("[T]he fact that law-enforcement authorities

9    are on the receiving end of a voluntary disclosure is not an adequate justification for keeping the

10    attorney-client privilege intact."). Surveying the case law on this issue, Judge Breyer concluded:

11        In accord with every appellate court that has considered the issue in the last
         twenty-five years, this Court holds that Brocade's Audit Committee, and their
12        attorneys at MoFo and WSG & R, cannot waive the attorney-client privilege
         selectively. . . .

13                                    . . .

14        Likewise, the Court finds that MoFo and WSG & R gave up their work-product
         privilege when they shared the substance of their work product with the
15        government.

16    *Id.*

17        Similarly, in *Bergonzi*, Judge Jenkins rejected assertions by McKesson Corporation that

18    its sharing with the government of the work product of attorneys performing an internal

19    investigation by its Audit Committee resulted only in a selective waiver of work product

20    protection. There, McKesson had entered into a confidentiality agreement with the SEC

21    professing that the Company had a "common interest" with the SEC in obtaining information

22    contained in documents and back-up materials provided to the SEC and purporting not to waive

23    any privilege. *Bergonzi*, 216 F.R.D. at 491. There too, Skadden, the attorneys for McKesson's

24    Audit Committee, conducted 55 interviews and turned over the interview memoranda and the

25    report it had presented to the Audit Committee to the government, but the company invoked the

26    attorney-client privilege and the work product doctrine to deny certain criminal defendants access

27    to those documents. *Id.* After finding that McKesson had always intended to turn over the results

28    of Skadden's investigation to the government, the court first found that McKesson had failed to

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 34

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   meet its burden that the attorney-client privilege ever even attached to the interview memoranda

2   or the report to the Audit Committee. *Id.* at 493-94. Turning to the work product protection, the

3   Court rejected both McKesson's argument that it had a "common interest" with the government

4   and its argument that its production to the government pursuant to a confidentiality agreement did

5   not waive the work product protection *Id.* at 495-98.

6        The court reached a somewhat contrary result on selective work product waiver in *In re*

7   *McKesson HBOC, Inc. Securities Litigation*, No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS

8   7098 (N.D.Cal. Mar. 31, 2005) (Whyte, J.). *McKesson* arose out of the same general facts

9   addressed by Judge Jenkins in *Bergonzi*, involving the merger between McKesson Corporation

10  and HBOC, Inc., and McKesson's belated discovery of accounting irregularities at HBOC. In

11  *McKesson*, however, class action plaintiffs sought production of Audit Committee investigation

12  materials. On the question of selective waiver, the *McKesson* court held — contrary to the great

13  weight of authority (and relying primarily on the dissenting opinion from the Sixth Circuit's

14  decision in *Columbia/HCA Healthcare*) — that the company did not waive the work product

15  protection by turning over certain reports developed during the corporate investigation to the

16  government pursuant to a confidentiality agreement. *Id.* at *45-49.

17        *McKesson* is distinguishable from this case. The motion to compel production of

18  documents in *McKesson* was brought by class action plaintiffs who had sued McKesson

19  following its disclosures of accounting irregularities. In its opinion, the court specifically noted

20  that its decision was not unfair to the private civil plaintiffs who were seeking the reports because

21  the Company was not using the reports "in such a way as to place some of the contents at issue

22  with respect to the present litigation while asserting attorney client or work product protection

23  over supporting content." *Id.* at *50. In other words, Judge Whyte in *McKesson* was not faced

24  with a situation where the privileged materials were being used as both sword and a shield. Here,

25  however, purportedly privileged communications that KLA provided to the SEC form the

26  cornerstone of the SEC's complaint against Mr. Schroeder. *See* Complaint ¶¶ 29-34. Other

27  formerly privileged documents also turned over to the SEC are pivotal to Mr. Schroeder's

28  defense. To force Mr. Schroeder to litigate this case without being able to question witnesses

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 35

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

about those communications would be fundamentally unfair.[25] Indeed, as Judge Ware has already found, KLA and the Special Committee's continued assertions of privilege over documents and the context and circumstances surrounding them has the potential to prevent Mr. Schroeder from fully defending himself in this case. *See* May 22 Order at 4-6. Finally, to the extent that there is any parallel between the situation in *McKesson* and Mr. Schroeder's case, this Court should instead follow the great weight of authority, including Judge Breyer's more recent decision in *Reyes*, where the court surveyed twenty-five years of appellate authority and cited, but declined to follow, Judge Whyte's *McKesson* opinion.

