**EXHIBIT 1 TO SEC'S REQUEST FOR JUDICIAL NOTICE**

```
<PAGE>   1
```

- --------------------------------------------------------------------------------
- --------------------------------------------------------------------------------

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

-------------------------

FORM 10-K
-------------------------

(MARK ONE)

[X]   ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE
      SECURITIES EXCHANGE ACT OF 1934

           FOR THE FISCAL YEAR ENDED DECEMBER 31, 1999

                              OR

[ ]   TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE
      SECURITIES EXCHANGE ACT OF 1934

         FOR THE TRANSITION PERIOD FROM _____ TO _____ .

                  COMMISSION FILE NUMBER 0-26339

                  JUNIPER NETWORKS, INC.
           (EXACT NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)

```
<TABLE>
<S>                                        <C>
             DELAWARE                                77-0422528
      (STATE OR OTHER JURISDICTION OF           (I.R.S. EMPLOYER IDENTIFICATION NO.)
       INCORPORATION OR ORGANIZATION)

   385 RAVENDALE DRIVE MOUNTAIN VIEW, CA             94043
    (ADDRESS OF PRINCIPAL EXECUTIVE OFFICES)       (ZIP CODE)
</TABLE>
```

                       (650) 526-8000
            (REGISTRANT'S TELEPHONE NUMBER, INCLUDING AREA CODE)

         SECURITIES REGISTERED PURSUANT TO SECTION 12(B) OF THE ACT:

```
<TABLE>
<CAPTION>
                                          NAME OF EACH EXCHANGE
        TITLE OF EACH CLASS               ON WHICH REGISTERED
        -------------------               --------------------
<S>                                        <C>
               NONE                               NONE
</TABLE>
```

         SECURITIES REGISTERED PURSUANT TO SECTION 12(G) OF THE ACT:

                  COMMON STOCK, $.00001 PAR VALUE
                       (TITLE OF CLASS)
                  -------------------------

     Indicate by check mark whether the Registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act of
1934 during the preceding 12 months (or for such shorter period that the

Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes [X]  No [ ]

    Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the Registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of the Form 10-K or any amendment to this Form 10-K.  [X]

    As of March 7, 2000, there were 156,504,433 shares of the Registrant's Common Stock outstanding. The aggregate market value of the Common Stock held by non-affiliates of the Registrant (based on the closing price for the Common Stock on the Nasdaq National Market on March 7, 2000) was approximately $29,023,901,284.

                    DOCUMENTS INCORPORATED BY REFERENCE

    The information called for by Part III is incorporated by reference to specified portions of the Registrant's definitive Proxy Statement to be issued in conjunction with the Registrant's 2000 Annual Meeting of Stockholders, which is expected to be filed not later than 120 days after the Registrant's fiscal year ended December 31, 1999.

- --------------------------------------------------------------------------------
- --------------------------------------------------------------------------------

<PAGE>    2

JUNIPER NETWORKS, INC.
ANNUAL REPORT ON FORM 10-K

TABLE OF CONTENTS

<TABLE>
<S>        <C>                                                          <C>

PART I
Item 1    Business.................................................      3
Item 2    Properties..............................................     25
Item 3    Legal Proceedings.......................................     25
Item 4    Submission of Matters to a Vote of Security Holders.........     25
          Executive Officers of the Registrant......................     26

PART II
Item 5    Market for Registrant's Common Stock and Related Stockholder
          Matters.................................................     27
Item 6    Selected Financial Data.................................     27
Item 7    Management's Discussion and Analysis of Financial Condition
          and Results of Operations.................................     27
Item 7A   Quantitative and Qualitative Disclosures about Market
          Risk....................................................     27
Item 8    Financial Statements and Supplementary Data...............     28
Item 9    Changes in and Disagreements with Accountants on Accounting
          and Financial Disclosure.................................     28

PART III
Item 10   Directors and Executive Officers of the Registrant..........     28
Item 11   Executive Compensation..................................     28
Item 12   Security Ownership of Certain Beneficial Owners and
          Management.............................................     28
Item 13   Certain Relationships and Related Transactions.............     28

