MELINDA HAAG (STATE BAR NO. 132612)
mhaag@orrick.com
JAMES A. MEYERS (ADMITTED *PRO HAC VICE*)
jmeyers@orrick.com
JAMES N. KRAMER (STATE BAR NO. 154709)
jkramer@orrick.com
NANCY E. HARRIS (STATE BAR NO. 197042)
nharris@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1-415-773-5700
Facsimile:     +1-415-773-5759

Attorneys for Defendant
Lisa C. Berry

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>     v.<br><br>LISA C. BERRY,<br><br>            Defendant. | Case No.  C 07 4431 RMW HRL<br><br>**LISA C. BERRY'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:       August 15, 2008<br>Time:      9:00 a.m.<br>Courtroom:  6, Fourth Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................. 2

    A.    The SEC Fails to Adequately Plead Ms. Berry's Participation in Preparing Or Making Any Alleged Misstatement by KLA ................................................. 2

    B.    The SEC Fails to Adequately Plead Ms. Berry's Participation in Preparing Or Making Any Alleged Misstatement by Juniper ................................................ 5

    C.    The SEC Fails To Allege Scheme Liability ....................................................... 10

    D.    The SEC Fails To Allege That Ms. Berry Aided And Abetted The Filing Of Purportedly False Proxy Statements ............................................................. 11

    E.    The SEC Concedes That It Did Not Act Diligently Before Juniper and KLA Announced Their Respective Investigations Into Stock Option Accounting ........................................................................................................ 11

III.  CONCLUSION .............................................................................................................. 14

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

5

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007) .................................................................................. 2, 14

6

*Cargill, Inc. v. Budine,*
   2007 WL 4207908 (E.D. Cal. Nov. 27, 2007) .............................................. 10

7

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir. 1998) ......................................................................... 4

8

*Corrie v. Caterpillar, Inc.,*
   503 F.3d 974 (9th Cir. 2007) ......................................................................... 13

9

*Durning v. Citibank, Intern.,*
   990 F.2d 1133 (9th Cir. 1993) ....................................................................... 12

10

*FEC v. Williams,*
   104 F.3d 237 (9th Cir. 1996) ......................................................................... 12

11

*Howard v. Everex Sys., Inc.,*
   228 F.3d 1057 (9th Cir. 2000) ....................................................................... 4

12

*In re Calpine Corp. Sec. Litig.,*
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) ...................................................... 2, 5, 11

13

14

*In re ESS Tech., Inc. Sec. Litig.,*
   2004 WL 3030058 (N.D. Cal. Dec. 1, 2004) ............................................... 4

15

*In re Harmonic, Inc. Sec. Litig.,*
   2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ............................................ 10

16

*In re Pixar Sec. Litig.,*
   450 F. Supp. 2d 1096 (N.D. Cal. 2006) ....................................................... 2

17

*In re Silicon Graphics, Inc. Sec. Litig.,*
   70 F. Supp. 746 (N.D. Cal. 1997),
   *aff'd*, 183 F.3d 970 (9th Cir. 1999) ............................................................. 9

18

19

*In re Software Toolworks, Inc. Sec. Litig.,*
   50 F.3d 615 (9th Cir. 1994) ........................................................................... 8

20

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.,*
   676 F. Supp. 458 (S.D.N.Y. 1987) ............................................................... 8

21

22

*In re ZZZZ Best Sec. Litig.,*
   864 F. Supp. 960 (C.D. Cal. 1994) ............................................................... 8

23

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
   501 U.S. 350 (1991) ....................................................................................... 12

24

*Lehman v. U.S.,*
   154 F.3d 1010 (9th Cir. 1998) ....................................................................... 12

25

*Moore v. Kayport Package Exp., Inc.,*
   885 F.2d 531 (9th Cir. 1989) ......................................................................... 9

26

27

*Ohio v. Reiner,*
   532 U.S. 17 (2001) ......................................................................................... 9

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Santa Maria v. Pacific Bell*,
202 F.3d 1170 (9th Cir. 2000)........................................................ 12, 13

*SEC v. Fisher*,
2008 WL 2062699 (N.D. Ill. May 13, 2008) ..................................... 12

*SEC v. Holschuh*,
694 F.2d 130 (7th Cir. 1982).............................................................. 4

*SEC v. Trabulse*,
526 F. Supp. 2d 1001 (N.D. Cal. 2007) ........................................... 4, 9

*Siemers v. Wells Fargo & Co.*,
2007 WL 760750 (N.D. Cal. Mar. 9, 2007)........................................ 7

*Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.*,
128 S. Ct. 761 (2008) ....................................................................... 10

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996)................................................................ 4

*Wool v. Tandem Computers, Inc.*,
818 F.2d 1433 (9th Cir. 1987)............................................................ 9

**STATUTES**

28 U.S.C. § 2462.................................................................... 2, 11, 15

## I.    INTRODUCTION

In its Order Granting In Part And Denying In Part Ms. Berry's Motion to Dismiss (May 7, 2008) ("Order"), the Court held that, other than with respect to two documents, the SEC's allegations "fall short of [the] thresholds" required to plead that Lisa Berry made or was substantially or intricately involved in the preparation of a false statement sufficient to state a primary claim of securities fraud.  Order at 14-15.  In her Motion to Dismiss ("MTD") the SEC's First Amended Complaint ("FAC"), Ms. Berry explained that the FAC still "fail[ed] to allege with particularity what Ms. Berry's role was in 'finalizing'" her former employers' public filings (Order at 15), since most of the FAC's allegations were identical to those of the original Complaint and the few new allegations were equally conclusory.

