JAMES N. KRAMER (STATE BAR NO. 154709)
jkramer@orrick.com
JAMES A. MEYERS (ADMITTED *PRO HAC VICE*)
jmeyers@orrick.com
NANCY E. HARRIS (STATE BAR NO. 197042)
nharris@orrick.com
REBECCA F. LUBENS (STATE BAR NO. 240683)
rlubens@orrick.com
STEVEN A. HONG (STATE BAR NO. 252866)
shong@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   415-773-5700
Facsimile:    415-773-5759

Attorneys for Defendant
Lisa C. Berry

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        v.<br><br>LISA C. BERRY,<br><br>                    Defendant. | Case No.  5:07-cv-4431 RMW (HRL)<br><br>**DEFENDANT LISA BERRY'S NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES**<br><br>Date:       April 5, 2011<br>Time:      10:00 a.m.<br>Judge:     Honorable Howard R. Lloyd |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 5, 2011 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Howard R. Lloyd, United States District Court, 280 South First Street, San Jose, California 95113, Defendant Lisa C. Berry will and hereby does move the Court for an order, pursuant to Federal Rules of Civil Procedure 33 and 37, compelling Plaintiff Securities and Exchange Commission ("SEC") to provide further responses to Ms. Berry's First Set of Interrogatories.  This motion follows the parties' numerous meet and confer efforts regarding further interrogatory responses and is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Steven Hong and attached exhibits, the Separate Statement in Compliance with Civil Local Rule 37-2, oral argument of counsel, and any other information that may be submitted at the hearing.

Ms. Berry requests that the Court order the SEC to provide detailed substantive responses to Ms. Berry's Interrogatory Request Nos. 2, 4, and 6, including the identification of 1) the specific language it contends was false or misleading for each statement on which it seeks to base Ms. Berry's liability under Section 10(b) of the Securities Exchange Act of 1934 ("§ 10(b)") and 2) all facts and documents on which the SEC bases its assertion that, as to any statement she did not sign that the SEC alleges violated § 10(b), Ms. Berry substantially participated in making that statement.

## I. INTRODUCTION

The SEC has charged Ms. Berry with committing securities fraud by making, or substantially participating in preparing, false and misleading statements in violation of § 10(b). To defend against the charges, Ms. Berry asked the SEC to identify 1) the specific language in each SEC filing it believes was false or misleading and 2) what evidence it asserts establishes that Ms. Berry made or substantially participated in making each of the statements.  More than three years after filing this lawsuit and on the proverbial eve of the discovery cutoff, the deadline to bring dispositive motions, and the trial itself, the SEC refuses to provide these basic facts underlying its allegations.

In an effort to avoid filing this motion, Ms. Berry engaged in numerous meet and confer

1    sessions with the SEC, and attempted to reach a compromise by cataloging all the allegedly false
2    or misleading public statements that she could glean from the Second Amended Complaint
3    ("Complaint") and asking the Commission to confirm or supplement the list.  The SEC, however,
4    did neither, objecting that a response would require answering an "infinite number of questions."

5        Ms. Berry has consistently maintained that she did not make or substantially participate in
6    preparing false or misleading public statements, while the SEC contends she was a "driving
7    force" in preparing false and misleading public filings.  The SEC's persistent refusal to specify
8    the particular statements it believes were false or misleading in the SEC filings it has identified
9    and its assertion that doing so would somehow require answering an "infinite number of
10   questions" thus force Ms. Berry to defend against an apparent "infinite number" of unspecified
11   statements with potentially infinite theories of her participation.  This is both impossible and
12   unfair.  So, too, is the SEC's refusal to specify how it believes Ms. Berry substantially
13   participated in the making of the alleged misstatements.  As Judge Whyte observed in granting
14   this part of Ms. Berry's motion to dismiss the SEC's original complaint, "The SEC presumably
15   knows what Ms. Berry's role was as it has already obtained significant document discovery from
16   Ms. Berry's former employers."  Declaration of Steven Hong in Support of Motion to Compel
17   ("Hong Decl."), Ex. A at 15.  This is even more true now that fact discovery is nearly complete in
18   this case.  In order for Ms. Berry, the Court, or a jury to evaluate the SEC's fraud allegations, the
19   SEC must identify the specific language in each SEC filing or other public statement that it
20   contends was false or misleading as well as all the evidence on which it bases its allegation that
21   Ms. Berry substantially participated in preparing that language.

