**\*\* E-filed June 1, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>LISA C. BERRY,<br><br>    Defendant.<br>_____/ | No. C07-04431 RMW (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION RE: EXPERT WITNESS FEES FOR DEPOSITIONS**<br><br>[Re: Docket No. 212] |

**BACKGROUND**

The Securities and Exchange Commission ("SEC") filed this civil enforcement action in 2007 in relation to alleged improper stock option backdating at KLA-Tencor Corporation ("KLA") and Juniper Networks, Inc. ("Juniper"). Defendant Lisa Berry ("Berry") was General Counsel of KLA from September 1996 to June 1999 and of Juniper from June 1999 to January 2004. The SEC alleges that she oversaw these companies' stock option granting processes.

The case is now in the expert discovery phase. The SEC disclosed two experts: (1) certified public accountant Kenneth Avery ($600 per hour); and (2) economist and professor Dino Falaschetti ($500 per hour). Berry disclosed six experts: (1) economist Kenneth Lehn ($950 per hour); (2) attorney Michael Diamond ($750 per hour); (3) Michael Bean ($295 per hour); (4) certified public accountant Charles Lundelius ($750 per hour); (5) certified public accountant Duross O'Bryan ($575 per hour); and (6) certified public accountant Roman Weil ($1,600 per hour).

The parties disagree over who will pay these experts' fees when they are deposed by the other side. The SEC says that each party should bear the costs of their own experts, and it moved for an order so requiring. Docket No. 212 ("Motion"). Berry says that the deposing party should pay the fees of the expert deponent. See Docket No. 215 ("Opp'n"). Pursuant to Civil Local Rule 7-1(b), the Court finds the matter suitable for determination without oral argument.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(4) was revised in 1993 to provide that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." FED. R. CIV. P. 26(b)(4)(A). "Unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery . . . ." FED. R. CIV. P. 26(b)(4)(E). For this reason, "[c]oncerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition will ordinarily be borne by the party taking the deposition." See Advisory Committee Notes to 1993 amendments to FED. R. CIV. P. 26, subdivision (b).[1]

## DISCUSSION

A. Whether Requiring the SEC to Pay Berry's Experts' Fees Would Constitute "Manifest Injustice"

The manifest injustice exception is a "stringent standard." See Reed v. Binder, 165 F.R.D. 424, 427 (D.N.J. 1996) (quoting Gorlikowski v. Tolbert, 52 F.3d 1439, 1444 (7th Cir. 1995)). "To apply the exception, the court must find (1) that the plaintiff is either "indigent or [(2)] that requiring him to pay a deposition fee incurred in litigation that he voluntarily initiated would create an undue hardship." Harris v. San Jose Mercury News, Inc., 235 F.R.D. 471, 473 (N.D. Cal. 2006) (Chen, M.J.) (quoting Edin v. The Paul Revere Life Insurance Co., 188 F.R.D. 543, 547 (D.Ariz. 1999)). "In making the determination of undue hardship, the court must 'weigh the possible hardships imposed on the respective parties . . . [and] balance the need for doing justice on the merits between

---

[1] In interpreting the Federal Rules of Civil Procedure, the Advisory Committee Notes, though not conclusive, should be given considerable weight. Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444 (1946).

2

the parties . . . against the need for maintaining orderly and efficient procedural arrangements.'" Id. (citing Reed, 165 F.R.D. at 427-28).

Here, the SEC does not contend that it is indigent. See Motion at 4-5; Docket No. 224 ("Reply") at 2-3.Therefore, the issue is whether the SEC is faced with an "undue hardship" and whether "the need for doing justice on the merits" outweighs "the need for maintaining orderly and efficient procedural arrangements." See Harris, 235 F.R.D. at 473; Edin, 188 F.R.D. at 547.

Simply put, the SEC's main argument is that Berry's experts' hourly rates are too expensive.[2] It says that Berry's six experts collectively charge $4,920 per hour (while its own two experts only collectively charge $1,100 per hour), and it has already expended significant resources in reviewing the six experts' reports. Id. Motion at 5, 7. Thus, "[a]dding the costs of paying the additional (and largely unwarranted) fees for defendant's experts will inevitably require that the [SEC] not expend [its] resources elsewhere in enforcing the securities laws." Id.

The Court is not persuaded. For one, the SEC cites no authority for its proposition that "undue burden" exists when one party's experts collectively charge more than another party's experts. If anything, this argument goes to whether a party's experts' fees are reasonable (as discussed below). And, as for its argument that the SEC will have to choose how to allocate its resources, this is no different than what nearly all litigants must do.