### 3.  KLA's Confidentiality Agreement With The SEC Cannot Prevent Waiver

Nor did the Company's "Confidentiality Agreement" with the SEC prevent waiver.  As numerous courts have ruled, a confidentiality agreement with an adverse party to whom documents are disclosed on purported grounds of common interest does not negate a waiver of the attorney-client privilege and the work product protection. *See, e.g., Columbia/HCA Healthcare*, 293 F.3d at 302 (rejecting "any form of selective waiver, even that which stems from a confidentiality agreement"); *Qwest Commc'ns Int'l*, 450 F.3d at 1194 (rejecting claim that confidentiality agreement justified selective waiver where "[t]he agreements d[id] little to restrict the agencies' use of the materials that they received from Qwest"); *Initial Pub. Offering* --- F. Supp. 2d at ----, 2008 WL 400933 at *7 ("[S]elective waiver should not be found simply because of the existence of a confidentiality agreement.").

---

[25] Courts have been especially quick to find a waiver of work product protection where, as here, the disclosing party attempts to abuse the privilege by engaging in strategic behavior. *See Columbia/HCA Healthcare*, 293 F.3d at 307 ("Like attorney-client privilege, there is no reason to transform the work product doctrine into another 'brush on the attorney's palette,' used as a sword rather than a shield."); *Subpoenas Duces Tecum*, 738 F.2d at 1372 ("Fairness and consistency require that appellants not be allowed to gain the substantial advantages accruing to voluntary disclosure of work product to one adversary — the SEC — while being able to maintain another advantage inherent in protecting that same work product from other adversaries."); *see also Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998) (finding waiver based on "voluntary submission of material to a government agency to incite it to attack the informant's adversary" even where government and disclosing party "were neither adversaries nor allies"). In this case, the Special Committee has used Skadden's work product offensively to attempt to implicate Mr. Schroeder in wrongdoing and to induce the SEC to take action against him, yet it continues to deny Mr. Schroeder access to that same information.  The policies underlying the work product doctrine do not support such action.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 36

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    Moreover, KLA's purported Confidentiality Agreement is illusory. The agreement

2    provides that the SEC will not disclose documents to other parties, "except to the extent that the

3    Staff determines that disclosure is otherwise required by law *or would be in furtherance of the*

4    *Commission's discharge of its duties and responsibilities*." Confidentiality Agreement at 2

5    (emphasis added) (Coopersmith Decl. Ex. 6). This remarkably broad "exception" to the SEC's

6    obligation to maintain the confidentiality of the documents provided to it by KLA, Skadden, and

7    the Special Committee gives the SEC unbridled discretion to use the documents that it received as

8    it sees fit, since virtually every action the SEC undertakes is "in furtherance of [its] discharge of

9    its duties and responsibilities." The SEC read the provisions to allow it to characterize and use

10   privileged documents in the SEC's complaints against Mr. Schroeder and Ms. Berry and in the

11   press, and to produce purportedly attorney-client privileged and/or work product documents to

12   Mr. Schroeder so that it could use them against him in this litigation.

13   As noted above, at least three district courts in California have found confidentiality

14   agreements with nearly identical language insufficient to prevent a waiver of the attorney-client

15   privilege or the work product doctrine. *See Reyes*, 239 F.R.D. at 604 ("[T]he agreements

16   executed in this case are little more than fig leafs. . . . When, after sharing it with others,

17   privilege-holders retain so little power over their confidential work product, it is not proper to

18   credit their subsequent efforts to protect it."); *Syncor*, 229 F.R.D. at 646 (holding that identical

19   language was "inconsistent with" selective waiver of privilege because it gave government "sole

20   discretion" to destroy confidentiality); *Bergonzi*, 216 F.R.D. at 496 n.10 (same). Because KLA

21   and the Special Committee's disclosures to the SEC are fundamentally incompatible with

22   maintaining the attorney-client privilege or the work product protection, the Court should hold

23   that those protections have been waived as to the subject matter of all documents that Skadden

24   and the Special Committee provided to or shared with the SEC.