PART IV
Item 14   Exhibits, Financial Statement Schedules and Reports on Form
          8-K....................................................     29
          Signatures.............................................     31
</TABLE>

2

<PAGE>    22

COMMON STOCK

Juniper Networks is authorized to issue up to 200,000,000 shares of its
common stock. At December 31, 1999 and 1998, 155,938,599 and 61,731,984 shares
were issued and outstanding. Prior to the adoption of the 1996 Stock Option
Plan, Juniper Networks issued shares of common stock to founders, investors, and
employees. The shares issued to investors were fully vested upon purchase.
Generally, shares issued to founders and employees were sold pursuant to
restricted stock purchase agreements containing provisions established by the
Board of Directors. These provisions give Juniper Networks the right to
repurchase the shares at the original sales price. This right expires at the
rate of 25% after one year and 2.0833% per month thereafter. At December 31,
1999 and 1998, 840,001 and 4,148,439 of these shares, issued outside of the 1996
Stock Option Plan, remained subject to repurchase.

STOCK OPTION PLAN

Juniper Networks' 1996 Stock Option Plan (the Plan) provides for the
granting of incentive stock options to employees and nonstatutory stock options
to employees, directors and consultants. Incentive stock options are granted at
an exercise price of not less than the fair value per share of the common stock
on the date of grant. Nonstatutory stock options may be granted at an exercise
price of not less than 85% of the fair value per share on the date of grant;
however, no statutory stock options have been granted for less than fair market
value on the date of grant. Vesting and exercise provisions are determined by
the Board of Directors. Options granted under the Plan generally become
exercisable over a four-year period beginning on the date of grant. Options
granted under the Plan have a maximum term of ten years. Options granted to
consultants are in consideration for the fair value of services previously
rendered, are not contingent upon future events and are expensed in the period
of grant. Juniper Networks has authorized 57,562,500 shares of common stock for
issuance under the Plan. At December 31, 1999, 1,896,356 shares were available
for future option grants or stock sales under the Plan.

Option activity under the Plan is summarized as follows:

<TABLE>
<CAPTION>

|  | OUTSTANDING OPTIONS | |
| --- | --- | --- |
|  | NUMBER OF SHARES | WEIGHTED-AVERAGE EXERCISE PRICE |
| Options granted ....................... | 5,393,250 | $ 0.07 |
| Balance at December 31, 1997 ........... | 5,393,250 | 0.07 |
| Options granted ....................... | 10,537,440 | 0.62 |
| Options exercised ..................... | (4,521,948) | 0.16 |
| Options canceled ...................... | (365,028) | 0.09 |
| Balance at December 31, 1998 ........... | 11,043,714 | 0.56 |
| Options granted ....................... | 16,837,006 | 33.76 |
| Options exercised ..................... | (4,935,090) | 1.13 |
| Options canceled ...................... | (476,465) | 7.78 |
| Balance at December 31, 1999 ........... | 22,469,165 | 25.11 |

</TABLE>

The Plan also provides for the sale of shares of common stock to employees
and consultants at the fair value per share of the common stock. Shares issued

<PAGE>    23

to consultants are for the fair value of services previously rendered and are not contingent upon future events. Shares sold to employees are made pursuant to restricted stock purchase agreements containing provisions established by the Board of Directors. These provisions give Juniper Networks the right to repurchase the shares at the original sales price. This right expires at a rate determined by the Board of Directors, generally at the rate of 25% after one year and 2.0833% per month thereafter.

During the year ended December 31, 1997 and the period from inception (February 2, 1996) to December 31, 1996, Juniper Networks issued 10,717,299 and 14,522,652 shares under the Plan. No shares were issued under the Plan in the years ended December 31, 1999 and 1998. At December 31, 1999 and 1998, 9,158,052 and 14,055,312 shares were subject to repurchase rights under the Plan. At December 31, 1999 and 1998, 1,266,509 and 1,189,275 shares, respectively, had been repurchased under the Plan.