In its Opposition, the SEC seeks to divert attention from this basic reality by repeating the allegations it made in the original Complaint and the FAC, then adding rhetorical flourishes found nowhere in either of those pleadings.  In its effort to hold Ms. Berry primarily liable for the alleged misstatements of others, the SEC now refers to Ms. Berry in its Opposition as the "author" of the KLA and Juniper financial statements and public filings a dozen times, although it pleads no such fact in the FAC.  Indeed, the word "author" nowhere appears in the FAC.  In the Opposition, the SEC has mutated its FAC allegations of "driving," "finalizing," and "coordinating edits" (¶ 40) into "authoring" KLA's public filings, and has transformed alleged "controlling" and "managing the drafting and preparation" of Juniper's Form 10-Ks (¶¶ 67 & 70) into making Ms. Berry the "primary author" of those filings.  Opp. at 5 & 7.  The SEC must twist its allegations in this fashion, because the Court has already deemed insufficient its allegations along the lines of "driving," "finalizing," "coordinating," and "controlling."  This approach is plainly insufficient under Fed. R. Civ. P. 8 and 9(b) and under controlling Supreme Court and Ninth Circuit law.  The SEC's unwarranted embellishments to the FAC's actual allegations make clear that the SEC has not successfully pled that Ms. Berry substantially participated in the creation of public statements made by others at the companies.

The SEC also fails to meet the particularity requirements of Rule 9(b) by failing to allege with particularity and with supporting facts (i) which portions of those statements it contends were

1  false; (ii) why a challenged statement was false when made; or (iii) what Ms. Berry's role was in

2  drafting or preparing those portions of the public filings that the SEC alleges were false and

3  misleading.  *See, e.g., In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1102 (N.D. Cal. 2006); *In re*

4  *Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1075 (N.D. Cal. 2003).  Thus, even assuming

5  *arguendo* it had properly alleged with particularity that Ms. Berry had intricate involvement in the

6  public filings that others signed, it nevertheless fails to come to grips with its own statement of the

7  law, namely, that "a person who prepares a truthful and complete portion of a document would not

8  be liable as a primary violator for misrepresentations in other portions of the document."  Brief of

9  the Securities and Exchange Commission as Amicus Curiae, *Klein v. Boyd*, No. 97-1143, at * 9 (3d

10 Cir. Feb. 12, 1998).[1]

11        As to "scheme liability," the SEC does not even address the merits of Ms. Berry's motion,

12 instead asserting that Ms. Berry should have raised the issue on a motion for reconsideration rather

13 than on a motion to dismiss.  This technical objection is without merit, and the SEC's failure to

14 take on Ms. Berry's showing on the merits makes clear that the SEC has not alleged a proper

15 scheme liability claim.  Likewise, the SEC makes no real effort to explain why it should be

16 excused from the five-year statute of repose at 28 U.S.C. § 2462 when it took no steps to discover

17 the alleged wrongdoing *before* the companies announced their respective internal investigations (as

18 it effectively admits in its Opposition) and when it has pled no facts suggesting that Ms. Berry

19 knowingly and fraudulently concealed anything from anyone.

20 **II.    ARGUMENT**

21        **A.    The SEC Fails to Adequately Plead Ms. Berry's Participation in Preparing
22             Or Making Any Alleged Misstatement by KLA**

23        In its Opposition, the SEC seeks to spin a tale regarding Ms. Berry's purported

24 involvement in granting options and preparing public filings at KLA that takes great liberties with

25 its own FAC, defies the plausibility limitation set out in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

26 1955, 1965 (2007), and is short on specifics.  The SEC's strained theory is as follows:  because

27 ───────────────
[1] Request for Judicial Notice in Support of Lisa C. Berry's Motion to Dismiss First Amended
28 Complaint, Ex. K.

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
C 07 4431 RMW HRL

1   Ms. Berry supposedly "oversaw the administration of the stock option grant process" (Opp. at 4),

2   and "owned the process for granting stock options leading up to the preparation of financial

3   statements," she therefore was "an author" of the representations and omissions included in each of

4   the public filings." Opp. at 8 (emphasis supplied). The SEC goes on to posit that Ms. Berry was

5   also to blame for the alleged fact that KLA's outside auditor and the Audit Committee of its board

6   of directors, were unaware of the stock options process at the Company. *Id*. at 8-9.

7       The story the SEC tries to tell in its Opposition reaches far beyond what it actually alleges

8   in the FAC, and is inconsistent with its other allegations as to the extensive involvement of others

9   at KLA (including the Stock Option Committee, of which Ms. Berry was not even a member) in

10  the options granting process. ¶¶ 24 & 25. Although the FAC contains bald assertions that Ms.