22       Not only will complete, particularized responses assist Ms. Berry in her defense, they will
23   also assist Judge Whyte in evaluating what issues warrant a trial.  Having already questioned the
24   existence of facts supporting the SEC's allegations, Judge Whyte recognized that some issues
25   may be appropriately resolved at summary judgment if the SEC is unable to support its claims
26   with evidence.  The information sought by Ms. Berry in this motion is crucial to this Court's
27   determination as to whether a triable issue exists regarding a key element of the SEC's fraud
28   claim.

## II. FACTUAL BACKGROUND

### A. The SEC's Allegations

The SEC filed this action over three years ago on August 28, 2007, alleging that Ms. Berry committed various securities law violations from 1997 to 2003, including primary violations of § 10(b). The SEC alleges Ms. Berry violated § 10(b) by making or substantially participating in the making of numerous false and misleading statements regarding stock option practices and the related accounting as General Counsel at KLA-Tencor Corporation and Juniper Networks, Inc.

As Judge Whyte has held, Ms. Berry may be subject to primary liability under § 10(b) only if she either signed a document containing a false statement or was substantially or intricately involved in preparing a false statement. Hong Decl., Ex A at 14-15 (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000)). Accordingly, the SEC has no claim unless it first identifies specific false statements. Identifying all the specific allegedly false language is critical to inform Ms. Berry of the charges against her and enable her, the Court, and a jury to evaluate the veracity of the statements in the context in which they were made.

The majority of the SEC's § 10(b) case—and Ms. Berry's defense—will depend on the evidence, if any, demonstrating Ms. Berry's involvement in preparing the specific language underlying the § 10(b) claims. The Complaint references 41 public filings that allegedly contain false and misleading language. The SEC alleges, however, that Ms. Berry signed only 12 of the filings.[1] *See* Hong Decl., Ex. B ¶¶ 16, 41, 54, 55, 74, 75, 81. The SEC's theory of primary liability for the remaining 29 filings is that Ms. Berry substantially participated or was intricately involved in preparing the allegedly false and misleading language. *See* Hong Decl., Ex. C at 11-17. To prove substantial participation, the SEC must do more than show that Ms. Berry had some role in creating a public filing that contained a false statement; the SEC must prove she substantially participated in preparing the *specific passages* that were misleading. *See Siemers v. Wells Fargo & Co.*, 2007 WL 760750, at *19 (N.D. Cal. Mar. 9, 2007) (dismissing claim for

---

[1] The 12 filings with Ms. Berry's signature are eight Form S-8 Registration Statements and four Form DEF-14A Proxy Statements. Ms. Berry's signature does not appear on any Forms 10-K, 10-Q, or 8-K, the only identified filings that contain financial statements.

failing to allege substantial participation in preparing specific passages that were allegedly misleading); Brief of the Securities and Exchange Commission as Amicus Curiae, *Klein v. Boyd*, Nos. 97-1143 & 97-1261, at 19 (3d Cir. April 30, 1998) ("[A] person who prepares a truthful and complete portion of a document would not be liable as a primary violator for misrepresentations in other portions of the document.") (attached as Hong Decl., Ex. D).  Judge Whyte agrees, having indicated that the SEC must present evidence that Ms. Berry substantially participated in preparing the specific fraudulent statements alleged.  Hong Decl., Ex. E at 9 n.7 (noting that if the SEC lacked evidence of Ms. Berry's role in preparing financial statements, the issue could be resolved at summary judgment).