The Court finds that a "manifest injustice" does not exist. The parties shall pay the fees of the other side's experts per Rule 26(b)(4)(E). See United States v. City of Twin Falls, Idaho, 806 F.2d 862, 879 (9th Cir. 1986), overruled on other grounds by Crawford Fitting Co. v. J.T. Gibbons,

---

[2] The SEC also suggests that "undue hardship" exists because it must jump through a number of administrative hoops to pay Berry's experts. Motion at 6. But aside from causing Berry's experts to be paid later than they otherwise might, the Court does not see how this constitutes undue hardship on the SEC. It also contends that "undue hardship" exists because "it is the norm in [its] cases, as well as [its] experience with [Berry's] own counsel, that the parties agree to each pay their own designated experts for time spent at depositions." Reply at 4; see also Motion at 3. But just because most parties agree with the SEC to bear their own costs, does not mean every party has to do so. While the SEC cites a case where a court noted that such agreements were the "usual custom" in that particular locale, see Rogers, 232 F.R.D. 581, 582 (E.D. Tex. 2005) (suggesting that Texas attorneys representing Texas clients in the Eastern District of Texas usually pay their own experts because that is the rule in Texas state court), that court was merely making an observation and did not rely upon in it in making its ruling.

3

Inc., 482 U.S. 437 (1987) ("The language of the rule is mandatory ('shall'), unless manifest injustice would result.").[3]

### B. The Reasonableness of Berry's Experts' Fees

The reasonableness of Berry's experts' fees is another matter.[4] Indeed, Rule 26(b)(4)(E)'s requirement that the expert fees be "reasonable" is, along with the "manifest injustice" inquiry, one way to prevent potential discovery abuse. See Rogers, 232 F.R.D. at 582 n.1; see also City of Twin Falls, 806 F.2d at 879 ("The purpose of the rule is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement.") (citing 4 J. MOORE, J. LUCAS, & G. GROTHEER, JR., MOORE'S FED. PRAC., ¶ 26.66[5] (2d ed. 1984)).

"What constitutes a 'reasonable fee' for purposes of [Rule 26(b)(4)(E)] lies within the Court's sound discretion." Edin, 188 F.R.D. at 545 (citing 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. AND PROC., CIVIL 2D § 2034 at 469-70 (2d ed. 1994)). And, "[a]s a general rule, '[t]he party seeking reimbursement of deposition fees bears the burden of proving reasonableness . . . . If the parties provide little evidence to support their interpretation of a reasonable rate, the court may use its discretion to determine a reasonable fee.'" Mannarino v. United States, 218 F.R.D. 372, 374 (E.D.N.Y. 2003) (quoting New York v. Solvent Chem. Co., 210 F.R.D. 462, 468 (W.D.N.Y. 2002) (citations omitted)).

Cases discussing the issue of what constitutes a "reasonable" expert fee have set forth seven factors to consider: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the

---

[3] The SEC also suggests that, after a Daubert review, "it is doubtful" that Judge Whyte will permit all of Berry's experts to testify at trial. Motion at 5-6. This argument is entirely premature. Perhaps realizing this, the SEC also suggests that the Court can wait to rule on the instant motion until the conclusion of the litigation. Id. at 9. The Court does not believe deferring its ruling on this basis is appropriate, and Berry does not cite any authority where a court has done so.

[4] Berry contends that the SEC is estopped from challenging the reasonableness of Berry's experts' fees because it only raised this issue for the first time in its motion. Opp'n at 8. The SEC, however, replies that it "explicitly raised" this issue during previous meet-and-confer efforts. Reply at 8. While Berry may have been caught off-guard, she still set forth her basic points for why her experts' fees are reasonable, so the Court believes that this matter may be fairly ruled upon.

4

expert on related matters; and (7) any other factor likely to assist the court in balancing the interests implicated by Rule 26. Edin, 188 F.R.D. at 546 (citations omitted).