25   **I.    KLA And The Special Committee Waived Attorney-Client Privilege And Work
         Product Protection On Communications And Work Product Given To KLA's**
26       **Outside Auditors**

27   KLA and the Special Committee have also refused to produce documents shared with, and

28

SEC v. Schroeder
C-07-3798 (JW)
Page 37

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   communications to, PwC, KLA's outside auditors, based on claims of attorney-client privilege

2   and work product protection. It is well established, however, that disclosures of otherwise

3   protected documents to independent outside auditors made for purposes of their accounting duties

4   waive the attorney-client privilege and work product protection. *United States v. Gurtner*, 474

5   F.2d 297, 298 (9th Cir. 1973) ("'If what is sought is not legal advice but only accounting

6   service...or if the advice sought is the accountant's rather than the lawyer's, no privilege

7   exists.'") (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)); *Chevron Corp. v.*

8   *Penzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (corporation's disclosure to outside auditors

9   waived attorney-client privilege as to all communications about the matter disclosed).

10       In *Diasonics Securities Litigation*, No. C-83-4584-RFP (FW), 1986 WL 53402 (N.D. Cal.

11   June 15, 1986), the court ruled that this principle applies equally even where the disclosures to the

12   auditor are made in order to allow the auditor to assess the impact that legal issues, including

13   litigation, could have on the client's financial condition. *See id.* at *1 (finding waiver of attorney-

14   client privilege as to documents "disclosed to Arthur Young so that Arthur Young could assess

15   the effect of pending litigation (including this suit) on Diasonics' financial condition").

16       It is indisputable that any documents shared with PwC by Skadden or KLA in this case

17   were shared to allow PwC to perform its duties as KLA's independent outside auditor, not for the

18   purpose of securing legal advice. Accordingly, the Court should find a waiver of attorney-client

19   privilege and of work product protection as to the subject matter of any documents that KLA or

20   Skadden disclosed to PwC. As the *Diasonics* court explained, disclosure to an independent,

21   outside auditor is incompatible with the purpose of the work product doctrine because of the

22   auditor's unique duties to other parties, including the investing public, and, accordingly, such

23   disclosures operate to waive the work product protection. *See id.* at *1 ("While disclosure to one

24   with a common interest under a guarantee of confidentiality does not necessarily waive the

25   protection, *the relationship between public accountant and client is at odds with such a guarantee*

26   *because the public accountant has responsibilities to creditors, stockholders, and the investing*

27   *public which transcend the relationship with the client*.") (emphasis added) (internal citation

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 38

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    omitted).[26]  As in *Diasonics*, in this case PwC's responsibilities to the investing public based on

2    its role as KLA's independent auditor preclude the possibility of any common interest arising

3    between KLA and PwC.  KLA's disclosure therefore waived any work product protection not

4    only as to the documents actually disclosed, but also as to the subject matter of those disclosures.

5    *See Qwest Commc'ns*, 2005 U.S. Dist. LEXIS 19129 at *18-19.[27]

6         Finally, this Court should not follow *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486

7    CW (EDL), 2006 WL 2850049 (N.D. Cal. Oct. 5, 2006), which conflicts with the earlier decision

8    from this district in *Diasonics*.  In *JDS Uniphase*, the magistrate judge held that the disclosure of

9    minutes of certain board of directors meetings to the company's outside auditor did not waive the

10   work product protection for those documents.  *Id.* at *1.  But the *JDS Uniphase* court gave little

11   explanation for its ruling, and the court failed to even cite *Diasonics* to explain why it disagreed

12   with its reasoning or to distinguish its facts.  Moreover, the *JDS Uniphase* court expressly limited

13   its decision to the facts before it.  *Id.*  ("*At least under the circumstances of this case*, the

14   disclosure did not constitute an automatic waiver of the work product protection.") (emphasis

15   added). Because KLA and Skadden's disclosures of otherwise attorney-client privileged or work

16   product protected documents to PwC is inconsistent with the purposes underlying those

17   protections, the Court should rule that Skadden and KLA waived the attorney-client privilege and

18   work product protection with respect to the subject matter of any such documents.