The following schedule summarizes information about stock options outstanding as of December 31, 1999:

<TABLE>
<CAPTION>

|  | OPTIONS OUTSTANDING | | | OPTIONS EXERCISABLE | |
| --- | --- | --- | --- | --- | --- |
| RANGE OF AVERAGE EXERCISE PRICES | NUMBER OUTSTANDING | WEIGHTED-AVERAGE REMAINING CONTRACTUAL LIFE | WEIGHTED-AVERAGE EXERCISE PRICE | NUMBER EXERCISABLE | WEIGHTED-AVERAGE EXERCISE PRICE |
| <S> | <C> | <C> | <C> | <C> | <C> |
| $ 0.04 - $   0.56 | 4,648,857 | 8.22 | $ 0.29 | 1,177,599 | $ 0.24 |
| $ 0.64 - $   4.67 | 5,294,415 | 9.01 | $ 2.88 | 353,777 | $ 1.77 |
| $ 7.00 - $   9.33 | 4,715,349 | 9.39 | $ 7.61 | 4,125 | $ 7.00 |
| $21.44 - $ 60.71 | 6,666,345 | 9.76 | $60.44 | 31,095 | $21.44 |
| $63.63 - $112.57 | 1,144,199 | 9.89 | $89.60 | -- | $   -- |
| $ 0.04 - $112.57 | 22,469,165 | 9.19 | $25.11 | 1,566,596 | $ 1.03 |

</TABLE>

As of December 31, 1998, 325,608 options are exercisable at an average exercise price of $0.05, and as of December 31, 1997, 79,980 options are exercisable at an average price of $0.01.

During the year ended December 31, 1998 and the three months ended March 31, 1999, in connection with the grant of certain stock options to employees, Juniper Networks recorded deferred stock compensation of $6,388,000 and $1,114,000 representing the difference between the exercise price and the deemed fair value of Juniper Networks' common stock on the date such stock options were granted. Such amount is included as a reduction of stockholders' equity and is being amortized by charges to operations on a graded vesting method. Juniper Networks recorded amortization of deferred stock compensation expense of $3,266,000 and $1,235,000 for the years ended December 31, 1999 and 1998. At December 31, 1999 and 1998, Juniper Networks had a total of $3,001,000 and $5,153,000 remaining to be amortized over the corresponding vesting period of each respective option, generally four years. The amortization expense relates to options awarded to employees in all operating expense categories. This amount has not been separately allocated to these categories.

23

\<PAGE\>   31

## SIGNATURES

   Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized, on this 27th day of March, 2000.

                              JUNIPER NETWORKS, INC.

                              By:      /s/ MARCEL GANI
                                 ------------------------------------
                                      Marcel Gani
                                 Chief Financial Officer
                                 (Duly Authorized Officer and
                                          Principal
                              Financial and Accounting Officer)

## POWER OF ATTORNEY

   KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below hereby constitutes and appoints Lisa C. Berry and Marcel Gani, and each of them individually, as his attorney-in-fact, each with full power of substitution, for him in any and all capacities to sign any and all amendments to this Report on Form 10-K, and to file the same with, with exhibits thereto and other documents in connection therewith, with the Securities and Exchange Commission, hereby ratifying and confirming all that said attorney-in-fact, or his or her substitute, may do or cause to be done by virtue hereof.

   Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons in the capacities and on the date indicated.

\<TABLE\>
\<CAPTION\>

| SIGNATURE | TITLE | DATE |
| --------- | ----- | ---- |
| \<S\> | \<C\> | \<C\> |
| /s/ SCOTT KRIENS<br>- ------------------------------------<br>Scott Kriens | President, Chief Executive Officer and Chairman of the Board (Principal Executive Officer) | March 27, 2000 |
| /s/ MARCEL GANI<br>- ------------------------------------<br>Marcel Gani | Chief Financial Officer (Principal Financial and Accounting Officer) | March 27, 2000 |
| /s/ PRADEEP SINDHU<br>- ------------------------------------<br>Pradeep Sindhu | Chief Technical Officer and Vice Chairman of Board | March 27, 2000 |
| /s/ WILLIAM R. HEARST III<br>- ------------------------------------<br>William R. Hearst III | Director | March 27, 2000 |
| /s/ VINOD KHOSLA<br>- ------------------------------------<br>Vinod Khosla | Director | March 27, 2000 |
| /s/ C. RICHARD KRAMLICH<br>- ------------------------------------<br>C. Richard Kramlich | Director | March 27, 2000 |
| /s/ WILLIAM STENSRUD<br>- ------------------------------------<br>William Stensrud | Director | March 27, 2000 |