11  Berry was the "driving force" and "final decision maker" in "finalizing" and "coordinat[ing] edits"

12  to KLA's public filings (¶ 40) – allegations substantially identical to the ones the Court has already

13  rejected (Order at 15) – the SEC never alleges in the FAC, much less with the required

14  "particularity" (*id*.), that she personally drafted any portion of those filings, or what role, if any,

15  she had in the drafting process. Thus, the SEC's effort to transform its conclusory FAC allegations

16  that Ms. Berry "finalized" or "coordinated edits" to KLA's public filings into allegations that she

17  "authored" those documents is wholly unwarranted and unsupported in law or fact. Opp. at 7 & 8.

18      The SEC has only identified two KLA public filings allegedly containing "material

19  misrepresentations" that it claims Ms. Berry "authored": the September 28, 1998 proxy statement

20  and the October 15, 1999 proxy statement (for which it seeks judicial notice). *See* Opp. at 16;

21  SEC's Request For Judicial Notice (In Support Of Opposition To Motion to Dismiss The First

22  Amended Complaint) ("SEC RJN"), Ex. 2. The SEC provides no explanation as to how Ms. Berry

23  "authored" the September 1998 proxy statement or what was false about it. According to the SEC,

24  the October 1999 proxy statement was false because it stated that "[s]tock options are granted at

25  market price on the date of grant," while Ms. Berry supposedly "backdated a 'peak performance'

26  grant to officers and executives." Opp. at 16 (citing ¶ 28). It is beyond dispute that Ms. Berry did

27  not author the October 1999 proxy statement. As the SEC itself alleges, Ms. Berry was not even

28  employed by KLA in October 1999 and had not been for several months – facts that Ms. Berry

1    pointed out in her MTD but about which the SEC is silent.[2]  *See* MTD at 10; ¶ 11.  As for the other

2    KLA public filings that the SEC alleges Ms. Berry was involved in "finalizing," "coordinat[ing]"

3    and "organiz[ing]" (¶ 40), the SEC is unable to point to any specific allegations in the FAC

4    suggesting that Ms. Berry was involved in preparing *any* portion concerning KLA's accounting for

5    stock option grants.

6         Mindful of its inability to plead facts to support a reasonable inference that Ms. Berry was

7    substantially involved in preparing material misstatements, the SEC imports a 25-year-old out-of-

8    Circuit decision, *SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982), in an attempt to employ a

9    standard for primary statement liability that is more lenient than the well-settled Ninth Circuit

10   standard set forth in *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 & n.5 (9th Cir. 2000), and

11   this Court's decision applying *Everex*, *In re ESS Tech., Inc. Sec. Litig.*, 2004 WL 3030058, at *12

12   (N.D. Cal. Dec. 1, 2004).  By doing so, the SEC effectively concedes that it has not made

13   allegations to meet the *Everex* standard.  *Holschuh* bases primary liability under § 10(b) on a

14   material misstatement that is "directly traceable" to the defendant's direct statement to a company

15   outsider – a standard that has never been applied in a Ninth Circuit decision.  694 F.2d 130.  In any

16   event, *Holschuh* is distinguishable from this case.  *Holschuh* found that there was sufficient

17   evidence after trial to conclude that a corporation president had provided the precise false

18   information that was included by the corporation's broker in a misleading offering circular and

19   thus could be held primarily liable for false statements made by another.  *Id*. at 134.  There are no

20   allegations in the FAC, much less proof adduced at trial, as in *Holschuh*, that Ms. Berry had direct

21   communications with a broker or anyone other company outsider who sold KLA securities to

22   investors.[3]

23

24   _____

     [2] Though the FAC does not allege who authored this proxy statement, the exhibit attached to the
     SEC RJN shows that KLA's outside counsel signed the notice of meeting.

25   [3] The other cases cited by the SEC in support of its effort to secure a relaxed pleading standard are
     similarly inapplicable.  *Cooper v. Pickett*, 137 F.3d 616, 623-24 (9th Cir. 1998); *SEC v. Trabulse*,
26   526 F. Supp. 2d 1001, 1007 (N.D. Cal. 2007); and *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959-60
     (9th Cir. 1996), all involve defendants who provided false information to third parties with the
27   express intention that the information be communicated to the investing public.  The SEC has not
     made any such allegations against Ms. Berry.

28

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
                                                    C 07 4431 RMW HRL

1      Finally, the SEC asserts that Ms. Berry's argument in the MTD that the FAC's allegations

2  regarding the two Forms S-8 (the only statements she signed at KLA) were not sufficiently

3  particularized (*see* MTD at 11-12) overlooks its allegation that "on approximately ten [*unspecified*]

4  occasions for grants backdated to July 31, 1997 through grants backdated to June 15, 1999, Berry

5  and others used hindsight to choose option exercise prices." It is not: First, the SEC fails to "link

6  up" any of the ten unspecified grants to a time period covered by any of the financial statements

7  incorporated by reference in the two identified Form S-8s. Moreover, the SEC does not allege any

8  specific facts to support its conclusory assertion that the incorporated financial statements were

9  false when made. *In re Calpine*, 288 F. Supp. 2d at 1075 ("a plaintiff must provide an explanation

10  as to how an alleged statement or omission was false or misleading when made"). Absent this

11  critical information, it has failed to allege in accordance with Rules 8 and 9(b) that the S-8s were

12  fraudulently and materially misstated.