### B. Ms. Berry's Defense

Ms. Berry never worked in either company's finance or accounting departments, was not an accountant, and did not prepare the financial statements at either company.  Nor did she understand the accounting rules that governed the purported misstatements the SEC has described in the Complaint.  In addition, according to the SEC's own allegations, the only statements Ms. Berry did sign contain virtually no mention of stock options.  Therefore, it is far from obvious what exactly the SEC is charging Ms. Berry with having communicated to shareholders through the companies' SEC filings or otherwise.

To adequately prepare her defense, Ms. Berry must and is entitled to know both the universe of statements underlying the SEC's § 10(b) claims and the evidence behind the SEC's allegations that she made or substantially participated in making those statements she did not sign.  Particularly given Ms. Berry's position as General Counsel, she needs and is entitled to know the complete basis for the SEC's contention that she had a role in preparing financial statements and accounting disclosures, areas outside her expertise and responsibilities.  Without understanding the scope of the SEC's allegations, Ms. Berry will be forced to defend against every possible misstatement and theory of her participation, which the SEC now acknowledges involves an "infinite number."

### III. PROCEDURAL BACKGROUND

On October 26, 2010, Ms. Berry served the SEC with her First Set of Interrogatories. The

1  SEC served its responses and objections on November 26, 2010. The parties met and conferred
2  on numerous occasions and were able to significantly narrow the issues in dispute. The SEC also
3  twice supplemented its responses. With respect to the three interrogatories that are the subject of
4  this motion, however, the SEC has refused to provide complete responses.

5  In the course of the parties' meet and confer discussions, Ms. Berry laid out several
6  deficiencies in the SEC's responses. In addition to failing to specify the allegedly false or
7  misleading language on which the Commission bases its § 10(b) claims, the responses explicitly
8  covered only a subset of those statements. Rather than identify all alleged statements in response
9  to Interrogatory Nos. 2 and 4, the Commission only described statements that were "[a]mong the
10  statements Ms. Berry made or caused to be made." Similarly, the Commission's response to
11  Interrogatory No. 6 was expressly limited to statements in public filings and excluded other
12  statements on which the SEC could potentially base Ms. Berry's § 10(b) liability, such as investor
13  presentations, earnings calls, etc.[2] Ms. Berry rejected the Commission's arbitrary limitations and
14  asked for full responses covering all statements on which it bases her purported § 10(b) violation.

15  In an effort to resolve the dispute and ease any burden in providing a response, Ms.
16  Berry's counsel offered to catalogue the allegedly false or misleading language that counsel
17  understood underlay the § 10(b) charge. Ms. Berry's counsel sent the Commission a chart
18  identifying each of the specific statements it could glean from the Complaint's allegations and
19  asked the SEC to confirm that the chart contained all alleged statements or supplement the chart
20  accordingly. Hong Decl., Ex. F. With almost no explanation, the SEC denied the chart's
21  accuracy but refused to supplement it, contending that doing so would require answering an
22  "infinite number of questions." Hong Decl., Ex. G.

23  Ms. Berry now brings this motion to compel the SEC to comply with Federal Rule of
24  Civil Procedure 33 and provide complete interrogatory responses. Specifically, Ms. Berry moves
25  the Court to order the SEC to 1) identify the specific language it contends was false or misleading
26  for each statement on which it seeks to base Ms. Berry's liability under § 10(b) and 2) identify all

---

[2] The SEC did not allege any misstatements outside the public filings it referenced in the Complaint but, given all the caveats and qualifiers in the SEC's responses, Ms. Berry needs the Commission to confirm her understanding.

1  facts and documents on which the SEC bases its assertion that, as to any statement she did not
2  sign that the SEC alleges violated § 10(b), Ms. Berry substantially participated in making that
3  statement.