As mentioned earlier, Berry disclosed six experts. Four of them (Diamond, Bean, Lundelius, and O'Bryan) have hourly rates within the same general range as the two experts disclosed by the SEC: these experts all charge between $295 and $750 per hour. However, two of Berry's experts charge significantly more: Lehn charges $950 per hour and Weil charges $1,600 per hour. These fees are unreasonable. While their levels of expertise, education, and training are indeed impressive, their rates are considerably higher than those of other (presumably) comparable experts (such as Berry's other experts and the experts hired by the SEC) and are even higher than they have charged the SEC for similar work in the recent past. For example, Lehn served as an expert on behalf of the SEC less than ten years ago and was paid $550 and $650 per hour on two separate occasions, and Weil testified on behalf of the SEC in 2007 and was paid approximately $500 per hour. Reply at 6; Docket No. 225 ¶ 3; Docket No. 230 at 1. But these experts had the same levels of expertise, education, and training then as they do now, and the matters for which they were retained were of comparable complexity, so it is hard to understand how their rates could have more than doubled. See Reply at 6-7; see also, e.g., SEC v. Koenig, No. 02 C 2180, 2009 WL 4043319, at *2-3 (N.D. Ill. Nov. 23, 2009) (examining Weil's methods and conclusions with respect to what a company's earnings per share would have been "but-for" the defendant's securities law violations). Accordingly, the Court will reduce Lehn's fee from $950 to $750 per hour and Weil's fee from $1,600 to $800 per hour.[5]

## CONCLUSION

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART the SEC's motion. It is denied insofar as the parties are required to pay the other side's experts' fees in relation

---

[5] Cases cited by the parties suggest that a court can reasonably reduce an expert's fee by half. See, e.g., Edin, 188 F.R.D. at 547 (reducing deposition rates from $1,400 to $450); Jochims v. Isuzu Motors, Ltd., 141 F.R.D. 493, 497 (S.D. Ida. 1992) (reducing expert fee from $500 to $250 per hour, which the court stated was "the outer limit of a reasonable fee" for that particular expert); Anthony v. Abbot Labs., 106 F.R.D. 461, 464-65 (D.R.I. 1985) (reducing expert's hourly rate for depositions from $420 to $250, where the expert was content to charge a friendly litigant $250 per hour for a previous deposition appearance).

to their depositions. It is granted insofar as Lehn's fee is reduced from $950 to $750 per hour and Weil's fee is reduced from $1,600 to $800 per hour.

**IT IS SO ORDERED.**

Dated: June 1, 2011

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C07-04431 RMW (HRL)** N**otice will be electronically mailed to:**

| | |
|---|---|
| Amy M. Ross | aross@orrick.com |
| Benjamin Cunningham Geiger | bgeiger@orrick.com |
| Edward W. Swanson | eswanson@swansonmcnamara.com |
| Elena Ro | roe@sec.gov |
| James A. Meyers | jmeyers@orrick.com |
| James Neil Kramer | jkramer@orrick.com |
| Jeffrey Bruce Coopersmith | jeff.coopersmith@dlapiper.com, bradley.meissner@dlapiper.com, evelyn.dacuag@dlapiper.com |
| Jeremy Emerson Pendrey | pendreyj@sec.gov |
| Joni L. Ostler | jostler@wsgr.com, pbaird@wsgr.com |
| Judith L. Anderson | andersonju@sec.gov, huangw@sec.gov, johnstonj@sec.gov |
| Katherine Collinge Lubin | klubin@orrick.com, swortman@orrick.com |
| Marc J. Fagel | fagelm@sec.gov |
| Mark Philip Fickes | fickesm@sec.gov |
| Matthew Austen Tolve | mtolve@orrick.com |
| Matthew Eric Sloan | Matthew.Sloan@skadden.com, eaviad@skadden.com, jlyons@skadden.com, mtroost@skadden.com |
| Michael David Torpey | mtorpey@orrick.com |
| Nancy E. Harris | nharris@orrick.com, vsweet@orrick.com |
| Randall Scott Luskey | rluskey@orrick.com, gpackard@orrick.com |
| Rebecca Felice Lubens | jcopoulos@orrick.com, klubin@orrick.com, nharris@orrick.com, rlubens@orrick.com, sjaffer@orrick.com |
| Robert John Nolan | robert.nolan@pillsburylaw.com, docket@pillsburylaw.com |
| Robert Lootfi Tashjian | tashjianr@sec.gov, bukowskij@sec.gov, huangw@sec.gov, johnstonj@sec.gov |
| Steven Andrew Hong | shong@orrick.com |
| Susan F. LaMarca | lamarcas@sec.gov, huangw@sec.gov, johnstonj@sec.gov |
| Thomas R. Green | thomas.green@usdoj.gov, daniel.charlier-smith@usdoj.gov, lily.c.ho-vuong@usdoj.gov |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**