19

20   ─────────────────────

21   [26] *See also Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002)
     (holding that corporation waived work product protection for Special Litigation Committee
     materials disclosed to outside auditors; "[A]s has become crystal clear in the face of the many

22   accounting scandals that have arisen as of late, in order for auditors to properly do their job, they
     *must* not share common interests with the company they audit."); *In re Qwest Commc'ns Int'l,*

23   *Inc. Sec. Litig.*, No. 01-cv-01451-REB-CBS, 2005 U.S. Dist. LEXIS 19129, *18-19 (D. Colo.
     Aug. 15, 2005) (finding that company waived protection for all fact work product relating to

24   subject matter of report by outside counsel because it disclosed report to outside auditor).

25   [27] The decision in *Samuels v. Mitchell*, 155 F.R.D. 195 (N.D. Cal. 1994), is not contrary. There,
     the court held there was no waiver where a party disclosed work product protected documents

26   relating to an arbitration proceeding to accountants acting as consultants in the arbitration, not as
     auditors. *See id.* at 201 ("*Diasonics* is distinguishable from the present case in that Ernst & Young

27   was not acting as Seagate's public accountant during the arbitration, but as a consultant.").  Any
     disclosures to PwC in this case were made to PwC's role as KLA's independent auditor.

28

SEC v. Schroeder
C-07-3798 (JW)
Page 39

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1

## <u>CONCLUSION</u>

2    For the reasons stated above, Kenneth L. Schroeder respectfully requests that the Court

3    grant the Motion to Compel and order KLA and Skadden to produce the requested discovery.

4    Dated:  June 9, 2008                           Respectfully submitted,

5                                                   DLA PIPER US LLP

6

7    By:  /s/Jeffrey B. Coopersmith

8    SHIRLI FABBRI WEISS (Bar No. 079225)
     DAVID PRIEBE (Bar No. 148679)
9    JEFFREY B. COOPERSMITH (Bar No. 252819)
     **DLA PIPER US LLP**

10   ELLIOT R. PETERS (Bar No. 15808)
     STUART L. GASNER (Bar No. 164675)
11   **KEKER & VAN NEST LLP**

12   Attorneys for Defendant
     KENNETH L. SCHROEDER
13   WEST\20045083.7

14

15

16

17

18

19

20

21

22                                                                              ʻ

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 40

MOTION OF KENNETH L. SCHROEDER TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    **CERTIFICATION**

2    Federal Rule of Civil Procedure 37(a)(1); Civil L.R. 37-1

3    I, Shirli Fabbri Weiss, declare,

4        1.    I am an attorney admitted to practice in California and before this honorable Court.

5    I am one of the attorneys for defendant Kenneth L. Schroeder in this matter.

6        2.    On November 20, 2007, I conferred by telephone with Joseph E. Floren of

7    Morgan, Lewis & Bockius LLP, one of the attorneys for KLA-Tencor Corporation, in a good

8    faith effort to resolve our differences regarding KLA's invocation of the attorney-client privilege

9    and work product protection to refuse to provide Mr. Schroeder with requested discovery. I also

10   exchanged correspondence with Mr. Floren on numerous occasions between November 2007 and

11   January 2008 about these issues. Despite good faith efforts on both sides, we were unable to

12   resolve our differences.

13       3.    On November 29, 2007, I conferred by telephone with Matthew Sloan of Skadden,

14   Arps, Slate, Meagher & Flom LLP in a good faith effort to resolve our differences regarding

15   Skadden's invocation of the attorney-client privilege and work product protection to refuse to

16   provide Mr. Schroeder with requested discovery. I also exchanged correspondence with

17   Mr. Sloan on numerous occasions between November 2007 and January 2008 about these issues.

18   Despite good faith efforts on both sides, we were unable to resolve our differences.

19       I certify that the above is true and correct and that this declaration was executed by me on

20   this 9th day of June, 2008.

21

22   _/s/Shirli F. Weiss_____

23   Shirli F. Weiss

24   I hereby attest that I have on file all holographic signatures for any signatures indicated by a

25   "conformed" signature (/S/) within this e-filed document.

26

27

28

DLA PIPER US LLP

WEST\21438329.1                                                              CERTIFICATION