\</TABLE\>

# EXHIBIT 2 TO SEC'S REQUEST FOR JUDICIAL NOTICE

<PAGE>    1

SCHEDULE 14A INFORMATION

PROXY STATEMENT PURSUANT TO SECTION 14(A) OF THE SECURITIES
EXCHANGE ACT OF 1934 (AMENDMENT NO.   )

Filed by the Registrant [X]

Filed by a Party other than the Registrant [ ]

Check the appropriate box:

<TABLE>
<S>                                          <C>
[ ] Preliminary Proxy Statement              [ ] Confidential, for Use of the Commission
                                             Only (as permitted by Rule 14a-6(e)(2))
[X] Definitive Proxy Statement
[ ] Definitive Additional Materials
[ ] Soliciting Material Pursuant to sec.240.14a-11(c) or sec.240.14a-12
</TABLE>

KLA-TENCOR CORPORATION

- -------------------------------------------------------------------------------
(Name of Registrant as Specified In Its Charter)

- -------------------------------------------------------------------------------
(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

[X]  No fee required.

[ ]  $125 per Exchange Act Rules 0-11(c)(1)(ii), or 14a-6(i)(1), or 14a-6(i)(2)
     or Item 22(a)(2) of Schedule 14A.

[ ]  $500 per each party to the controversy pursuant to Exchange Act Rule
     14a-6(i)(3).

[ ]  Fee computed on table below per Exchange Act Rules 14a-6(i)(4) and 0-11.

     (1)  Title of each class of securities to which transaction applies:

     (2)  Aggregate number of securities to which transaction applies:

     (3)  Per unit price or other underlying value of transaction computed
          pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the
          filing fee is calculated and state how it was determined):

     (4)  Proposed maximum aggregate value of transaction:

     (5)  Total fee paid:

[ ]  Fee paid previously with preliminary materials.

[ ]  Check box if any part of the fee is offset as provided by Exchange Act Rule
     0-11(a)(2) and identify the filing for which the offsetting fee was paid
     previously. Identify the previous filing by registration statement number,
     or the Form or Schedule and the date of its filing.

     (1)  Amount Previously Paid:

(2)  Form, Schedule or Registration Statement No.:

(3)  Filing Party:

(4)  Date Filed:

&lt;PAGE&gt;    2

KLA-TENCOR CORPORATION

----------------------------------

NOTICE OF ANNUAL MEETING OF STOCKHOLDERS
NOVEMBER 16, 1999

To the Stockholders:

NOTICE IS HEREBY GIVEN that the Annual Meeting of Stockholders of
KLA-Tencor Corporation (the "Company"), a Delaware corporation, will be held on
Tuesday, November 16, 1999 at 11:00 a.m, at the Company's offices located at One
Technology Drive, Milpitas, California 95035, for the following purposes:

1. To elect four Class I directors to serve for a three year term and until
   their successors are elected.

2. To ratify the appointment of PricewaterhouseCoopers LLP as independent
   accountants of the Company for the fiscal year ending June 30, 2000.

3. To transact such other business as may properly come before the meeting
   and any adjournments thereof.

The foregoing items of business are more fully described in the Proxy
Statement accompanying this Notice.

Only stockholders of record at the close of business on September 20, 1999
are entitled to notice of and to vote at the meeting.

Sincerely,

Larry W. Sonsini
Secretary

San Jose, California
October 15, 1999

YOUR VOTE IS IMPORTANT

All stockholders are cordially invited to attend the meeting in person,
however, to assure your representation at the meeting, as promptly as possible,
please either sign and date the enclosed proxy card and return it in the
enclosed envelope or follow the instructions on the enclosed proxy card to vote
telephonically or via the Internet. Any stockholder attending the meeting may
vote in person even if he or she returned a proxy.