13      **B.      The SEC Fails to Adequately Plead Ms. Berry's Participation in Preparing
14               Or Making Any Alleged Misstatement by Juniper**

15      The SEC's largely rhetorical discussion about Ms. Berry's supposed participation in

16  Juniper's alleged misstatements diverts attention to her alleged role in the stock option granting

17  and administration processes rather than point to particularized facts in the FAC indicating that she

18  knowingly "substantially participated" in the preparation of fraudulent financial statements. Opp.

19  at 5. Perhaps this is because, as the Court pointed out in its Order on the earlier motion to dismiss,

20  "the SEC does not allege any specific circumstances demonstrating Ms. Berry's knowledge

21  regarding the backdating at Juniper." Order at 8. As with its KLA allegations, the SEC asks the

22  Court to conclude that because her alleged role in the stock option administration process was

23  significant and because she supposedly was involved generally in shepherding the company's

24  public filings, it has met its obligation to plead particularized facts that she "substantially

25  participated" in the preparation of those portions of the financial statements relating to stock

26  options and the company's compensation expenses. Such a leap is unsupported and unjustified.

27      Despite the SEC's frantic efforts to recast Ms. Berry as an "author," involvement in stock

28  option granting and administration is not the same thing as drafting detailed accounting statements

- 5 -

1    and disclosures.  The SEC does not even attempt to address the FAC's primary pleading

2    deficiency:  it does not allege that Ms. Berry was involved in any way in *drafting* any of the

3    portions of the filings that disclosed information about the granting of stock options.  Instead, the

4    SEC contends that the Chief Financial Officer ("CFO") and the SEC reporting manager, who *were*

5    presumably involved in drafting public filings, "counted on her and looked to her" to identify and

6    correct inaccuracies in Juniper's stock option-related disclosures.  Opp. at 13.  In other words, the

7    SEC's theory boils down to an allegation that, because Juniper's CFO and other corporate

8    accounting officers allegedly abdicated *their* responsibilities for preparing and ensuring the

9    accuracy of those filings, Ms. Berry somehow bears sole responsibility for any alleged financial

10   misstatements that relate to stock options.  In any event, the SEC's contention, bereft of any

11   citation to the FAC, that "to the management at Juniper, Berry was *the author* of those false

12   disclosures" (*id.* (SEC's emphasis)), is no substitute for particularized factual allegations that Ms.

13   Berry actually signed or was intricately involved in the preparation of false public statements.

14            As with KLA, the SEC relies almost exclusively on allegations this Court has already held

15   to be insufficient and mischaracterizes the FAC.  Though the SEC asserts in conclusory fashion

16   that the FAC demonstrates that Ms. Berry "substantially participated in, and was intricately

17   involved in, the making of misrepresentations about the stock option program and about the

18   expenses incurred by the company in granting stock options in each of the annual and quarterly

19   reports filed on Forms 10-K and 10-Q from 1999 through the second fiscal quarter of 2003" (Opp.

20   at 15), the FAC alleges no such thing; in truth, the FAC never specifically alleges either that Ms.

21   Berry drafted any portion of the filings that indicated Juniper had taken the required compensation

22   expenses or that the CFO, corporate controller or any other accounting executive at Juniper ever

23   obtained her participation in drafting those portions of the public filings.  *See* ¶ 67.  As noted in the

24   MTD (and as the SEC fails to address), the FAC also fails to provide any specific and

25   particularized facts to support its conclusory allegations that Ms. Berry was "responsible for,

26

27

28

1   controlled and managed the drafting and preparation of" the Forms 10-K and 10-Q.  MTD at 10.[4]

2   Though it repeatedly invokes this phrase in mantra-like fashion to describe Ms. Berry's purported

3   role in preparing an undifferentiated list of Juniper's public filings, the SEC does not indicate,

4   much less plead specific facts as to, *how* Ms. Berry was involved in "control[ing]" and

5   "manag[ing]" the drafting or preparation of these filings, which employees or officers were

6   actually doing the drafting, or the specific portions of the SEC filings that contained the false

7   statements and how those statements were false – that is, whether there were grants that were

8   allegedly "backdated" during any period that Ms. Berry knew about and that rose to the level of

9   materiality that triggers a disclosure obligation.  *See, e.g., Siemers v. Wells Fargo & Co.*, 2007 WL

10  760750 (N.D. Cal. Mar. 9, 2007).  The similarly conclusory assertions about Ms. Berry's alleged

11  "intricate involve[ment]" in the preparation of Forms 8-K and registration statements filed on

12  Forms S-8 are deficient for the same reasons.  Opp. at 15.

13          According to the SEC, the FAC also alleges that Ms. "Berry took additional steps to disrupt

14  the disclosure process to make sure that others, including board members and Juniper's