## IV.     ARGUMENT

### A.    Ms. Berry Is Entitled to Know, With Particularity, the Basis For and Evidence Supporting the SEC's Claims That She Made Misstatements to Shareholders

Pursuant to Federal Rule of Civil Procedure 33, interrogatories "to discover the detail[ed] factual basis for a particular allegation or alleged cause of action, or to test whether there is any factual basis at all for a particular allegation or alleged cause of action, are entirely proper and appropriate." *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton*, 136 F.R.D. 682, 689 (D. Kan. 1991); *see also French v. Wachovia Bank NA*, 2010 WL 2643385, at *1-2 (E.D. Wis. June 29, 2010) (granting motion to compel response to interrogatory requesting identification of misleading statements); *United States v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (granting motion to compel responses to interrogatories asking for "detailed information regarding the factual bases for [plaintiff's] contentions"). Such interrogatories are intended to narrow the issues for trial and provide notice of an "opponent's contentions and the evidence on which it relies." *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.*, 2005 WL 318811, at *8 (N.D. Cal. Jan. 5, 2005).

Moreover, the party opposing this discovery bears the burden of justifying its opposition. *Molski v. Franklin*, 222 F.R.D. 433, 434 (S.D. Cal. 2004). It is not "unduly burdensome, oppressive or inappropriate to require plaintiff to finally be brought to quarter and state its position, as to each count, with specific particularity, and disclose the evidence upon which it is going to rely at trial." *Cont'l Ill. Nat'l Bank*, 136 F.R.D. at 689.

The SEC has failed to meet its burden of justifying its refusal to respond completely to Ms. Berry's contention interrogatories. Those requests are targeted at narrowing the issues and evidence related to key elements in the SEC's fraud claim against Ms. Berry. When the SEC charged Ms. Berry with fraud over three years ago, it presumably had identified specific statements it believed were false and gathered evidence suggesting that she substantially

1  participated in making those statements.  *See* Hong Decl., Ex. A at 15 ("The SEC presumably
2  knows what Ms. Berry's role was as it has already obtained significant document discovery from
3  Ms. Berry's former employers.").  Now, having had over three years to refine its case, participate
4  in dozens of depositions, and review hundreds of thousands of documents, the SEC cannot
5  continue to hide the ball and prevent Ms. Berry from adequately preparing for dispositive motions
6  and trial.  It must "state its position" as to each statement "with particularity" so that Ms. Berry
7  can prepare her defense and obtain "notice of [the SEC's] contentions and the evidence on which
8  it relies."  *Cont'l Ill. Nat'l Bank*, 136 F.R.D. at 689; *Pac. Lumber Co.*, 2005 WL 318811, at *8.
9  Without the requested information, Ms. Berry must defend against what the SEC apparently
10 regards as an "infinite number" of potential misstatements and theories about her participation.
11 Moreover, the Court will face the similarly difficult task of sifting through the thousands of pages
12 incorporated into the SEC's interrogatory responses to determine if there are triable issues of fact
13 behind the § 10(b) claim.  Complete, particularized responses, on the other hand, will narrow the
14 issues at trial, enable Ms. Berry to focus on rebutting only the statements and evidence the SEC
15 identifies in its responses, and provide the Court a clear picture of the evidence.

16    **B.    The SEC's Interrogatory Responses Fail to Specify the SEC's Contentions**

17    The SEC's responses, containing only generalized complaint-style allegations, are
18 explicitly incomplete and do not specify the false and misleading language underlying the § 10(b)
19 claim or the evidence behind Ms. Berry's purported substantial participation.  A party must
20 respond to interrogatories "to the fullest extent possible."  *Haney v. Saldana*, 2010 WL 3341939,
21 at *3 (E.D. Cal. Aug. 24. 2010).  "It is not the defendant's duty to sift through [a referenced
22 document] in an attempt to glean the information sought in the interrogatory."  *See French*, 2010
23 WL 2643385, at *1.