<PAGE>  18

    Grants of stock options to executive officers are based upon each executive
officer's responsibilities, historical and expected contributions to the
Company, and the executive officer's existing stock ownership and previous
option grants, with primary weight given to the executive officer's relative
rank and responsibilities. Stock options are granted at market price on the date
of grant and provide value to the executive officers only when the price of the
Company's Common Stock increases over the exercise price.

    In August, 1998, following a sharp, sustained drop in the price of the
Company's Common Stock, the Committee became concerned about the retention and
continued motivation of employees holding "under-water" stock options, with
exercise prices higher and, in many cases, significantly higher than market
levels. After reviewing the matter, the Committee unanimously recommended to the
Board of Directors that the Company reprice stock options on August 31, 1998.
Employees of the Company, excluding certain executive officers, holding options
with exercise prices of $28.00 or higher were offered the opportunity to
surrender those options and receive new options having an exercise price of
$21.25, the fair market value of the Company's stock on that date, with a new
vesting schedule from the date of grant. In addition, the Committee also
realized that the Company was at a competitive disadvantage for retention of
certain of its executive officers holding options with exercise prices in excess
of the then-current market levels and on October 31, 1998, those executive
officers were offered the opportunity to surrender options and receive a reduced
number of options having an exercise price of $33.94, the market price on that
date. These repriced options began a new vesting schedule from the date of
grant. All independent members of the Board of Directors approved the repricing
offers. Kenneth Levy, the Company's Chief Executive Officer, Kenneth Schroeder,
the Company's President and Chief Operating Officer, and Jon Tompkins, the
Company's Chairman of the Board, abstained from the vote. The offer to reprice
stock options was not made to the Company's non-employee directors, all of whom
hold stock options under the Company's Outside Director Plan. A table showing
the options held by executive officers who elected to accept the repricing offer
is set forth under "Executive Compensation and Other Matters -- Ten-Year Option
Repricings Table."

    In recommending the option repricing, the Committee and the Board of
Directors were primarily motivated by a desire to preserve the Company's
talented employee base in a highly competitive employment environment during a
period when falling stock prices had substantially eliminated the retention
value of the Company's equity incentives. Recognizing the variety of alternative
opportunities and intense competition for employees and executives from both
established companies and emerging high-technology companies, the Board of
Directors concluded that repricing under-water options was in the best interest
of the Company.

    Approval of Fiscal Year 2000 Bonus Plan, Outstanding Corporate Performance
    Plan and the PMCS Program

    The Committee approved a fiscal year 2000 bonus plan incentive formula
which is based on two components of equal weight. The first component is
performance against specified financial objectives and the second is achievement
of non-financial strategic objectives. The bonuses for the Chairman of the
Board, the Chief Executive Officer, the Chief Operating Officer and the Chief
Financial Officer are based on the performance of the managers reporting to the
executive officers. The Committee also approved the fiscal year Outstanding
Corporate Performance Plan which is based on a matrix of the Company's net
operating margin and certain growth objectives. The Plan does not require any
contributions by the Company until the Company achieves a Pre-Tax Margin Factor
of 14%. The Pre-Tax Margin Factor is calculated by taking the pre-tax,

pre-profit sharing income, excluding non-recurring charges, and dividing it by total revenue. Under the PMCS Program, certain of the stock options which would be granted under Stock Option Plan will be dependent upon the achievement of certain revenue targets from specified customers.

Chief Executive Officer Compensation

For fiscal year 1999, Kenneth Levy served as Chief Executive Officer. In setting Mr. Levy's compensation for fiscal year 1999, the Committee considered the Company's revenue and profit in the prior fiscal year, the Company's market capitalization and data from comparable companies supplied by the Company's compensation consultants. During fiscal year 1999, due to the downturn in the semiconductor industry, the executive officers of the Company, including Mr. Levy, voluntarily decreased their base salaries by 10% for six

16