15  shareholders, would not realize the options were in-the-money when granted" and that she "misled

16  the board members so that they, in turn, would misrepresent executive compensation to Juniper's

17  shareholders."  Opp. at 14.  Not surprisingly, the SEC does not cite to any portion of the FAC that

18  supports these assertions.  Nor does the SEC identify any allegation in the FAC that suggests that

19  Ms. Berry knowingly withheld from anyone at Juniper any material information that resulted in a

20  financial misstatement.  Indeed, nowhere does the FAC allege, as does the SEC's Opposition, that

21  Ms. Berry intentionally misled management, the Board, Juniper's shareholders or anyone else.

22  Even if such assertions were in the FAC, the SEC's theory depends on an unreasonable inference –

23  that Juniper's entire corporate finance staff, including the CFO, ceded responsibility for ensuring

24

25  ───────────────
    [4] The SEC further mischaracterizes the FAC by asserting that Ms. Berry reviewed the filings "for
    the purpose of correcting inaccuracies in representations about options."  Opp. at 13; ¶ 67.
26  Nowhere does the FAC allege that Ms. Berry was actually made responsible for "correcting
    inaccuracies in representations about options" or that she knew that the members of the corporate
27  finance department responsible for the Company's public filings would not be reviewing the
    financial and accounting disclosures contained in those filings.
28

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
                                        C 07 4431 RMW HRL

1   the accuracy of financial statements to the general counsel.

2          The SEC further deviates from the FAC and from the applicable Ninth Circuit standard

3   when it contends that Ms. Berry can be primarily liable for Juniper's Form 10-K filings because

4   she "had the power to sign on behalf of each of the signing officers (the CEO, and the CFO), as

5   well as each of the directors."  Opp. at 18, n.7.  The SEC acknowledges that the Juniper Forms 10-

6   K do not bear Ms. Berry's signature and provides no authority for the proposition that she could be

7   held primarily liable because she held a power-of-attorney for others, when it has not plead that she

8   exercised that power.

9          The SEC's reliance on *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 628 n.3

10  (9th Cir. 1994), for the proposition that it has met its pleading obligations is misplaced.  In *In re*

11  *Software Toolworks*, the Court considered on summary judgment evidence demonstrating that a

12  company's outside auditors "played a significant role in drafting" a letter to the SEC containing

13  purported misstatements; the letter specifically referred the SEC to the auditors for further

14  information.  *Id.*  Unlike in that case, there is no evidence before the Court – or any allegation in

15  the FAC – that Ms. Berry drafted or played a significant role in drafting any portion of any of the

16  purportedly misstated financial statements or public filings, much less the portions that allegedly

17  contained any misstatements.  Nor was there any similarly explicit indication to investors,

18  company outsiders or readers of such statements that Ms. Berry was at all involved in their

19  preparation.[5]

20         The SEC attempts to justify its legally insufficient allegations regarding Ms. Berry's

21  participation in preparation of public filings with the excuse that it could not ascertain Ms. Berry's

22  role in preparing the purportedly false financial statements because Ms. Berry declined to be

23  interviewed by the SEC.  Opp. at 6, 12, n.3 & 18 n.6.  Of course, this Court has already explained

24

25  [5] The SEC cites two other summary judgment opinions in support of its contention that its
    allegations regarding Ms. Berry's role in the preparation of Juniper's misstatements are sufficient.
26  These opinions, however, are consistent with those Ms. Berry cited in the MTD, as they both
    emphasize that participation in the "creation" of such misstatements must be "direct" and
27  "extensive."  *In re ZZZZ Best Sec. Litig.*, 864 F. Supp. 960, 970 (C.D. Cal. 1994); *In re Union*
    *Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 676 F. Supp. 458, 468-69 (S.D.N.Y. 1987).

28

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
                                                                                                C 07 4431 RMW HRL

1  that the "SEC presumably knows what Ms. Berry's role [in allegedly preparing or "finalizing" the

2  companies' SEC filings] was as it has already obtained significant document discovery from Ms.

3  Berry's former employers."  Order at 15.[6]  The SEC has also received voluminous witness

4  interview memoranda from KLA's internal investigation.  The SEC's suggestion that Rule 9(b)'s

5  strict pleading requirements "may" be relaxed where "matters are within the opposing party's

6  knowledge" (Opp. at 12, n.3) fails in light of the extensive pre-filing discovery it received from

7  both companies.  *See In re Silicon Graphics, Inc. Sec. Litig.*, 70 F. Supp. 746, 752 (N.D. Cal.

8  1997), *aff'd*, 183 F.3d 970 (9th Cir. 1999) ("[T]he requirements of Rule 9(b) may be 'relaxed as to

9  matters peculiarly within the opposing party's knowledge,' *if the plaintiffs cannot be expected to

10  have personal knowledge of the facts prior to discovery*.") (emphasis supplied; quoting *Wool v.