24    The SEC's responses make expressly clear that they cover only a subset of statements
25 underlying the § 10(b) claim.  The responses to Interrogatory Nos. 2 and 4 describe
26 representations that are "[a]mong the statements Berry made or caused to be made," as opposed
27 to being inclusive of *all* the alleged misstatements for which she is charged.  Similarly, the SEC's
28 response to Interrogatory No. 6 expressly excludes "the many false statements or omissions . . .

1    not made in public filings." Such arbitrary limitations, which leave open the possibility that the
2    SEC will seek to introduce evidence that she made additional misstatements to shareholders not
3    described in the responses, such as statements in investor presentations, earnings calls, etc., are
4    improper on their face. The SEC must answer these interrogatories to the fullest extent possible
5    and specifically identify all statements underlying its § 10(b) claim. *See Haney*, 2010 WL
6    3341939, at *3.

7    In addition, by referring to vague statements from the Complaint, the SEC has
8    circumvented the purpose of contention interrogatories, which are intended to clarify complaint
9    allegations. *See Cont'l Ill. Nat'l Bank*, 136 F.R.D. at 689. The responses to Interrogatory Nos. 2
10   and 4 refer to dozens of paragraphs from the Complaint, which provide generalized descriptions
11   of statements but do not identify the specific language the SEC contends was false and
12   misleading. For example, the SEC indicated that paragraph 76 of the Complaint is responsive to
13   Interrogatory No. 2, which asks for the untrue statements the SEC alleges Ms. Berry made.
14   Paragraph 76 states that Ms. Berry did not "inform others involved in the Form 10-K preparation
15   process that Juniper's stock option related disclosures were false." Hong Decl., Ex. B at ¶76.
16   Juniper's Forms 10-K, however, include a multitude of stock option-related disclosures. *See, e.g.*,
17   Hong Decl., Ex. H. The Complaint's generalized allegation provides no indication whether the
18   SEC claims the false disclosure is that the 1996 Stock Option Plan "provides for the granting of
19   incentive stock options to employees" (*Id.*, Juniper 10-K filed March 29, 2000 at 139), that "the
20   Company announced a voluntary stock option exchange program for its employees" (*Id.*, Juniper
21   10-K filed April, 1, 2002 at 82), or some other stock option-related disclosure buried within the
22   hundreds of pages of filings. The SEC may not avoid its obligation to provide complete
23   responses to Ms. Berry's requests by forcing her to sift through the thousands of pages
24   comprising the 41 public filings it has identified to guess which particular passages it contends
25   are false. *French*, 2010 WL 2643385, at *1.

26   The response to Interrogatory No. 6 is likewise deficient because it fails to fully respond
27   to the request. Ms. Berry requested the identification of facts, documents, and information that
28   the SEC believes supports its assertions that she substantially participated in preparing the

OHS West:261050526.6 - 8 - DEF. LISA BERRY'S NOTICE OF MOTION AND MOT. TO COMPEL INTERROGATORY RESPONSES
5:07-CV-4431 RMW (HRL)

1 allegedly false statements. Although the SEC responded with additional generalized complaint-
2 style allegations, it failed to identify specific information and documents (*e.g.*, page citations to
3 deposition testimony, references to Bates numbers or declarations, etc.). Unless the SEC
4 concedes that it has no such evidence, it has failed to respond to the fullest extent possible.

## V. CONCLUSION

For the foregoing reasons, Ms. Berry respectfully requests that the Court grant this motion and order the SEC to provide the requested information.

Dated: March 21, 2011                   Respectfully submitted,

*/s/ Steven A. Hong*
STEVEN A. HONG
ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Defendant
Lisa C. Berry

OHS West:261050526.6 - 9 - DEF. LISA BERRY'S NOTICE OF MOTION AND MOT. TO COMPEL INTERROGATORY RESPONSES
5:07-CV-4431 RMW (HRL)