11  Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)).[7]  In any event, information as to

12  Ms. Berry's alleged role in the preparation of the companies' public filings is not peculiarly within

13  her knowledge, but could easily have been ascertained (if any such role existed) from the

14  numerous documents and witness interview memoranda the SEC received, plus whatever

15  investigative testimony it chose to take.[8]

16       As for the Juniper statements that Ms. Berry is alleged to have signed, the Opposition offers

17  no additional facts or law as to the purported falsity of any of the filings.  MTD at 12.  The SEC

18  concedes that Ms. Berry signed only the meeting notices appended to the purportedly false proxy

---

[6] It bears emphasis that the mere invocation of the Fifth Amendment is not a fact or evidence supporting an inference that Ms. Berry acted wrongfully.  *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (*per curiam*) (one of the Fifth Amendment's basic functions is to protect innocent individuals who otherwise might be ensnared by ambiguous circumstances).

[7] The cases the SEC cites at p. 12, n.3 of its Opposition are not to the contrary.  *Wool*, 818 F.2d 1433; *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989).  Both cases held only that, where knowledge is held by the opposing party, it is permissible under Rule 9(b) to plead "on information and belief"; the SEC here has not pled on information and belief.  Moreover, these cases did not relax Rule 9(b)'s requirement to plead facts with particularity; indeed, *Wool* expressly stated that the plaintiff is still required to plead facts.  818 F.2d at 1439.  And, in *Moore*, the Ninth Circuit actually affirmed dismissal of the complaint because plaintiff had not pled the requisite facts with particularity.  *Moore*, 885 F.2d 531 at 540.

[8] Unlike the defendant in *Trabulse* (*see* Opp. at 18, n.6), Ms. Berry was not the sole repository of information regarding the stock option process at either company.  526 F. Supp. 2d 1001 (N.D. Cal. 2007).

1   statements – not the statements themselves.  It fails to cite any legal authority for the proposition

2   that a signer of such a non-substantive statement may be held liable for a purported

3   misrepresentation in the attached proxy.  With respect to the legal opinions attached to the S-8s,

4   the SEC does not even attempt to allege, much less with specificity, that any portions of the

5   opinions were false when made.

6           **C.      The SEC Fails To Allege Scheme Liability**

7           The SEC all but ignores the merits of Ms. Berry's showing that it has failed to plead a

8   "scheme liability" claim.  Instead, it seeks to avoid all consideration of the issue by contending that

9   Ms. Berry should have raised it in a separate motion for reconsideration of the Court's Order on

10  the original complaint, rather than in a motion to dismiss.  This technical argument is misplaced,

11  and the SEC's failure to address the scheme liability issue on the merits exposes the absence of any

12  valid scheme liability claim in this case.

13          Ms. Berry raised the scheme liability issue on this motion to dismiss in light of the

14  additional scheme liability allegations that the SEC made in the FAC.  *See, e.g.,* ¶¶ 24, 27, 44, 45

15  & 52.  The FAC is a new operative complaint with new allegations, and Ms. Berry is simply

16  asserting her non-waivable Rule 12(b)(6) defenses[9] to claims that the Court should consider under

17  very recent, binding Supreme Court precedent that was not available when Ms. Berry filed her

18  original motion.  In any event, under Northern District Local Rule 7-9, there is no time limit for

19  seeking leave to file a motion for reconsideration regarding an interlocutory order, so the SEC's

20  objection that Ms. Berry should have raised the scheme liability issue in a motion for

21  reconsideration instead of a motion to dismiss is in any event elevation of form over substance.

22  The Court should have the opportunity to address this important issue in light of the Supreme

23  Court's seminal decision in *Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.*, 128 S.

24  Ct. 761 (2008), and post-*Stoneridge* opinions.  As Ms. Berry demonstrated in her MTD (at 13-18)

25  _____

26  [9] *See Cargill, Inc. v. Budine*, 2007 WL 4207908, at *6 (E.D. Cal. Nov. 27, 2007) (Rule 12(b)(6) "is not a waivable 12(b) motion"); *In re Harmonic, Inc. Sec. Litig.*, 2006 WL 3591148, at *12 (N.D. Cal. Dec. 11, 2006) ("[D]efenses for failure to state a claim may be presented at any time up to and including trial, and under [Fed. R. Civ. P.] 12(g), a party does not waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss.").

27

28

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
                                           C 07 4431 RMW HRL

1   – a demonstration that the SEC barely acknowledges, much less refutes – *Stoneridge* and its

2   progeny compel dismissal of the SEC's scheme liability claim.

3       **D.    The SEC Fails To Allege That Ms. Berry Aided And Abetted The Filing Of
         Purportedly False Proxy Statements**

4

5       Though the SEC recognizes that this Court found that the SEC had not adequately alleged,

6   with the required particularity, a predicate violation for aiding and abetting because it had not

7   alleged how the KLA proxy statements were false and misleading (i.e. how the "discussion

8   regarding executive compensation" in the proxy statements was misleading) (Order at 16), the SEC

9   does not point to any new allegations that remedy this deficiency.  Instead, it relies on vague,

10  conclusory allegations that Ms. Berry assisted in pricing "certain" unspecified officer and

11  executive grants.  Opp. at 20.  Unable to identify even one such grant that she participated in

12  making, much less accounting for, the SEC again misstates its own FAC allegations.  The

13  Opposition suggests that the FAC "describes precisely how Berry made a particular, backdated

14  grant to officers and executives" (*id.*), but the paragraphs to which the SEC cites (¶¶28-29) make

15  no mention at all of her participation in or knowledge of the grants "KLA awarded … to

16  employees bearing a purported grant date of August 31, 1998."  ¶ 28.

17      Nor do the SEC's allegations in the FAC about the Juniper proxy statements provide any

18  of the required particularity about Ms. Berry's role in preparing or making false statements

19  regarding executive compensation.  The SEC alleges in conclusory fashion that Ms. "Berry did in

20  some instances price grants to such executives with the benefit of hindsight" ( ¶ 52), but aside from

21  a vague allegation about her role in creating Stock Option Committee minutes for a grant

22  backdated to October 4, 1999 (¶ 61) it never specifically links this grant to the 2000 proxy

23  statement or alleges, with particularity, that she was involved in "backdating" options to executives

24  during the period covered by any of the other three proxy statements she is alleged to have signed.

25  *In re Calpine*, 288 F. Supp. 2d at 1075.

26      **E.    The SEC Concedes That It Did Not Act Diligently Before Juniper and KLA
         Announced Their Respective Investigations Into Stock Option Accounting**

27

28      The Court's May 7 Order instructed that, to avoid the 28 U.S.C. § 2462 statute of repose,

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
C 07 4431 RMW HRL

1  the SEC must allege that it "acted with due diligence *before* it discovered Ms. Berry's alleged

2  backdating." Order at 11 (emphasis supplied). Here, far from pleading any facts that would show

3  due diligence, the SEC has effectively admitted that it took *no* action before KLA and Juniper

4  announced their respective internal investigations. Opp. at 21-23.[10] The SEC attempts to divert

5  attention from this fact by pointing to steps it took *after* KLA and Juniper announced stock option

6  investigations in mid-2006 and by saying that it is not charged with "investigat[ing] all public

7  companies, at all times, for a host of potential violations." Opp. at 22, n.11.[11] This assertion is a

8  red herring, at odds with the facts and its own public pronouncements.

9       The SEC claims that "the extent and cause of the inaccuracy in KLA's filings could only be

10  uncovered with intensive inquiry." ¶¶ 45 (KLA), 76 (Juniper). However, equitable tolling does

11  not postpone application of the relevant statute of limitations until "the existence of the claim is a

12  virtual certainty." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Rather, it

13  requires a plaintiff to take steps to uncover the "operative facts that are the basis of the action

14  within the limitations period." *FEC v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996).

15       The SEC asserts that, "[a]s a matter of law, and practicality, it is not the Commission's

16  place to second-guess the representations in publicly-filed statements of public companies, absent

17  evidence suggesting the unreliability of those statements." Opp. at 22. But, public statements by

18  the agency's highest officials indicate that the agency had such evidence long before 2006. In

19  September 2006, the SEC's Chairman testified before Congress that "[t]he SEC has been after the

20

21  ─────────────
   [10] Given the SEC's extensive investigative powers and the absence of any allegation that the SEC
22  even attempted to exercise those powers during the repose period, there is no justification for
   extending the statute beyond the already generous five years. *See SEC v. Fisher*, 2008 WL
23  2062699, at *4 (N.D. Ill. May 13, 2008) ("unlike a private securities plaintiff, the SEC possesses
   subpoena power even before it files a lawsuit … This advantage at least partially undermines the
24  policy justification for delaying the start of the limitations clock.")

   [11] The SEC's refusal to point to any facts justifying its delay underscores the reason that the courts
25  apply the equitable tolling doctrine sparingly and are even more judicious in applying such
   exceptions to statutes of repose. *See, e.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v.*
26  *Gilbertson*, 501 U.S. 350 (1991) (expressly rejecting application of equitable tolling principles to
   3-year statute of repose for § 10(b) claim, noting that the purpose of the statute of repose "is
27  clearly to serve as a cutoff"); *Durning v. Citibank, Intern.*, 990 F.2d 1133, 1136-37 (9th Cir. 1993);
   *Lehman v. U.S.*, 154 F.3d 1010, 1016 (9th Cir. 1998).

28

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
                                                          C 07 4431 RMW HRL

1    problem of abusive options backdating for several years."[12]  According to Chairman Cox, a few

2    years earlier the SEC had begun "working with academics to decipher market data that provided

3    the first clues something fishy was going on."[13]  A few weeks later, the SEC's Director of

4    Enforcement claimed in a speech that the SEC had "identified stock options grants as a potential

5    trouble spot several years ago – well ahead of the curve."[14]  Given the red flags raised by the

6    discovery of similar conduct at other companies in the 2003-2004 period (*see* MTD at 24), and the

7    SEC's public statements that it was well aware of these red flags and was diligently investigating

8    stock option backdating during that period, if not earlier, the SEC's failure to allege a single fact

9    supporting its claims of diligence here is fatal to its reliance on the doctrine of equitable tolling.[15]

10          The SEC's suggestion that Ms. Berry actively concealed the alleged conduct does not

11   excuse the SEC from pleading and ultimately proving its own due diligence.  As the Court held,

12   the question whether "Ms. Berry's conduct resulted in concealment of the operative facts" is a

13   different element of equitable tolling from the question whether the "SEC acted with due diligence

14   before it discovered Ms. Berry's alleged backdating."  Order at 11.  In any event, the SEC has not

15   successfully pled that Ms. Berry's conduct resulted in concealment of the operative facts.  The

16   SEC is required to allege "active conduct by a defendant, *above and beyond the wrongdoing upon*

17   *which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time."  *Santa Maria*, 202

18   F.3d at 1177 (emphasis supplied).  The SEC points to no such conduct by Ms. Berry to hide

19

20   _____

21   [12] Testimony of Chairman Christopher Cox (Sept. 6, 2006), available at
     http://www.sec.gov/news/testimony/2006/ts090606cc.htm.

22   [13] One of the academics with whom the SEC worked, according to Chairman Cox, was Erik Lie of
     the University of Iowa, "who subsequently published a paper in 2005 that showed compelling
23   circumstantial evidence of backdating."  September 6, 2006 Testimony of Chairman Cox.

24   [14] Speech by Linda C. Thomsen (Oct. 30, 2006), available at
     http://www.sec.gov/news/speech/2006/spch103006lct.htm.

25   [15] The SEC's objection to Exhibits K-Q to Ms. Berry's RJN, which were submitted to show the
     existence of prior SEC statements inconsistent with certain allegations in the FAC, is not well-
26   founded.  These documents are all publicly available on the SEC's website and each calls into
     question the SEC's invocation of equity to toll the statute of repose in this context.  *Corrie v.*
27   *Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (taking judicial notice of government
     publication).

28

LISA C. BERRY'S REPLY ISO MOTION TO DISMISS FAC
                                           C 07 4431 RMW HRL

1  anything from anyone during the statute of repose period.[16]  Instead, it asks the Court to accept its

2  conclusory assertion that Ms. Berry engaged in "self-concealing" conduct.  Opp. at 23.  However,

3  neither Rule 9 nor Rule 8 requires the Court to suspend the rules of logic or ignore allegations in

4  the FAC that wholly contradict the "self-concealing" assertions.  The SEC continues to argue that

5  Ms. Berry concealed stock option practices from executives and others at KLA and Juniper,

6  despite its repeated, extensive allegations that Ms. Berry "and *others* at the respective companies

7  caused KLA, and then Juniper, to issue to executives and employees valuable in-the-money

8  options without disclosing them" (¶ 4) (emphasis supplied) and that these same executives

9  participated in the Stock Option Committee and signed minutes of meetings that allegedly never

10  occurred.  ¶¶ 24, 25, 44, 45, 52, 55, 75 & 76.  As *Twombly* makes clear, 127 S. Ct. at 1965, even

11  under the Rule 8 pleading standard, which is less stringent than the requirement of Rule 9(b) that is

12  applicable here, the SEC's facially implausible allegations regarding Ms. Berry's supposed

13  concealment of backdating from others at KLA and Juniper are insufficient to allege fraudulent

14  concealment that justifies tolling the statute.[17]

15  **III.    CONCLUSION**

16      Even after having had the benefit of extensive pre-filing discovery, resulting in a well-

17  developed record from wide-ranging internal investigations conducted by the companies and its

18  own investigatory efforts, the SEC is unable, despite being given leave to amend, to plead with the

19  requisite particularity facts that, if proven, would show that Ms. Berry made or was intricately

20  involved in the making of a material misstatement or that she can be held liable under a theory of

21  "scheme liability."  Further, despite being instructed on what it needed to allege, the SEC has not

22  _____

23  [16] Unable to allege that Ms. Berry concealed anything from others at the companies, the SEC repeatedly notes Ms. Berry's decision not to be interviewed as evidence of fraudulent concealment

24  and to excuse its lack of diligence.  Opp. at 27 & 28.  But, that decision obviously occurred *after* the SEC commenced its own investigation, and thus cannot excuse the SEC's failure to exercise

25  due diligence before it discovered the alleged backdating.

26  [17] Similarly, the alleged failure to inform outside auditors does not render any action alleged to be taken by Ms. Berry "self-concealing," particularly in the absence of any allegations that Ms. Berry

27  had a duty to disclose to the auditors.  Notably, neither in its original nor in its amended complaint has the SEC charged Ms. Berry with making any false or misleading statement or omission to

28  auditors under SEC Rule 13b2-2.

satisfactorily pled its entitlement to equitable tolling of the statute of repose set forth at 28 U.S.C. § 2462.  Accordingly, for the foregoing reasons, Ms. Berry respectfully requests the Court grant her motion to dismiss with prejudice.

Dated: August 1, 2008

MELINDA HAAG
JAMES A. MEYERS
JAMES N. KRAMER
NANCY E. HARRIS
Orrick, Herrington & Sutcliffe LLP


                                   /s/ Melinda Haag
                                   MELINDA HAAG
                              Attorneys for Defendant
                                   Lisa C. Berry